

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION - Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Jason Christopher Long
_____
*Plaintiff(s)*

v.

Case No: 2025-CAB-004846

# Maximus Inc, et al.
_____
*Defendant(s)*

## NOTICE AND ACKNOWLEDGMENT OF SERVICE

To (insert name and address of the party to be served):
Dominic Martin
1600 Tyson Blvd
Ste 1400
McLean, VA 22102

    The enclosed summons, complaint, initial order, and any addendum are served in accordance with Superior Court Rule of Civil Procedure 4(c)(5).

    Please sign and date the Acknowledgement at the bottom of the page. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, please indicate your relationship to that entity in the space beside your signature. If you are served on behalf of another person and you are authorized to receive process, please indicate your authority in the space beside your signature.

    If you do not complete and return the form to the sender within 21 days after it was mailed and you do not show good cause for this failure, you (or the party on whose behalf you are being served) will be required to pay 1) the costs incurred in serving the summons, complaint, initial order, and any addendum in any other manner permitted by law and 2) the reasonable expenses, including attorney's fees, for any motion required to collect those service expenses.

    If you do complete and return this form, you (or the party on whose behalf you are being served) must answer the complaint within 21 days after you have signed, dated, and returned the form (or within 60 days if the party being served is the United States, the District of Columbia, or officers or employees of either). If you fail to do so, judgment by default may be entered against you for the relief demanded in the complaint.

    This Notice and Acknowledgment of Receipt of Summons, Complaint, Initial Order, and Any Addendum was mailed on (insert date): 8/4/2025         .

_____
*Signature*

8/4/2025
_____
*Date of Signature*

### ACKNOWLEDGMENT OF RECEIPT OF SUMMONS,
### COMPLAINT, INITIAL ORDER, AND ANY ADDENDUM

    I (print name) _____ received a copy of the summons, complaint, initial order, and any addendum in the above captioned matter at (insert address): _____

_____
*Signature*

_____
*Relationship to Defendant/Authority to Receive Service*

_____
*Date of Signature*

Para pedir una traducción, llame al (202) 879-4828    如需翻譯,請打電話 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction
Để có một bài dịch, hãy gọi (202) 879-4828    የአማርኛ ትርጉም ለማግኘት ስልክ ቁጥር (202) 879-4828 ይደውሉ    번역을 원하시면, (202) 879-4828 로 전화주십시오



**Superior Court of the District of Columbia**
**Civil Division - Civil Actions Branch**
**500 Indiana Ave NW, Room 5000, Washington DC 20001**
**202-879-1133 | www.dccourts.gov**

**Case Number:** 2025-CAB-004846

**Case Style:** Jason Christopher Long v. Maximus Inc et al.

## INITIAL ORDER

| Initial Hearing Date: | Initial Hearing Time: | Courtroom Location: |
|---|---|---|
| Friday, 10/24/2025 | 9:30 AM | Remote Courtroom 212 |
| **Please see attached instructions for remote participation.** | | |
| Your case is assigned to Associate Judge Tanya Jones Bosier. | | |

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

1) This case is assigned to the judge and calendar designated above. All future filings in this case shall bear the calendar number and judge's name along with the case number in the caption.

2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of the summons, the complaint, and this Initial Order. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4.

3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

4) At the time stated above, all counsel and unrepresented parties shall participate in a hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients before the hearing whether the clients are agreeable to binding or non-binding arbitration. This order is the only notice that parties and counsel will receive concerning this hearing.

5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference once, with the consent of all parties, to either of the two succeeding days when the calendar is called. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date. No other continuance will be granted except upon motion for good cause shown.

6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Milton C. Lee, Jr.

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb212

   Meeting ID: 129 440 9070

2) When you are ready, click "Join Meeting".
3) You will be placed in the lobby until the courtroom clerk gives you access to the hearing.


**Or to Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
2) Enter the Webex Meeting ID listed above followed by "##"


**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here https://www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch Clerk's Office at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

## ACCESSIBILITY AND LANGUAGE ACCESS

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call 202-879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services:**

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office listed for your case. For more information, visit https://www.dccourts.gov/language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría de su caso.

Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች:**

የዲ.ሲ. ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። የቃል ወይም የጽሑፍ ትርጓሜ ለመጠየቅ እባክዎን በመዝገብዎ የተዘረዘሩትን የጽሀፈ ቤሮ (ክለርክ'ስ ኦፌስ) ያናግሩ። ለተጨማሪ መረጃ https://www.dccourts.gov/language-access ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

# Tips for Attending Remote Hearings - Civil Division

*Your court hearing may be held remotely. This means that you will participate by phone or by video conference instead of coming to the courthouse. Here are some tips on how to prepare.*

## How do I know if I have a remote hearing?

The Court will contact you to tell you that your hearing is remote. They may contact you by sending you an email, letter in the mail, or by calling you.



## How do I take part in a remote hearing?

The Court will give you step-by-step instructions on how to take part in the remote hearing.

If you lose your written notice, call the Civil Actions Clerk's Office for instructions at:

 202-879-1133

## Is there anything that I should do before the day of the hearing?

- Let the court know immediately if you cannot join a hearing because you do not have a phone or computer.

  📞 Civil Actions Clerk's Office: 202-879-1133

- You may want to contact an attorney for legal help.

- You can also find the list of legal services providers at www.dccourts.gov/services/represent-yourself by clicking on the link that says, "List of Legal Service Providers for Those Seeking an Attorney or Legal Advice".

- Evidence: if you want the judge to review photos or documents, ask the judge how to submit your evidence.

- Witnesses: tell the judge if you want a witness to testify at your hearing.

- Accommodations & Language Access: let the court know if you need an interpreter or other accommodation for your hearing.

## Tips for the Hearing



- Join the hearing a few minutes early!

- Charge your computer or phone and make sure you have enough minutes to join the call. Find a private and quiet space. If possible, be alone in a room during the hearing. Try to limit distractions as much as possible. If others are in the room with you, ask if they can be quiet during the hearing.

- Mute your microphone when you are not talking. Mute all sounds on your phone or computer.

- Say your name before you speak so the record is clear. Be prepared to identify your role in the hearing (e.g., observer, plaintiff, defendant, witness, etc.).

- Speak slowly and clearly so everyone hears what you are saying.

- Pause before speaking in case there is a lag. Use a headset or headphones if you can. This will free up your hands and sound better.

- Try not to talk over anyone else. Only one person can speak at a time. If you talk while someone else is talking, the judge will not be able to hear you.

- Have all your documents for the hearing in front of you. Have a pen and paper to take notes.

- If you are not ready for your hearing or want to speak with an attorney, you can ask the judge to postpone your hearing for another date.

- If your sound or video freezes during the hearing, use the chat feature or call the Clerk's Office to let them know that you are having technical issues.

## Special Tips for Video Hearings
## (Click here for more information)



- Download the court's hearing software, WebEx, in advance and do a test run! The Court will provide you with a WebEx link in advance of the hearing.

- Set up the camera at eye level. If you are using your phone, prop it up so you can look at it without holding it.

- Look at the camera when you speak and avoid moving around on the video.

- Wear what you would normally wear to court.

- Sit in a well-lit room with no bright lights behind you.

- If possible, find a blank wall to sit in front of. Remember the judge will be able to see everything on your screen, so pick a location that is not distracting.

Case 1:25-cv-03272-RC    Document 1-2    Filed 09/18/25    Page 6 of 370

# District of Columbia Courts
## Tips for Using DC Courts Remote Hearing Sites

The DC Courts have **remote hearing sites** available in various locations in the community to help persons who may not have computer devices or internet service at home to participate in scheduled remote hearings. The Courts are committed to enhancing access to justice for all.

There are four remote access sites throughout the community which will operate **Monday – Friday, 8:30 am – 4:00 pm.**




| **Remote Site – 1** | **Remote Site – 3** |
|---|---|
| Balance and Restorative Justice Center 1215 South Capitol Street, SW Washington, DC 20003 | Balance and Restorative Justice Center 118 Q Street, NE Washington, DC 20002 |
| **Remote Site – 2** | **Remote Site – 4** |
| Balance and Restorative Justice Center 1110 V Street, SE Washington, DC 20020 | Balance and Restorative Justice Center 920 Rhode Island Avenue, NE Washington, DC 20018 |

**If you want to use a remote site location for your hearing,** call 202-879-1900 or email DCCourtsRemoteSites@dcsc.gov at least 24 hours before your hearing to reserve a remote access computer station.

**If you require special accommodations such as an interpreter for your hearing,** please call 202-879-1900 at least 24 hours in advance of your hearing so the Courts can make arrangements.

**\*You should bring the following items when you come to your scheduled site location\***

1. Your case number and any hyperlinks provided by the Courts for your scheduled hearing.
2. Any documents you need for the hearing (evidence), including exhibits, receipts, photos, contracts, etc.
3. Materials for notetaking, including pen and paper.

\*Safety and security measures are in place at the remote sites.

**Contact information to schedule your remote access computer station:**
Call:  202-879-1900
Email:  DCCourtsRemoteSites@dcsc.gov



Los Tribunales de DC disponen de **sitios de audiencia remota** en distintos centros de la comunidad para ayudar a que las personas que no tienen dispositivos informáticos o servicio de Internet en su casa puedan participar en audiencias remotas programadas. Los Tribunales honran el compromiso de mejorar el acceso de toda la población a la justicia.

En toda la comunidad hay cuatro sitios de acceso remoto que funcionarán **de Lunes a Viernes, de 8:30 am a 4:00 pm**.

---

**Sito Remoto – 1**

Balance and Restorative Justice Center
1215 South Capitol Street, SW
Washington, DC 20003

---

**Sito Remoto – 2**

Balance and Restorative Justice Center
1110 V Street, SE
Washington, DC 20020

---



---

**Sito Remoto – 3**

Balance and Restorative Justice Center
118 Q Street, NE
Washington, DC 20002

---

**Sito Remoto – 4**

Balance and Restorative Justice Center
920 Rhode Island Avenue, NE
Washington, DC 20018

---

**Si desea usar un sitio remoto para su audiencia,** llame al 202-879-1900 o envíe un mensaje de correo electrónico a DCCourtsRemoteSites@dcsc.gov al menos 24 horas antes de la audiencia, para reservar una estación de computadora de acceso remoto.

**Si necesita adaptaciones especiales,** como un intérprete para la audiencia, llame al 202-879-1900 al menos 24 horas antes de la audiencia para que los Tribunales puedan hacer los arreglos necesarios.

**\*Cuando concurra al sitio programado debe llevar los siguientes artículos\***
1. Su número de caso y todos los hipervínculos que le hayan proporcionado los Tribunales para la audiencia programada.
2. Cualquier documento que necesite para la audiencia (prueba), incluidos documentos probatorios, recibos, fotos, contratos, etc.
3. Materiales para tomar nota, como papel y lápiz.

\*Los sitios de acceso remoto cuentan con medidas de seguridad y protección.

**Información de contacto para programar su estación de computadora de acceso remoto:**
Teléfono: 202-879-1900
Correo electrónico: DCCourtsRemoteSites@dcsc.gov

FILED
CIVIL DIVISION

JUL 2 9 2025

Superior Court of the
District of Columbia



**Superior Court of the District of Columbia**
CIVIL DIVISION – Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Case No. ___2025-CAB-004846___

## COMPLAINT
Jurisdiction of this Court is founded on D.C. Code § 11-921.

AI DVANTAGE ELA

__Jason Christopher Long__          vs    __MAXIMUS, INC, D/B/A AIDVANTAGE J.c.L.__
PLAINTIFF                                 DEFENDANT
                                          ATTN: General counsel John Martinez
__5112 MacArthur BLVD, N.W, Unit 4__      __1600 Tysons BLVD, STE 1400__
Address (No Post Office Boxes)            Address (No Post Office Boxes)

__Washington, District of Columbia (20016)__  __McLean    VA      22102__
City      State      Zip Code             City      State      Zip Code

__Don't disclose in the docket__          __(703) 251 - 8500__
Telephone Number                          Telephone Number

__jclong2070@yahoo.com__
Email Address (optional)                  Email Address (optional)

1. Write a short and plain statement of your claim, including any relevant facts, dates, and locations:

   Plaintiff honorably request the court to read and review my complaint and the exhibits included to show the wrong doing of the Defendants from 2021 or 2022. To right now.

2. What relief are you requesting from the Court? Include any request for money damages.

   I kindly request the court to see prayer to relief section to determine the amount I am requesting.

Form CA-3074 [Rev. Nov. 2017]          1          Super. Ct. Civ. R. 3

3. State any other information, of which the Court should be aware:

This court has jurisdiction to hold the defendants under the District of Columbia's codes, citations, legal authorities, and etc. Please see Plaintiff's Statement of Claim and exhibits that will show this cannot be transferred to U.S.A. DC District Court. I object the court to have the defendants to do so

### SIGNATURE

To the best of my knowledge, everything in this Complaint is true and I am not filing this Complaint to harass the Defendant(s). Superior Court Civil Rules 11(b).

*Jason C. Pong* "without Prejudice" I-308
**(SIGNATURE**

7-25-2025
**DATE**

Subscribed and sworn to before me this _____ day of _____

_____
(Notary Public)

2

## ADDENDUM TO COMPLAINT

CASE NO. 2025-CAB 004845

### ADDITIONAL PARTY NAMES AND ADDRESSES

*Sam Tandy*

☐ PLAINTIF    ☒ DEFENDANT

*1600 Tysons BLVD, STE 1400*
Address (No Post Office Boxes)

*McLean VA 22102*
City        State        Zip

*(703) 251-8500*
Telephone Number

Email Address (Optional)

---

*Dominic Martin*

☐ PLAINTIFF    ☒ DEFENDANT

*1600 Tysons BLVD, STE 1400*
Address (No Post Office Boxes)

*McLean VA 22102*
City        State        Zip

*(703) 251-8500*
Telephone Number

Email Address (Optional)

---

☐ PLAINTIF    ☐ DEFENDANT

Address (No Post Office Boxes)

City        State        Zip

Telephone Number

Email Address (Optional)

---

☐ PLAINTIFF    ☐ DEFENDANT

Address (No Post Office Boxes)

City        State        Zip

Telephone Number

Email Address (Optional)

## ADDENDUM TO COMPLAINT

CASE NO. _____

### ADDITIONAL PARTY NAMES AND ADDRESSES

☐ PLAINTIFF    ☐ DEFENDANT

_____
Address (No Post Office Boxes)

_____
City          State          Zip

_____
Telephone Number

_____
Email Address (Optional)


☐ PLAINTIFF    ☐ DEFENDANT

_____
Address (No Post Office Boxes)

_____
City          State          Zip

_____
Telephone Number

_____
Email Address (Optional)


☐ PLAINTIF    ☐ DEFENDANT

_____
Address (No Post Office Boxes)

_____
City          State          Zip

_____
Telephone Number

_____
Email Address (Optional)


☐ PLAINTIFF    ☐ DEFENDANT

_____
Address (No Post Office Boxes)

_____
City          State          Zip

_____
Telephone Number

_____
Email Address (Optional)

# Superior Court of the District of Columbia

## CIVIL DIVISION - CIVIL ACTIONS BRANCH

### INFORMATION SHEET

Jason Christopher Long
Plaintiff(s)

Case Number: 2025-CAB-004845

vs

Date: 7-25-2025

MAXIMUS, INC DIBA ADVANTAGE
ELAT,
Defendant(s)

☐ One of the defendants is being sued
in their official capacity.

Name: *(Please Print)*
Jason Christopher Long

Firm Name:

Telephone No.:  DC Bar No.:
N/A            723456

Relationship to Lawsuit

☐ Attorney for Plaintiff
☐ Self (Pro Se)
☑ Other: Pro Per

TYPE OF CASE:  ☐ Non-Jury    ☑ 6 Person Jury    ☐ 12 Person Jury
Demand: $ Over $50,000           Other:

PENDING CASE(S) RELATED TO THE ACTION BEING FILED
Case No.: _____    Judge: _____    Calendar #: _____

Case No.: _____    Judge: _____    Calendar #: _____

---

**NATURE OF SUIT:**    *(Check One Box Only)*

**CONTRACT**
☐ Breach of Contract
☐ Breach of Warranty
☐ Condo/Homeowner Assn. Fees
☐ Contract Enforcement
☐ Negotiable Instrument

**COLLECTION/INS. SUB**
☐ Debt Collection
☐ Insurance Subrogation
☐ Motion/Application for Judgment by Confession
☐ Motion/Application Regarding Arbitration Award

**EMPLOYMENT DISPUTE**
☐ Breach of Contract
☐ Discrimination
☐ Wage Claim
☐ Whistle Blower
☐ Wrongful Termination

**REAL PROPERTY**
☐ Condo/Homeowner Assn. Foreclosure
☐ Declaratory Judgment
☐ Drug Related Nuisance Abatement

☐ Ejectment
☐ Eminent Domain
☐ Interpleader

☐ Other
☐ Quiet Title
☐ Specific Performance

☐ FRIENDLY SUIT
☐ HOUSING CODE REGULATIONS
☐ QUI TAM
☐ STRUCTURED SETTLEMENTS

**ADMINISTRATIVE PROCEEDINGS**
☐ Administrative Search Warrant
☐ App. for Entry of Jgt. Defaulted Compensation Benefits
☐ Enter Administrative Order as Judgment
☐ Libel of Information
☐ Master Meter
☐ Petition Other

☐ Release Mechanics Lien
☐ Request for Subpoena

**MALPRACTICE**
☐ Medical – Other
☐ Wrongful Death

**AGENCY APPEAL**
☐ Dangerous Animal Determination
☐ DCPS Residency Appeal
☐ Merit Personnel Act (OEA)
☐ Merit Personnel Act (OHR)
☐ Other Agency Appeal

☐ APPLICATION FOR INTERNATIONAL FOREIGN JUDGMENT

---

CV-496/February 2023

# Information Sheet, Continued

| CIVIL ASSET FORFEITURE | TORT |
|---|---|
| ☐ Currency | ☐ Abuse of Process |
| ☐ Other | ☐ Assault/Battery |
| ☐ Real Property | ☐ Conversion |
| ☐ Vehicle | ☐ False Arrest/Malicious Prosecution |
| **NAME CHANGE/VITAL RECORD AMENDMENT** | ☐ Libel/Slander/Defamation |
| ☐ Birth Certificate Amendment | ☐ Personal Injury |
| ☐ Death Certificate Amendment | ☐ Toxic Mass |
| ☐ Gender Amendment | ☐ Wrongful Death (Non-Medical Malpractice) |
| ☐ Name Change | |

| GENERAL CIVIL | | STATUTORY CLAIM |
|---|---|---|
| ☐ Accounting | ☐ Product Liability | ☐ Anti – SLAPP |
| ☐ Deceit (Misrepresentation) | ☐ Request for Liquidation | ■ Consumer Protection Act |
| ☐ Fraud | ☐ Writ of Replevin | ☐ Exploitation of Vulnerable Adult |
| ☐ Invasion of Privacy | ☐ Wrongful Eviction | ☐ Freedom of Information Act (FOIA) |
| ☐ Lead Paint | **CIVIL I/COMPLEX CIVIL** | ☐ Other |
| ☐ Legal Malpractice | ☐ Asbestos | **TAX SALE FORECLOSURE** |
| ☐ Motion/Application Regarding Arbitration Award | **MORTGAGE FORECLOSURE** | ☐ Tax Sale Annual |
| ☐ Other - General Civil | ☐ Non-Residential | ☐ Tax Sale Bid Off |
| | ☐ Residential | |

| VEHICLE | |
|---|---|
| ☐ Personal Injury | ☐ **TRAFFIC ADJUDICATION APPEAL** |
| ☐ Property Damage | ☐ **REQUEST FOR FOREIGN JUDGMENT** |

Jason Strong without Prejudice    7-25-2025
DC Code 28:1-808

Filer/Attorney's Signature                    Date

CV-496/February 2023

## IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

### CIVIL DIVISION

### CIVIL ACTIONS BRANCH DIVISION

Jason Christopher Long,

       Plaintiff,

vs.

MAXIMUS D/B/A AIDVATANGE, EL AT.,

       Defendant

Case No.: **2025-CAB-004846**

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF

## PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF

Plaintiff, a living man on the Land of the District of Columbia, specially appearing as Pro Per in the District of Columbia, brings this action under District of Columbia statutory and common laws against the above-named Defendant and alleges as follows:

### INTRODUCTION

This action arises from a pattern of egregious, unlawful conduct by federal student loan servicers and agents, including fraudulent loan origination, constructive forgery, record tampering, and deliberate denial of the Plaintiff's lawful rights under District of Columbia law. The Plaintiff seeks damages exceeding \$50,000, declaratory judgment invalidating fraudulent loan documents, and injunctive relief to stop ongoing harm and enforce compliance with D.C. borrower protections.

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to D.C. Code § 11-921.

2. Venue is proper under D.C. Code § 13-423 as all acts or omissions occurred in the District of Columbia or affect a resident thereof.

3. Plaintiff brings claims exclusively under District of Columbia statutory and common law. No federal causes of action are asserted.

4. Plaintiff expressly objects to removal to federal court pursuant to 28 U.S.C. § 1441. Jurisdiction is proper in the Superior Court because the claims arise under local law and relate to

1 | state-regulated entities and conduct.

2
3 | 5. The Superior Court of D.C. has broad jurisdiction to hear consumer protection and contract fraud claims arising within the District. See District of Columbia v. Graham, 824 A.2d 484, 488 (D.C. 2003).

4

## PARTIES

5
6 | 6. Plaintiff is a natural person and legal resident of the District of Columbia.

7
8 | 7. Defendant Maximus Federal Services, Inc., doing business as Aidvantage, is a federal loan servicer operating within the District.

9 | 8. Defendant Sam Tandy is an employee or agent of Maximus/Aidvantage and acted within the scope of employment.

10
11 | 9. Defendant Dominic Martin is an employee or agent of Maximus/Aidvantage and acted within the scope of employment.

12

## STATEMENT OF FACTS

13
14 | 11. On March 7, 2023, Plaintiff submitted a Borrower's Defense to Repayment (BDR) application to the U.S. Department of Education. By law, the Department must respond by
15 | March 6, 2026. The loan remains in forbearance pending that decision. See D.C. Student Loan Borrower Bill of Rights Amendment Act of 2024, D.C. Law 25-219; Fraternal Order of Police,
16 | D.C. Lodge No. 1 v. D.C., 238 A.3d 1187, 1195 (D.C. 2020).

17
18 | 12. Plaintiff objects to any repayment agreements based on the forged, unauthorized, and misrepresented nature of the underlying loan documents, including a William D. Ford Direct
19 | Loan Application submitted without consent on October 8, 2013. The D.C. courts have recognized that contracts procured by forgery or fraud are void and unenforceable. Cooper v.
20 | City of Georgetown, 137 A.3d 1140, 1146 (D.C. 2016).

21 | 13. The loan application contains five forged pages submitted by DMD Financial Services, Inc., including signatures not authored or approved by Plaintiff. These forged documents were created
22 | while Plaintiff was recovering from an arm injury sustained on July 28, 2011; precluding consent
23 | or authorization. Stern v. Smith, 703 A.2d 145, 151 (D.C. 1997) (recognizing constructive fraud by breach of duty).

24
25 | 14. Neither DMD Financial nor Saint Augustine's University submitted the required Program Participation Agreement or Third-Party Servicer Data Form in 2013, violating Title IV loan
26 | origination protocols and the local licensing mandates enacted under D.C. Code § 31–1134.01 et seq. The District maintains authority to regulate and protect borrowers from unlicensed servicers.
27 | Fraternal Order of Police, 238 A.3d at 1195.

28 | 15. Plaintiff provided hospital medical records and a handwriting analysis comparing 20

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF - 2

authentic signatures against the five forged ones in the loan application package. Courts recognize handwriting analysis as valid evidence in fraud claims. District of Columbia v. Perkins, 987 A.2d 461, 465 (D.C. 2010).

16. Despite Plaintiff's submission of these documents, Aidvantage and its agents recklessly denied the claims and failed to correct the record, in violation of the District's Consumer Protection Procedures Act. Grayson v. AT\&T, 15 A.3d 219 (D.C. 2011).

17. Sam Tandy repeatedly denied Plaintiff's requests for records from April through July 2025, falsely stating no such documents existed, obstructing Plaintiff's rights under the D.C. Consumer Protection Procedures Act. Tommy Chew v. Wells Fargo Bank, 929 A.2d 1063, 1068 (D.C. 2007).

18. Dominic Martin failed to provide a document dated September 18, 2018 during October 2024. Plaintiff independently retrieved this document, exposing Mr. Martin's false statements and obstructive conduct. District of Columbia v. Jefferson, 765 A.2d 1133, 1136 (D.C. 2001) (document tampering actionable).

19. Aidvantage altered documents by manipulating contrast on the Income-Driven Repayment (IDR) page, making terms unreadable, and inserted additional pages into the loan file not included in prior servicing packages from Navient as of January 19, 2019. Such tampering constitutes fraud warranting relief. Wright v. United States, 672 A.2d 1079, 1085 (D.C. 1996).

20. Navient failed to provide an authorization letter containing a forged date of birth, anonymous signature, and a handwritten "i" with a circle above it, indicating falsification by a third party. This conduct voids any consent or authorization allegedly granted. Cooper, 137 A.3d at 1146.

21. Plaintiff maintains contemporaneous documentation, including notes from former counsel Jane Cowles, chronicling misconduct by Aidvantage, Navient, Nelnet, Federal Student Aid, and the Department of Education from 2021 through 2022. Harris v. District of Columbia Water & Sewer Auth., 791 A.2d 65, 69 (D.C. 2002) (documentary evidence supports claims of intentional misconduct).

## CAUSES OF ACTION

Count I – Violation of the D.C. Student Loan Borrower Bill of Rights Act (D.C. Law 25-219, D.C. Code § 31–1134.01 et seq.)

22\. Defendants misrepresented loan terms, failed to provide required documents, and obstructed Plaintiff's ability to make informed repayment decisions, violating the Act's protections.

23\. Plaintiff seeks damages and equitable relief under this Act. The D.C. courts affirm the District's authority to regulate student loan servicers to protect consumers. Fraternal Order of Police, 238 A.3d at 1195.

Count II – Violation of the D.C. Consumer Protection Procedures Act (D.C. Code § 28-3901 et

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF - 3

seq.)

24\. Defendants engaged in unfair and deceptive trade practices, including misrepresenting loan terms, providing false information, and concealing material facts.

25\. Plaintiff is entitled to damages, statutory penalties, and injunctive relief. The D.C. Court of Appeals recognizes the DCCPPA as providing robust consumer protections. Grayson v. AT\&T, 15 A.3d 219 (D.C. 2011).

Count III – Constructive Fraud and Forgery (Common Law)

26\. Defendants used forged signatures and false documents to create and enforce a loan agreement to which Plaintiff never consented.

27\. Plaintiff suffered damages as a direct result.

28\. Constructive fraud and forgery void contracts under D.C. law. Stern v. Smith, 703 A.2d 145, 151 (D.C. 1997); Cooper, 137 A.3d at 1146.

Count IV – Negligence and Gross Negligence

29\. Defendants owed Plaintiff a duty to act with due care in servicing the loan and handling documents.

30\. Their conduct represents a gross departure from reasonable standards, causing Plaintiff harm.

31\. See Kaufman v. Washington Metro. Area Transit Auth., 836 A.2d 734, 739 (D.C. 2003); District of Columbia v. Mitchell, 571 A.2d 793, 796 (D.C. 1990).

Count V – Intentional Infliction of Emotional Distress

32\. Defendants' repeated misconduct caused severe emotional distress to Plaintiff.

33\. Their actions were intentional or reckless, extreme, and outrageous.

34\. Plaintiff seeks damages for emotional harm.

35\. See Harris v. District of Columbia Water & Sewer Auth., 791 A.2d 65, 69 (D.C. 2002); Fialkowski v. Greenwich Hosp. Ass'n, 72 A.3d 857, 865 (D.C. 2013).

Count VI – Obstruction and Tampering with Records

36\. Defendants intentionally altered, obscured, or inserted false documents into Plaintiff's loan records, obstructing Plaintiff's rights and due process.

37\. This conduct constitutes actionable fraud and violates borrower protections under District

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF - 4

1 | law.

2 | 38\. See Wright v. United States, 672 A.2d 1079, 1085 (D.C. 1996); District of Columbia v.
3 | Jefferson, 765 A
   | .2d 1133, 1136 (D.C. 2001).
4 |

5 | ### PRAYER FOR RELIEF

6 | WHEREFORE, Plaintiff respectfully requests the Court:

7 | A. Declare the loan agreements forged, fraudulent, and unenforceable;
   | B. Award compensatory damages exceeding \$50,000, plus costs and attorney's fees;
8 | C. Award statutory penalties and restitution under D.C. Consumer Protection Procedures Act;
9 | D. Enjoin Defendants from further collection, reporting, or servicing related to the fraudulent
   | loan;
10 | E. Order Defendants to produce all original loan documents and communications;
   | F. Grant any other relief the Court deems just and proper.
11 | G. Issue a permanent injunction barring Defendant Maximus Federal Services, Inc. d/b/a
12 | Aidvantage, and its agents, employees, and affiliates, including Sam Tandy and Dominic Martin,
   | from servicing, collecting, or managing any student loans for residents of the District of
13 | Columbia, based on their repeated violations of District law, fraudulent conduct, and harmful
14 | practices;
   | H. Order the District of Columbia licensing authorities to revoke or suspend any licenses or
15 | registrations held by Defendant DMD Financial Services, Inc. and any other involved entities for
   | failure to comply with Title IV requirements and the D.C. Student Loan Borrower Bill of Rights;
16 | I. Require Defendants to provide a full accounting and submit to an independent audit overseen
   | by the Court or the District of Columbia Attorney General to ensure full compliance with District
17 | laws and protect borrowers moving forward.

18 | DEMAND FOR JURY TRIAL
19 |

20 | Plaintiff demands a trial by jury on all issues so triable under 7th Amendment.

21 | Honorably submitted,

22 | *Jason C. Long*
   | Jason Christopher Long
   | Pro Per
23 | 5112 MacArthur Boulevard N.W., Unit 4
24 | Washington, District of Columbia (20016)
   | "Without Prejudice"
25 | DC Code 28:1-308
   | ALL RIGHTS ARE RESERVED.
26 | July 25, 2025

27 |

28 |

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF - 5

Exhibit 1:

November 5, 2021
Jason Christopher Long
DOB August 4, 1984
SS# ████
1319 Fairmont Street NW
Apt 1
Washington DC 20009
Navient
Fax No 866 266 0178 Attn: Forms

Call with Client @4pm
Mr. Long received no disclosures regarding rate, payment terms
Mr. Long did not receive all the details about the loan until 2009
VSac - Nelnet - Sallie Mae - Naviet
Mr. Long has call at 4:30 with Naviet to authorize Navient to get documents to me

November 6, 2021
Account No. ████████
Case No. 01661222

November 8, 2021
If underlying loans are valid Mr. Long is still responsible for the underlying loan and interest.
Deferment - if subsidized Dept of Education takes care of interest
Forbearance - payment delayed but interest accrues
Determine correct balance prior to consolidation
Consolidation December 6, 2013

December 6, 2013 balance at consolidation $21,981.26 subsidized $41,960.87 unsubsidized

Current balance as of November 8, 2021 $82,744.46

Contact Nelnet (888) 486 4722

Navient ████████

Nelnet
jclong8484
████████

November 9, 2021
Discussions with client to log into accounts to get loan history

FSA call @145

November 10, 2021
Omnibudsman Call @930
Tom
Reopen case and having file reviewed

Certification link https://www2.ed.gov/policy/gen/leg/foia/certification-of-identity-and-consent.pdf

November 12, 2021 @10:55
Matthew Navient
What is the balance is before consolidation?
Declining Balance History

Income driven program - loan forgiveness after 25 years
Work public service

studentaid.gov loan forgivenes programs. Told client to look into this https://studentaid.gov/borrower-defense/

Nelnet @11:30
Cannot speak without borrower on the phone

November 19, 2021
Records from Navient
Loan History

October 22, 2013
Direct Loan Consolidation Application
          $10,271.63
          $50,000.00
TOTAL     $60,271.63

December 6, 2013
     $22,286.61
     $42,302.82
TOTAL $64,020.23 increased amount was interest

LOAN PRINCIPAL INCREASES
 6/30/2014 $1,177.54
8/11/2015. $1,300.56

INTEREST

8/11/2015. $1,923.94
7/18/2017  $4,527.33
7/17/2018. $2,666.86
8/16/2019  $4,220.87

INCREASES $15,817.10


Left voicemail on November 18, 2021
Cassie Seaman 866-432-7939 x889190
Emailed advocate@navient.com

Steven from Navient called Jason @2:23 on November 18, 2021


November 22, 2021
Erika - case was escalated to review
Speaking with Cassie Seaman and Jason
Student Loan Defense Application

Navient confirmed that Jason made a valid point to show fraud. Department of Education
denied claim. The omnibus man has to escalate the case to review file.

Case No ⬛⬛⬛⬛⬛⬛

844 651 0077

Omnibus - Tyler @2:10pm
SS# ⬛⬛⬛⬛
08/04/1984
1319 Fairmont Street NW
Apt 1
Washington DC 20009
Dispute Case No ⬛⬛⬛⬛⬛

Submitted for reopen on November 10th - refer to DC location and reviewed once a month

December 3, 2021
Casandra
Direct Lending processed consolidation paperwork
10/8/2013 Consolidation completed
Page of repayment plan selection mission - resubmitted 10/31/2013

Information regarding Brenda Stokes signature (Brenda Stokes is from Saint Augustine to verify loan information)

December 9, 2021
Documents
~~Northern Valley~~

January 5, 2021 @10:45
William at the Department of Education
Student aid.Gov Help Center (844) 651 0077

Borrower's Defense
855 279 6207

January 28, 2022 @11am
Navient transferred Aviant
Cassie
Borrower's Defense is the right strategy
Sending letter regarding fraud

March 9, 2022
Discussions with client

March 10, 2022
Request to St Augustine for records

https://studentaid.gov/help-center/answers/article/what-is-borrower-defense

Did you receive disclosures? https://consumercomplianceoutlook.org/2010/second-quarter/regulation-z-private-education-loans/

Is the loan subsidized or unsubsidized

https://www.law.cornell.edu/cfr/text/34/682.205

Check identity? Law

Notification of servicer

https://studentaid.gov/articles/your-loan-was-transferred-whats-next/

Verify identity and personal data

https://fsapartners.ed.gov/knowledge-center/fsa-handbook/2021-2022/application-and-verification-guide/ch4-verification-updates-and-corrections

March 23, 2022
Follow up request to Saint Augustine for records
US Mail


April 6, 2022
Hannah @11am
Navient

Mike @ 11:11am
Transfered Advantage on December 2021
800 722 1300

Advantage
Donna Mitchell
Identify Theft Affidavit
Mail to Fairmont
Discharge Application and Forgery form
Reinstate Cares Act on Advantage website or by calling Advantage
Spoke with client regarding forms



Office of the Customer Advocate
P.O. Box 300003
Greenville, TX 75403-3003
Phone: 866-432-7939
Fax: 570-821-4550
Advocate@Aidvantage.studentaid.gov


Mr. Jason Long
jclong2010@yahoo.com

---

**Account Number:** 9646961359                                                July 24, 2025

Jason,

We received your complaint about your federal student loans owned by U.S. Department of Education (ED).  We are here to assist you in any way we can, and we hope the following information is useful.

We understand you are requesting any Loan Discharge Denials and Deferment Denials from the year 2013 through 2019.

We have confirmed that we responded to your concerns through multiple Freedom of Information Act cases. We provided you a copy of our response to these cases on May 12, 2025, via email. If you have not received this information, please contact our office at 866-432-7939 and we will send the documentation via the United States Postal Service.

If you disagree with our results or believe they are wrong, you can contact the Federal Student Aid (FSA) Ombudsman Group of the United States Department of Education. The Ombudsman Group is an impartial, informal, and confidential resource for resolving concerns regarding federal student aid.

You can file a complaint online at https://studentaid.gov/feedback-center/. If you have previously filed a complaint, you can log in, update your case, and request that it be escalated to the Ombudsman Group.

You're welcome to call us at directly at 866-432-7939, with any additional questions you may have about this issue.

Sincerely,

Sam
Office of the Customer Advocate
Aidvantage – Official Servicer of Federal Student Aid


**Important disclosure(s)**

*Avoiding scams*
You **never** have to pay a fee for help with your federal student aid. If you have questions or concerns about your loan payments, you can contact Aidvantage for free help through Aidvantage.studentaid.gov. You might be contacted by a company via phone, email, or postal mail saying they will help you get loan discharge, forgiveness, cancellation, or debt relief for a fee. Make sure you work **only** with the U.S. Department of Education's loan servicers, like Aidvantage and **never** reveal your personal information or account password to anyone. Learn to avoid student aid scams at studentaid.gov/resources/scams. Our emails to borrowers come from customerservice@aidvantage.studentaid.gov. You can report scam attempts to the Federal Trade Commission by calling 1-877-382-4357 or by visiting reportfraud.ftc.gov.



Office of the Customer Advocate
P.O. Box 300003
Greenville, TX 75403-3003
Phone: 866-432-7939
Fax: 570-821-4550
Advocate@Aidvantage.studentaid.gov

Mr. Jason Long
JCLong2010@yahoo.com

Account Number: 9646961359                                                    May 7, 2025

Jason,

We received your inquiry about your federal student loans, Freedom of Information Act case #25-00332-PA, #25-00339-PA, #25-00340-PA, #25-00342-PA, #25-00344-PA, and #25-00348-PA We are here to assist you in any way we can, and we hope the following information is useful.,

Aidvantage services your Direct Consolidation loan disbursed December 6, 2013. We included all corresponding documents you requested and your complete transaction history of your account.

We are unable to fulfill your requests for documents for the underlying loans of your Direct Consolidation including but not limited to the Master Promissory notes for loans serviced by Nelnet.

As for the documents requested from Jane or John Doe Loan Analyst for the Department of Education Office of Federal Student Aid who made statement on November 22nd, 2019, you should be able to see this via the online portal in which the Inquiry was submitted. And for Jane or John Doe who made a statement to the Consumer Financial Protection Bureau (CFPB) in 2017 you will be able to find on CFPB.Gov.

We're unable to provide call recordings or transcripts to customers or third parties except as required by law. However, we will accommodate you through other means by providing transaction histories, narrative chronologies, or copies of documents you have signed.

If you disagree with our results or believe they are wrong, you can contact the Federal Student Aid (FSA) Ombudsman Group of the United States Department of Education. The Ombudsman Group is an impartial, informal, and confidential resource for resolving concerns regarding federal student aid. You can file a complaint online at https://studentaid.gov/feedback-center/. If you have previously filed a complaint, you can log in, update your case, and request that it be escalated to the Ombudsman Group.

You're welcome to call us at directly at 866-432-7939, with any additional questions you may have about this issue.

Sincerely,

Sam Tandy
Office of the Customer Advocate
Aidvantage – Official Servicer of Federal Student Aid

**Important disclosure(s)**

*Avoiding scams*

J. Long
May 7, 2025
Page 2

You **never** have to pay a fee for help with your federal student aid. If you have questions or concerns about your loan payments, you can contact Aidvantage for free help through Aidvantage.studentaid.gov. You might be contacted by a company via phone, email, or postal mail saying they will help you get loan discharge, forgiveness, cancellation, or debt relief for a fee. Make sure you work **only** with the U.S. Department of Education's loan servicers, like Aidvantage and **never** reveal your personal information or account password to anyone. Learn to avoid student aid scams at studentaid.gov/resources/scams. Our emails to borrowers come from customerservice@aidvantage.studentaid.gov. You can report scam attempts to the Federal Trade Commission by calling **1-877-382-4357** or by visiting reportfraud.ftc.gov.

LTR319



**aidVantage** | Office for Servicing of Federal Student Aid

Office of the Customer Advocate
P.O. Box 300003
Greenville, TX 75403-3003
Phone: 866-432-7939
Fax: 570-821-4550
Advocate@Aidvantage.studentaid.gov

Mr. Jason Long
jclong2010@yahoo.com

**Account Number: 9646961359**                                    October 7, 2024

Jason,

We received your inquiry about your federal student loans, U.S. Department of Education (ED) Federal Student Aid case #22027248. We are here to assist you in any way we can, and we hope the following information is useful.

We understand that you are requesting assistance in accessing a letter sent to you in response to your prior Federal Student Aid case #01263805.

Firstly, we would like to thank you for taking the time to speak with us regarding your concerns. Following our conversation, we attempted to either locate the necessary password to access this document in question, or a copy of the original document itself.

Unfortunately, we were unable to locate either of these pieces of information from either Navient or ED. We do recommend contacting ED directly as we were not the original organization to which this prior case was assigned. They may be able to provide further assistance in retrieving this document.

If you disagree with our results or believe they are wrong, you can contact the Federal Student Aid (FSA) Ombudsman Group of the United States Department of Education. The Ombudsman Group is an impartial, informal, and confidential resource for resolving concerns regarding federal student aid.

You can file a complaint online at https://studentaid.gov/feedback-center/. If you have previously filed a complaint, you can log in, update your case, and request that it be escalated to the Ombudsman Group.

You're welcome to call me directly at 866-432-7939, x1122, with any additional questions you may have about this issue.

Sincerely,

Dominic Martin
Office of the Customer Advocate
Aidvantage – Official Servicer of Federal Student Aid

LTR318

**Important disclosure(s)**

*Avoiding scams*
You never have to pay a fee for help with your federal student aid. If you have questions or concerns about your loan payments, you can contact Aidvantage for free help through Aidvantage.studentaid.gov. You might be contacted by a company via phone, email, or postal mail saying they will help you get loan discharge, forgiveness, cancellation, or debt relief for a fee. Make sure you work only with the U.S. Department of Education's loan servicers, like Aidvantage and never reveal your personal information or account password to anyone. Learn to avoid student aid scams at studentaid.gov/resources/scams. Our emails to borrowers come from customerservice@aidvantage.studentaid.gov. You can report scam attempts to the Federal Trade Commission by calling 1-877-382-4357 or by visiting reportfraud.ftc.gov.

LTR318

Exhibit 2



**United States Department of Education**

Office of the Deputy Secretary

FOIA Service Center

December 2, 2024

Jason Long
5112 MacArthur BLVD, Northwest
Washington, DC 20016

RE: FOIA Request No. 24-00441-PA

Dear Jason Long:

This letter is a final response to your request for information pursuant to the Freedom of
Information Act (FOIA), 5 U.S.C. § 552, dated August 1, 2024, and received in the U.S.
Department of Education's (Department) FOIA Service Center on August 2, 2024. You
requested the following:

" A Master Promissory Note has been filed without consent. Pursuant to the Freedom of
Information Act (FOIA), 5 U.S.C. § 552, I am requesting a copy of the document in which Jason
Christopher Long provided consent to DMD Financial Services Inc., Saint Augustine's University,
and Jane Cowles to obtain personal information and to complete and submit any documents on his
behalf.

Please provide the complete and unredacted version of this document."

Your request was forwarded to the Federal Student Aid office. After a thorough search, no
responsive records were located.

DMD Financial Services Inc. is not a Department of Education servicer. We suggest that
you contact DMD Financial Services Inc. directly for assistance.

<u>Fees</u>

There are no fees associated with processing this request. Therefore, any fee waiver request
submitted for this FOIA request is not applicable.

<u>Additional Assistance</u>

You have the right to seek assistance and/or dispute resolution services from the
Department's FOIA Public Liaison or the Office of Government Information Services
(OGIS). The FOIA Public Liaison is responsible, among other duties, for assisting in the
resolution of FOIA disputes. OGIS, which is outside the Department, offers ombuds
services, including dispute resolution, to assist FOIA requesters and Federal agencies as a

non-exclusive alternative to litigation. Please note, OGIS's assistance does not replace the administrative appeal process described below. You may contact the FOIA Public Liaison or OGIS at:

FOIA Public Liaison
Office of the Deputy Secretary
U.S. Department of Education
400 Maryland Ave., SW, LBJ 7W104
Washington, DC 20202-4500
Email: robert.wehausen@ed.gov
Phone: 202-205-0733
Fax: 202-401-0920

Office of Government Information Services
National Archives and Records Administration
8601 Adelphi Road, OGIS
College Park, MD 20740-6001
Email: OGIS@nara.gov
Phone: 202-741-5770 or 1-877-684-6448

You have the right to appeal this decision, as well as decisions in any previous interim releases, with the Department by submitting an appeal to the address below, no later than 90 calendar days from the date of this letter. Using the FOIA Public Liaison or OGIS services described above does not affect your right or the deadline to file an appeal. Your appeal must be in writing and must include a detailed statement of all legal and factual bases for the appeal. It should be accompanied by this letter, a copy of your initial letter of request, and any documentation that supports the argument you wish the Department to consider in making an administrative determination on your appeal. You may submit your appeal by:

Mail: Appeals Office
Office of the Deputy Secretary
U.S. Department of Education
400 Maryland Avenue, SW, LBJ 7W104
Washington, DC 20202-4536

Online Form: www.ed.gov/policy/gen/leg/foia/foia-appeal-form.pdf

E-mail: EDFOIAappeals@ed.gov

Fax: 202-401-0920

Sincerely,

Elise Cook

Elise Cook
Government Information Specialist
Office of the Deputy Secretary



**United States Department of Education**

Office of the Deputy Secretary

FOIA Service Center

April 8, 2025

Jason Christopher Long
5112 MacArthur BLVD, Northwest
Washington, DC 20016

RE: FOIA Request No. 25-03126-F

Dear Jason Christopher Long:

This letter is a final response to your request for information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, dated March 31, 2025, and received in the U.S. Department of Education's (Department) FOIA Service Center on April 1, 2025. You requested the following:

" I want a copy of DMD Financial Services, Inc's certified PCA (Private Collection Agency)documents to prove their corporation was administered in the title IV program before October 8, 2013."

Your request was forwarded to Federal Student Aid. After a thorough search, no responsive records were located. DMD Financial Services is/was not a Private Collection Agency (PCA). The PCA contracts are located here: https://studentaid.gov/data-center/business-info/contracts/collection-agency.

<u>Fees</u>

There are no fees associated with processing this request.

<u>Additional Assistance</u>

You have the right to seek assistance and/or dispute resolution services from the Department's FOIA Public Liaison or the Office of Government Information Services (OGIS). The FOIA Public Liaison is responsible, among other duties, for assisting in the resolution of FOIA disputes. OGIS, which is outside the Department, offers ombuds services, including dispute resolution, to assist FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Please note, OGIS's assistance does not replace the administrative appeal process described below. You may contact the FOIA Public Liaison or OGIS at:

    FOIA Public Liaison
    Office of the Deputy Secretary

U.S. Department of Education
400 Maryland Ave., SW, LBJ 7W104
Washington, DC 20202-4500
Email: robert.wehausen@ed.gov
Phone: 202-205-0733
Fax: 202-401-0920

Office of Government Information Services
National Archives and Records Administration
8601 Adelphi Road, OGIS
College Park, MD  20740-6001
Email: OGIS@nara.gov
Phone: 202-741-5770 or 1-877-684-6448

You have the right to appeal this decision, as well as decisions in any previous interim releases, with the Department by submitting an appeal to the address below, no later than 90 calendar days from the date of this letter. Using the FOIA Public Liaison or OGIS services described above does not affect your right or the deadline to file an appeal. Your appeal must be in writing and must include a detailed statement of all legal and factual bases for the appeal. It should be accompanied by this letter, a copy of your initial letter of request, and any documentation that supports the argument you wish the Department to consider in making an administrative determination on your appeal. You may submit your appeal by:

    Mail: Appeals Office
          Office of the Deputy Secretary
          U.S. Department of Education
          400 Maryland Avenue, SW, LBJ 7W104
          Washington, DC 20202-4536

    Online Form: www.ed.gov/policy/gen/leg/foia/foia-appeal-form.pdf

    E-mail: EDFOIAappeals@ed.gov

    Fax: 202-401-0920

                              Sincerely,

                              *Sandra Lewandowski*
                              Government Information Specialist
                              Office of the Deputy Secretary

2



**United States Department of Education**

Office of the Deputy Secretary

FOIA Service Center

April 8, 2025

Jason Christopher Long
5112 MacArthur BLVD, Northwest
Washington, DC 20016

RE: FOIA Request No. 25-02838-F

Dear Jason Christopher Long:

This letter is a final response to your request for information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, dated March 12, 2025, and received in the U.S. Department of Education's (Department) FOIA Service Center on March 13, 2025. You requested the following:

" I am requesting Department of Education to send me a copy of Destroy Instrument Affidavit in regards to all of the MPN that were submitted by my alma mater Saint Augustine's University and company from the years 2004 to 2025."

Your request was forwarded to Federal Student Aid. After a thorough search, no responsive records were located.

<u>Fees</u>

There are no fees associated with processing this request.

<u>Additional Assistance</u>

You have the right to seek assistance and/or dispute resolution services from the Department's FOIA Public Liaison or the Office of Government Information Services (OGIS). The FOIA Public Liaison is responsible, among other duties, for assisting in the resolution of FOIA disputes. OGIS, which is outside the Department, offers ombuds services, including dispute resolution, to assist FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Please note, OGIS's assistance does not replace the administrative appeal process described below. You may contact the FOIA Public Liaison or OGIS at:

     FOIA Public Liaison
     Office of the Deputy Secretary
     U.S. Department of Education
     400 Maryland Ave., SW, LBJ 7W104

Washington, DC 20202-4500
Email: robert.wehausen@ed.gov
Phone: 202-205-0733
Fax: 202-401-0920

Office of Government Information Services
National Archives and Records Administration
8601 Adelphi Road, OGIS
College Park, MD 20740-6001
Email: OGIS@nara.gov
Phone: 202-741-5770 or 1-877-684-6448

You have the right to appeal this decision, as well as decisions in any previous interim releases, with the Department by submitting an appeal to the address below, no later than 90 calendar days from the date of this letter. Using the FOIA Public Liaison or OGIS services described above does not affect your right or the deadline to file an appeal. Your appeal must be in writing and must include a detailed statement of all legal and factual bases for the appeal. It should be accompanied by this letter, a copy of your initial letter of request, and any documentation that supports the argument you wish the Department to consider in making an administrative determination on your appeal. You may submit your appeal by:

Mail: Appeals Office
        Office of the Deputy Secretary
        U.S. Department of Education
        400 Maryland Avenue, SW, LBJ 7W104
        Washington, DC 20202-4536

Online Form: www.ed.gov/policy/gen/leg/foia/foia-appeal-form.pdf

E-mail: EDFOIAappeals@ed.gov

Fax: 202-401-0920

Sincerely,

*Sandra Lewandowski*
Government Information Specialist
Office of the Deputy Secretary

2



**United States Department of Education**

Office of the Deputy Secretary

FOIA Service Center

May 6, 2025

Jason Christopher Long
5112 MacArthur BLVD, Northwest
Washington, DC 20016

RE: FOIA Request No. 25-03111-F

Dear Jason Christopher Long:

This letter is a final response to your request for information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, dated March 29, 2025, and received in the U.S. Department of Education's (Department) FOIA Service Center on April 1, 2025. You requested the following:

" I want to get records of DMD Financial Services, Inc., being either sworn in or administrated. By The Department of Education's aforementioned Secretary prior to 2013 loan consolidation. From the Higher Education Act itself, no debt collection can be involved with the Act because they do not provide educational products or services."

On March 31, 2025, you updated your request to the following:

"Certified True Copy
• Perkins Assignment Form
• Institutional Certification (OMB 1845-0048)
• Borrower and Loan Information (OMB 1845-0048)
• Original Promissory Note or Perkins Master Promissory Note (MPN)
• Repayment History
• Judgment Information (If applicable)
•copy of notification letter sent by the school to the judgment debtor
• Bankruptcy Information (If applicable)
•Bundled Loans:"

On April 3, 2025, you updated your request to the following:

"I would like to submit a FOIA request for records pertaining to DMD Financial Services, Inc. Specifically, I am seeking any documentation that shows the company being either sworn in or administered by the Secretary of the Department of Education prior to the 2013 loan consolidation.

Additionally, I would like to reference the Higher Education Act, which stipulates that debt collection agencies, such as DMD Financial Services, Inc., are not authorized to be involved in educational loan matters because they do not provide educational products or services."

Your request was forwarded to Federal Student Aid. The Department has identified 1 page, being released in full. After a thorough search, no other responsive records were located.

The pages are available for download via the Public Access Link (PAL). You can access your PAL account, or register for a PAL account, at this link:
https://foiaxpress.pal.ed.gov/app/PalLogin.aspx

<u>Fees</u>

There are no fees associated with processing this request.

<u>Additional Assistance</u>

You have the right to seek assistance and/or dispute resolution services from the Department's FOIA Public Liaison or the Office of Government Information Services (OGIS). The FOIA Public Liaison is responsible, among other duties, for assisting in the resolution of FOIA disputes. OGIS, which is outside the Department, offers ombuds services, including dispute resolution, to assist FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Please note, OGIS's assistance does not replace the administrative appeal process described below. You may contact the FOIA Public Liaison or OGIS at:

> FOIA Public Liaison
> Office of the Deputy Secretary
> U.S. Department of Education
> 400 Maryland Ave., SW, LBJ 7W104
> Washington, DC 20202-4500
> Email: robert.wehausen@ed.gov
> Phone: 202-205-0733
> Fax: 202-401-0920

> Office of Government Information Services
> National Archives and Records Administration
> 8601 Adelphi Road, OGIS
> College Park, MD 20740-6001
> Email: OGIS@nara.gov
> Phone: 202-741-5770 or 1-877-684-6448

You have the right to appeal this decision, as well as decisions in any previous interim releases, with the Department by submitting an appeal to the address below, no later than 90

calendar days from the date of this letter. Using the FOIA Public Liaison or OGIS services described above does not affect your right or the deadline to file an appeal. Your appeal must be in writing and must include a detailed statement of all legal and factual bases for the appeal. It should be accompanied by this letter, a copy of your initial letter of request, and any documentation that supports the argument you wish the Department to consider in making an administrative determination on your appeal. You may submit your appeal by:

    Mail: Appeals Office
        Office of the Deputy Secretary
        U.S. Department of Education
        400 Maryland Avenue, SW, LBJ 7W104
        Washington, DC 20202-4536

    Online Form: www.ed.gov/policy/gen/leg/foia/foia-appeal-form.pdf

    Email: EDFOIAappeals@ed.gov

    Fax: 202-401-0920

                    Sincerely,

                    *Sandra Lewandowski*
                    Government Information Specialist
                    Office of the Deputy Secretary



**United States Department of Education**

Office of the Deputy Secretary

FOIA Service Center

May 29, 2025

Jason Christopher Long
5112 MacArthur BLVD, Northwest
Washington, DC  20016

RE: FOIA Request No. 25-03368-F

Dear Jason Christopher Long:

This letter is a final response to your request for information pursuant to the Freedom of
Information Act (FOIA), 5 U.S.C. § 552, dated April 16, 2025, and received in the U.S.
Department of Education's (Department) FOIA Service Center on April 17, 2025. You
requested the following:

"I am writing to request, under the Freedom of Information Act (FOIA), a copy of the Title IV
Participation Application submitted by DMD Financial Services, Inc. I am seeking to confirm
whether DMD Financial Services, Inc. had the legal authority to submit William D. Ford Federal
Direct Loan Program documents to the U.S. Department of Education and to determine the
timeframe during which they were officially administered as a third-party servicer within the
program."

On April 25, 2025, you updated your request to the following:

"I am requesting documents that shows DMD Financial Services, Inc Title IV Participation
Application to verify their status in regards to October 8, 2013 incident."

On April 25, 2025, you updated your request to the following:

"DMD Financial Services, Inc sent loan consolidation application to Department of Education on
October 8, 2013 and I want to make sure they completed a title IV participation application and
was administered by ED Secretary prior to the loan consolidation application."

On April 26, 2025, you updated your request to the following:

"I am emailing you to correct the alleged years I attended. Aidvantage stated that my enrollment
started in fall 2003 to Spring 2009. I started spring of 2004."

Your request was forwarded to Federal Student Aid. After a thorough search, no responsive
records were located.

Fees

There are no fees associated with processing this request.

Additional Assistance

You have the right to seek assistance and/or dispute resolution services from the Department's FOIA Public Liaison or the Office of Government Information Services (OGIS). The FOIA Public Liaison is responsible, among other duties, for assisting in the resolution of FOIA disputes. OGIS, which is outside the Department, offers ombuds services, including dispute resolution, to assist FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Please note, OGIS's assistance does not replace the administrative appeal process described below. You may contact the FOIA Public Liaison or OGIS at:

> FOIA Public Liaison
> Office of the Deputy Secretary
> U.S. Department of Education
> 400 Maryland Ave., SW, LBJ 7W104
> Washington, DC 20202-4500
> Email: robert.wehausen@ed.gov
> Phone: 202-205-0733
> Fax: 202-401-0920

> Office of Government Information Services
> National Archives and Records Administration
> 8601 Adelphi Road, OGIS
> College Park, MD 20740-6001
> Email: OGIS@nara.gov
> Phone: 202-741-5770 or 1-877-684-6448

You have the right to appeal this decision, as well as decisions in any previous interim releases, with the Department by submitting an appeal to the address below, no later than 90 calendar days from the date of this letter. Using the FOIA Public Liaison or OGIS services described above does not affect your right or the deadline to file an appeal. Your appeal must be in writing and must include a detailed statement of all legal and factual bases for the appeal. It should be accompanied by this letter, a copy of your initial letter of request, and any documentation that supports the argument you wish the Department to consider in making an administrative determination on your appeal. You may submit your appeal by:

> Mail: Appeals Office
> Office of the Deputy Secretary
> U.S. Department of Education
> 400 Maryland Avenue, SW, LBJ 7W104
> Washington, DC 20202-4536

> Online Form: www.ed.gov/policy/gen/leg/foia/foia-appeal-form.pdf

E-mail: EDFOIAappeals@ed.gov
Fax: 202-401-0920

Sincerely,

*Sandra Lewandowski*
Government Information Specialist
Office of the Deputy Secretary

  

# Government of the District of Columbia
## Department of Insurance, Securities and Banking

Stephen C. Taylor
Commissioner

# District of Columbia
# Student Loan Borrower's Bill of Rights

Effective September 8, 2017, the District of Columbia Department of Insurance, Securities and Banking began licensing student loan servicers operating in the District of Columbia. Pursuant to the Student Loan Ombudsman Establishment and Servicing Regulation Amendment Act of 2016, (D.C. Code § 31-106.01.(c)(10)), DISB is issuing the District of Columbia Student Loan Borrower's Bill of Rights.

Student loan borrowers in the District of Columbia deserve a loan repayment process built on fairness, professionalism, and transparency. This bill of rights sets out the basic principles and protections that borrowers can rely on as they work to reduce their student debt. Beyond that, student loan servicers in the District are expected to uphold these key tenets with respect to all student loan borrowers and each student loan they service.

Every District student loan borrower has the right to:

## Article 1: Transparent Pricing and Terms

- *Transparent Rate* – Servicers must comply with the federal Truth-in-Lending Act and its implementing regulations. Disclose the Annual Percentage Rate (APR) as the all-in annualized price of the financing, and the annualized interest rate if one is used.
- *No Hidden Fees* – All upfront and scheduled charges must be disclosed.
- *Plain-English Terms* – All key terms should be described in an easy-to-understand manner, including the loan amount, total amount provided after deducting fees or charges, payment amount and frequency, total monthly payment amount if payment frequency is other than monthly, collateral requirements, and any prepayment charges.
- *Clear Comparison* – All pricing and other key terms should be presented clearly and prominently, in writing, to the borrower when the loan offer or repayment plan is summarized for the borrower.

## Article 2: Receive Non-Abusive Products

- *No Debt Traps* – If the borrower is unable to repay an existing loan, servicers should not extend new credit unless due diligence indicates that the borrower's situation has changed, enabling them to repay the new loan.

- *No "Double Dipping"* – Do not double-charge the borrower. When refinancing or modifying a loan with a fixed-fee as the primary financing charge, do not charge fees on the borrower's outstanding principal unless there is a tangible cost benefit to the borrower.
- *Appropriate Products* – Loan product design should match loan product use. If presenting a loan product as designed for one use, do not encourage borrowing behavior contrary to that use.

## Article 3: Fair and Responsible Underwriting

- *Believe in the Borrower* – Offer financing only with high confidence that the borrower can repay its entire debt burden without defaulting or re-borrowing. Repayment plans should be designed to maximize borrower ability to repay in a timely manner.
- *Alignment of Interests* – Servicers and lenders should not make loans that the borrower cannot truly afford, even if the lender or servicer can find a way to be repaid. Servicers should not generate unreasonable profits from late fees, and similar charges.
- *Right-sized Financing* – Size loans to meet the borrower's need, rather than to maximize the servicer's revenue. Seek to offer the borrower the size of loan that they need, rather than offering the largest amount they could qualify for.
- *Responsible Credit Reporting* – Report loan repayment information to major credit bureaus and consult credit data when underwriting a loan. Such reporting enables other lenders to responsibly underwrite the borrower and helps the borrower build a credit profile that may facilitate access to more affordable loans in the future. Servicers and lenders should inform the borrower and any guarantors if they intend to report loan repayment performance to guarantors' credit bureaus only in certain circumstances, such as after a default.

## Article 4: Fair Collection Practices

- *Fair Treatment* – Servicers should abide by the spirit of the Fair Debt Collection Practices Act and provide borrowers similar protections as described in that Act. All payments shall be applied to the borrower's account in accordance with the terms of applicable law or the contract governing servicing.
- *Responsible Oversight* – Diligently vet and oversee the collections practices of third-party collectors and debt buyers. Do not work with collectors or debt buyers who fail to treat borrowers fairly.
- *Accurate Information* – Servicers, lenders and debt collectors shall maintain and communicate accurate, current, and complete information about a borrower's loan.

## Article 5: Quality Customer Service

- *Responsive Complaint Management* – If a complaint is submitted, a confirmation of receipt should be provided in writing, within five days when possible. Every complaint should be researched and resolved in a timely manner.
- *Easy Accessibility* – Servicers should take proactive steps to inform borrowers of relevant organizational changes that could affect loan repayment or consumer interactions with

the servicer, including changes to the servicer's location or contact information, or the transfer of the borrower's account.

- *Non-Discrimination* – Borrowers shall not be discriminated against based on race, color, religion, national origin, sex, marital status, age, sexual orientation or identity, or any other protected classification.

Should you have any questions regarding this Bill of Rights or want to file a complaint against a servicer, please contact the District of Columbia's Student Loan Ombudsman by calling 202-727-8000.

## AN ACT

### D.C. ACT 25-558

### IN THE COUNCIL OF THE DISTRICT OF COLUMBIA

### OCTOBER 7, 2024

To amend the Department of Insurance and Securities Regulation Establishment Act of 1996 to prevent abusive acts or practices related to student education loans and private education loans, require the creation of a revised Student Loan Borrower Bill of Rights by January 1, 2025, clarify that student loan servicers under contract with the United States Department of Education shall be automatically issued a limited student loan servicing license upon meeting certain criteria, clarify the rights and obligations regarding denials of applications for approval, prescribe prohibited conduct on the part of student loan servicers and private education lenders, assign duties to student loan servicers and private education lenders, establish responsibilities of private education lenders regarding disability discharge and cosigner release, authorize the Attorney General to bring an action for a violation of certain provisions, and make a conforming amendment.

BE IT ENACTED BY THE COUNCIL OF THE DISTRICT OF COLUMBIA, That this act may be cited as the "New Student Loan Borrower Bill of Rights Amendment Act of 2024".

Sec. 2. The Department of Insurance and Securities Regulation Establishment Act of 1996, effective May 21, 1997 (D.C. Law 11-268; D.C. Official Code § 31-101 *et seq.*), is amended as follows:

(a) Section 2 (D.C. Official Code § 31-101) is amended as follows:

(1) Paragraph (1) is redesignated as paragraph (1A).

(2) A new paragraph (1) is added to read as follows:

"(1) "Abusive act or practice" means an act or practice that:

"(A) Materially interferes with the ability of a student loan borrower to understand a term or condition of a student education loan or private education loan;

"(B) Takes unreasonable advantage of:

"(i) A lack of understanding on the part of a student loan borrower of the material risks, costs, or conditions of a student education loan or private education loan;

"(ii) The inability of a student loan borrower to protect the interests of the student loan borrower when selecting or using:

"(I) A student education loan or private education loan; or

1

ENROLLED ORIGINAL

"(II) A feature, term, or condition of a student education loan or private education loan; or

"(iii) The reasonable reliance by the student loan borrower on a person engaged in servicing a student education loan or private education loan to act in the interests of the borrower; or

"(C) Misrepresents the amount, nature, or terms of any fee or payment due or claimed to be due on a student education loan or private education loan, the terms and conditions of the student education loan agreement or private education loan agreement or the student loan borrower's obligations under the student education loan or private education loan.".

(2) A new paragraph (2A) is added to read as follows:

"(2A)(A) "Cosigner" means an individual who is liable for the obligation of a student loan borrower without compensation, regardless of how the individual is designated in the contract or instrument with respect to that obligation, including an obligation under a private education loan extended to consolidate a student-loan borrower's pre-existing student loans.

"(B) The term includes an individual whose signature is requested as a condition to grant credit or to forbear on collection, but does not include a spouse of a student loan borrower, the signature of whom is needed to perfect the security interest in a loan.".

(3) New paragraphs (6C), (6D), (6E), (6F), and (6G) are added to read as follows:

"(6C) "Overpayment" means a payment on a student education loan or private education loan in excess of the monthly amount due from the student loan borrower on a student education loan or private education loan.

"(6D) "Partial payment" means a payment on a student education loan account that contains multiple individual loans in an amount less than the amount necessary to satisfy the outstanding payment due on all loans in the student education loan account.

"(6E)(A) "Postsecondary education expense" means an expense related to enrollment in or attendance at a postsecondary education institution regardless of whether the debt incurred by a student to pay those expenses is owed to the provider of postsecondary education whose school, program, or facility the student attends.

"(B) For the purpose of this paragraph, the term "postsecondary" has the same meaning as that term is defined in section 201(12B) of the Education Licensure Commission Act of 1976, effective April 6, 1977 (D.C. Law 1-104; D.C. Official Code § 38-1302(12B)).

"(6F) "Private education lender" means a person engaged in the business of securing, making, or extending private education loans, or a holder of a private education loan. The term does not include, to the extent preempted by federal law:

"(A) A bank or credit union;

"(B) A wholly owned subsidiary of a bank or credit union; or

"(C) An operating subsidiary of a bank or credit union where each owner of the operating subsidiary is wholly owned by the same bank or credit union.

2

"(6G)(A) "Private education loan" means an extension of credit that is not made, insured, or guaranteed under Title IV of the Higher Education Act of 1965 (20 U.S.C. § 1070 *et seq.*), and is extended to a consumer expressly, in whole or in part, for postsecondary education expenses regardless of whether the loan is provided by the educational institution that the student attends.

"(B) The term does not include:

"(i) Open-end credit or any loan that is secured by real property or a dwelling; or

"(ii) An extension of credit in which the covered educational institution is the creditor if the term is 90 days or less or an interest rate will not be applied to the credit balance and the term of the extension of credit is one year or less, even if the credit is payable in more than 4 installments.

(4) Paragraph (9) is amended to read as follows:

"(9) "Student loan borrower" means a resident of the District of Columbia who has received or agreed to pay a student education loan or a private education loan to fund his or her postsecondary education.":

(5) A new paragraph (13) is added to read as follows:

"(13) "Total and permanent disability" is the condition of an individual who:

"(A) Has been determined by the United State Secretary of Veterans Affairs to be unemployable due to a service-connected disability; or

"(B) Is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, has lasted for a continuous period of not less than 12 months, or can be expected to last for a continuous period of not less than 12 months.".

(b) Section 7a(c)(10) (D.C. Official Code § 31-106.01(c)(10)) is amended to read as follows:

"(10) By January 1, 2025, develop an updated consumer-facing student loan borrower bill of rights, and make it available on the Department's website.".

(c) Section 7b (D.C. Official Code § 31-106.02) is amended as follows:

(1) Subsection (c) is amended as follows:

(A) Paragraph (1)(B) is amended by striking the phrase "Application fees and other fees" and inserting the phrase "Application fees, investigation fees, and other fees" in its place.

(B) A new paragraph (3) is added to read as follows:

"(3) The Commissioner shall automatically issue a limited, irrevocable license to a person or entity servicing a student education loan under contract with the United States Department of Education provided that:

"(A)(i), A person or entity seeking to act within the District of Columbia as a student loan servicer is exempt from the application procedures established pursuant to this

3

subsection, other than the requirements of paragraphs (1)(B) and (1)(D) of this subsection, to the extent that the student loan servicing performed is conducted pursuant to a contract awarded by the United States Secretary of Education under 20 U.S.C. § 1087f.

"(ii) The Commissioner shall prescribe the procedure to document eligibility for the exemption and maintain records documenting each person and entity issued a license pursuant to this paragraph.

"(B) A person or entity meeting the criteria set forth in subparagraph (A) of this paragraph shall be issued a license by the Commissioner for the student loan servicing of student education loans under contract with the United States Department of Education and shall be deemed by the Commissioner to have met all the requirements established by subparagraphs (1)(A) and (C) of this subsection.

"(C) The provisions of subsection (h) of this section shall not apply to a person or entity issued a limited license pursuant to this section to the extent that the person or entity is servicing a federal student education loan.

"(D)(i) A person or entity issued a license pursuant to this section shall provide the Commissioner with written notice within 7 days following the notification of the expiration, revocation, or termination of any contract awarded by the United States Secretary of Education under 20 U.S.C. § 1087f ("written notice").

"(ii) After providing the written notice required by sub-subparagraph (i) of this subparagraph, the person or entity shall have 30 days to satisfy all the requirements established under this section in order to continue to act within the District of Columbia as a student loan servicer for federal student education loans.

"(iii) At the expiration of the 30-day period provided in sub-subparagraph (ii) of this subparagraph, if the person or entity has not satisfied the requirements established pursuant to this section, the Commissioner shall immediately suspend any license granted under this section.

"(E) In the case of student loan servicing that is not conducted pursuant to a contract awarded by the United States Secretary of Education under 20 U.S.C. § 1087f, nothing in this section shall prevent the Commissioner from issuing an order to temporarily or permanently prohibit a person or entity from acting as a student loan servicer.

"(F) In the case of student loan servicing conducted pursuant to a contract awarded by the United States Secretary of Education under 20 U.S.C § 1087f, nothing in this section shall prevent the Commissioner from issuing a cease-and-desist order or an injunction against a student loan servicer to cease activities in violation of this act or D.C. Official Code §28-3901 *et seq.*".

(2) Subsection (g)(1)(C) is amended by striking the phrase "The Commissioner may deny an application for renewal" and inserting the phrase "Except as provided under subsection (c)(3) of this section, the Commissioner may deny an application for renewal" in its place.

ENROLLED ORIGINAL

(3) A new subsection (k) is added to read as follows:

"(k) In a format prescribed by the Commissioner, a licensee shall maintain the contact information for the Department and the Ombudsman, as defined in section 2(6B), on the licensee's website.".

(d) New sections 7b-1, 7b-2, 7b-3, 7b-4, and 7b-5 are added to read as follows:

"Sec. 7b-1. Prohibited conduct – student loan servicers.

"(a) No student loan servicer shall:

"(1) Directly or indirectly employ any scheme, device, or artifice to defraud a student loan borrower;

"(2) Directly or indirectly employ any scheme, device, or artifice to mislead a student loan borrower;

"(3) Engage in any unfair or deceptive practice toward any person or misrepresent or omit any material information in connection with the servicing of a student education loan, including an abusive act and practice;

"(4) Obtain property by fraud;

"(5) Obtain property by misrepresentation;

"(6) Misapply student education loan payments to the outstanding balance of a student education loan;

"(7) Provide inaccurate information to a credit bureau, harming a student loan borrower's creditworthiness;

"(8) Fail to report both the favorable and unfavorable payment history of the student loan borrower to a nationally recognized consumer credit bureau at least annually if the student loan servicer regularly reports information to a credit bureau;

"(9) Refuse to communicate with an authorized representative of the student loan borrower who provides a written authorization signed by the student loan borrower; except, that the student loan servicer may adopt procedures reasonably related to verifying that the representative is authorized to act on behalf of the student loan borrower;

"(10) Make a false statement or make an omission of a material fact in connection with any information or report filed with a governmental agency or in connection with any investigation conducted by the Commissioner or another governmental agency;

"(11) Fail to respond within 15 business days to a communication from the Department, or the Office of the Attorney General, or within such shorter reasonable period of time as may be requested by the Department or the Attorney General; or

"(12)(A) Fail to respond within 15 business days to a consumer complaint submitted to the student loan servicer by the Department or the Office of the Attorney General.

"(B) A student loan servicer may request additional time to respond to the complaint, up to a maximum of 45 business days, provided that the request is accompanied by an explanation as to why additional time is reasonable and necessary.

"Sec. 7b-2. Affirmative duties – student loan servicers.

"(a) Except as otherwise provided pursuant to federal law or a student education loan agreement, a student loan servicer shall:

"(1) Respond to any written inquiry from a student loan borrower or the representative of a student loan borrower by:

"(A) Acknowledging receipt of the inquiry within 10 business days; and

"(B) Providing information relating to the inquiry; and, if applicable, the action the student loan servicer will take to correct the account or an explanation of the student loan servicer's determination that the borrower's account is correct within 30 business days, including copies of all information and account information used by the student loan servicer in reaching the determination.

"(2) Inquire of a student loan borrower who has an overpayment on how the student loan borrower wants to apply the overpayment to a student education loan. A student loan borrower's instruction on how to apply an overpayment to a student education loan shall stay in effect for any future overpayments during the term of the student education loan until the borrower provides different instructions.

"(3)(A) In the absence of direction provided by a student loan borrower pursuant to paragraph (2) of this subsection, allocate an overpayment on a student loan account in a manner that reduces the total cost of the student loan, including principal and balance, interest, and fees.

"(B) A student loan servicer shall be deemed to meet the requirements of this paragraph if the servicer allocates the overpayment to the loan with the highest interest rate on the student loan borrower's account, unless the student loan borrower specifies otherwise.

"(4)(A) In the absence of direction provided by a student loan borrower pursuant to paragraph (2) of this subsection, apply partial payments in a manner that minimizes late fees and negative credit reporting.

"(B) If there are multiple loans on a student loan borrower's account with an equal stage of delinquency, apply the partial payment in a way that satisfies as many individual loan payments as possible on a student loan borrower's account.

"(b) Except as otherwise provided by federal law or regulation, the following requirements shall be applicable to a student loan servicer in the event of the sale, assignment, or other transfer of the servicing of a student education loan that results in a change in the identity of the student loan servicer to whom a student loan borrower is required to send payments or direct any communication concerning the student education loan:

"(1)(A) As a condition of a sale, an assignment, or any other transfer of the servicing of a student education loan, a student loan servicer shall require the new student loan servicer to honor all benefits originally represented as available to a student loan borrower during the repayment of the student education loan and preserve the availability of those benefits, including any benefits for which the student loan borrower has not yet qualified.

6

"(B) If a student loan servicer is not also the loan holder or is not acting on behalf of the loan holder, the student loan servicer satisfies the requirement established by this paragraph by providing the new student loan servicer with the information necessary for the new student loan servicer to honor all benefits originally represented as available to a student loan borrower during the repayment of the student education loan and preserve the availability of the benefits, including any benefits for which the student loan borrower has not yet qualified.

"(2) A student loan servicer shall transfer to the new student loan servicer for the student education loan all information regarding the student loan borrower, the account of the student loan borrower, and the student education loan of the student loan borrower. The information shall include the repayment status of the student loan borrower and any benefits associated with the student education loan of the borrower.

"(3) The student loan servicer shall complete the transfer of information required pursuant to paragraph (2) of this subsection within 45 calendar days after the sale, assignment, or other transfer of the servicing of the student education loan.

"(4) The transferring student loan servicer shall notify affected student loan borrowers of the sale, assignment, or other transfer of the servicing of the student education loan at least 7 days before the next payment on the loan is due, which notice shall include:

"(A) The identity of the new student loan servicer;

"(B) The effective date of the transfer of the student loan borrower's student education loan to the new student loan servicer;

"(C) The date on which the existing student loan servicer will no longer accept payments and whether and by when any action will need to be taken to update auto-debit payments; and

"(D) The contact information for the new student loan servicer, including phone number, email address, mailing address, and fax number.

"(c) A student loan servicer who obtains the right to service a student education loan shall adopt policies and procedures to verify that the student loan servicer has received all information regarding the student loan borrower, the account of the student loan borrower, and the student education loan of the student loan borrower, including the repayment status of the student loan borrower and any benefits associated with the student education loan of the student loan borrower.

"(d) A student loan servicer shall evaluate a student loan borrower for eligibility for an income-driven repayment program prior to placing the student loan borrower in forbearance or default if an income-driven repayment program is available to the student loan borrower.

"Sec. 7b-3. Prohibited acts – private education lenders.

"(a)(1) A private education loan executed after the applicability date of this section shall not include a provision that permits the private education lender to accelerate, in whole or in part, payments on a private education loan except in cases of payment default or place any loan or account into default or accelerate a loan for any reason other than for payment default.

7

"(2) A private education loan executed prior to the applicability date of this section shall permit the private education lender to accelerate payments only if the promissory note or private education loan agreement explicitly authorizes an acceleration and only for the reasons stated in the note or agreement.

"(3) In the event of the death of a cosigner, the lender shall not attempt to collect against the cosigner's estate other than for payment default.

"(4) Upon receiving notification of the death or bankruptcy of a cosigner, when the private education loan is not more than 60 days delinquent at the time of the notification, the private education lender shall not change any terms or benefits under the promissory note, repayment schedule, repayment terms, or monthly payment amount or any other provision associated with the private education loan.

"(5) A private education lender shall not place any private education loan or account into default or accelerate a private education loan while a student loan borrower is seeking a loan modification or enrollment in a flexible repayment plan; except, that a private education lender may place a private education loan or account into default or accelerate a private education loan for payment default 90 days after the student loan borrower's default.

"(b) A private education lender shall not:

"(1) Directly or indirectly employ any scheme, device, or artifice to defraud a student loan borrower;

"(2) Directly or indirectly employ any scheme, device, or artifice to mislead a student loan borrower;

"(3) Engage in any unfair or deceptive practice toward any person or misrepresent or omit any material information in connection with the servicing of a private education loan, including, abusive acts and practices;

"(4) Obtain property by fraud;

"(5) Obtain property by misrepresentation;

"(6) Misapply private education loan payments to the outstanding balance of a private education loan;

"(7) Provide inaccurate information to a credit bureau, thereby harming a student loan borrower's creditworthiness;

"(8) Fail to report both the favorable and unfavorable payment history of the student loan borrower to a nationally recognized consumer credit bureau at least annually if the private education lender regularly reports information to a credit bureau;

"(9) Refuse to communicate with an authorized representative of the student loan borrower who provides a written authorization signed by the student loan borrower; except, that the private education lender may adopt procedures reasonably related to verifying that the representative is authorized to act on behalf of the student loan borrower;

ENROLLED ORIGINAL

"(10) Make any false statement or make any omission of a material fact in connection with any information or reports filed with a governmental agency or in connection with any investigation conducted by the Commissioner or another governmental agency;

"(11) Fail to respond within 15 business days to communications from the Department or the Office of the Attorney General, or within such shorter reasonable period of time as may be requested by the Commissioner or the Attorney General; or

"(12)(A) Fail to respond within 15 business days to a consumer complaint transmitted to the private education lender by the Department or the Office of the Attorney General.

"(B) A private education lender may request additional time to respond to the complaint, up to a maximum of 45 business days, provided that the request is accompanied by an explanation as to why additional time is reasonable and necessary.

"Sec. 7b-4. Affirmative duties – private education lenders.

"(a) For a private education loan issued on or after the applicability date of this section:

"(1) A private education lender or student loan servicer acting on behalf of a private education lender when notified of the total and permanent disability of a student loan borrower or cosigner shall release any cosigner from the obligations under the private education loan. The private education lender shall not attempt to collect a payment from a cosigner after being notified of the total and permanent disability of the cosigner or borrower.

"(2) A private education lender shall notify a student loan borrower and cosigner for a private education loan if either a cosigner or the student loan borrower is released from the obligations of the private education loan under this subsection within 30 days of the release.

"(3) A private education lender that extends a private education loan to a student loan borrower shall provide the student loan borrower an option to designate an individual to have the legal authority to act on behalf of the student loan borrower with respect to the private education loan in the event of the total and permanent disability of the student loan borrower.

"(4) In the event a cosigner is released from the obligations of a private education loan pursuant to paragraph (1) of this subsection, the private education lender shall not require the student loan borrower to obtain another cosigner on the private education loan obligation.

"(5) A private education lender shall not declare a default or accelerate the debt against the student loan borrower on the sole basis of the release of the cosigner from the private education loan obligation.

"(6) A private education lender shall when notified of the total and permanent disability of a student loan borrower discharge the liability of the student loan borrower and cosigner on the private education loan.

"(7) After receiving a notification pursuant to paragraph (1) of this subsection, the private education lender shall not attempt to collect on the outstanding liability of the student loan borrower or cosigner or monitor the disability status of the student loan borrower after the date of discharge.

9

"(b) Availability of alternative repayment plans.

"(1) If a private education lender offers a student loan borrower flexible or modified repayment options in connection with a private education loan, those flexible repayment options shall be made available to all borrowers and the private education lender shall:

"(A) Provide on its website a description of any alternative repayment options offered by the private education lender for a private education loan; and

"(B) Establish policies and procedures to facilitate evaluation of private education loan flexible repayment option requests, including providing accurate information regarding any private education loan alternative repayment options that may be available to the student loan borrower through a promissory note or that may have been marketed to the student loan borrower through marketing materials.

"(2) A private education lender or a student loan servicer acting on behalf of a private education lender shall consistently present and offer flexible or modified private education loan repayment options to student loan borrowers with similar financial circumstances, if the private education lender offers such repayment options.

"(c)(1) Prior to the extension of a private education loan that requires a cosigner, a private education lender shall deliver the following information to the cosigner:

"(A) How the private education loan obligation shall appear on the cosigner's credit;

"(B) How the cosigner shall be notified if the private education loan becomes delinquent, including how the cosigner can cure the delinquency in order to avoid negative credit furnishing and loss of cosigner release eligibility; and

"(C) Eligibility for release of the cosigner's obligation on the private education loan, including the number of on-time payments and any other criteria required to approve the release of the cosigner from the private education loan obligation.

"(2) Prior to offering a person a private education loan that is being used to refinance an existing education loan, a private education lender shall provide the person a disclosure that benefits and protections applicable to the existing loan may be lost due to the refinancing.

"(3) The information provided pursuant to this section shall be provided on a one-page information sheet in a 12-point font and shall be written in simple, clear, understandable and easily readable language as provided in the Plain Writing Act of 2010 (5 U.S.C. § 301, note).

"(d)(1) For any private education loan that obligates a cosigner, a private education lender shall provide the student loan borrower and the cosigner an annual written notice containing information about cosigner release, including the administrative, objective criteria the private education lender requires to approve the release of the cosigner from the private education loan obligation and the process for applying for cosigner release.

"(2) If the student loan borrower has met the applicable requirements to be eligible for cosigner release, the private education lender shall send the student loan borrower and the cosigner a written notification by U.S. mail, and by electronic mail when a student loan borrower or cosigner has elected to receive electronic communications from the private education lender, informing the student loan borrower and cosigner that the requirements to be eligible for cosigner release have been met.

"(3) A private education lender shall provide written notice to a borrower who applies for cosigner release, but whose application is incomplete. The written notice shall include a description of the information needed to consider the application complete and the date by which the applicant must furnish the missing information.

"(4)(A) Within 30 days after a student loan borrower submits a completed application for cosigner release, the private education lender shall send the student loan borrower and the cosigner a written notice that informs the student loan borrower and cosigner whether the cosigner release application has been approved or denied.

"(B) If the private education lender denies the request for cosigner release, the student loan borrower may request any documents or information used in the determination, including the credit score threshold used by the private education lender, the student loan borrower's consumer report, the student loan borrower's credit score, and any other documents specific to the student loan borrower. The private education lender shall also provide any adverse action notices required under applicable federal law if the denial is based in whole or in part on any information contained in a consumer report.

"(5) In response to a written or oral request for cosigner release, a private education lender shall provide the information described in paragraph (1) of this subsection.

"(6) A private education lender shall not impose any restriction that permanently bars a student loan borrower from qualifying for cosigner release, including restricting the number of times a student loan borrower may apply for cosigner release.

"(7)(A) A private education lender shall not impose any negative consequences on a student loan borrower or cosigner during the 60 days following the issuance of the notice required pursuant to paragraph (3) of this subsection or until the private education lender makes a final determination about a borrower's cosigner release application.

"(B) For the purpose of this paragraph, the term "negative consequences" includes the imposition of additional eligibility criteria, negative credit reporting, lost eligibility for cosigner release, late fees, interest capitalization, or other financial penalty.

"(8)(A) For a private education loan executed after the applicable date of this section, a private education lender shall not require more than 12 consecutive, on-time payments as a requirement for cosigner release.

"(B) A student loan borrower who has paid the equivalent of 12 months of principal and interest payments within any 12-month period shall be considered to have satisfied

a consecutive, on-time payment requirement even if the student loan borrower has not made payments monthly during the 12-month period.

"(9) If a student loan borrower or cosigner requests a change in terms that restarts the counting of consecutive, on-time payments required for cosigner release, the private education lender shall notify the student loan borrower and cosigner in writing of the impact of the change and provide the student loan borrower or the cosigner the right to withdraw or reverse the request to avoid that impact.

"(10)(A) A student loan borrower shall have the right to request a reconsideration of a private education lender's denial of a request for cosigner release, and the private education lender shall permit the student loan borrower to submit additional documentation evidencing the borrower's ability to meet the payment obligations.

"(B) The student loan borrower may request review of the cosigner release determination by a different employee than the employee who made the original determination.

"(11)(A) A private education lender shall establish and maintain a comprehensive record-management system ("record-management system") reasonably designed to ensure the accuracy, integrity, and completeness of data and other information about cosigner release applications and compliance with applicable District and federal laws, including the Equal Credit Opportunity Act (15 U.S.C. § 1691 *et seq.*) and the Fair Credit Reporting Act (15 U.S.C. § 1681 *et seq.*).

"(B) The record-management system shall also include the:
"(i) Number of cosigner release applications received;
"(ii) Approval and denial rate; and
"(iii) primary reasons for any denial.

"(c)(1) A private education lender shall provide a cosigner with access to all documents or records related to the cosigned private education loan that are available to the student loan borrower.

"(2) If a private education lender provides electronic access to documents and records for a student loan borrower, it shall provide the equivalent electronic access to the cosigner.

"(3) Upon written notice from the student loan borrower or cosigner, the private education lender may redact or withhold contact information for the student loan borrower and cosigner.

"Sec. 7b-5. Enforcement.
"(a) In addition to complying with the requirements of the New Student Loan Borrower Bill of Rights Amendment Act of 2024, passed on 2nd reading on September 17, 2024 (Enrolled version of Bill 25-37) ("act"), a student loan servicer shall comply with all applicable federal laws relating to student loan servicing, as from time to time amended, and the regulations promulgated pursuant to those federal laws.

ENROLLED ORIGINAL

"(b) A violation of section 7b-1 or 7b-3 is an unfair or deceptive trade practice pursuant to D.C. Official Code § 28-3904.

"(c) Any person who suffers damage as a result of the failure of a student loan servicer or private education lender to comply with sections 7b, 7b-1, 7b-2, 7b-3, 7b-4, or 7b-5(a) may bring an action on their own behalf and on behalf of a similarly situated class of consumers against that student loan servicer or private education lender to recover or obtain:

"(1) Actual damages, but in no case shall the total award of damages be less than $500 per plaintiff, per violation;

"(2) An order enjoining the methods, acts, or practices;

"(3) Restitution of property;

"(4) Punitive damages;

"(5) Attorney's fees; or

"(6) Any other relief that the court considers proper.

"(d) In addition to any other remedies provided by this section or otherwise provided by law, whenever it is proven by a preponderance of the evidence that a student loan servicer or private education lender has engaged in conduct that substantially interferes with a student borrower's right to an alternative payment arrangement, loan forgiveness, cancellation, or discharge, or any other financial benefit, as established under the terms of a student loan borrower's promissory note or under the Higher Education Act of 1965 (20 U.S.C. § 1070a et seq.), ("Higher Education Act"), as from time to time amended, and regulations promulgated pursuant to the Higher Education Act, the court shall award treble actual damages to the plaintiff, but in no case shall the award of damages be less than $1,500 per violation.

"(e) The remedies provided in this section are not the exclusive remedies available to a student loan borrower or cosigner, nor must the student loan borrower exhaust any administrative remedies provided in this section or any other applicable law before proceeding pursuant to this section.

"(f) The Attorney General may bring an action for any violation of sections 7b, 7b-1, 7b-2, 7b-3, 7b-4 or 7b-5(a) under the authority granted in § 28-3909.

"(g) The Department shall share information on a quarterly basis related to the implementation, execution, and enforcement of sections 7b, 7b-1, 7b-2, 7b-3, 7b-4 and 7b-5(a) with the Office of the Attorney General.

(e) Section 7c is amended by striking the phrase "sections 7a and 7b." and inserting the phrase "sections 7b, 7b-1, 7b-2, 7b-3, 7b-4 and 7b-5(a)." in its place.

Sec. 3. Conforming amendment.

Section 28-3903 of the District of Columbia Official Code is amended by adding a new subsection (d) to read as follows:

"(d) The Attorney General may bring an action pursuant to section 7b-5(f) of the Department of Insurance and Securities Regulation Establishment Act of 1996, passed on 2nd

reading on September 17, 2024 (Enrolled version of Bill 25-37) ("act"), for a violation of sections 7b, 7b-1, 7b-2, 7b-3, 7b-4 or 7b-5(a) of the act.

Sec. 4. Applicability.
This act shall apply as of October 1, 2024.

Sec. 5. Fiscal impact statement.
The Council adopts the fiscal impact statement in the committee report as the fiscal impact statement required by section 4a of the General Legislative Procedures Act of 1975, approved October 16, 2006 (120 Stat. 2038; D.C. Official Code § 1-301.47a).

Sec. 6. Effective date.
This act shall take effect following approval by the Mayor (or in the event of veto by the Mayor, action by the Council to override the veto) and a 30-day period of congressional review as provided in section 602(c)(1) of the District of Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(1)).

Chairman
Council of the District of Columbia

Mayor
District of Columbia
APPROVED
OCTOBER 7, 2024

14



**COUNCIL OF THE DISTRICT OF COLUMBIA**

**WASHINGTON, DC, 20004**

Docket No. B25-0037

[ X ] ITEM ON CONSENT CALENDAR

[ X ] ACTION                             First Reading, CC

[ X ] VOTE DATE                          July 9, 2024

[ ] VOICE VOTE

   RECORDED VOTE ON REQUEST

ABSENT                                   Gray

[ X ] ROLL CALL VOTE – Result            Approved

| Council Member | Aye | Nay | NV | AB | Rec | Council Member | Aye | Nay | NV | AB | Rec | Council Member | Aye | Nay | NV | AB | Rec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chairman Mendelson | X | | | | | Henderson | X | | | | | Pinto | X | | | | |
| Allen | X | | | | | Lewis George | X | | | | | R. White | X | | | | |
| Bonds | X | | | | | McDuffie | X | | | | | T. White | X | | | | |
| Frumin | X | | | | | Nadeau | X | | | | | | | | | | |
| Gray | | | | X | | Parker | X | | | | | | | | | | |

X - Indicate Vote      AB – Absent      NV - Present, Not Voting      Rec - Recused

CERTIFICATION RECORD

_____
Secretary to the Council

_____
Date

---

Docket No. B25-0037

[ X ] ITEM ON CONSENT CALENDAR

[ X ] ACTION                             Final Reading, CC

[ X ] VOTE DATE                          September 17, 2024

[ ] VOICE VOTE

   RECORDED VOTE ON REQUEST

ABSENT                                   Gray

[ X ] ROLL CALL VOTE – Result            Approved

| Council Member | Aye | Nay | NV | AB | Rec | Council Member | Aye | Nay | NV | AB | Rec | Council Member | Aye | Nay | NV | AB | Rec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chairman Mendelson | X | | | | | Henderson | X | | | | | Pinto | X | | | | |
| Allen | X | | | | | Lewis George | X | | | | | R. White | X | | | | |
| Bonds | X | | | | | McDuffie | X | | | | | T. White | X | | | | |
| Frumin | X | | | | | Nadeau | X | | | | | | | | | | |
| Gray | | | | X | | Parker | X | | | | | | | | | | |

X - Indicate Vote      AB – Absent      NV - Present, Not Voting      Rec - Recused

CERTIFICATION RECORD

_____
Secretary to the Council

_____
Date

Ex 5. Original copy of Department of Education Notice of Interpretation these 5 pages addresses how the court shall move forward in any case against loan servicers and its employees who make false statements about inaccurate loan documents which defendant has knowingly engaged in.



# Federal **Student Aid**
*An OFFICE of the U.S. DEPARTMENT of EDUCATION*

Published on https://fsapartners.ed.gov/knowledge-center/library/dear-colleague-letters/2025-01-16/notice-interpretation-regarding-misrepresentations-third-party-service-providers-engaged-institution-higher-education

PUBLICATION DATE: January 16, 2025

DCL ID: GEN-25-01

SUBJECT: Notice of interpretation regarding misrepresentations by third-party service providers engaged by an institution of higher education

SUMMARY: This letter reminds eligible Title IV institutions of their obligations under the Higher Education Act to comply with requirements under section 487(c)(3) and the Department's regulations (subpart F of part 668) pertaining to misrepresentation.

Dear Colleague:

The U.S. Department of Education (Department) is sending this letter to remind eligible *Title IV* institutions (eligible institutions) of their obligations under the Higher Education Act (HEA) to comply with requirements under section 487(c)(3) of the HEA[1] and the Department's regulations (subpart F of part 668) pertaining to misrepresentation. These provisions prohibit an institution from providing false, misleading, or inaccurate information about the nature of its educational program(s), its financial charges, or the employability of its graduates. This letter reminds eligible institutions that such requirements apply with equal force to statements made by a third-party entity engaged by the eligible institution, including but not limited to an Online Program Manager (OPM), and their respective employees, contractors, or representatives (hereinafter "external service provider")[2]; and that institutions may be responsible for the consequences of any misrepresentation committed by any external service provider that they engage. *See* 34 C.F.R. 668.71.

Consistent with the statutory and regulatory requirements related to misrepresentation, the Department highlights three types of statements that, if made by an eligible institution and/or any external service provider, under certain circumstances discussed further below, are likely to qualify as a misrepresentation:

1. Inaccurately identifying an individual employed by an external servicer provider as being employed by the eligible institution,

2. Inaccurately presenting a sales representative or recruiter employed by an eligible institution or an external service provider as an academic advisor, such as by referring to them as a "counselor," and

3. Describing a program, or any of its components or resources, provided in substantial part by the external service provider as "the same as" a corollary residential or campus-based version of the program provided by the eligible institution.

These three types of statements may result in a finding that an eligible institution has engaged in a substantial misrepresentation and may result in the Department imposing a fine or taking action to limit, suspend, or terminate an institution's access to *Title IV* funds.[3]

Although these examples do not constitute an exhaustive list, the Department is issuing this guidance because the Department has become aware of multiple instances in which eligible institutions or their external service providers have apparently engaged in making these types of statements to misrepresent, allow to be misrepresented, or facilitate the misrepresentation of, aspects of programs offered by the eligible institutions.[4] The Department seeks to remind institutions and their external service providers of their obligations to provide accurate and complete information to prospective and enrolled students in accordance with law, and as further clarified by the examples in this letter.

## Background

Section 487(c)(3) of the HEA authorizes the Secretary to suspend or terminate an institution's or program's eligibility for *Title IV* funds upon finding the institution substantially misrepresented the nature of the institution's educational program, its financial charges, or the employability of its graduates. 20 U.S.C. 1094(c)(3). Subpart F of the Department's *Title IV* regulations define misrepresentation as any "false, erroneous or misleading statement an eligible institution, organization, or person with whom the eligible institution has an agreement to provide education programs, or to provide marketing, advertising, recruiting or admissions services makes directly or indirectly to a student, prospective student or any member of the public[.]" 34 C.F.R.

668.71(c).[5] Misrepresentation "includes any statement that omits information in such a way as to make the statement false, erroneous, or misleading." Id.[6] A "substantial misrepresentation" occurs if the misrepresentation is one "on which the person to whom it was made could reasonably be expected to rely, or has reasonably relied, to that person's detriment." Id.

The Department's longstanding position has been that misrepresentation can occur through acts or omissions that falsely, inaccurately, or misleadingly identify the entity providing a good or service related to the institution's educational program, its financial charges, or the employability of its graduates. For example, since 2010, the Department's misrepresentation regulations have required institutions to provide accurate statements about the source of a program's educational services and characteristics, including statements "made in any advertising, promotional materials, or in the marketing or sale of courses or programs of instruction offered by the institution." See 34 C.F.R. 668.71(b); see also 34 C.F.R. 668.72-74.[7] As another example of the Department reminding institutions of obligations to be accurate in their representations about the source of educational services and characteristics, in DCL GEN-22-07, the Department reminded eligible institutions that they are required by 34 C.F.R. 668.43(a)(12) to attribute accurately the portions of a program provided by the eligible institution itself, as distinct from the portions of a program provided on behalf of the eligible institution by written agreement, often by an external service provider not itself eligible for Title IV participation.

## 1. False or misleading attribution of employment, status, or role with eligible institution

Many eligible institutions arrange for an external service provider to exclusively manage functions of online programs, such as recruitment, advising, and clinical placements. A misrepresentation can occur when an employee of an external service provider inaccurately presents themselves as an employee of the eligible institution in their communications with prospective and enrolled students, including but not limited to circumstances where the external service provider's employees use school-associated email addresses and/or email signatures that represent or imply that the individual is employed by the eligible institution. In addition, a misrepresentation may occur if an employee of an external service provider fails to inform students during phone conversations that they are not, in fact, directly employed by the institution.

Misrepresenting the role of an external service provider in these manners can be deceptive, and the Department is aware of numerous instances of this type of deception reportedly occurring. For example, the Department is aware of instances in which OPM employees, using titles such as "placement specialist," "placement manager," "student success advisor," "student success manager," "student support specialist," "admissions counselor," and "admissions manager," have sent emails to prospective and enrolled students in OPM-provided programs offered by eligible institutions from email addresses that implied institutional employment (@[eligible institution].edu), and do not indicate clearly their affiliation with or employment by the OPM.[8] Depending on the particular facts, the use of such titles or email addresses is likely to contribute to students misunderstanding these employees' roles and relying on information provided by them as if they were institutional employees.

Misrepresenting the role of an external service provider can deprive prospective and enrolled students of the ability to make fully informed decisions about their education and can undermine the effectiveness of the Department's existing regulations. Prospective and enrolled students report that they believe it is important to understand whether they are speaking to an employee of an external service provider rather than an employee of the institution. The status of the person they are talking with affects their evaluation of the services that the institution will provide, allowing students to make better-informed decisions about whether to undertake the significant cost of enrolling.[9]

As another example of how such conduct can undermine the Department's accountability requirements, eligible institutions are required to "make readily available" certain program information to enrolled and prospective students, including information about written arrangements the institution has entered into, to ensure students are aware of an external service provider's particular role in providing the educational programs, the costs incurred, and other key aspects of the program. 20 U.S.C. § 1092(a)(1)(G); 1094(a)(7); 34 C.F.R. 668.43(a)(12). However, a student will not know to request this critical information if an eligible institution or its external service provider either fails to inform a student of the existence of a contracted external service provider or makes false, misleading, or inaccurate representations about the role of the external service provider.

The Department's view that this type of conduct can be deceptive is consistent with other Federal and State consumer protection laws. For example, the Federal Trade Commission (FTC), in its guide for private vocational and distance education schools, 16 C.F.R. part 254, identifies as a deceptive act the misrepresentation that certain individuals are members of the institution or school, 16 C.F.R. 254.4(a)(7), and in its rule on impersonation, 16 C.F.R. Part 461, prohibits falsely posing as government or business entities or officials. In addition, the FTC has filed numerous enforcement actions involving false or unsubstantiated affiliation claims.[10] Under the rules enforced by the FTC, representations are deceptive if necessary, qualifications are not made, if material facts are not disclosed, or if these disclosures or qualifications are confusing or inconspicuous.[11] The touchstone is whether the overall net impression of the representation is deceptive, not its literal truth or falsity. See, e.g., FTC v. Cyberspace.com, L.L.C., 453 F.3d 1196, 1200 (9th Cir. 2006); see also FTC v. Med. Billers Network, Inc., 543 F. Supp. 2d 283, 304 (S.D.N.Y. 2008) (listing cases). "'Deception may be made by innuendo rather than outright false statements,'...and statements can 'create deceptive impression on purchasers even though they may be technically interpreted as true or partially true.'" FTC v. Bay Area Bus. Council, Inc., No. 02 C 5762, 2004 WL 769388, at *10 (N.D. Ill. Apr. 9, 2004), aff'd, 423 F.3d 627 (7th Cir. 2005) (quoting National Bankers Services, Inc. v. FTC, 329 F.2d 365, 367 (7th Cir.1964); L.G. Balfour Co. v. FTC, 442 F.2d 1, 17 (7th Cir.1971)).

These principles also apply to representations about the source of goods and services. For example, in *Waltham Watch Co. v. FTC*, 318 F.2d 28 (7th Cir. 1963), the Court held that a company's advertisements were knowingly false and misleading where it claimed that its products were from a "famous 150-year-old company" without disclosing that the manufacturer of these products had nothing to do with the original company, which had authorized the use of its name under a licensing agreement. *Id.* at 31. *See also Waltham Precision Instrument Co. v. FTC*, 327 F.2d 427, 431 (7th Cir. 1964) ("Any right petitioners have to use the tradename 'Waltham' does not permit its use in a manner designed to deceive the public, and those who put into the hands of others the means by which they may mislead the public, are themselves guilty of a violation of Section 5 of the Federal Trade Commission Act.") (cleaned up); *Warner-Lambert Co. v. FTC*, 562 F.2d 749, 761 (D.C. Cir. 1977) (where a product has built up a widespread reputation over a period of years, it is false and deceptive to continue advertising on the "strength of the impression" without disclosing material changes to the product.)

Additionally, the Department's enforcement approach is consistent with a number of State rules related to misrepresentation. For example, California's prohibition on unfair, deceptive, unlawful, and unconscionable commercial practices in connection with the sale of educational services to consumers specifically prohibits "passing off goods or services as those of another," "misrepresenting the source...of goods and services," and "misrepresenting the affiliation, connection, or association with another." California Consumer Legal Remedies Act (CLRA), Civil Code 1170 et seq. As another example, Texas's prohibition on deceptive trade practices specifies that the term "false, misleading, or deceptive acts or practices" includes, but is not limited to "passing off goods or services as those of another," "causing confusion or misunderstanding as to affiliation, connection, or association with, or certification of goods or services," "causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another," and "representing that goods or services have sponsorship, approval, [or] characteristics...which they do not have or that a person has a sponsorship, approval, status, affiliation or connection which the person does not [have]." Tex. Bus. & Com. Code § 17.46. And the District of Columbia's prohibition of unfair and deceptive trade practices prohibits "represent[ing] that the person has a sponsorship, approval, status, affiliation, certification, or connection that the person does not have" and "pass[ing] off goods or services as those of another." District of Columbia Consumer Protection Procedures Act (CPPA), D.C. Code § 28-3904.

## 2. Deceptive or misleading statements about an individual's role in student recruitment

The Department also notes that presenting a sales representative or recruiter as an "academic counselor" or similar position can be deceptive and misleading if it is not an accurate description of their position. For example, the Department is aware of circumstances in which individuals who have been awarded distinction based on their level of "sales" have reportedly described themselves as admission "counselors" of an eligible institution. Such practices create a high risk of misrepresentation since rewarding an individual based on sales indicates that individual's role is not focused on impartially counseling prospective or enrolled students, but rather on securing a financial transaction. The Department's interpretation is consistent with many States' laws. *See, e.g.*, NY Comp Codes R. & Regs, tit. 8, sec. 126.12(e) (BPPS regs) ("Agents shall not identify themselves or be identified as counselors or by other titles which mislead the prospective student"), MA CMR, tit. 940 sec. 31.06(10) ("It is an unfair or deceptive act or practice for a school to refer to salespersons or recruiters as 'counselors' or 'advisors' or to imply that a salesperson or recruiter is an academic adviser or counselor")[12]. The FTC has also charged entities for deceptively claiming to be independent from the programs they advertise or not influenced by compensation received from those programs.[13]

## 3. False or misleading statement creating equivalency or identity between an eligible institution's program provided by an external service provider and a corollary campus-based or residential program

The Department is aware of instances in which the resources available to students enrolled in a program provided by an external service provider are entirely distinct and substantively different from those available to students in a corollary residential program. Such resources can include instructors, curriculum, advisors, placement coordinators, and registrars.

Absent specific evidence of actual parity with respect to each advertised aspect, it is highly likely to be misleading and deceptive to describe a program offered by the external service provider as the same as a campus-based program, or to otherwise imply an equivalent identity between the two if they are not equivalent in substantive ways. Such substantive items include differences in the degrees awarded (including the name of the school and college awarding the degree), the criteria for admissions, or the qualifications of faculty across both programs. Programs may not be equivalent if they have meaningful differences in rates of completion, job placement, earnings, or licensure. Stating that programs are equivalent when there are meaningful differences between them is highly likely to meet the statutory and regulatory definition of a misrepresentation. Institutions should also be clear if the credentials awarded in programs supported by an external servicer provider are different from the credentials students earn in the campus-based version of the program. For example, eligible institutions should be clear if the degree is awarded by an online division or campus of the institution that does or does not certify completion of the same curriculum taught by the same faculty as the campus-based degree.

In sum, eligible institutions and their external service providers are prohibited from providing false, misleading, or inaccurate information about the nature of their educational programs. *See* 20 U.S.C. 1094(c)(3); 34 CFR Part 668 Subpart F. This prohibition applies equally to circumstances where an institution has arranged for an external service provider to exclusively

manage functions of online programs, such as recruitment, advising, and clinical placements. See 34 C.F.R. 668.71. As set forth in detail above, the Department's interpretation is consistent with the applicable statute and regulations, as well as State consumer protection laws.

## Conclusion

Based on the evidence and support described in this letter, the Department provides these examples to clarify the type of statements made by an eligible institution or its external service provider that are likely to qualify as a misrepresentation under existing law. The Department reminds eligible institutions that they are responsible for statements made by an external service provider that amount to substantial misrepresentation, and that eligible institutions could, as a result, be subject to remedial action such as imposing a fine or limiting the institution's participation in the *Title IV* programs.

If you have any questions or comments, please submit through the Contact Customer Support form link in Federal Student Aid's Help Center.

Sincerely,

Nasser Paydar, Ph.D.
*Assistant Secretary for Postsecondary Education*

---

[1] 20 U.S.C. 1094(c)(3).

[2] The Department's regulations related to substantial misrepresentation apply to statements made by "an eligible institution, **one of its representatives, or any ineligible institution, organization, or person with whom the eligible institution has an agreement to provide educational programs, or to provide marketing, advertising, recruiting or admissions services[.]**" See 34 C.F.R. 668.71(c) (emphasis added).

[3] The Department considers the "totality of the circumstances in which a statement occurred, to determine whether it constitutes a substantial misrepresentation." 81 FR 75926-01, at *75945 (Nov. 1, 2016). While each determination is fact-dependent based on the particular circumstances, this letter clarifies types of statements that have a high risk of qualifying as a substantial misrepresentation because they are likely to be false, erroneous, or have the tendency to mislead prospective and enrolled students, and upon which a prospective or enrolled student would be likely to reasonably rely to their detriment. See 34 C.F.R. 668.71(c) (defining substantial misrepresentation).

[4] See, e.g., "Transcript of Virtual Listening Session," U.S. Department of Education, Office of Postsecondary Education (March 8, 2023), at 41-43, available at https://www.ed.gov/media/document/virtlistsesstranscript3823lincpdf [✓], "Comments from the Legal Aid Community to the U.S. Department of Education," Docket ID ED-2021-OPE-0077 (August 12, 2022), available for download at https://www.regulations.gov/comment/ED-2021-OPE-0077-5337 [✓]; see also, e.g., Luna v. Univ. of Southern California, Case No. 23STCV03981 (Cal. Super. Ct., May 4, 2023) (claiming misrepresentation based, in part, on allegations that employees of the third-party entity contracting with university misrepresented themselves as university employees); Bradford v. George Washington Univ., Case No. 16-858 (D.D.C., May 6, 2026) (claiming misrepresentation based, in part, on allegations that the university's online education program was "substantially identical" to its in-classroom equivalent when the programs was inferior) (dismissed on grounds that plaintiffs' claims were time-barred by statute of limitations).

[5] Although the Department revised its misrepresentation regulations (subpart F of part 668) in 2010 (75 FR 66832), 2016 (81 FR 75926), and 2022 (87 FR 65904), this regulatory definition of "misrepresentation" has remained the same since 2010.

[6] The Department added this clarification to the regulatory definition of misrepresentation in 2016 to make explicit the Department's view that misrepresentations may include omissions, which aligns with its interpretation of the 2010 regulations and longstanding position. See 81 FR at 75949 (explaining that this clarification in the 2016 rules aligned the definition of misrepresentation with the "the Department's long-standing purpose for part 668, subpart F, enforcement actions" and was consistent with enforcement actions taken under the 2010 regulations).

[7] This emphasis and regulatory language appears in the regulations promulgated in 2010 (75 FR 66832), 2016 (81 FR 75926), and 2022 (87 FR 65904). See also notes 4, 5, supra (explaining how the Department's regulations on misrepresentation have retained key definitions and concepts for over a decade).

[8] The Department recognizes that financial aid offices may temporarily use additional contractors to assist with during the busiest financial aid processing periods. Generally, the Department's concern relates to the use of contracted staff for recruitment purposes, when such relationships are not properly disclosed, which could impact a student's ability to make an informed decision, as discussed further below.

[9] See, e.g., "Transcript of Virtual Listening Session," U.S. Department of Education, Office of Postsecondary Education (March 8, 2023), at 41-43, available at https://www.ed.gov/media/document/virtlistsesstranscript3823lincpdf [✓]; see also, "Comments from the Legal Aid Community to the U.S. Department of Education," Docket ID ED-2021-OPE-0077 (August 12, 2022), available for download at https://www.regulations.gov/comment/ED-2021-OPE-0077-5337 [✓].

[10] See, e.g., FTC v. Career Educ. Corp., No. 1:19-cv-05739 (N.D. Ill., July 9, 2019) (alleging school's lead generators misrepresented that its schools were recommended or endorsed by U.S. military); FTC v. Sunkey Publ'g., Inc., No. 3:18-cv-01444 (N.D. Ala. Sept. 6, 2018) (alleging lead generators misrepresented that schools were recommended or endorsed by U.S. military); FTC v. Capitol Network Distance Learning Programs, LLC, No. 2:16-cv-00350 (D. Ariz., Feb. 8, 2016) (misrepresenting that defendants were accredited by an independent, third-party accrediting body independent from defendants' online schools); FTC v. Stepping Stonez Dev., LLC, No. 2:16-cv-00351 (D. Ariz., Feb. 8, 2016) (same); FTC v. Diversified Educ. Ress., LLC (Jefferson High School Online), No. 14-cv-6211B (S.D. Fla., Sept. 16, 2014) (alleging diploma mill misrepresented that it was accredited by an independent, third party accrediting body).

[11] See Federal Trade Commission Policy Statement on Deception, appended to Cliffdale Assocs., Inc., 103 F.T.C. 110, 174-83 (1984).

[12] The Department observes that there are additional legal reasons why an individual employed by an external service provider that engages in recruitment under a revenue-sharing bundled services arrangement could not represent themselves as an admissions counselor to prospective or enrolled students. Per governing statutory and regulatory law, and consistent with DCL GEN-11-05, the Department views the incentive compensation ban as prohibiting revenue-sharing for recruitment unless the external service provider provides a bundle of services and certain conditions are met, including that the eligible institution determines admission and program enrollment independent of the external service provider. See DCL GEN-11-05; see also 20 U.S.C. § 1094(a)(20); 34 C.F.R. § 668.14(b)(22). Under this type of permitted bundled services arrangement, to maintain the necessary level of independence, an eligible institution cannot contract out to the external service provider the counseling function, and hence also cannot allow employees of an external service provider to represent themselves as counselors.

[13] See, e.g., In re Shop Tutors, Inc. (LendEDU), No. 182-3180 (May 26, 2020) (alleging that student loan website misrepresented that its rankings and ratings of student loan companies was not influenced by compensation from those companies); In re Victory Media, Inc., No. 152-3210 (Jan. 12, 2018) (alleging that respondent's website promoting for-profit colleges misrepresented that it promoted those schools based on them being "military friendly," and also misrepresented that respondent's endorsements were independent, when respondent was paid by schools listed); FTC v. Expand, Inc. (Digital), No. 6:16-cv-00714-CEM-TBS (M.D. Fla., Apr. 27, 2016) (alleging lead generator misrepresented that its employees were "independent" educational advisors, when it only recommended schools or programs that agreed to pay it for leads).

Ex 6. Original copy of the alleged 11 loans Saint Augustine's University loans in 2009 that shows from 2003 to 2009. In the amount of $43, 225.00 which shows I am being charged twice for both Career Technical Institute and Saint Augustine's University above.



START HERE
GO FURTHER
FEDERAL STUDENT AID

Español | Contact Us | Privacy Policy | Site Map | Logout

[ ]  Search

**HOME    YOUR ACCOUNT   |   QUESTION CENTER    FORMS**

**View Account Information**
Account Summary
Payment History
Loan Consolidation Status
Payoff Amount
1098-E Tax Information
Electronic Promissory
Note/Agreement to Serve
Electronic Mailbox
**Manage Your Account**
Update Your Information
Consolidate Your Loans
Electronic Mail Services
Deferment Request
Forbearance Request
Change Repayment Plan
Change Payment Due Date
**Electronic Payment Methods**
Make Online Payment
Electronic Debit Account (EDA)
**Tools & Planning**
Entrance Counseling
Exit Counseling
Repayment Estimator
Interest Capitalization Estimator
Budget Calculator

## Direct Loan Exit Counseling

‹ Back    Page 2 of 19    Next ›

### Direct Loan Balances

This page and the one following give information about your total school loan indebtedness, including any loans you have that are not Direct Loans. This first page shows your total Direct Loans borrowing. The next page gives details about your other loans.

| Loan Year | Original Balance | Principal Balance | Interest Outstanding | Interest Rate | School Attended |
|---|---|---|---|---|---|
| Loan ID: *****6319S09G02968001 - Subsidized Student Loan | | | | | |
| 2008-2009 | $2,625.00 | $2,625.00 | $0.00 | 6 | ST AUGUSTINES COLLEGE |
| Loan ID: *****6319U09G02968001 - Unsubsidized Student Loan | | | | | |
| 2008-2009 | $5,250.00 | $5,250.00 | $143.67 | 6.8 | ST AUGUSTINES COLLEGE |
| Loan ID: *****6319U09G02968002 - Unsubsidized Student Loan | | | | | |
| 2008-2009 | $4,600.00 | $4,600.00 | $125.89 | 6.8 | ST AUGUSTINES COLLEGE |
| Loan ID: *****6319S08G02968001 - Subsidized Student Loan | | | | | |
| 2007-2008 | $5,500.00 | $5,500.00 | $0.00 | 6.8 | ST AUGUSTINES COLLEGE |
| Loan ID: *****6319U08G02968001 - Unsubsidized Student Loan | | | | | |
| 2007-2008 | $5,000.00 | $5,000.00 | $478.95 | 6.3 | ST AUGUSTINES COLLEGE |
| Loan ID: *****6319S07G02968001 - Subsidized Student Loan | | | | | |
| 2006-2007 | $3,500.00 | $3,500.00 | $0.00 | 6.8 | ST AUGUSTINES COLLEGE |
| Loan ID: *****6319S06G02968001 - Subsidized Student Loan | | | | | |
| 2005-2006 | $3,500.00 | $3,500.00 | $0.00 | 3.61 | ST AUGUSTINES COLLEGE |
| Loan ID: *****6319U06G02968001 - Unsubsidized Student Loan | | | | | |
| 2005-2006 | $4,000.00 | $4,000.00 | $757.34 | 3.61 | ST AUGUSTINES COLLEGE |
| Loan ID: *****6319S05G02968001 - Subsidized Student Loan | | | | | |
| 2004-2005 | $2,625.00 | $2,625.00 | $0.00 | 3.61 | ST AUGUSTINES COLLEGE |
| Loan ID: *****6319S04G02968001 - Subsidized Student Loan | | | | | |

**Your Progress**
Welcome to Exit Counseling
Direct Loan Balances
Non-Direct Loans
Interest Rates
Entering Repayment
Your Repayment Plans
Billing Methods and Making Payments
Monthly Due Date
Prepayment
Consequences of Default
Loan Consolidation
Deferments
Forbearances
Loan Discharge
Contacting Direct Loan
Direct Loan Servicing Web Site
Review These Common Terms
Congratulations! It's The Final Exam
The Quiz

Direct Loan Balances

| | | | | | |
|---|---|---|---|---|---|
| 2003-2004 | $2,625.00 | $2,625.00 | $0.00 | 3.61 | ST AUGUSTINES COLLEGE |
| Loan ID: *****6319U04G02968001 - Unsubsidized Student Loan | | | | | |
| 2003-2004 | $4,000.00 | $4,000.00 | $972.39 | 3.61 | ST AUGUSTINES COLLEGE |
| Totals | $43,225.00 | $43,225.00 | $2,478.24 | N/A | N/A |

Remember:

- This page displays information about Direct Loans you have outstanding.

- To view the definitions for the terms displayed on this page, Click here.


‹‹ Back · | Page 2 of 19 | ‹Next ›

An official website of the United States government.

Federal Student Aid

KNOWLEDGE CENTER ⌄     TRAINING ⌄     FINANCIAL AID DELIVERY ⌄     TITLE IV PROGRAM ELIGIBILITY ⌄     PARTNER CONNECT SERVICES ⌄

Title IV Participation Application

# Title IV Participation Application

Postsecondary institutions use the E-App for designation as an eligible institution, initial participation, recertification, reinstatement, change in ownership, to update a current approval, or report information. Updates include changes such as, but not limited to, name or address change, new location or program, increased level of offering, change of officials, or mailing address for publications.

## 📄 Pre-Eligibility Application

To participate in federal student financial aid programs (Title IV, HEA) as an eligible institution or as an eligible non-participating institution, institutions must apply and receive approval. Some institutions apply only for designation as an eligible non-participating institution so their students may receive deferments on FSA program loans or be eligible for tax credits or other non-Title IV programs that require institutions to be FSA-eligible.

Before beginning to participate in the FSA programs, a school should familiarize itself with FSA Program requirements, the administrative and other requirements that it will have to fulfill, including tracking student and program eligibility. Some of these requirements require substantial lead-time, so a school should begin planning for implementation as soon as possible. Once it begins participating in the FSA programs, a school must continue to meet certain academic, financial, and administrative standards. The applicable federal regulations are 34 CFR Parts 600 ☑ & 668 ☑.

Institutions are also strongly encouraged to watch the Training Video: Applying for First-Time Approval to Participate in Title IV FSA Programs ☑ and to review the student financial assistance regulations regarding the requirements that must be satisfied before seeking approval to participate in the federal financial aid programs. To access the FSA training video, you will need an FSA Training Center account (username and password). Please note that your username and password for the FSA Training Center ☑ is not associated with your FSAID and password used to access other FSA systems.

The FSA Handbook Glossary is another helpful resource and defines terms and abbreviations that are related to the Title IV programs.

Click "Get Started" if you are an institution applying to participate in the FSA programs for the first time, an institution seeking to be reinstated, and/or an institution requesting designation as an eligible non-participating institution.

Get Started

## Help From Your School Participation Section

For help completing the E-App, please send an email to CaseTeams@ed.gov ✉.

For issues with your user ID or password, contact Partner Connect Customer Support via the Help Center.

## ⚡ Application to Participate in the Federal Student Financial Aid Programs (E-App)

Postsecondary institutions must complete and submit an Eligibility application to be approved to participate in the Federal Student Financial Aid Programs. Institutions must submit this application:

- to be initially certified
- to be approved following a change of ownership or structure
- to be recertified to continue participation
- to have eligibility reinstated
- to be designated as an eligible non-participating institution, or
- to update/report information.

Updates include changes such as, but not limited to, name or address change, new location or program, increased level of offering, change of officials, report a third-party servicer, Federal School Code Address change or update to Eligibility and Oversight Administrator.

Get Started

## Resources

ez-Audit

Submit Financial Statements and Compliance Audits

Foreign Gift and Contract Disclosures ☑

Report Foreign Gifts and Contracts

## Additional Information

### Paper Reduction Statement

OMB No. 1845-0012

Exp. Date 12/31/2025

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless such collection displays a valid OMB control number. Public reporting burden for this collection of information is estimated to average 17 hours per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. The obligation to respond to this collection is required to obtain or retain benefit (Higher Education Act of 1965, as amended (HEA)). Send comments regarding the burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Education, 400 Maryland Ave., SW, Washington, DC 20210-4537 or (TBD)

### Privacy Act Disclosure Notice

Thank you for visiting our Web site. Postsecondary institutions use the E-APP to apply for designation as an eligible institution, initial participation, recertification, reinstatement, or continued approval after a change in ownership, or to update a current approval. Updates include changes such as, but not limited to, name or address change, new location or program, increased level of offering, change of officials, or mailing address for publications. This includes information about the school's name, address, locations, programs, officials, authorizing agencies, owners and servicers. We only collect information that we need to determine if the institution is eligible, and if applicable, certified to participate in the Title IV, HEA programs. The information that is being requested is mandated by the Higher Education Act and Title 31 as amended by Section 31001 of Public Law 104-134 of the Debt Collection Improvement Act of 1996. Section 498A(a)(3) of the HEA requires the Secretary to establish a central database of information on institutional accreditation, eligibility, and certification that includes all information available to the Department. Section 498A(c) instructs the Secretary to make this information available to all institutions of higher education, guaranty agencies, states, and other organizations participating in the programs authorized under Title IV of the HEA. Please note: the Application requests the Social Security numbers (SSNs) of the owners of the institution. The SSNs are used to determine institutional eligibility and to verify identities. The SSNs are collected under the authority of the Debt Collection Improvement Act of 1996, Pub. L. 104-134. This act requires Federal agencies to secure the TIN (the Social Security Number, for individuals) of persons "doing business with the agency," a term that includes being "in a relationship with the agency that may give rise to a receivable due that agency." 31 U.S.C. §7701(c)(1), (2)(E).

| KNOWLEDGE CENTER | FINANCIAL AID DELIVERY | TITLE IV PROGRAM ELIGIBILITY | STUDENT, PARENT, BORROWER ACCOUNTS | MORE INFO |
|---|---|---|---|---|
| Knowledge Center Home | Application & Verification | Title IV Participation Application | Account Search | About This Site |
| FSA Handbook | Calculating Awards & Packaging | Third-Party Servicers | Data Range Search | Data Center |
| Knowledge Center FAQs | Origination & Disbursement | Guaranty Agency Program Review | Record ID Search | Help Center |
| | Campus-Based Processing | Audit Submissions | | Feedback Center |
| TRAINING | Return of Title IV Funds | eCDR Appeals | PARTNER PROFILES | Important Dates |
| Training Resources | National Student Loan Data System (NSLDS) | Cybersecurity | School Search | Helpful Links |
| FSA Training Conference | Reconciliation & Closeout | School Closure | School Third-Party Servicer Search | |
| Financial Aid Toolkit | Default Prevention & Management | | | |
| | Federal Student Aid Systems & Services Enrollment Information | | ADDITIONAL RESOURCES | |
| | | | Reports | |
| | | | Case Management | |

Federal Student Aid

🏛 An official website of the United States government.

Federal**Student**Aid |

KNOWLEDGE CENTER ⌄    TRAINING ⌄    FINANCIAL AID DELIVERY ⌄    TITLE IV PROGRAM ELIGIBILITY ⌄    PARTNER CONNECT SERVICES ⌄

Third-Party Servicers

# Third-Party Servicers

The Third-Party Servicer Inquiry Form is an OMB-approved data collection tool utilized to obtain information needed to validate third-party servicer information reported to the Department by institutions, as well as to collect additional information from third-party servicers needed for effective oversight.

A third-party servicer is an entity or individual that administers any aspect of an institution's participation in the Title IV programs, including, but not limited to, services and functions necessary:

- For the institution to remain eligible to participate in the Title IV programs
- To determine a student's eligibility for Title IV funds,
- To account for Title IV funds,
- To deliver Title IV funds to students, or
- To perform any other aspect of the administration of the Title IV programs.

## Third-Party Servicer Data Inquiry Form

Entities or individuals that meet the definition of a third-party servicer are required to submit the Third-Party Servicer Inquiry Form to the Department. Third-Party Servicers are required to update information provided on the Third-Party Servicer Inquiry Form within 10 days of the date that:

- The servicer changes its name;
- The servicer changes the address or contact information for its primary location or additional location;
- The servicer adds or terminates a contract with an eligible Title IV institution; or
- The servicer buys, sells, or merges with another third-party servicer.

Get Started

## Help From the School Participation Section

For help with completing the Third-Party Servicer Inquiry Form, please send your questions to CaseTeams@ed.gov⊖.

For issues with your user ID or password, contact Partner Connect Customer Support via Help Center.

## Resources

ez-Audit
Submit Annual Compliance Audits

## Additional Information

## Paperwork Reduction Statement

OMB CONTROL NUMBER: 1845-0130
EXPIRATION DATE: 02/28/2026

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless such collection displays a valid OMB control number. The valid OMB control number for this information collection is 1845-0130. Public reporting burden for this collection of information is estimated to average 75 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. The obligation to respond to this collection is required to retain the benefit of contract

with eligible institutions pursuant to 34 C.F.R. § 668.25. If you have comments or concerns regarding the status of your individual submission of this form, please contact the Third Party Servicer Oversight Group directly at (816) 268-0543 or fsarc3rdpartyserviceroversight@ed.gov

## Privacy Act Disclosure Notice

Thank you for visiting our Web site. Postsecondary institutions use the E-APP to apply for designation as an eligible institution, initial participation, recertification, reinstatement, or continued approval after a change in ownership, or to update a current approval. Updates include changes such as, but not limited to, name or address change, new location or program, increased level of offering, change of officials, or mailing address for publications. This includes information about the school's name, address, locations, programs, officials, authorizing agencies, owners and servicers. We only collect information that we need to determine if the institution is eligible, and if applicable, certified to participate in the Title IV, HEA programs. The information that is being requested is mandated by the Higher Education Act and Title 31 as amended by Section 31001 of Public Law 104-134 of the Debt Collection Improvement Act of 1996. Section 498A(a)(3) of the HEA requires the Secretary to establish a central database of information on institutional accreditation, eligibility, and certification that includes all information available to the Department. Section 498A(c) instructs the Secretary to make this information available to all institutions of higher education, guaranty agencies, states, and other organizations participating in the programs authorized under Title IV of the HEA. Please note: the Application requests the Social Security numbers (SSNs) of the owners of the institution. The SSNs are used to determine institutional eligibility and to verify identities. The SSNs are collected under the authority of the Debt Collection Improvement Act of 1996, Pub. L. 104-134. This act requires Federal agencies to secure the TIN (the Social Security Number, for individuals) of persons "doing business with the agency," a term that includes being "in a relationship with the agency that may give rise to a receivable due that agency." 31 U.S.C. §7701(c)(1), (2)(E).

**KNOWLEDGE CENTER**

Knowledge Center Home
FSA Handbook
Knowledge Center FAQs

**TRAINING**

Training Resources
FSA Training Conference
Financial Aid Toolkit

**FINANCIAL AID DELIVERY**

Application & Verification
Calculating Awards & Packaging
Origination & Disbursement
Campus-Based Processing
Return of Title IV Funds
National Student Loan Data System (NSLDS)
Reconciliation & Closeout
Default Prevention & Management
Federal Student Aid Systems & Services Enrollment Information

**TITLE IV PROGRAM ELIGIBILITY**

Title IV Participation Application
Third-Party Servicers
Guaranty Agency Program Review
Audit Submissions
eCDR Appeals
Cybersecurity
School Closure

**STUDENT, PARENT, BORROWER ACCOUNTS**

Account Search
Data Range Search
Record ID Search

**PARTNER PROFILES**

School Search
School Third-Party Servicer Search

**ADDITIONAL RESOURCES**

Reports
Case Management

**MORE INFO**

About This Site
Data Center
Help Center
Feedback Center
Important Dates
Helpful Links

Federal Student Aid

FOIA | Privacy | Security | Notices | USA.gov | Ed.gov



## UNITED STATES DEPARTMENT OF EDUCATION

### FEDERAL STUDENT AID
### SCHOOL ELIGIBILITY AND OVERSIGHT SERVICE GROUP

# PROGRAM PARTICIPATION AGREEMENT

**Effective Date of Approval:** The date on which this Agreement is signed on behalf of the Secretary of Education

**Approval Expiration Date:** Month, Date, Year

**Reapplication Date:** Month, Date, Year

**Name of Institution:** ABC Institution

**Address of Institution:** Street Address, City, State, Zip Code + 4

**OPE ID Number:** XXXXXX00

**Taxpayer Identification Number (TIN):** XXXXXXXXX

> **The execution of this Agreement by the Institution and the Secretary is a prerequisite to the Institution's initial or continued participation in any Title IV, HEA Program.**

The postsecondary educational institution listed above, referred to hereafter as the "Institution," and the United States Secretary of Education, referred to hereafter as the "Secretary," agree that the Institution may participate in those student financial assistance programs authorized by Title IV of the Higher Education Act of 1965, as amended (Title IV, HEA Programs) indicated under this Agreement and further agrees that such participation is subject to the Institution's compliance with the terms and conditions set forth in this Agreement. As used in this Agreement, the term "Department" refers to the U.S. Department of Education.

# SCOPE OF COVERAGE

This Agreement applies to all locations of the Institution as stated on the most current ELIGIBILITY AND CERTIFICATION APPROVAL REPORT issued by the Department. This Agreement covers the Institution's eligibility to participate in each of the following listed Title IV, HEA programs, and incorporates by reference the regulations cited.

- **FEDERAL PELL GRANT PROGRAM,** 20 U.S.C. §§ 1070a *et seq.*; 34 C.F.R. Part 690.

- **FEDERAL FAMILY EDUCATION LOAN PROGRAM,** 20 U.S.C. §§ 1071 *et seq.*; 34 C.F.R. Part 682.

- **FEDERAL DIRECT STUDENT LOAN PROGRAM,** 20 U.S.C. §§ 1087a *et seq.*; 34 C.F.R. Part 685.

- **FEDERAL PERKINS LOAN PROGRAM,** 20 U.S.C. §§ 1087aa *et seq.*; 34 C.F.R. Part 674.

- **FEDERAL SUPPLEMENTAL EDUCATIONAL OPPORTUNITY GRANT PROGRAM,** 20 U.S.C. §§ 1070b *et seq.*; 34 C.F.R. Part 676.

- **FEDERAL WORK-STUDY PROGRAM,** 20 U.S.C. §§ 1087 *et seq.*; 34 C.F.R. Part 675.

- **IRAQ AND AFGHANISTAN SERVICE GRANT,** §§ 1070h *et seq.*

# GENERAL TERMS AND CONDITIONS

1. The Institution understands and agrees that it is subject to and will comply with, as they become effective, the program statutes and implementing regulations for institutional eligibility as set forth in 34 C.F.R. Part 600 and for each Title IV, HEA program in which it participates, as well as the general provisions set forth in Part F and Part G of Title IV of the HEA, and the Student Assistance General Provisions regulations set forth in 34 C.F.R. Part 668.

   *The recitation of any portion of the statute or regulations in this Agreement does not limit the Institution's obligation to comply with other applicable statutes and regulations.*

2.

   a. The Institution certifies that on the date it signs this Agreement, it has adopted and implemented the drug prevention program described in 34 C.F.R. § 86.100.
   b. The Institution certifies that on the date it signs this Agreement, it is in compliance with the disclosure requirements of Section 485(f) of the HEA (Campus Security Policy and Campus Crime Statistics).

3. The Institution agrees to comply with --

   a. Title VI of the Civil Rights Act of 1964, as amended, and the implementing regulations, 34 C.F.R. Parts 100 and 101 (nondiscrimination on the basis of race, color or national origin);
   b. Title IX of the Education Amendments of 1972 and the implementing regulations, 34 C.F.R. Part 106 (nondiscrimination on the basis of sex);
   c. The Family Educational Rights and Privacy Act of 1974 and the implementing regulations, 34 C.F.R. Part 99;
   d. Section 504 of the Rehabilitation Act of 1973 and the implementing regulations, 34 C.F.R. Part 104 (nondiscrimination on the basis of disability); and
   e. The Age Discrimination Act of 1975 and the implementing regulations, 34 C.F.R. Part 110.
   f. The Standards for Safeguarding Customer Information, 16 C.F.R. Part 314, issued by the Federal Trade Commission (FTC), as required by the Gramm-Leach-Bliley (GLB) Act, P.L. 106-102. These Standards are intended to ensure the security and confidentiality of customer records and information. The Secretary considers any breach to the security of student records and information as a demonstration of a potential lack of administrative capability as stated in 34 C.F.R. § 668.16(c).

Institutions are strongly encouraged to inform its students of any such breaches. Institutions are required, pursuant to the Student Aid Internet Gateway (SAIG) Agreement, to notify the Department of any suspected data breaches.

4. The Institution acknowledges that 34 C.F.R. Parts 602 and 668 require accrediting agencies, State regulatory bodies, and the Secretary to share information about institutions. The Institution agrees that the Secretary, any accrediting agency recognized by the Secretary, and any State regulatory body may share or report information to one another about the Institution without limitation.

5. The Institution acknowledges that the HEA prohibits the Secretary from recognizing the accreditation of any institution of higher education unless that institution agrees to submit any dispute involving an adverse action, such as the final denial, withdrawal, or termination of accreditation to arbitration prior to initiating any other legal action.

6. The Institution acknowledges that the Department is obligated to take appropriate measures in order to safeguard its systems and information as well as borrowers' personally identifiable information (PII) as required under Federal law, including but not limited to the requirements in the Privacy Act (*see* 5 U.S.C. § 552a(e)), E-Government Act of 2002 (*see* 44 U.S.C. § 3544), the Family Educational Rights and Privacy Act of 1974 (FERPA) (20 U.S.C. § 1232g; 34 C.F.R. Part 99), Federal Information Security Modernization Act of 2014 (44 U.S.C. § 3551, *et seq.*), and OMB Circular No. A-130. If the Institution has a cyber security incident that may negatively affect the Department's systems, the Department may terminate the Institution's access to the Department's systems. Access will be reconnected when the Department determines that the Institution has resolved any cyber security concerns and vulnerabilities to the Department's satisfaction.

7. The Institution acknowledges that any person who knowingly and willfully commits, or attempts to commit, any criminal action described in 20 U.S.C. § 1097, shall be subject to the penalties described therein.

# SELECTED PROVISIONS FROM
# GENERAL PROVISIONS REGULATIONS, 34 C.F.R. § 668.14

An institution's program participation agreement applies to each branch campus and other location of the institution that meets the applicable requirements of this part unless otherwise specified by the Secretary.
(b) By entering into a program participation agreement, an institution agrees that—
(1) It will comply with all statutory provisions of or applicable to Title IV of the HEA, all applicable regulatory provisions prescribed under that statutory authority, and all applicable special arrangements, agreements, and limitations entered into under the authority of statutes applicable to Title IV of the HEA, including the requirement that the institution will use funds it receives under any Title IV, HEA program and any interest or other earnings thereon, solely for the purposes specified in and in accordance with that program;
(2) As a fiduciary responsible for administering Federal funds, if the institution is permitted to request funds under a Title IV, HEA program advance payment method, the institution will time its requests for funds under the program to meet the institution's immediate Title IV, HEA program needs;
(3) It will not request from or charge any student a fee for processing or handling any application, form, or data required to determine a student's eligibility for, and amount of, Title IV, HEA program assistance;
(4) It will establish and maintain such administrative and fiscal procedures and records as may be necessary to ensure proper and efficient administration of funds received from the Secretary or from students under the Title IV, HEA programs, together with assurances that the institution will provide, upon request and in a

timely manner, information relating to the administrative capability and financial responsibility of the institution to--

(i) The Secretary;

(ii) A guaranty agency, as defined in 34 C.F.R. Part 682, that guarantees loans made under the Federal Stafford Loan and Federal PLUS programs for attendance at the institution or any of the institution's branch campuses or other locations;

(iii) The nationally recognized accrediting agency that accredits or preaccredits the institution or any of the institution's branch campuses, other locations, or educational programs;

(iv) The State agency that legally authorizes the institution and any branch campus or other location of the institution to provide postsecondary education; and

(v) In the case of a public postsecondary vocational educational institution that is approved by a State agency recognized for the approval of public postsecondary vocational education, that State agency;

(5) It will comply with the provisions of subpart L of this part relating to factors of financial responsibility;

(6) It will comply with the provisions of 34 C.F.R. § 668.16 relating to standards of administrative capability;

(7) It will submit reports to the Secretary and, in the case of an institution participating in the Federal Stafford Loan, Federal PLUS, or the Federal Perkins Loan Program, to holders of loans made to the institution's students under that program at such times and containing such information as the Secretary may reasonably require to carry out the purpose of the Title IV, HEA programs;

(8) It will not provide any statement to any student or certification to any lender in the case of an FFEL Program loan, or origination record to the Secretary in the case of a Direct Loan Program loan that qualifies the student or parent for a loan or loans in excess of the amount that the student or parent is eligible to borrow in accordance with sections 425(a), 428(a)(2), 428(b)(1)(A) and (B), 428B, 428H, and 455(a) of the HEA;

(9) It will comply with the requirements of Subpart D of this part concerning institutional and financial assistance information for students and prospective students;

(10) In the case of an institution that advertises job placement rates as a means of attracting students to enroll in the institution, the institution will make available to prospective students, at or before the time that those students apply for enrollment--

(i) The most recent available data concerning employment statistics, graduation statistics, and any other information necessary to substantiate the truthfulness of the advertisements; and

(ii) Relevant State licensing requirements of the State in which the institution is located for any job for which the course of instruction is designed to prepare such prospective students, as provided in 34 C.F.R. § 668.43(a)(5)(v);

(11) In the case of an institution participating in the FFEL Program, the institution will inform all eligible borrowers, as defined in 34 C.F.R. Part 682, enrolled in the institution about the availability and eligibility of those borrowers for State grant assistance from the State in which the institution is located, and will inform borrowers from another State of the source of further information concerning State grant assistance from that State;

(12) It will provide the certifications described in paragraph (c) of this section;

(13) In the case of an institution whose students receive financial assistance pursuant to section 484(d) of the HEA, the institution will make available to those students a program proven successful in assisting students in obtaining the recognized equivalent of a high school diploma;

(14) It will not deny any form of Federal financial aid to any eligible student solely on the grounds that the student is participating in a program of study abroad approved for credit by the institution;

(15) (i) Except as provided under paragraph (b)(15)(ii) of this section, the institution will use a default management plan approved by the Secretary with regard to its administration of the FFEL or Direct Loan programs, or both for at least the first two years of its participation in those programs, if the institution --

(A) Is participating in the FFEL or Direct Loan programs for the first time; or

(B) Is an institution that has undergone a change of ownership that results in a change in control and is participating in the FFEL or Direct Loan programs.

(ii) The institution does not have to use an approved default management plan if --

(A) The institution, including its main campus and any branch campus, does not have a cohort default rate in excess of 10 percent; and

(B) The owner of the institution does not own and has not owned any other institution that had a cohort

default rate in excess of 10 percent while that owner owned the institution.

(16) For a proprietary institution, the institution will derive at least 10 percent of its revenues for each fiscal year from sources other than Federal funds, as provided in 34 C.F.R. § 668.28(a), or be subject to sanctions described in 34 C.F.R. § 668.28(c);

(17) The Secretary, guaranty agencies, and lenders as defined in 34 C.F.R. part 682, nationally recognized accrediting agencies, Federal agencies, State agencies recognized under 34 C.F.R. Part 603 for the approval of public postsecondary vocational education, State agencies that legally authorize institutions and branch campuses or other locations of institutions to provide postsecondary education, and State attorneys general have the authority to share with each other any information pertaining to the institution's eligibility for or participation in the Title IV, HEA programs or any information on fraud, abuse, or other violations of law;

(18) It will not knowingly --

(i) Employ in a capacity that involves the administration of the Title IV, HEA programs or the receipt of funds under those programs, an individual who has been:

(A) Convicted of, or has pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds;

(B) Administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(C) An owner, director, officer, or employee who exercised substantial control over an institution, or a direct or indirect parent entity of an institution, that owes a liability for a violation of a title IV, HEA program requirement and is not making payments in accordance with an agreement to repay that liability; or

(D) A ten-percent-or-higher equity owner, director, officer, principal, executive, or contractor at an institution in any year in which the institution incurred a loss of Federal funds in excess of 5 percent of the participating institution's annual title IV, HEA program funds; or

(ii) Contract with any institution, third-party servicer, individual, agency, or organization that has, or whose owners, officers or employees have--

(A) Been convicted of, or pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds;

(B) Been administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(C) Had its participation in the title IV programs terminated, certification revoked, or application for certification or recertification for participation in the title IV programs denied;

(D) Been an owner, director, officer, or employee who exercised substantial control over an institution, or a direct or indirect parent entity of an institution, that owes a liability for a violation of a title IV, HEA program requirement and is not making payments in accordance with an agreement to repay that liability; or

(E) Been a 10 percent-or-higher equity owner, director, officer, principal, executive, or contractor affiliated with another institution in any year in which the other institution incurred a loss of Federal funds in excess of 5 percent of the participating institution's annual title IV, HEA program funds;

(19) It will complete, in a timely manner and to the satisfaction of the Secretary, surveys conducted as a part of the Integrated Postsecondary Education Data System (IPEDS) or any other Federal collection effort, as designated by the Secretary, regarding data on postsecondary institutions;

(20) In the case of an institution that is co-educational and has an intercollegiate athletic program, it will comply with the provisions of 34 C.F.R.§ 668.48;

(21) It will not impose any penalty, including, but not limited to, the assessment of late fees, the denial of access to classes, libraries, or other institutional facilities, or the requirement that the student borrow additional funds for which interest or other charges are assessed, on any student because of the student's inability to meet his or her financial obligations to the institution as a result of the delayed disbursement of the proceeds of a Title IV, HEA program loan due to compliance with statutory and regulatory requirements of or applicable to the Title IV, HEA programs, or delays attributable to the institution;

(22) (i) It will not provide any commission, bonus, or other incentive payment based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid, to any person or entity who is engaged in any student recruitment or admission activity, or in making decisions regarding the award of Title IV, HEA program funds.(A) The restrictions in paragraph (b)(22) of this section do not apply to the recruitment of foreign students residing in foreign countries who are not eligible to receive Federal student

assistance.

(B) For the purpose of paragraph (b)(22) of this section, an employee who receives multiple adjustments to compensation in a calendar year and is engaged in any student enrollment or admission activity or in making decisions regarding the award of Title IV, HEA program funds is considered to have received such adjustments based upon success in securing enrollments or the award of financial aid if those adjustments create compensation that is based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid.

(ii) Notwithstanding paragraph (b)(22)(i) of this section, eligible institutions, organizations that are contractors to eligible institutions, and other entities may make—

(A) Merit-based adjustments to employee compensation provided that such adjustments are not based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid; and

(B) Profit-sharing payments so long as such payments are not provided to any person or entity engaged in student recruitment or admission activity or in making decisions regarding the award of Title IV, HEA program funds.

(iii) As used in paragraph (b)(22) of this section,

(A) *Commission, bonus, or other incentive payment* means a sum of money or something of value, other than a fixed salary or wages, paid to or given to a person or an entity for services rendered.

(B) *Securing enrollments or the award of financial aid* means activities that a person or entity engages in at any point in time through completion of an educational program for the purpose of the admission or matriculation of students for any period of time or the award of financial aid to students.

(1) These activities include contact in any form with a prospective student, such as, but not limited to—contact through preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution, attendance at such an appointment, or involvement in a prospective student's signing of an enrollment agreement or financial aid application.

(2) These activities do not include making a payment to a third party for the provision of student contact information for prospective students provided that such payment is not based on—

(i) Any additional conduct or action by the third party or the prospective students, such as participation in preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution or attendance at such an appointment, or the signing, or being involved in the signing, of a prospective student's enrollment agreement or financial aid application; or

(ii) The number of students (calculated at any point in time of an educational program) who apply for enrollment, are awarded financial aid, or are enrolled for any period of time, including through completion of an educational program.

(C) *Entity or person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid* means—

(1) With respect to an entity engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any institution or organization that undertakes the recruiting or the admitting of students or that makes decisions about and awards Title IV, HEA program funds; and

(2) With respect to a person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any employee who undertakes recruiting or admitting of students or who makes decisions about and awards Title IV, HEA program funds, and any higher level employee with responsibility for recruitment or admission of students, or making decisions about awarding Title IV, HEA program funds.

(D) *Enrollment* means the admission or matriculation of a student into an eligible institution.

(23) It will meet the requirements established pursuant to Part H of Title IV of the HEA by the Secretary and nationally recognized accrediting agencies;

(24) It will comply with the requirements of 34 C.F.R. § 668.22;

(25) It is liable for all--

(i) Improperly spent or unspent funds received under the Title IV, HEA programs, including any funds administered by a third-party servicer; and

(ii) Returns of Title IV, HEA program funds that the institution or its servicer may be required to make;

(26) If an educational program offered by the institution on or after July 1, 2024, is required to prepare a student for gainful employment in a recognized occupation, the institution must—

(i) Establish the need for the training for the student to obtain employment in the recognized occupation for which the program prepares the student; and

(ii) Demonstrate a reasonable relationship between the length of the program and the entry level requirements for the recognized occupation for which the program prepares the student by limiting the number of hours in the program to the greater of—

(A) The required minimum number of clock hours, credit hours, or the equivalent required for training in the recognized occupation for which the program prepares the student, as established by the State in which the institution is located, if the State has established such a requirement or as established by any Federal agency; or

(B) Another State's required minimum number of clock hours, credit hours, or the equivalent required for training in the recognized occupation for which the program prepares the student, if the institution documents, with substantiation by a certified public accountant who prepares the institution's compliance audit report as required under §668.23 that—

*(1)* A majority of students resided in that State while enrolled in the program during the most recently completed award year;

*(2)* A majority of students who completed the program in the most recently completed award year were employed in that State; or

*(3)* The other State is part of the same metropolitan statistical area as the institution's home State and a majority of students, upon enrollment in the program during the most recently completed award year, stated in writing that they intended to work in that other State; and

(iii) Notwithstanding paragraph (a)(26)(ii) of this section, the program length limitation does not apply for occupations where the State entry level requirements include the completion of an associate or higher-level degree; or where the program is delivered entirely through distance education or correspondence courses;

(27) In the case of an institution participating in a Title IV, HEA loan program, the institution -- (i) Will develop, publish, administer, and enforce a code of conduct with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs in accordance with 34 C.F.R. § 601.21; and (ii) Must inform its officers, employees, and agents with responsibilities with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs annually of the provisions of the code required under paragraph (b)(27) of this section;

(28) For any year in which the institution has a preferred lender arrangement (as defined in 34 C.F.R. § 601.2(b)), it will at least annually compile, maintain, and make available for students attending the institution, and the families of such students, a list in print or other medium, of the specific lenders for loans made, insured, or guaranteed under Title IV of the HEA or private education loans that the institution recommends, promotes, or endorses in accordance with such preferred lender arrangement. In making such a list, the institution must comply with the requirements in 34 C.F.R. § 682.212(h) and 34 C.F.R. § 601.10;

(29) (i) It will, upon the request of an enrolled or admitted student who is an applicant for a private education loan (as defined in 34 C.F.R. § 601.2(b)), provide to the applicant the self-certification form required under 34 C.F.R. § 601.11(d) and the information required to complete the form, to the extent the institution possesses such information, including -- (A) The applicant's cost of attendance at the institution, as determined by the institution under part F of Title IV of the HEA;

(B) The applicant's estimated financial assistance, including amounts of financial assistance used to replace the expected family contribution as determined by the institution in accordance with Title IV, for students who have completed the Free Application for Federal Student Aid; and (C) The difference between the amounts under paragraphs (b)(29)(i)(A) and (29)(i)(B) of this section, as applicable. (ii) It will, upon the request of the applicant, discuss with the applicant the availability of Federal, State, and institutional student financial aid;

(30) The institution --

(i) Has developed and implemented written plans to effectively combat the unauthorized distribution of copyrighted material by users of the institution's network, without unduly interfering with educational and research use of the network, that include --

(A) The use of one or more technology-based deterrents;

(B) Mechanisms for educating and informing its community about appropriate versus inappropriate use of copyrighted material, including that described in 34 C.F.R. § 668.43(a)(10);

(C) Procedures for handling unauthorized distribution of copyrighted material, including disciplinary procedures; and

(D) Procedures for periodically reviewing the effectiveness of the plans to combat the unauthorized distribution of copyrighted materials by users of the institution's network using relevant assessment criteria. No particular technology measures are favored or required for inclusion in an institution's plans, and each institution retains the authority to determine what its particular plans for compliance with paragraph (b)(30) of this section will be, including those that prohibit content monitoring; and

(ii) Will, in consultation with the chief technology officer or other designated officer of the institution--

(A) Periodically review the legal alternatives for downloading or otherwise acquiring copyrighted material;

(B) Make available the results of the review in paragraph (b)(30)(ii)(A) of this section to its students through a Web site or other means; and

(C) To the extent practicable, offer legal alternatives for downloading or otherwise acquiring copyrighted material, as determined by the institution;

(31) The institution will submit a teach-out plan to its accrediting agency in compliance with 34 C.F.R. § 602.24(c) and the standards of the institution's accrediting agency. The institution will update its teach-out plan upon the occurrence of any of the following events:

(i) The Secretary initiates the limitation, suspension, or termination of the participation of an institution in any Title IV, HEA program under 34 C.F.R. § 600.41 or subpart G of this part or initiates an emergency action under 34 C.F.R. § 668.83.

(ii) The institution's accrediting agency acts to withdraw, terminate, or suspend the accreditation or preaccreditation of the institution.

(iii) The institution's State licensing or authorizing agency revokes the institution's license or legal authorization to provide an educational program.

(iv) The institution intends to close a location that provides 100 percent of at least one program.

(v) The institution otherwise intends to cease operations;

(32) In each State in which: the institution is located; students enrolled by the institution in distance education or correspondence courses are located, as determined at the time of initial enrollment in accordance with 34 CFR 600.9(c)(2); or for the purposes of paragraphs (b)(32)(i) and (ii) of this section, each student who enrolls in a program on or after July 1, 2024, and attests that they intend to seek employment, the institution must determine that each program eligible for title IV, HEA program funds—

(i) Is programmatically accredited if the State or a Federal agency requires such accreditation, including as a condition for employment in the occupation for which the program prepares the student, or is programmatically pre-accredited when programmatic pre-accreditation is sufficient according to the State or Federal agency;

(ii) Satisfies the applicable educational requirements for professional licensure or certification requirements in the State so that a student who enrolls in the program, and seeks employment in that State after completing the program, qualifies to take any licensure or certification exam that is needed for the student to practice or find employment in an occupation that the program prepares students to enter; and

(iii) Complies with all State laws related to closure, including record retention, teach-out plans or agreements, and tuition recovery funds or surety bonds;

(33) It will not withhold official transcripts or take any other negative action against a student related to a balance owed by the student that resulted from an error in the institution's administration of the title IV, HEA programs, or any fraud or misconduct by the institution or its personnel;

(34) Upon request by a student, the institution will provide an official transcript that includes all the credit or clock hours for payment periods—

(i) In which the student received title IV, HEA funds; and

(ii) For which all institutional charges were paid or included in an agreement to pay at the time the request is made; and

(35) It will not maintain policies and procedures to encourage, or that condition institutional aid or other student benefits in a manner that induces, a student to limit the amount of Federal student aid, including Federal loan funds, that the student receives, except that the institution may provide a scholarship on the condition that a student forego borrowing if the amount of the scholarship provided is equal to or greater than the amount of Federal loan funds that the student agrees not to borrow.

(c) In order to participate in any Title IV, HEA program (other than the LEAP and NEISP programs), the institution must certify that it--

(1) Has in operation a drug abuse prevention program that the institution has determined to be accessible to any officer, employee, or student at the institution; and

(2) (i) Has established a campus security policy in accordance with section 485(f) of the HEA; and

(ii) Has complied with the disclosure requirements of 34 C.F.R. § 668.47 as required by section 485(f) of the HEA.

(d) (1) The institution, if located in a State to which section 4(b) of the National Voter Registration Act (42 U.S.C. 1973gg-2(b)) does not apply, will make a good faith effort to distribute a mail voter registration form, requested and received from the State, to each student enrolled in a degree or certificate program and physically in attendance at the institution, and to make those forms widely available to students at the institution.

(2) The institution must request the forms from the State 120 days prior to the deadline for registering to vote within the State. If an institution has not received a sufficient quantity of forms to fulfill this section from the State within 60 days prior to the deadline for registering to vote in the State, the institution is not liable for not meeting the requirements of this section during that election year.

(3) This paragraph applies to elections as defined in Section 301(1) of the Federal Election Campaign Act of 1971 (2 U.S.C. 431(1)), and includes the election for Governor or other chief executive within such State.

...

(h) (1) A program participation agreement becomes effective on the date that the Secretary signs the agreement.

(2) A new program participation agreement supersedes any prior program participation agreement between the Secretary and the institution.

(i) (1) Except as provided in paragraphs (g) and (h) of this section, the Secretary terminates a program participation agreement through the proceedings in subpart G of this part. (2) An institution may terminate a program participation agreement.

(3) If the Secretary or the institution terminates a program participation agreement under paragraph (f) of this section, the Secretary establishes the termination date.

(j) An institution's program participation agreement automatically expires on the date that--

(l) The institution changes ownership that results in a change in control as determined by the Secretary under 34 C.F.R. Part 600; or

(2) The institution's participation ends under the provisions of 34 C.F.R. § 668.26(a)(1), (2), (4), or (7).

(k) An institution's program participation agreement no longer applies to or covers a location of the institution as of the date on which that location ceases to be a part of the participating institution.

## WILLIAM D. FORD FEDERAL DIRECT LOAN PROGRAM

If an institution participates in the William D. Ford Federal Direct Loan (Direct Loan) Program, the institution and its representatives shall comply with, as they become effective, the statute, guidelines, and regulations governing the Title IV, Part D, William D. Ford Federal Direct Loan Program as required by 20 U.S.C. §§ 1087a *et seq.* (Part C) and 34 C.F.R. Part 685.

The institution will:

1. Provide for the establishment and maintenance of a Direct Loan Program at the institution under which the institution will:

   Identify eligible students who seek student financial assistance in accordance with Section 484 of the HEA.

   Estimate the need of students as required under Title IV, Part F of the HEA.

Provide a certification statement of eligibility for students to receive loans that will not exceed the annual or aggregate limits, except the institution may exercise its authority, under exceptional circumstances identified by the Secretary, to refuse to certify a statement that permits a student to receive a loan, or certify a loan amount that is less than the student's determination of need, if the reason for such action is documented and provided in written form to a student.

Establish a schedule for disbursement of loan proceeds to meet the requirements of Section 428G of the HEA.

Reconcile institutional records with receipt and disbursement records on at least a monthly basis.

Provide timely and accurate information to the Secretary concerning 1) the status of students while in attendance, 2) any new information pertaining to student or parent borrowers of which the institution becomes aware after the student leaves the institution, and 3) student eligibility and need for Federal funds under Title IV, Part D of the HEA, at such times and in such manner as prescribed by the Secretary.

2. Comply with requirements established by the Secretary relating to student loan information with respect to the Direct Loan Program.

3. Implement a quality assurance system, as established by the Secretary and developed in consultation with institutions of higher education, to ensure that the institution is complying with program requirements and meeting program objectives.

4. Not charge any fees of any kind, regardless of how they are described, to student or parent borrowers for loan application, or origination activities (if applicable), or the provision and processing of any information necessary for a student or parent to receive a loan under Title IV, Part D of the HEA.

5. Comply with the provisions regarding student claims and disputes of 34 C.F.R. § 685.300(d) (borrower defense claims in an internal dispute process), (e) (class action bans), (f) (pre-dispute arbitration agreements), (g) (submission of arbitral records), (h) (submission of judicial records), and (i) (definitions).

6. Originate loans to eligible students and parents in accordance with the requirements of Title IV, Part D of the HEA and use funds advanced to it solely for that purpose.

7. Provide that the note or evidence of obligation of the loan shall be the property of the Secretary.

8. Comply with other provisions that the Secretary determines are necessary to protect the interests of the United States and to promote the purposes of Title IV, Part D of the HEA.

9. Accept responsibility and financial liability stemming from its failure to perform its functions under this Program Participation Agreement.

10. Accept responsibility and financial liability stemming from losses incurred by the Secretary for repayment of amounts discharged by the Secretary pursuant to 34 C.F.R. §§ 685.206, 685.214, 685.215, 685.216, and 685.222.

## CERTIFICATIONS REQUIRED FROM INSTITUTIONS

The Institution should refer to the regulations cited below. Signature on this Agreement provides for compliance with, as they become effective, the certification requirements under 34 C.F.R. Part 82, "New Restrictions on Lobbying," 34 C.F.R. Part 84, "Governmentwide Requirements for Drug-Free Workplace (Financial Assistance), 2 C.F.R. Part 180, Subpart C, "OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement)," 2 C.F.R. Part 3485, "Nonprocurement Debarment and Suspension," and 34 C.F.R. Part 86, "Drug and Alcohol Abuse Prevention." Breach of any of these certifications constitutes a breach of this Agreement.

# PART 1 CERTIFICATION REGARDING LOBBYING; DRUG-FREE WORKPLACE; DEBARMENT, SUSPENSION AND OTHER RESPONSIBILITY MATTERS; AND DRUG AND ALCOHOL ABUSE PREVENTION

### *1. Lobbying*

As required by Section 1352, Title 31 of the U.S. Code, and implemented at 34 C.F.R. Part 82, for persons entering into a Federal contract, grant or cooperative agreement over $100,000, as defined at 34 C.F.R. Part 82, §§ 82.105 and 82.110, the undersigned certifies, to the best of his or her knowledge and belief, that:

(1) No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

(2) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan, or cooperative agreement, the undersigned shall complete and submit Standard Form - LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3) The Institution shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subcontracts, subgrants and contracts under grants, loans, and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

### *2a. Drug-Free Workplace (Grantees Other Than Individuals)*

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart B, for recipients other than individuals, as defined at 34 C.F.R. Part 84, §§ 84.200 through 84.230 - The Institution certifies that it will or will continue to provide a drug-free workplace by:

(a) Publishing a drug-free workplace statement notifying employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in the grantee's

workplace and specifying the actions that will be taken against employees for violation of such prohibition;

(b) Establishing an on-going drug-free awareness program to inform employees about

    (1) The dangers of drug abuse in the workplace;

    (2) The Institution's policy of maintaining a drug-free workplace;

    (3) Any available drug counseling, rehabilitation, and employee assistance programs; and

    (4) The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

(c) Making it a requirement that each employee to be engaged in the performance of the grant be given a copy of the statement required by paragraph (a)

(d) Notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the grant, the employee will -

    (1) Abide by the terms of the statement, and

    (2) Notify the employer in writing if he or she is convicted for a violation of a criminal drug statute occurring in the workplace no more than five calendar days after such conviction;

(e) Notifying the agency, in writing, within 10 calendar days after receiving notice under this subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction. Employers of convicted employees must provide notice, including position title, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant;

(f) Taking one of the following actions, within 30 calendar days of receiving notice under subparagraph (d)(2), with respect to any employee who is so convicted -

    (1) Taking appropriate personnel action against such an employee, up to and including termination, consistent with the requirements of the Rehabilitation Act of 1972, as amended; or

    (2) Requiring such employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency;

(g) Making a good faith effort to continue to maintain a drug-free workplace through implementation of paragraphs (a), (b), (c), (d), (e), and (f).

### *2b. Drug-Free Workplace (Grantees Who Are Individuals)*

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart C, for recipients who are individuals, as defined at 34 C.F.R. Part 84, § 84.300 -

1. As a condition of the grant, the Institution certifies that it will not engage in the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance in conducting any activity related to the award; and

2. If any officer or owner of the Institution is convicted of a criminal drug offense resulting from a violation occurring during the conduct of any award activity, the Institution will report the conviction, in writing, within 10 calendar days of the conviction, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant.

### 3. Debarment, Suspension, and Other Responsibility Matters

As required by Executive Order 12549, Debarment and Suspension, and implemented at 2 C.F.R. Part 180, for prospective participants in primary covered transactions as defined at 2 C.F.R. Part 180, §§ 180.200 and 180.210, the Institution certifies that it and its principals (per 2 C.F.R. § 180.335):

(a) Are not presently debarred, suspended, proposed for debarment, voluntarily excluded, or disqualified;
(b) Have not within a three-year period preceding this application been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction; violation of Federal or State antitrust statutes, including those proscribing price fixing between competitors, allocation of customers between competitors, and bid rigging; commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, receiving stolen property, making false claims, or obstruction of justice; or commission of any other offense indicating a lack of business integrity or business honesty that seriously and directly affects their present responsibility.
(c) Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State, or local) with commission of any of the offenses enumerated in paragraph (b) of this certification; and
(d) Have not within a three-year period preceding this application had one or more public transactions (Federal, State, or local) terminated for cause or default.

### 4. Drug and Alcohol Abuse Prevention

As required by the Drug-Free Schools and Communities Act Amendments of 1989, which added section 1213 to the Higher Education Act, and implemented at 34 C.F.R. Part 86, the undersigned Institution certifies that it has adopted and implemented a drug prevention program for its students and employees that, at a minimum, includes--

1. The annual distribution in writing to each employee, and to each student who is taking one or more classes for any kind of academic credit except for continuing education units, regardless of the length of the student's program of study, of:

   • Standards of conduct that clearly prohibit, at a minimum, the unlawful possession, use, or distribution of illicit drugs and alcohol by students and employees on its property or as part of any of its activities.
   • A description of the applicable legal sanctions under local, State, or Federal law for the unlawful possession or distribution of illicit drugs and alcohol.
   • A description of the health risks associated with the use of illicit drugs and the abuse of alcohol.
   • A description of any drug or alcohol counseling, treatment, or rehabilitation or re-entry programs that are available to employees or students.

   A clear statement that the Institution will impose disciplinary sanctions on students and employees (consistent with local, State, and Federal law), and a description of those sanctions, up to and including expulsion or termination of employment and referral for prosecution, for violation of the standards of conduct. A disciplinary sanction may include the completion of an appropriate rehabilitation program.

2. A biennial review by the Institution of its program to:

- Determine its effectiveness and implement changes to the program if they are needed.
- Ensure that its disciplinary sanctions are consistently enforced.

## PART 2 CERTIFICATION REGARDING DEBARMENT, SUSPENSION, DISQUALIFICATION, AND VOLUNTARY EXCLUSION -- LOWER TIER COVERED TRANSACTIONS

The Institution is to obtain the signatures of Lower Tier Contractors on reproduced copies of the certification below, and retain the signed certification(s) in the Institution's files.

---

**CERTIFICATION BY LOWER TIER CONTRACTOR**
**(Before Completing Certification, Read Instructions for This Part, below)**

---

XXXXXX00 - ABC Institution, PPA Expiration Date: Month, Date, Year

(1) The prospective lower tier participant certifies by submission of this proposal that neither it nor its principals are presently debarred, suspended, proposed for debarment, voluntarily excluded, or disqualified from participation in this transaction by any Federal Department or Agency.

(2) Where the prospective lower tier participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

| | |
|---|---|
| Name of Lower Tier Organization | PR/Award Number or Project Name |
| Name of Authorized Representative | Title of Authorized Representative |
| Signature of Authorized Representative | Date |

1. By signing and submitting this proposal, the prospective lower tier participant is providing the certification set out below.

2. The certification in this clause is a material representation of fact upon which reliance was placed when this transaction was entered into. If it is later determined that the prospective lower tier participant knowingly rendered an erroneous certification, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

3. The prospective lower tier participant shall provide immediate written notice to the person to which this proposal is submitted if at any time the prospective lower tier participant learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

4. The terms "covered transaction," "debarred," "suspended," "disqualified," "lower tier covered transaction," "participant," "person," "primary covered transaction," "principal," "proposal," "voluntarily excluded," as used in this clause, have the meanings set out in the Definitions and Coverage sections of rules implementing Executive Order 12549. You may contact the person to whom this proposal is submitted for assistance in obtaining a copy of those regulations.

5. The prospective lower tier participant agrees by submitting this proposal that, should the proposed covered transaction be entered into, it shall not knowingly enter into any lower tier covered transaction with a person who is debarred, suspended, declared ineligible, or voluntarily excluded from participation in this covered transaction, unless authorized by the department or agency with which this transaction originated.

6. The prospective lower tier participant further agrees by submitting this proposal that it will include the clause titled "Certification Regarding Debarment, Suspension, Disqualification, and Voluntary Exclusion--Lower Tier Covered Transactions," without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions.

7. A participant in a covered transaction may rely upon a certification of a prospective participant in a lower tier covered transaction that is not debarred, suspended, disqualified, or voluntarily excluded from the covered transaction, unless it knows that the certification is erroneous. A participant may decide the method and frequency by which it determines the eligibility of its principals. Each participant may, but is not required to, check the Nonprocurement List.

8. Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of a participant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

9. Except for transactions authorized under paragraph 5 of these instructions, if a participant in a covered transaction knowingly enters into a lower tier covered transaction with a person who is suspended, debarred, disqualified, or voluntarily excluded from participation in this transaction, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

XXXXXX00 - ABC Institution, PPA Expiration Date: Month, Date, Year

NOTE: A completed copy of the "Certification Regarding Debarment, Suspension, Disqualification and Voluntary Exclusion--Lower Tier Covered Transactions" form must be retained by the Institution. The original blank certification must be returned with the PPA.

## IN WITNESS WHEREOF

the parties hereto have caused this Agreement to be executed by their duly authorized representatives.

Signature of Institution's Chief
Executive Officer
(CEO)/President/Chancellor:    _____    Date:    _____
Print Name and Title:    _____

For the Secretary:    _____    Date:    _____
U.S. Department of Education



OMB # 1845-0130
Form Approved
Exp. Date: 01/31/2018

## Third Party Servicer Data Form

| | |
|---|---|
| 1. What is the legal name of this company/organization? | |
| 2. Does the company/organization have another name such as a trade name or a d/b/a name, under which the company conducts business?<br><br>If yes, please provide the names(s): | ☐ Yes    ☐ No |
| 3. When did the company/organization begin conducting business as a third party servicer on behalf of Title IV, HEA institutions? | |
| 4. What name does the company/organization utilize to file its required annual compliance audit? | |
| 5. What is the company's/organization's fiscal year end date? | |
| 6. What is the company's/organization's Dun & Bradstreet (DUNS) number? | ☐ N/A |
| 7. Who are the owner/owners of this company/organization?  If you need more space, please use additional space provided on last page of form or attach an additional sheet and include the following for each owner:<br><br>Name:<br>Job Title:<br>Business Street Address:<br>City:<br>State and Zip: **Select**<br>Telephone Number (including area code xxx-xxx-xxxx):<br>Fax Number (including area code xxx-xxx-xxxx):<br>E-Mail Address: | |

For purposes of this form, company/organization refers to an individual or a state, or a private, profit, or non-profit organization that enters into a contract or agreement with an eligible institution to administer any aspect of the institution's participation in the Title IV programs.

8. Who is completing this form?

Name: (include prefix, such as Mr., Ms., Dr.)
Job Title:
Telephone Number: (including area code xxx-xxx-xxxx)
E-Mail Address:

9. Who is the highest ranking officer (CEO/COO/President) of this company/organization?

Name:
Job Title:
Business Street Address:
City:
State and Zip:  Select
Telephone Number: (including area code xxx-xxx-xxxx)
Fax Number:  (including area code xxx-xxx-xxxx)
E-Mail Address:

10. Does this company/organization have a web site (or home page) on the Internet?    ☐ Yes    ☐ No
If yes, list the electronic address (URL):

11. Whom should we contact at this company/organization should we have questions regarding information on this form or need to respond to an institutional inquiry?

Name: (include prefix, such as Mr., Ms., Dr.)
Job Title:
Telephone Number: (including area code xxx-xxx-xxxx)
Fax Number: (including area code xxx-xxx-xxxx)
E-Mail Address:

12. ☐  Check here if this company/organization maintains more than one physical location (mailing address, processing center, etc.) and provide the primary contact person, address, and phone number for each location occupied.  If you need more space, please use additional space provided on last page of form or attach an additional sheet and include the following for each entity:

Name:  (primary contact person, include specific prefix)
Street Address:
City:
State and Zip:    Select
Purpose of Location: (mailing address, processing center, etc.)

For purposes of this form, company/organization refers to an individual or a state, or a private, profit, or non-profit organization that enters into a contract or agreement with an eligible institution to administer any aspect of the institution's participation in the Title IV programs.

13. Identify the ownership structure of this company/organization:

☐ For Profit
    ☐ Corporation – Publicly Traded
    ☐ Corporation – Not Publicly Traded
    ☐ Partnership
    ☐ Sole Proprietorship

☐ Not for Profit
    ☐ State Owned Organization
    ☐ State Affiliated Organization
    ☐ Private, Not For Profit Organization

14. ☐ Check here if this company/organization owns or is owned by an eligible institution of Higher Education (regardless of percentage) and provide the name of the entity, primary contact person, phone number and e-mail below. If you need more space, please use additional space provided on last page of form or attach an additional sheet and include the following for each entity:

Institution/Organization Name:
Name: (primary contact's name, include prefix, such as Mr., Ms., Dr.)
Telephone Number: (including area code xxx-xxx-xxxx)
Fax Number: (including area code xxx-xxx-xxxx)
E-Mail Address:
Description of Relationship with the entity listed above:

15. ☐ Check here if this company/organization owns or is owned by another company/organization (regardless of percentage) and provide the name of the entity, primary contact person, phone number, and e-mail below. If you need more space, please use additional space provided on last page of form or attach an additional sheet and include the following for each entity:

Company/Corporation/Organization Name:
Name: (primary contact's name, include prefix, such as Mr., Ms., Dr.)
Telephone Number: (including area code xxx-xxx-xxxx)
Fax Number: (including area code xxx-xxx-xxxx)
E-Mail Address:
Description of Relationship with the entity listed above:

16. Please indicate the Title IV, HEA services this company/organization performs on behalf of its clients:

☐ Process student financial aid applications, including FAFSA or Pre-FAFSA completion services performed on behalf of an eligible institution
☐ Collect, review, and/or maintain supporting documentation required to process Title IV funds
☐ Determine student eligibility and related activities (R2T4, SAP, Verification, Professional Judgment, Dependency Override, etc.)
☐ Award, certify, originate, and/or disburse Title IV funds
☐ Delivery of Title IV credit balance refunds to students or parents (via cash, check, ACH, debit card, or other means)

For purposes of this form, company/organization refers to an individual or a state, or a private, profit, or non-profit organization that enters into a contract or agreement with an eligible institution to administer any aspect of the institution's participation in the Title IV programs.

☐ Prepare and/or certify request for advance or reimbursement funding
☐ Fiscal reconciliation of Title IV, HEA program accounts
☐ Provide entrance and exit loan counseling, including in person, by mail, or electronically
☐ Federal Perkins Loan servicing
☐ Federal Perkins Loan collections
☐ Financial aid counseling, including assistance provided to students or parents in person, over the phone, or by any electronic means, including operation of call centers
☐ Perform default prevention management functions for Direct Loan, FFEL, and/or Perkins Loan programs, including cohort default analysis, enhanced loan counseling, delinquency assistance, development/implementation of a default management plan, and/or other default prevention outreach activities
☐ Preparation/dissemination of required consumer information disclosures, including general, campus crime, drug and alcohol prevention, graduation rates, placement rates and gainful employment disclosures
☐ Preparation and or submission of required reports including enrollment reporting to NSLDS, IPEDS, Campus Crime and Security, and FISAP reporting
☐ Financial aid consulting, including financial aid staffing, interim management, processing support, and/or development and maintenance of written policies and procedures
☐ Other, please describe:

17. Provide the names and OPE ID numbers for each client for who this company/organization contracts with to perform any aspect of the institution's participation under the Title IV, HEA programs. If you need more space, please use additional space provided on last page of form or attach an additional sheet and include the following for each client:

| OPE ID | Name of College, University, Institution of Higher Education | Service Start Date | Service End Date |
|--------|-------------------------------------------------------------|--------------------|------------------|
|        |                                                             |                    |                  |
|        |                                                             |                    |                  |
|        |                                                             |                    |                  |
|        |                                                             |                    |                  |
|        |                                                             |                    |                  |
|        |                                                             |                    |                  |
|        |                                                             |                    |                  |
|        |                                                             |                    |                  |
|        |                                                             |                    |                  |
|        |                                                             |                    |                  |

For purposes of this form, company/organization refers to an individual or a state, or a private, profit, or non-profit organization that enters into a contract or agreement with an eligible institution to administer any aspect of the institution's participation in the Title IV programs.

| OPE ID | Name of College, University, Institution of Higher Education | Service Start Date | Service End Date |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

For purposes of this form, company/organization refers to an individual or a state, or a private, profit, or non-profit organization that enters into a contract or agreement with an eligible institution to administer any aspect of the institution's participation in the Title IV programs.

I hereby certify that, to the best of my knowledge and belief, all information in this document is true and correct. I understand that if my company/organization provides false or misleading information, the Department considers this to be a breach of the fiduciary standard of conduct and may terminate the servicer's eligibility to contract with any institution to administer any aspect of an institution's participation in the Title IV, HEA programs. I also understand that I may be subject to a fine of not more than $25,000 or imprisonment of not more than five years, or both, for misinformation that is material to receipt and stewardship of federal student financial aid funds.

**Signature of individual completing this form:**

**Date:**

**Signature of President/CEO/COO:**
**(include prefix, such as Mr., Ms., Dr.)**

**Date:**

**Please attach a copy of this company's organizational chart with employee names and titles of those individuals who serve in a managerial or supervisory role and return this form to:**

> **Third Party Servicer Oversight Group**
> **U.S. Department of Education**
> **Kansas City School Participation Division**
> **1010 Walnut Street; Suite 336**
> **Kansas City, MO 64106**
> **(816) 268-0543**
> **fsapc3rdpartyserviceroversight@ed.gov**

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless such collection displays a valid OMB control number. The valid OMB control number for this information collection is 1845-0130. Public reporting burden for this collection of information is estimated to average 75 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. The obligation to respond to this collection is required to retain the benefit to contract with eligible institutions pursuant to 34 C.F.R. § 668.25. If you have comments or concerns regarding the status of your individual submission of this form, please contact the Third Party Servicer Oversight Group directly at (816) 268-0543 or fsapc3rdpartyserviceroversight@ed.gov

For purposes of this form, company/organization refers to an individual or a state, or a private, profit, or non-profit organization that enters into a contract or agreement with an eligible institution to administer any aspect of the institution's participation in the Title IV programs.

| Additional space for questions: | | |
|---|---|---|
| Q1. | | |
| Q2. | | |
| Q3. | | |
| Q4. | | |

**18.**

| OPE ID | Name of College, University, Institution of Higher Education | Service Start Date | Service End Date |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Additional Clients:** 📌

For purposes of this form, company/organization refers to an individual or a state, or a private, profit, or non-profit organization that enters into a contract or agreement with an eligible institution to administer any aspect of the institution's participation in the Title IV programs.

**SUBMIT**

Exhibit 3

# NAVIENT.

Department of Education
Loan Servicing

PO BOX 9635
WILKES-BARRE, PA 18773-9635

JASON LONG
629 LAMONT ST NW
APT 2
WASHINGTON DC 20010-2571

## JASON, we've enclosed a copy of the documents you recently requested.

**We're here to help**
We want to help you manage your account in a way that's convenient for you. If you have any questions about your account or your options, visit us online or give us a call.

Enclosure(s):

Promissory Note

**Account number**
9646961359 - 1

**Date**
01/16/19

**Manage your account online**
Navient.com

**Contact us**
800-722-1300

Monday – Thursday,
8 a.m. – 9 p.m.
Friday, 8 a.m. – 8 p.m. Eastern

Save money with Auto Pay: You may be able to earn an interest rate reduction by enrolling in Auto Pay. To enroll, log in to Navient.com and change your payment settings. Check your online account for benefit eligibility.

Para comunicarse en Español con 'Atención al Cliente', llame gratis al (800) 722-1300, y marque el numero correspondiente.

09646961359105652099



K031          E56934          ED          3576

```
                            PUTCNSL
          CONSOLIDATION LOAN ORIGINATION HISTORY RECORD      CREATED: 12/14/2015
    PAGE: 001
Borrower: ▓▓▓▓▓▓        App: 8234210
```

SECTION 01:  BORROWER INFORMATION

```
BORROWER SSN: ▓▓▓▓▓▓           APPLICATION ID: 8234210
BORROWER NAME:  JASON LONG                                 DOB: 08/04/1984
ADDRESS: 629 LAMONT ST NW APT 2
```

CITY/STATE/ZIP: WASHINGTON, DC  20010
HOME PHONE: 202-421-4147 ALT PHONE: 000-000-0000
EMAIL:                          DRIVERS LICENSE:                DL
STATE:

```
*************************************************************************
***************************************
```

SECTION 02:  CO-BORROWER INFORMATION

CO-BORROWER: NO

```
*************************************************************************
***********************************
```

SECTION 03:  ENDORSER INFORMATION

ENDORSER: NO

```
*************************************************************************
*********************************
```

SECTION 04:  CONSOLIDATION LOAN INFORMATION

TOTAL AMOUNT CONSOLIDATED:    $63,942.13  LAST FUNDING DATE: 12/12/2013

```
AWARD ID: ▓▓▓▓▓▓4G77778101  GROSS:  $21,981.26   REBATE:    $306.00
LOAN TYPE: DIRECT SUBSIDIZED CONSOLIDATION LOAN
PAYMENT PLAN: INCOME CONTINGENT    FORCED ICR: Y  CRC: 201456
BOOKED DATE: 12/06/2013 INTEREST RATE: 5.125%  1st DISB DATE: 12/06/2013
```

| DISB NUM | DISB DATE | GROSS AMT | REBATE AMT | PROM NOTE ID |
|---|---|---|---|---|
| 001 | 12/06/2013 | $21,981.26 | $306.00 | 11880784 |

```
AWARD ID: ▓▓▓▓▓▓14G77778101  GROSS:  $41,960.87   REBATE:    $342.00
LOAN TYPE: DIRECT UNSUBSIDIZED CONSOLIDATION LOAN
PAYMENT PLAN: INCOME CONTINGENT    FORCED ICR: Y  CRC: 201466
BOOKED DATE: 12/06/2013 INTEREST RATE: 5.125%  1st DISB DATE: 12/06/2013
```

```
          CONSOLIDATION LOAN ORIGINATION HISTORY RECORD      CREATED:
12/14/2015      PAGE: 002
Borrower: ▓▓▓▓▓▓        App: 8234210
```

| DISB NUM | DISB DATE | GROSS AMT | REBATE AMT | PROM NOTE ID |
|---|---|---|---|---|
| 001 | 12/06/2013 | $41,960.87 | $342.00 | 11880785 |

```
*************************************************************************
*********************************
```

SECTION 05:  PROMISSORY NOTE INFORMATION

```
AWARD ID: ▓▓▓▓▓▓G77778101  DLCS LOAN NUMBER: 25171709
DLCS NOTE ID   NOTE TYPE   MAIL DATE   BORR SIGNED DT   CO-BORR SIGN DT   RECD
DATE
```

Page 1

```
                                      PUTCNSL
11880784      PAPER          N/A        10/08/2013
10/08/2013

AWARD ID:           14G77778101   DLCS LOAN NUMBER: 25171710
OLCS NOTE ID   NOTE TYPE   MAIL DATE   BORR SIGNED DT   CO-BORR SIGN DT   RECD
DATE
11880785      PAPER          N/A        10/08/2013
10/08/2013
```

****************************************************************************************
*************************************************

SECTION 06:  FUNDING HISTORY

| NUM DT FUNDED | LENDER ID-NAME | LOAN TYPE | AMOUNT |
|---|---|---|---|
| TYPE 1st DISB | FUND CK#/IDENT LN DISB | | |
| 001 12/06/2013 42625-U.S. DEPARTMENT OF EDUC | D-FED DIRECT STAFF/FORD L | | $ |
| 6,196.98 DISB 08/22/2007  FCA | S  01 | | |
| 002 12/06/2013 42625-U.S. DEPARTMENT OF EDUC | D-FED DIRECT STAFF/FORD L | | $ |
| 3,943.17 DISB 08/22/2006  FCA | S  01 | | |
| 003 12/06/2013 42625-U.S. DEPARTMENT OF EDUC | D-FED DIRECT STAFF/FORD L | | $ |
| 3,688.47 DISB 08/24/2005  FCA | S  01 | | |
| 004 12/06/2013 42625-U.S. DEPARTMENT OF EDUC | D-FED DIRECT STAFF/FORD L | | $ |
| 2,923.73 DISB 08/27/2008  FCA | S  01 | | |
| 005 12/06/2013 42625-U.S. DEPARTMENT OF EDUC | D-FED DIRECT STAFF/FORD L | | $ |
| 2,767.13 DISB 08/23/2004  FCA | S  01 | | |
| 006 12/06/2013 42625-U.S. DEPARTMENT OF EDUC | D-FED DIRECT STAFF/FORD L | | $ |
| 2,767.13 DISB 02/09/2004  FCA | S  01 | | |
| 007 12/12/2013 42625-U.S. DEPARTMENT OF EDUC | D-FED DIRECT STAFF/FORD L | | -$ |
| 39.74 ADJ  02/09/2004  FCA | S  01 | | |
| 008 12/12/2013 42625-U.S. DEPARTMENT OF EDUC | D-FED DIRECT STAFF/FORD L | | -$ |
| 39.74 ADJ  08/23/2004  FCA | S  01 | | |
| 009 12/12/2013 42625-U.S. DEPARTMENT OF EDUC | D-FED DIRECT STAFF/FORD L | | -$ |
| 39.96 ADJ  08/27/2008  FCA | S  01 | | |
| 010 12/12/2013 42625-U.S. DEPARTMENT OF EDUC | D-FED DIRECT STAFF/FORD L | | -$ |
| 51.86 ADJ  08/22/2006  FCA | S  01 | | |
| 011 12/12/2013 42625-U.S. DEPARTMENT OF EDUC | D-FED DIRECT STAFF/FORD L | | -$ |
| 51.93 ADJ  08/24/2005  FCA | S  01 | | |
| 012 12/12/2013 42625-U.S. DEPARTMENT OF EDUC | D-FED DIRECT STAFF/FORD L | | -$ |
| 82.12 ADJ  08/22/2007  FCA | S  01 | | |
| 013 12/06/2013 33332-SAINT AUGUSTINES COLLEG | F-FEDERAL PERKINS LOANS | | $ |
| 10,552.90 DISB 09/10/2004  EFT 000387811 U  01 | | | |
| 014 12/06/2013 42625-U.S. DEPARTMENT OF EDUC | L-FED DIRECT UNSUB STAFF/ | | $ |
| 7,342.71 DISB 08/22/2007  FCA | U  01 | | |
| 015 12/06/2013 42625-U.S. DEPARTMENT OF EDUC | L-FED DIRECT UNSUB STAFF/ | | $ |
| 7,251.09 DISB 08/27/2008  FCA | U  01 | | |
| 016 12/06/2013 42625-U.S. DEPARTMENT OF EDUC | L-FED DIRECT UNSUB STAFF/ | | $ |
| 6,354.61 DISB 08/27/2008  FCA | U  01 | | |
| 017 12/06/2013 42625-U.S. DEPARTMENT OF EDUC | L-FED DIRECT UNSUB STAFF/ | | $ |
| 5,517.18 DISB 02/09/2004  FCA | U  01 | | |
| 018 12/06/2013 42625-U.S. DEPARTMENT OF EDUC | L-FED DIRECT UNSUB STAFF/ | | $ |
| 5,284.33 DISB 08/24/2005  FCA | U  01 | | |
| 019 12/12/2013 42625-U.S. DEPARTMENT OF EDUC | L-FED DIRECT UNSUB STAFF/ | | -$ |
| 60.01 ADJ  02/09/2004  FCA | U  01 | | |
| 020 12/12/2013 42625-U.S. DEPARTMENT OF EDUC | L-FED DIRECT UNSUB STAFF/ | | -$ |
| 60.16 ADJ  08/24/2005  FCA | U  01 | | |
| 021 12/12/2013 42625-U.S. DEPARTMENT OF EDUC | L-FED DIRECT UNSUB STAFF/ | | -$ |
| 69.74 ADJ  08/27/2008  FCA | U  01 | | |

```
              CONSOLIDATION LOAN ORIGINATION HISTORY RECORD       CREATED:
12/14/2015     PAGE: 003
Borrower:              App: 8234210
```

Page

PUTCNSL

022 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  -$
73.94 ADJ  08/22/2007  FCA            U 01
023 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  |-$
78.10 ADJ  08/27/2008  FCA            U 01

*****************************************************************************
******************************************

SECTION 07:  APPLICATION DATA

APPLICATION REC'D DATE: 10/22/2013          SOURCE:  PAPER
IN.SCHOOL: NO                               E-SIGNED: NO
LOANS ON.APPLICATION:
NUM DATE ADDED  LENDER                      LOAN TYPE
INCLUDE?    AMOUNT    LVC SENT DATE  LND TYPE
001 10/25/2013  42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA    YES
    $ 50,000.00    10/25/2013      DL
002 10/25/2013  33332-SAINT AUGUSTINES COLLEGE   F-FEDERAL PERKINS LOANS        YES
    $ 7,740.00     10/29/2013      PL

*****************************************************************************
*********************************************

SECTION 08:  LOAN CERTIFICATIONS

NUM  DATE CERT    LENDER ID-NAME                  LOAN TYPE                   1ST
DISB     INT    TOT PAYOFF   DFLT SATISFIED
001  11/19/2013  33332-SAINT AUGUSTINES COLLEGE  F-FEDERAL PERKINS LOANS
09/10/2004  5.000%  $ 10,525.60  YES    NO
002  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT L-FED DIRECT UNSUB STAFF/FO
08/22/2007  6.800%  $ 7,299.91   NO     NO
003  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT L-FED DIRECT UNSUB STAFF/FO
08/27/2008  6.800%  $ 7,208.69   NO     NO
004  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT L-FED DIRECT UNSUB STAFF/FO
08/27/2008  6.800%  $ 6,317.81   NO     NO
005  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT D-FED DIRECT STAFF/FORD LOA
08/22/2007  6.800%  $ 6,155.78   NO     NO
006  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT L-FED DIRECT UNSUB STAFF/FO
02/09/2004  2.350%  $ 5,504.38   NO     NO
007  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT L-FED DIRECT UNSUB STAFF/FO
08/24/2005  2.350%  $ 5,271.93   NO     NO
008  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT D-FED DIRECT STAFF/FORD LOA
08/22/2006  6.800%  $ 3,917.17   NO     NO
009  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT D-FED DIRECT STAFF/FORD LOA
08/24/2005  2.350%  $ 3,679.67   NO     NO
010  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT D-FED DIRECT STAFF/FORD LOA
08/27/2008  6.000%  $ 2,906.53   NO     NO
011  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT D-FED DIRECT STAFF/FORD LOA
02/09/2004  2.350%  $ 2,760.73   NO     NO
012  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT D-FED DIRECT STAFF/FORD LOA
08/23/2004  2.350%  $ 2,760.73   NO     NO

LOAN CERTIFICATION CONT.
NUM   PRIN AMT     INTEREST AMT  LATE CHARGES COLL COSTS ACCOUNT NUMBER
CERT ID     STATUS        GRAD_DATE
001   $7,740.00    $354.75      $10.00     $2,420.85  ▓▓▓▓▓▓▓▓
61901641   IN REPAYMENT  05/15/2009
002   $5,847.44    $1,452.47    $0.00      $0.00  ▓▓▓▓▓▓▓▓U08G02966001
61312042   IN REPAYMENT  05/08/2009
003   $5,775.34    $1,433.35    $0.00      $0.00  ▓▓▓▓▓▓▓▓U09G02968001
61312039   IN REPAYMENT  05/08/2009
004   $5,061.97    $1,255.84    $0.00      $0.0J  ▓▓▓▓▓▓▓▓09G02968002
61312034   IN REPAYMENT  05/08/2009

Page 3

```
                                        PUTCNSL
005    $5,614.76  |   $541.02    $0.00      $0.00   ████████8G02968001
61312041   IN REPAYMENT   05/08/2009
006    $5,118.90  |   $385.48    $0.00      $0.00   ████████04G02968001
61312032   IN REPAYMENT   05/08/2009
007    $4,902.77  |   $369.16    $0.00      $0.00   ██████06G02968001
61312035   IN REPAYMENT   05/08/2009
008    $3,572.85  |   $344.32    $0.00      $0.00   ████████7G02968001
61312036   IN REPAYMENT   05/08/2009
```

CONSOLIDATION LOAN ORIGINATION HISTORY RECORD       CREATED:
12/14/2015    PAGE: 004
Borrower: 577116319    App: 8234210

```
009    $3,559.32  |   $120.35    $0.00      $0.00   ████████6G02968001
61312033   IN REPAYMENT   05/08/2009
010    $2,678.79  |   $227.74    $0.00      $0.00   ████████9G02968001
61312038   IN REPAYMENT   05/08/2009
011    $2,670.49  |   $90.24     $0.00      $0.00   ████████04G02968001
61312040   IN REPAYMENT   05/08/2009
012    $2,670.49  |   $90.24     $0.00      $0.00   ██████05G02968001
61312037   IN REPAYMENT   05/08/2009
```

************************************************************************
**************************************

SECTION 09:   PACKAGE/CORRESPONDENCE HISTORY

REQUEST DT    MAILED DT    PACKAGE TYPE NAME
04/05/2010    04/07/2010    LC COMBINED APP/P-NOTE PACKAGE
10/25/2013    10/27/2013    LC ADI PACKAGE
10/25/2013    10/27/2013    LC PERKINS HHS LOANS INCLUDED IN CONSOL.
10/29/2013    10/31/2013    LC VERIFICATION CERTIFICATE
11/21/2013    11/23/2013    LC CAP LOAN STATEMENT PACKAGE

************************************************************************
**************************************

SECTION 10:   COMMENT HISTORY

DATE          DESCRIPTION/COMMENTS

10/18/2013    PERSON
              10/18/2013 : Loan Consolidation - FAX - RECV FAXED AUTHORIZATION TO
RELEASE INFORMATION TO DMD
              FINANCIAL SERVICES, INC.


10/25/2013    SCHOOL BATCH DETAIL
              10/25/2013 : Loan Consol. Edit Errors - ████████


10/31/2013    PERSON
              10/31/2013 : Loan Consolidation - ████████ONG,JASON - BRWR ADVISED
APP IN CERT CE

************************************************************************
**************************************

Page 4

# Direct Loans

*Federal Direct Student Loan Program*

## Federal Direct Consolidation Loan Verification Certificate

OMB No. 1845-0053
Form Approved
Exp. Date 11/07/2010

The borrower identified in Item 3 of this Verification Certificate (certificate) has requested consolidation of his or her education loan(s). The Federal Direct Consolidation Loan Program (Direct Consolidation Loan Program) enables borrowers to apply for a loan to consolidate outstanding education loans pursuant to Title IV of the Higher Education Act of 1965, as amended. Loans that may be consolidated are listed in the instructions on the back of this certificate. This certificate is used to verify the payoff amount of the borrower's outstanding education loan(s) selected for consolidation. As part of the Federal Direct Consolidation Loan Application and Promissory Note, the borrower named in Item 3 has authorized your disclosure of information regarding the education loan(s) listed in Item 5. Please confirm that the information provided is accurate, complete blank items, and return within 10 business days of the date received on the address given on the back of this certificate.

For information or assistance when completing this certificate, please call the Consolidation Department at 1-800-557-7392.

| (1) Holder/Servicer Information | (2) Institution and Address to which payoff amount should be sent (if different from Item 1) | (3) Borrower Information |
|---|---|---|
| Holder/Servicer is: ☑ Lender ☐<br>(check only one) ☐ Servicer for Lender ☐ | | |
| Name  SAINT AUGUSTINE'S UNIVERSITY | Name  SAINT AUGUSTINE'S UNIVERSITY | Name  JASON LONG |
| OPE Code  00298300 | OPE Code  00298300 | Social Security # |
| Street  PERKINS LOAN SPECIALIST 1315 OAKW 27481 | Street  PERKINS LOAN SPECIALIST 1315 OAKWOOD AVE PO BOX 27481 | Street  629 LAMONT ST NW APT 2 |
| City, State, Zip Code  RALEIGH NC 27610-2274 | City, State, Zip Code  RALEIGH NC 27610-2247 | City, State, Zip Code  WASHINGTON DC 20010 |
| Area Code/Telephone #  919-516-4356 | Area Code/Telephone #  919-516-4356 | Area Code/Telephone #  202-607-5399 |
| Area Code/Fax #  919-516-5209 | Area Code/Fax # | |
| (4) Certification Date  11/11/2013 | Contact's Name  Brenda Stokes | |

See the reverse side for instructions.

| Acct ID (5)<br>Account Number | (6)<br>Loan Type | (7)<br>Interest Rate (%) | (8)<br>Principal Deferred Subsidization | (9)<br>Interest through Certification Date (Item 4) | (10)<br>Fees and Late Charges | (11)<br>Collection Costs | (12)<br>Total Due | (14)<br>First/Only Disbursement Date (mo-dd-yyyy) | (15)<br>Completion Date | (16)<br>Comm't Loan Code |
|---|---|---|---|---|---|---|---|---|---|---|
| #1 | F | 5.000 | 7,740.00 | 354.75 | 10.00 | 2,420.85 | 10,525.60 | 09/10/2004 | 05/15/2008 | DN |
| #2 | | | | | | | | | | |
| #3 | | | | | | | | | | |
| #4 | | | | | | | | | | |
| #5 | | | | | | | | | | |
| #6 | | | | | | | | | | |
| | | | | | (13) Total Payoff Amount | | 10,525.60 | | | |

**(17) Additional Comments**

(18) Holder/Servicer Certification. I certify that: (1) To the best of my knowledge and belief, the information on this certificate is accurate and complete; (2) Each loan identified above is a legal, valid, and binding obligation of the borrower; (3) Each such loan was made and serviced in compliance with all applicable laws and regulations; and (4) In the case of Federal Stafford Loans (subsidized and unsubsidized [GSL]), Federal PLUS Loans, Federal Supplemental Loans for Students (SLS) [and Auxiliary Loans to Assist Students (ALAS)], and Federal Insured Student Loans (FISL), the insurance on each such loan is in full force and effect. The loan amount(s) confirmed includes the amount(s) necessary to discharge the loan(s). This certificate will be relied on by the U.S. Department of Education in paying off the listed loan(s).

*Brenda Stokes*
Signature of Authorized Official

Brenda Stokes
Name and Title of Authorized Official (Please Print)

SAINT AUGUSTINE'S UNIVERSITY
Holder/Servicer Name

919-516-4356
Area Code/Telephone Number

November 11, 2013
Date (mo-dd-yyyy)

RECEIVED NOV 1 2 2013

@008/009

11/11/2013 MON 14:28  FAX

# Direct Loans

**Federal Direct Consolidation Loan Verification Certificate**

OMB No. 1845-0053
Form Approved
Exp. Date 11/30/2010

D3

10/29/2013

**Application Receipt Date:** 10/22/2013

For information or assistance when completing this certificate, please call the Consolidation Department at 1-800-557-7392.

**(1) Holder/Servicer Information**   0000033332

Holder/Servicer is:   ☐ Lender   ☐ Guarantor
(check only one)   ☐ Servicer for Lender   ☐ Servicer for Guarantor

| | |
|---|---|
| Name | SAINT AUGUSTINES COLLEGE |
| OPE Code | 002969 |
| Street 1 | PO BOX 27481 |
| Street 2 | ATTN: DIR OF COLLECTIONS |
| City, State, Zip Code | RALEIGH   NC   27611 |
| Area Code/Telephone # | (919)516-4166 |
| Area Code/Fax # | (000)000-0000 |

**(2) Institution and Address to which payoff amount should be sent**
(if different from item 1)

| | |
|---|---|
| Name | |
| OPE Code | |
| Street 1 | |
| Street 2 | |
| City, State, Zip Code | |
| Area Code/Telephone # | |
| Area Code/Fax # | |
| Contact's Name | |

**(3) Borrower Information**   000008234210007

| | |
|---|---|
| Name | JASON LONG |
| Social Security # | |
| Street 1 | 629 LAMONT ST NW |
| Street 2 | APT 2 |
| City, State, Zip Code | WASHINGTON DC   20010 |
| Area Code/Telephone # | (202)903-0032 |

**(4) Certification Date (mm-dd-yyyy)**
See the reverse side for instructions.

| Acct ID | (5) Account Number | (6) Loan Type | (7) Interest Rate (%) | (8) Principal Balance Outstanding | (9) Interest Paid Through Certification Date (item 4) | (10) Fees and Late Charges | (11) Collection Costs | (12) Total Due | (13) First Only Disbursement Date (mm-dd-yyyy) | (14) Cancellation Date | (15) Loan Status Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 01 | | | | | | | | | | | |
| 02 | | | | | | | | | | | |
| 03 | | | | | | | | | | | |
| 04 | | | | | | | | | | | |
| 05 | | | | | | | | | | | |
| 06 | | | | | | | | | | | |

**(16) Total Payoff Amount**

**(17) Additional Comments**

**(18) Holder/Servicer Certification:** I certify that: (1) To the best of my knowledge and belief, the information on this certificate is accurate and complete, (2) Each loan identified above is a legal, valid, and binding obligation of the borrower, (3) Each such loan was made and serviced in compliance with applicable laws and regulations and (4) In the case of Federal Stafford Loans [subsidized and unsubsidized (DSL)], Federal PLUS Loans, Federal Supplemental Loans for Students (SLS) [and Auxiliary Loans to Assist Students (ALAS)], and Federal Insured Student Loans (FISL), the insurance on each such loan is in full force and effect. The loan amount(s) identified indicates the amount(s) necessary to discharge the loan(s). This certificate will be relied upon by the U.S. Department of Education in paying off the listed loan(s).

| | | |
|---|---|---|
| _____ | _____ | _____ |
| Signature of Authorized Official | Holder/Servicer Name | Date (mm-dd-yyyy) |
| _____ | _____ | |
| Name and Title of Authorized Official (Please Print) | Area Code/Telephone Number | |

VCT114

23366325   0

**RECEIVED NOV 1 2 2013**

Z009/009   FAX   11/11/2013 MON 14:29

[OCT 2 2 2013]

# Direct Loans

## Federal Direct Consolidation Loan
### Application and Promissory Note

OMB No. 1845-0053
Form Approved
Exp. Date 02/28/2014

WARNING: Any person who knowingly makes a false statement or misrepresentation on this form or any accompanying documents is subject to penalties that may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

Read the instructions for completing this Federal Direct Consolidation Loan Application and Promissory Note (Note). Print using blue or black ink or type. You must sign and date this form. If you cross out anything and write in new information, put your initials beside the change.

**NOTE: PAGES 1, 2, and 3 OF THIS NOTE MUST BE SUBMITTED FOR YOUR LOAN REQUEST TO BE PROCESSED.**

### Section A: Borrower Information

| 1. Last Name | First Name | Middle Initial | 2. Social Security Number |
|---|---|---|---|
| Long | Jason | | |

3. Permanent Address (if P.O. box or general delivery, see instructions)
629 Lamont Street NW  Apt. 2

| City | State | Zip Code |
|---|---|---|
| Washington | DC | 20010 |

4. Area Code/Telephone Number
( 202 ) 103 - 0052

5. E-Mail Address (Optional)

| 6. Former Name(s) | 7. Date of Birth (mm-dd-yyyy) | 8. Driver's License State and Number: State — Number   N/A |
|---|---|---|

9. Employer's Name  Unemployed

10. Employer's Address

11. Work Area Code/Telephone Number     City     State     Zip Code

### Section B: Reference Information

12. References: List two people with different U.S. addresses who do not live with you and who have known you for at least three years.

| | Name | |
|---|---|---|
| Name | Rosevic Cotona | Charles Morisier |
| Permanent Address | 1718 5th Street NW | 29 Randal Circle SE Unit C |
| City, State, Zip Code | Washington DC 20001 | Washington DC 20019 |
| E-Mail Address (optional) | | |
| Area Code/Telephone Number | ( 202 ) 173 - 2853 | (202) 270 - 3543 |
| Relationship to Borrower | Friend | Friend |

### Section C: Loan Information

Read the instructions before completing this section. List each federal education loan that you want to consolidate, including any William D. Ford Federal Direct Loan (Direct Loan) Program loans that you want to include in your Direct Consolidation Loan. If you need more space to list additional loans, use the Additional Loan Listing Sheet included with this Note. List each loan separately. Please print. **DO NOT LIST ONLY LOANS THAT YOU WANT TO CONSOLIDATE.**

(We will send you a notice before we consolidate your loans. This notice will (1) provide you with information about the loans and payoff amounts that we have verified, and (2) tell you the deadline by which you must reply or if you want to cancel the Direct Consolidation loan, or if you do not want to consolidate one or more of the loans listed in the notice. The notice will include information about loans eligible for consolidation that you listed in this section. It will also include information about additional loans eligible for consolidation that you did not list in this section, if you have additional eligible loans with a holder of a loan that you listed in this section. See the instructions for more information about any notices we will send.

| 12. Loan Code (See Instructions) | 14. Loan Holder/Servicer Name, Address, and Area Code/Telephone Number (See Instructions) | 15. Loan Account Number | 16. Estimated Payoff Amount |
|---|---|---|---|
| F | Saint Augustine's University  P. O. Box 27481 Raleigh, NC 27611  919-516-4356 | | $10,271.63 |
| D | Direct Loans Servicing Center  P. O. Box 4609 Utica, NY 13504  800-848-0979 | | $50,000.00 |

Submit pages 1, 2, and 3.
Page 1 of 9

WFDCSNC_APP3_2014

(0000/000)

D3

# Direct Loans

### Federal Direct Consolidation Loan Verification Certificate

OMB No. 1845-0053
Form Approved
Exp. Date 11/30/2010

10/29/2013

Application Receipt Date: 10/23/2013

(1) Holder/Servicer Information    0000033332

Holder/Servicer is:    ☐ Lender    ☐ Guarantor
(check only one)    ☐ Servicer for Lender    ☐ Servicer for Guarantor

Name    SAINT AUGUSTINES COLLEGE

OPE Code    002985

Street 1    PO BOX 27481

Street 2    ATTN: DIR OF COLLECTIONS

City, State, Zip Code    RALEIGH    NC    27611

Area Code/Telephone #    (919)516-4165

Area Code/Fax #    (000)000-0000

(4) Certification Date (mm-dd-yyyy)

See the reverse side for instructions.

(2) Institution and Address to whom payoff amount should be sent
(If different from item 1)

Name

OPE Code

Street 1

Street 2

City, State, Zip Code

Area Code/Telephone #

Area Code/Fax #

Contact's Name

(3) Borrower Information    000008234210007

Name    JASON LONG

Social Security #

Street 1    628 LAMONT ST NW

Street 2    APT 2

City, State, Zip Code    WASHINGTON DC    20010

Area Code/Telephone #    (202)303-0032

| Acct ID | (5) Federal Number | (6) Loan Type | (7) Interest Rate (%) | (8) Principal Balance Outstanding | (9) Interest through Certification Date (Rev #) | (10) Projected Late Charges | (11) Collection Costs | (12) Paid On | (13) First/Only Disbursement Date(mm-dd-yyyy) | (14) Completion Date | (15) Late Status Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 01 |  |  |  |  |  |  |  |  |  |  |  |
| 02 |  |  |  |  |  |  |  |  |  |  |  |  |
| 03 |  |  |  |  |  |  |  |  |  |  |  |  |
| 04 |  |  |  |  |  |  |  |  |  |  |  |  |
| 05 |  |  |  |  |  |  |  |  |  |  |  |  |
| 06 |  |  |  |  |  |  |  |  |  |  |  |  |

(16) Total Payoff Amount

(17) Additional Comments

(18) Holder/Servicer Certification: I certify that: (1) To the best of my knowledge and belief, the information on this certificate is accurate and complete; (2) Each loan identified above is a legal, valid, and binding obligation of the borrower; (3) Each such loan was made and serviced in compliance with all applicable laws and regulations; and (4) In the case of Federal Stafford Loans (subsidized and unsubsidized (GSL)), Federal PLUS Loans, Federal Supplemental Loans for Students (SLS) (and Auxiliary Loans to Assist Students (ALAS)), and Federal Insured Student Loans (FISL), the insurance on each such loan has not been voided and is in full force and effect. The loan amount(s) contained in the amount(s) of accurately to discharge the loan(s). This certificate will be relied on by the U.S. Department of Education in paying off the loan(s) listed.

Signature of Authorized Official

Holder/Servicer Name

Date (mm-dd-yyyy)

VCT114

Name and Title of Authorized Official (Please Print)

Area Code/Telephone Number

25388328

RECEIVED NOV 1 2 2013

11/31/2013 MON 14:29 FAX

11/11/2013 MON 14:28 FAX 008/009

# Direct Loans

# Federal Direct Consolidation Loan Verification Certificate

OMB No. 1845-0053 Form Approved Exp. Date [illegible]

[illegible]

For information or assistance when completing this certificate, please call the Consolidation Department at 1-800-557-7392.

(1) Holder/Servicer Information
Holder/Servicer is: (check only one) ☐ Lender ☐ Servicer for Lender ☐ ☐

Name: SAINT AUGUSTINE'S UNIVERSITY
OPE Code: [illegible]
Street: PERKINS LOAN SPECIALIST 1315 OAKW[illegible] 27481
City, State, Zip Code: RALEIGH NC 27610-2[illegible]
Area Code/Telephone #: 919-516-4[illegible]
Area Code/Fax #: 919-516-[illegible]
(4) Certification Date: 11/11/2013

(2) Institution and Address to which payoff amount should be sent (if different from item 1)
Name: SAINT AUGUSTINE'S UNIVERSITY
OPE Code: [illegible]
Street: PERKINS LOAN SPECIALIST 1315 OAKWOOD AVE PO BOX 27481
City, State, Zip Code: RALEIGH NC 27610-2247
Area Code/Telephone #: 919-[illegible]
Area Code/Fax #:
Contact's Name: Brenda Stokes

(3) Borrower Information
Name: JASON LONG
Social Security [redacted]
Street: 629 LAMONT ST NW APT 2
City, State, Zip Code: WASHINGTON DC 20010
Area Code/Telephone #: 202-807-5399
[redacted]

See the reverse side for instructions.

| Item No. | (5) Account Number | (6) Loan Type | (7) Interest Rate (%) | (8) Principal Balance Outstanding | (9) Interest Outstanding Through Certification Date (item 4) | (10) Fees and Late Charges | (11) Collection Costs | (12) Total Due | (14) First/Only Disbursement Date (mm-dd-yyyy) | (15) Completion Date | (16) Status Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 01 | [redacted] | P | 5.000 | 7,740.00 | 354.75 | 10.00 | 2,420.85 | 10,525.60 | 09/10/2004 | 05/15/2008 | DN |
| 02 | | | | | | | | | | | |
| 03 | | | | | | | | | | | |
| 04 | | | | | | | | | | | |
| 05 | | | | | | | | | | | |
| 06 | | | | | | | | | | | |

(13) Total Payoff Amount: 10,525.60

(17) Additional Comments

(18) Holder/Servicer Certification: I certify that: (1) To the best of my knowledge and belief, the information on this certificate is accurate and complete; (2) Each loan identified above is a legal, valid, and binding obligation of the borrower; (3) Each such loan was made and serviced in compliance with all applicable laws and regulations; and (4) In the case of Federal Stafford Loans (subsidized and unsubsidized (GSL)), Federal PLUS Loans, Federal Supplemental Loans for Students (SLS) [and Auxiliary Loans to Assist Students (ALAS)], and Federal Insured Student Loans (FISL), the insurance on each such loan is in full force and effect. The loan amount(s) confirmed includes the amount(s) necessary to discharge the loan(s). This certificate will be relied on by the U.S. Department of Education in paying off the listed loan(s).

Brenda Stokes (signature)
Signature of Authorized Official

SAINT AUGUSTINE'S UNIVERSITY
Holder/Servicer Name

November 11, 2013
Date (mm-dd-yyyy)

Brenda Stokes
Name and Title of Authorized Official (Please Print)

919-516-4358
Area Code/Telephone Number

RECEIVED NOV 1 2 2013

PUTCNSL
CONSOLIDATION LOAN ORIGINATION HISTORY RECORD          CREATED: 12/14/2015
PAGE: 001
Borrower: ████████  App: 8234210

SECTION 01:  BORROWER INFORMATION

BORROWER SSN: ████████          APPLICATION ID: 8234210
BORROWER NAME:  JASON LONG                                    DOB: 08/04/1984
ADDRESS: 629 LAMONT ST NW APT 2

CITY/STATE/ZIP: WASHINGTON, DC  20010
HOME PHONE: 202-421-4147 ALT PHONE: 000-000-0000
EMAIL:                                DRIVERS LICENSE:              DL
STATE:

*************************************************************************
******************************************

SECTION 02:  CO-BORROWER INFORMATION

CO-BORROWER: NO

*************************************************************************
******************************************

SECTION 03:  ENDORSER INFORMATION

ENDORSER: NO

*************************************************************************
******************************************

SECTION 04:  CONSOLIDATION LOAN INFORMATION

TOTAL AMOUNT CONSOLIDATED:    $63,942.13  LAST FUNDING DATE: 12/12/2013

AWARD ID: ██████████4G77778101  GROSS:   $21,981.26   REBATE:    $306.00
LOAN TYPE: DIRECT SUBSIDIZED CONSOLIDATION LOAN
PAYMENT PLAN: INCOME CONTINGENT    FORCED ICR: Y  CRC: 201456
BOOKED DATE: 12/06/2013 INTEREST RATE:  5.125%  1st DISB DATE: 12/06/2013
DISB NUM    DISB DATE    GROSS AMT    REBATE AMT    PROM NOTE ID
  001      12/06/2013   $21,981.26    $306.00      11880784

AWARD ID: ██████████4G77778101  GROSS:   $41,960.87   REBATE:    $342.00
LOAN TYPE: DIRECT UNSUBSIDIZED CONSOLIDATION LOAN
PAYMENT PLAN: INCOME CONTINGENT    FORCED ICR: Y  CRC: 201466
BOOKED DATE: 12/06/2013 INTEREST RATE:  5.125%  1st DISB DATE: 12/06/2013

          CONSOLIDATION LOAN ORIGINATION HISTORY RECORD      CREATED:
12/14/2015    PAGE: 002
Borrower: ████████  App: 8234210

DISB NUM    DISB DATE    GROSS AMT    REBATE AMT    PROM NOTE ID
  001      12/06/2013   $41,960.87    $342.00      11880785

*************************************************************************
******************************************

SECTION 05:  PROMISSORY NOTE INFORMATION

AWARD ID: ██████████G77778101    DLCS LOAN NUMBER: 25171709
DLCS NOTE ID    NOTE TYPE    MAIL DATE    BORR SIGNED DT    CO-BORR SIGN DT    RECD
DATE

Page 1

```
                                    PUTCNSL
11880784      PAPER         N/A       10/08/2013
10/08/2013

AWARD ID:         4G77778101   DLCS LOAN NUMBER: 25171710
DLCS NOTE ID    NOTE TYPE    MAIL DATE    BORR SIGNED DT    CO-BORR SIGN DT    RECD
DATE
11880785      PAPER         N/A       10/08/2013
10/08/2013
```

***************************************************************************
*******************************************

SECTION 06:  FUNDING HISTORY

```
NUM DT FUNDED  LENDER ID-NAME                    LOAN TYPE              AMOUNT
  TYPE 1st DISB    FUND CK#/IDENT LN DISB
001 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  $
6,196.98 DISB 08/22/2007  FCA              S  01
002 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  $
3,943.17 DISB 08/22/2006  FCA              S  01
003 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  $
3,688.47 DISB 08/24/2005  FCA              S  01
004 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  $
2,923.73 DISB 08/27/2008  FCA              S  01
005 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  $
2,767.13 DISB 08/23/2004  FCA              S  01
006 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  $
2,767.13 DISB 02/09/2004  FCA              S  01
007 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  -$
39.74 ADJ  02/09/2004  FCA                 S  01
008 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  -$
39.74 ADJ  08/23/2004  FCA                 S  01
009 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  -$
39.96 ADJ  08/27/2008  FCA                 S  01
010 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  -$
51.86 ADJ  08/22/2006  FCA                 S  01
011 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  -$
51.93 ADJ  08/24/2005  FCA                 S  01
012 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  -$
82.12 ADJ  08/22/2007  FCA                 S  01
013 12/06/2013 33332-SAINT AUGUSTINES COLLEG  F-FEDERAL PERKINS LOANS    $
10,552.90 DISB 09/10/2004  EFT 000387811  U  01
014 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  $
7,342.71 DISB 08/22/2007  FCA              U  01
015 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  $
7,251.09 DISB 08/27/2008  FCA              U  01
016 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  $
6,354.61 DISB 08/27/2008  FCA              U  01
017 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  $
5,517.18 DISB 02/09/2004  FCA              U  01
018 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  $
5,284.33 DISB 08/24/2005  FCA              U  01
019 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  -$
60.01 ADJ  02/09/2004  FCA                 U  01
020 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  -$
60.16 ADJ  08/24/2005  FCA                 U  01
021 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  -$
69.74 ADJ  08/27/2008  FCA                 U  01
```

```
*  !      CONSOLIDATION LOAN ORIGINATION HISTORY RECORD        CREATED:
12/14/2015    PAGE: 003
Borrower:            App: 8234210
```

Page 3

```
                                           PUTCNSL
022 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  -$
73.94 ADJ  08/22/2007  FCA          U 01
023 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  -$
78.10 ADJ  08/27/2008  FCA          U 01
```

***********************************************************************
**************************************

## SECTION 07:  APPLICATION DATA

```
APPLICATION REC'D DATE: 10/22/2013        SOURCE:  PAPER
IN.SCHOOL: NO                             E-SIGNED: NO
LOANS ON.APPLICATION:
NUM DATE ADDED  LENDER                    LOAN TYPE
INCLUDE?     AMOUNT     LVC SENT DATE  LND TYPE
001 10/25/2013  42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA    YES
   $ 50,000.00     10/25/2013      DL
002 10/25/2013  33332-SAINT AUGUSTINES COLLEGE   F-FEDERAL PERKINS LOANS        YES
   $ 7,740.00      10/29/2013      PL
```

***********************************************************************
**************************************

## SECTION 08:  LOAN CERTIFICATIONS

```
NUM  DATE CERT   LENDER ID-NAME                    LOAN TYPE               1ST
DISB     INT     TOT PAYOFF   DFLT SATISFIED
001  11/19/2013  33332-SAINT AUGUSTINES COLLEGE  F-FEDERAL PERKINS LOANS
09/10/2004  5.000%  $ 10,525.60  YES    NO
002  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  L-FED DIRECT UNSUB STAFF/FO
08/22/2007  6.800%  $ 7,299.91   NO     NO
003  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  L-FED DIRECT UNSUB STAFF/FO
08/27/2008  6.800%  $ 7,208.69   NO     NO
004  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  L-FED DIRECT UNSUB STAFF/FO
08/27/2008  6.800%  $ 6,317.81   NO     NO
005  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA
08/22/2007  6.800%  $ 6,155.78   NO     NO
006  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  L-FED DIRECT UNSUB STAFF/FO
02/09/2004  2.350%  $ 5,504.38   NO     NO
007  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  L-FED DIRECT UNSUB STAFF/FO
08/24/2005  2.350%  $ 5,271.93   NO     NO
008  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA
08/22/2006  6.800%  $ 3,917.17   NO     NO
009  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA
08/24/2005  2.350%  $ 3,679.67   NO     NO
010  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA
08/27/2008  6.000%  $ 2,906.53   NO     NO
011  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA
02/09/2004  2.350%  $ 2,760.73   NO     NO
012  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA
08/23/2013  2.350%  $ 2,760.73   NO     NO

LOAN CERTIFICATION CONT.
NUM   PRIN AMT     INTEREST AMT  LATE CHARGES COLL COSTS ACCOUNT NUMBER
CERT ID    STATUS       GRAD_DATE
001   $7,740.00    $354.75       $10.00     $2,420.85
61901641    IN REPAYMENT    05/15/2009
002   $5,847.44    $1,452.47     $0.00      $0.00              J08G02966001
61312042    IN REPAYMENT    05/08/2009
003   $5,775.34    $1,433.35     $0.00      $0.00              J09G02968001
61312039    IN REPAYMENT    05/08/2009
004   $5,061.97    $1,255.84     $0.00      $0.0J              J9G02968002
61312034    IN REPAYMENT    05/08/2009
```



PUTCNSL
005   $5,614.76   $541.02        $0.00        $0.00 ███████8G02968001
61312041   IN REPAYMENT   05/08/2009
006   $5,118.90   $385.48        $0.00        $0.00 ███████04G02968001
61312032   IN REPAYMENT   05/08/2009
00/   $4,902.77   $369.16        $0.00        $0.00 ███████06G02968001
61312035   IN REPAYMENT   05/08/2009
008   $3,572.85   $344.32        $0.00        $0.00 ███████7G02968001
61312036   IN REPAYMENT   05/08/2009

$          CONSOLIDATION LOAN ORIGINATION HISTORY RECORD        CREATED:
12/14/2015      PAGE: 004
Borrower: 577116319    App: 8234210

009   $3,559.32   $120.35        $0.00        $0.00 ███████96G02968001
61312033   IN REPAYMENT   05/08/2009
010   $2,678.79   $227.74        $0.00        $0.00 ███████09G02968001
61312038   IN REPAYMENT   05/08/2009
011   $2,670.49   $90.24        $0.00        $0.00 ███████04G02968001
61312040   IN REPAYMENT   05/08/2009
012   $2,670.49   $90.24        $0.00        $0.00 ███████05G02968001
61312037   IN REPAYMENT   05/08/2009

*******************************************************************
*********************************************

SECTION 09:   PACKAGE/CORRESPONDENCE HISTORY

REQUEST DT    MAILED DT    PACKAGE TYPE NAME
04/05/2010    04/07/2010   LC COMBINED APP/P-NOTE PACKAGE
10/25/2013    10/27/2013   LC ADI PACKAGE
10/25/2013    10/27/2013   LC PERKINS NHS LOANS INCLUDED IN CONSOL.
10/29/2013    10/31/2013   LC VERIFICATION CERTIFICATE
11/21/2013    11/23/2013   LC CAP LOAN STATEMENT PACKAGE

*******************************************************************
*********************************************

SECTION 10:   COMMENT HISTORY

DATE          DESCRIPTION/COMMENTS

10/18/2013    PERSON
              10/18/2013 : Loan Consolidation - FAX - RECV FAXED AUTHORIZATION TO
RELEASE INFORMATION TO DMD
              FINANCIAL SERVICES, INC.


10/25/2013    SCHOOL BATCH DETAIL
              10/25/2013 : Loan Consol. Edit Errors - ████████


10/31/2013    PERSON
              10/31/2013 : Loan Consolidation - █████████ONG,JASON - BRWR ADVISED
APP IN CERT CE

*******************************************************************
**********************************************

Page 4

IOCT 2 2 2013

WDSDC_APP2_2014

# Direct Loans

## Federal Direct Consolidation Loan
## Application and Promissory Note

OMB No. 1845-0053
Form Approved
Exp. Date 02/29/2014

WARNING: Any person who knowingly makes a false statement or misrepresentation on this form or any accompanying documentation is subject to penalties that may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

**Section 1: Before You Begin**

Read the instructions for completing this Federal Direct Consolidation Loan Application and Promissory Note (Note). Print using blue or black ink or type. You must sign and date this form. If you cross out anything and write in new information, put your initials beside the change.

**NOTE: PAGES 1, 2, and 3 OF THIS NOTE MUST BE SUBMITTED FOR YOUR LOAN REQUEST TO BE PROCESSED.**

**Section 2: Borrower Information**

| 1. Last Name | First Name | Middle Initial | 2. Social Security Number |
|---|---|---|---|
| Long | Jason | | |

| 3. Permanent Address (if P.O. box or general delivery, see instructions) | 4. Area Code/Telephone Number |
|---|---|
| 629 Lamont Street NW Apt. 2 | ( 202 ) 5 0 3 - 0 0 5 2 |

| City | State | Zip Code | 5. E-Mail Address (Optional) |
|---|---|---|---|
| Washington | DC | 20010 | |

| 6. Former Name(s) | 7. Date of Birth (mm-dd-yyyy) | 8. Driver's License State and Number |
|---|---|---|
| | | State —   Number    N/A |

9. Employer's Name  Unemployed

10. Employer's Address

| 11. Work Area Code/Telephone Number | City | State | Zip Code |
|---|---|---|---|
| | | | |

**Section 3: Reference Information**

12. References: List two persons with different U.S. addresses who do not live with you and who have known you for at least three years.

| Name | 1. Roosevelt Cabrera | 2. Charles Montsant |
|---|---|---|
| Permanent Address | 1718 5th Street NW | 29 Beachet Circle SE Unit C |
| City, State, Zip Code | Washington, DC 20001 | Washington, DC 20019 |
| E-Mail Address (optional) | | |
| Area Code/Telephone Number | ( 202 ) 3 7 3 - 2 8 5 3 | ( 202 ) 2 7 0 - 3 5 4 3 |
| Relationship to Borrower | Friend | Friend |

**Section C: Consolidated Loan Indebtedness – Loans You Want to Consolidate (Continued on page 2)**

Read the instructions before completing this section. List each federal education loan that you want to consolidate, including any William D. Ford Federal Direct Loan (Direct Loan) Program loans that you want to include in your Direct Consolidation Loan. If you need more space to list additional loans, use the Additional Loan Listing Sheet included with this Note. List each loan separately. Please print. IN THIS SECTION, LIST ONLY LOANS THAT YOU WANT TO CONSOLIDATE.

We will send you a notice before we consolidate your loans. This notice will (1) provide you with information about the loans and payoff amounts that we have verified, and (2) tell you the deadline by which you must notify us if you want to cancel the Direct Consolidation Loan, or if you do not want to consolidate one or more of the loans listed in the notice. The notice will include information about loans eligible for consolidation that you listed in this section. It will also include information about additional loans eligible for consolidation that you did not list in this section, if you have additional eligible loans with a holder of a loan that you listed in this section. See the instructions for more information about the notice we will send.

| 13. Loan Code (See Instructions) | 14. Loan Holder/Servicer Name, Address, and Area Code/Telephone Number (See Instructions) | 15. Loan Account Number | 16. Estimated Payoff Amount |
|---|---|---|---|
| F | Saint Augustine's University P. O. Box 27481 Raleigh, NC 27611 919-516-4356 | | $ 10,271.63 |
| D | Direct Loans Servicing Center P. O. Box 4609 Utica, NY 13504 800-848-0979 | | $ 50,000.00 |

Submit pages 1, 2, and 3.
Page 1 of 9

### Ombudsman Case 01661222 [ ref:_00Dt0Gyiq._500t0KNYUT:ref ]

 **Federal Student Aid Ombudsman Group** <octsrply@ed.gov>
To: jclong2010@yahoo.com <jclong2010@yahoo.com>



---

Dear Jason Long:

Thank you for contacting the Federal Student Aid (FSA) Ombudsman Group. You raised concerns regarding the validity of your William D. Ford Direct (Direct) Consolidation. You assert that the signature on the Direct Consolidation Application and Promissory Note (PN) is not yours. Based on the information you provided, I was able to research your concerns. My summary follows.

**Role of the Ombudsman Group**

The Ombudsman Group is an independent office within the U. S. Department of Education (ED) and serves as an office of last resort to provide informal impartial assistance to borrowers to help resolve issues pertaining to their federal student loans. While our office does not have the authority to overturn a decision, we take into consideration the concerns, positions, and interests of all affected parties. We do not make binding decisions or testify at formal judicial or administrative hearings. We review the facts of the situation and explore possible resolutions that are in accordance with the federal statute governing FSA.

**Research Result**

I was unable to obtain documentation validating your assertion that you were the victim of identity theft.

**Research**

*Details Regarding the Documentation You Emailed to Our Office*

In the documentation you sent to our office on December 26, 2019, were copies of the first and the third pages of your existing Direct Consolidation Application and PN. This form is labeled "OMB No. 1845-0053 Exp. Date 02/28/2014". You can locate the page numbers at the bottom of each page. These pages are copies of the Consolidation Application and PN U.S. Department of Education (ED) Navient (ED-Navient) received on October 22, 2013, which were signed on October 8, 2013. Loan servicers are only required to keep a copy of the signature page of any borrower's PN; therefore, I have also attached a blank copy of the entire form for your records.

Also, included in the documentation you sent to our office are two separate Repayment Plan Selection forms, labeled "OMB No. 1845-0014 Exp. Date 11/30/2013". As titled, those forms are the forms borrowers may use to select a repayment plan for their Direct Loan Program loans. You may have completed more of these forms aside from the copies you emailed to our office, because any borrower can complete and submit these forms any time they request a change in repayment plans.

The first Repayment Plan Selection form you sent our office a copy of was dated October 8, 2013, which is the same date your Direct Consolidation Application and PN was signed. Based on the date stamp at the top of this Repayment Plan Selection form, ED-Navient received that form on October 22, 2013 - the same date they received your Direct Consolidation Application and PN. Borrowers applying to consolidate their federal student loans often submit Repayment Plan Selection forms along with their Consolidation Application and PNs if they wish to enter into any repayment plan other than the Standard Repayment Plan.

Subsequently, ED-Navient received another repayment plan selection form from you on November 7, 2013, which was dated October 31, 2013. The repayment plans you selected on the second form differ from the plan you selected on the form signed on October 8, 2013, which could be the reason that you submitted a secondary request so shortly after the initial request was submitted. I have attached a blank copy of all three pages of the form for your reference, as well.

Another document that you sent our office a copy of is the "Federal Direct Consolidation Loan Verification Certificates (LVCs)" ED-Navient received from Saint Augustine's University (SAU). As part of the application process for a Direct Consolidation, each loan holder (in this case for your Federal Perkins Loan from SAU, the school itself) listed on a borrower's application must complete a Loan Verification Certificate (LVC) and return it to ED for processing. The federal student loan borrower is not required to complete, sign, or authorize anything on an LVC. Hence, the reason that your signature is not on the LVCs you sent our office copies of. It is unclear as to why ED-Navient received two LVCs from SAU; however, it is likely because one copy is incomplete

The other documentation you sent our office copies of is some of the pages from your Direct Consolidation Loan Origination History. This is a report that the loan servicer reports on when a consolidation originates. It details the borrower's demographic information, the terms of the new consolidation such as the interest rate of the loan and the original amount of the loan, and it also lists the underlying federal student loans that were included into the consolidation. This information is typically proprietary and confidential to the loan servicer; therefore, if you have any questions pertaining to this document, please address those concerns with ED-Navient directly, as our office does not create, manage, or interpret this data.

*Information I Obtained While Researching Your Concerns*

As stated in the "Results" section, I did not locate any information that would support your claim of identity theft. Attached is a copy of an agreement I obtained, in which it appears you entered into an agreement with the collection agency DMD Financial Services, Inc. (DMD) to assist you with your Direct Consolidation Application and PN. I confirmed that DMD Financial Services was the collection agency assigned to your defaulted Federal Perkins Loan at the time you applied for a Direct Consolidation in October 2013.

In addition, the mailing address on both your DMD Agreement and your Direct Consolidation Application and PN is the same mailing address that you provided our office when you initially contacted us for assistance on September 4, 2018. Since your initial request for assistance, you also confirmed your mailing address of 629 Lamont Street NW #2, Washington, DC 20010, on numerous occasions. This is also the mailing address that is on all of the documentation I reviewed while researching your concerns.

As detailed on the first page of your Direct Consolidation Application and PN in Section C1, it states (in part), "We will send you a notice before we consolidate your loans. This notice will (1) provide you with information about the loans and payoff amounts that we have verified, and (2) tell you the deadline by which you must notify us if you want to cancel the Direct Consolidation Loan, or if you do not want to consolidate one or more of the loans listed in the notice." ED-Navient would have mailed your Loan Disclosure Statement to the address on your Direct Consolidation Application and PN. That disclosure outlined the loans included in your consolidation, the interest rate of the consolidation, and the beginning principal balance of the consolidation. It also gave you the opportunity to cancel the consolidation within the time frame provided if you disagreed with the terms of the loan. ED-Navient did not receive contact from you within the allowable time frame; therefore, the origination process completed.

As mentioned in your November 22, 2019, Identity Theft Discharge Denial letter from FSA (attached), ED-Navient received an Unemployment Deferment Application from you after your Direct Consolidation originated: That application was signed in wet ink. The signature on that application is visibly similar to the wet signature on your Direct Consolidation Application and PN, on both Repayment Plan Selection forms, and the signature on the DMD Agreement I obtained while researching your concerns

In your November 22, 2019, Identity Theft Discharge Denial letter from FSA, you were advised that if you disagree with the determination made, you may have your claim reconsidered by resubmitting your application to ED-Navient with new, compelling, evidence you would like considered. As we previously discussed, something that FSA would consider as new evidence is a determination from a Professional Handwriting Analyst that concludes the signature on the Direct Consolidation Application and PN is not yours. If you wish to pursue the Identity Theft Discharge, it may be beneficial to you to retain the services of a Handwriting Analyst that is certified to make a determination about the validity of the signature on your Direct Consolidation Application and PN.

If you are not currently repaying your Direct Consolidation, you may consider contacting ED-Navient to make arrangements for repayment, or postponement of payments, to avoid additional adverse credit reporting. Should your Direct Consolidation become 270 days or more delinquent, that shall constitute default on the loan, and if your consolidation defaults it will transfer to ED's loan servicer for defaulted federal student loans, the Default Resolution Group (DRG) for collection. If your Direct Consolidation defaults, you will become responsible for the collection costs DRG adds onto your outstanding principal and interest balance, per the terms and conditions of your PN.

**Next Steps**

If you have any additional concerns, you may contact ED-Navient's escalated department at (888) 545-4199 for additional assistance.

The research on your concern is complete and your case is closed with our office. If you have questions after speaking with ED-Navient, you may call me Monday-Thursday between 8:00 a.m. and 5:00 p.m. Eastern Time at our toll-free number, (877) 557-2575, and leave a message for me with a customer service representative.

Sincerely,


Jessica Hanson
Dispute Specialist

Attachments:   Blank Copy of OMB Form 1845-0053 Exp. Date 02/28/2014
               Blank Copy of OMB Form 1845-0014 Exp. Date 11/30/2013
               DMD Financial Services, Inc. Agreement
               November 22, 2019, Identity Theft Discharge Denial Letter from FSA

*If you would like to respond to this e-mail, please reply directly to the e-mail thread without modifying the Subject line. If the Subject line is modified, the Department may not receive your response or be able to connect your response to your case.*



Federal **Student** Aid    |  PROUD SPONSOR of
An OFFICE of the U.S. DEPARTMENT of EDUCATION    |  the AMERICAN MIND ®

ref:_00Dt0Gyiq._500t0KNYUT.ref

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

**1 File**    1MB

01661222 Long Closing Email Attachments.zip
1MB

p.1

3352824256

DMD Financial Services

44909274 4118024#

William D. Ford
Consolidation Department
P.O. Box 242800
Louisville, KY 40224-2800

I, Jason Long do give DMD Financial Services, Inc. permission to assist me with the set up of my consolidation application with W. D. Ford.

Listed below is my current information:

SS# ████████
Date of Birth 02/28/1984
Address 603 YE Capitol Street NW Apt 2
         Washington DC 20010
Phone# 202 2503-0053

Sincerely,

Signature Jason Long

Date 10/01/2013

PERSONAL CONFIDENTIAL

Insurance Permit# 100796

**aidvantage** | Official Servicer of
Federal Student Aid

P.O. Box 300001
Greenville, TX 75403-3001

(800) 722-1300

Jason Long
5112 Macarthur Blvd NW
Washington, DC 20016-3336

December 26, 2023

Account number: 9646961359

## Jason, here are the documents you recently requested.

**We're here to help**
If you have any questions about your account, visit us online at Aidvantage.com or give us a call at 800-722-1300 Monday 8 a.m. to 9 p.m., Tuesday – Wednesday 8 a.m. to 8 p.m., and Thursday – Friday 8 a.m. to 6 p.m., Eastern.

**Enclosure(s):**

Fraud information

**Important disclosure(s)**

K031ED SLF

*Your loan servicer*
Your loans are serviced by Maximus Education, LLC, (NMLS# 2241381)

K031ED SLF

## Governing Law

The terms of this Federal Direct Consolidation Loan Application and Promissory Note (Note) will be interpreted in accordance with the Higher Education Act of 1965, as amended (20 U.S.C. 1070 et seq.), the U.S. Department of Education's (ED's) regulations, as they may be amended in accordance with their effective date, and other applicable federal laws and regulations (collectively referred to as the "Act"). Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this Note.

## Disclosure of Loan Terms

This Note applies to a Federal Direct Consolidation Loan (Direct Consolidation Loan). Under this Note, the principal amount that I owe and am required to repay will be equal to all sums disbursed to pay off my prior loan obligations, plus any unpaid interest that is capitalized and added to the principal amount.

My Direct Consolidation Loan may have up to two separate loan identification numbers depending on the loans I choose to consolidate. These loan identification numbers will represent prior subsidized loans and prior unsubsidized loans. Each applicable loan identification number is represented by this Note.

When the loans that I am consolidating are paid off, a disclosure statement will be provided to me. The disclosure will identify the amount of my Direct Consolidation Loan, the associated loan identification number(s), and additional terms of the loan, such as the interest rate and repayment schedule. If I have questions about the information disclosed, I may contact my servicer. Important additional information is also contained in the Borrower's Rights and Responsibilities Statement. The Borrower's Rights and Responsibilities Statement and any disclosure I receive in connection with the loan made under this Note are hereby incorporated into this Note.

I understand that ED may use a servicer to handle billing and other communications related to my loan.

## Interest

Interest will be calculated using a formula provided for by the Act. Unless ED notifies me in writing of a lower rate, the interest rate on my Direct Consolidation Loan will be based on the weighted average of the interest rates on the loans being consolidated, rounded to the nearest higher one-eighth of one percent, but will not exceed 8.25%. This is a fixed interest rate, which means that the rate will remain the same throughout the life of the loan.

I agree to pay interest on the principal amount of my Direct Consolidation Loan from the date of disbursement until the loan is paid in full or discharged, except for interest ED does not charge me during a deferment period on the subsidized portion of my Direct Consolidation Loan. ED may add interest that accrues but is not paid when due to the unpaid principal balance of this loan, as provided under the Act. This is called capitalization.

## Late Charges and Collection Costs

ED may collect from me: (1) a late charge of not more than six cents for each dollar of each late payment if I fail to make any part of a required installment payment within 30 days after it becomes due, and (2) any other charges and fees that are permitted by the Act related to the collection of my Direct Consolidation Loan. If I default on my loan, I will pay reasonable collection costs, plus court costs and attorney fees.

## Repayment

I must repay the full amount of the Direct Consolidation Loan made under this Note, plus accrued interest. I will repay my loan in monthly installments during a repayment period that begins on the date of the first disbursement of the loan, unless it is in a deferment or forbearance period. Payments made by me or on my behalf will be applied first to late charges and collection costs that are due, then to interest that has not been paid, and finally to the principal amount of the loan, except during periods of repayment under the Income-Based Repayment (IBR) Plan. Under the IBR Plan, payments will be applied first to interest that is due, then to fees that are due, and then to the principal amount.

ED will provide me with a choice of repayment plans. Information on these plans is included in the Borrower's Rights and Responsibilities Statement. I must select

a repayment plan. If I do not select a repayment plan, ED will choose a plan for me in accordance with the Act.

ED will provide me with a repayment schedule that identifies my payment amounts and due dates. My first payment will be due within 60 days of the first disbursement of my Direct Consolidation Loan unless it is in a deferment or forbearance period. If I am unable to make my scheduled loan payments, ED may allow me to temporarily stop making payments, reduce my payment amount, or extend the time for making payments, as long as I intend to repay my loan. Allowing me to temporarily delay or reduce loan payments is called forbearance.

ED may adjust payment dates on my Direct Consolidation Loan or may grant me forbearance to eliminate a delinquency that remains even though I am making scheduled installment payments.

I may prepay any part of the unpaid balance on my loan at any time without penalty. After I have repaid my Direct Consolidation Loan in full, ED will send me a notice telling me that I have paid off my loan.

## Acceleration and Default

At ED's option, the entire unpaid balance of the Direct Consolidation Loan will become immediately due and payable (this is called "acceleration") if either of the following events occurs: (1) I make a false representation that results in my receiving a loan for which I am not eligible; or (2) I default on the loan.

The following events will constitute a default on my loan: (1) I fail to pay the entire unpaid balance of the loan after ED has exercised its option under the preceding paragraph; (2) I fail to make installment payments when due, provided my failure has persisted for at least 270 days; or (3) I fail to comply with other terms of the loan, and ED reasonably concludes that I no longer intend to honor my repayment obligation. If I default, ED may capitalize all outstanding interest. This will increase the principal balance, and the full amount of the loan, including the new principal balance and collection costs, will become immediately due and payable.

If I default, the default will be reported to national consumer reporting agencies and will significantly and adversely affect my credit rating. I understand that a default will have additional adverse consequences to me as disclosed in the Borrower's Rights and Responsibilities Statement. Following default, I may be required to repay the loan (including potential collection of amounts in excess of the principal and interest) under the Income Contingent Repayment (ICR) Plan or the IBR Plan in accordance with the Act.

## Legal Notices

Any notice required to be given to me will be effective if sent by first class mail to the most recent address that ED has for me, by electronic means to an address I have provided, or by any other method of notification permitted or required by applicable statute or regulation. I will immediately notify ED of a change of contact information or status, as specified in the Borrower's Rights and Responsibilities Statement.

If ED fails to enforce or insist on compliance with any term on this Note, this does not waive any right of ED. No provision of this Note may be modified or waived except in writing by ED. If any provision of this Note is determined to be unenforceable, the remaining provisions will remain in force.

Information about my loan will be submitted to the National Student Loan Data System (NSLDS). Information in NSLDS is accessible to schools, lenders, and guarantors for specific purposes as authorized by ED.

## Borrower's Rights and Responsibilities Statement

*Important Notice: This Borrower's Rights and Responsibilities Statement provides additional information about the terms and conditions of the loan you will receive under the accompanying Federal Direct Consolidation Loan (Direct Consolidation Loan) Application and Promissory Note (Note). Please keep a copy of the Note and this Borrower's Rights and Responsibilities Statement for your records.*

In this document, the words "we," "us," and "our" refer to the U.S. Department of Education.

**1. The William D. Ford Federal Direct Loan Program.** The William D. Ford Federal Direct Loan (Direct Loan) Program includes the following types of loans, known collectively as "Direct Loans":

- Federal Direct Stafford/Ford Loans (Direct Subsidized Loans)
- Federal Direct Unsubsidized Stafford/Ford Loans (Direct Unsubsidized Loans)
- Federal Direct PLUS Loans (Direct PLUS Loans)
- Federal Direct Consolidation Loans (Direct Consolidation Loans)

The Direct Loan Program is authorized by Title IV, Part D, of the Higher Education Act of 1965, as amended, 20 U.S.C. 1070 et seq. (HEA).

Direct Loans are made by the U.S. Department of Education. We contract with servicers to service, answer questions about, and process payments on Direct Loans. We will provide you with the address and telephone number of the servicer for your loan.

**2. Laws that apply to this Note.** The terms and conditions of loans made under this Note are determined by the HEA and other applicable federal laws and regulations. These laws and regulations are referred to as "the Act" throughout this Borrower's Rights and Responsibilities Statement. State law, unless it is preempted by federal law, may provide you with certain rights, remedies, and defenses in addition to those stated in the Note and this Borrower's Rights and Responsibilities Statement.

NOTE: Any change to the Act applies to loans in accordance with the effective date of the change.

**3. Direct Consolidation Loan identification numbers.** Depending on the type(s) of federal education loan(s) that you choose to consolidate, your Direct Consolidation Loan may have up to two individual loan identification numbers. However, you will have only one Direct Consolidation Loan and will receive only one bill.

**3a.** The subsidized portion of your Direct Consolidation Loan ("Direct Subsidized Consolidation Loan") will have one loan identification number representing the amount of the following types of loans that you consolidate:

- Subsidized Federal Stafford Loans
- Direct Subsidized Loans
- Subsidized Federal Consolidation Loans
- Direct Subsidized Consolidation Loans
- Federal Insured Student Loans (FISL)
- Guaranteed Student Loans (GSL)

**3b.** The unsubsidized portion of your Direct Consolidation Loan ("Direct Unsubsidized Consolidation Loan") will have one identification number representing the amount of the following types of loans that you consolidate:

- Unsubsidized and Nonsubsidized Federal Stafford Loans
- Direct Unsubsidized Loans
- Unsubsidized Federal Consolidation Loans
- Direct Unsubsidized Consolidation Loans
- Federal PLUS Loans (for parents or for graduate and professional students)
- Direct PLUS Loans (for parents or for graduate and professional students)
- Direct PLUS Consolidation Loans
- Federal Perkins Loans
- National Direct Student Loans (NDSL)
- National Defense Student Loans (NDSL)
- Federal Supplemental Loans for Students (SLS)
- Parent Loans for Undergraduate Students (PLUS)
- Auxiliary Loans to Assist Students (ALAS)
- Health Professions Student Loans (HPSL)
- Health Education Assistance Loans (HEAL)
- Nursing Student Loans (NSL)
- Loans for Disadvantaged Students (LDS)

**4. Adding eligible loans to your Direct Consolidation Loan.** You may add eligible loans to your Direct Consolidation Loan by submitting a request to us within 180 days of the date your Direct Consolidation Loan is made. (Your Direct Consolidation Loan is "made" on the date we pay off the first loan that you are consolidating.) After we pay off any loans that you add during the 180-day period, we will notify you of the new total amount of your Direct Consolidation Loan and of any adjustments that must be made to your monthly payment amount and/or interest rate.

If you want to consolidate any additional eligible loan(s) after the 180-day period, you must apply for a new Direct Consolidation Loan.

**5. Loans that may be consolidated.** General. Only the federal education loans listed in items 3a and 3b. of this Borrower's Rights and Responsibilities Statement may be consolidated into a Direct Consolidation Loan. You may only consolidate loans that are in a grace period or in repayment (including loans in deferment or forbearance). At least one of the loans that you consolidate must be a Direct Loan Program loan or a Federal Family Education Loan (FFEL) Program loan.

*Defaulted loans.* You may consolidate a loan that is in default if (a) you first make satisfactory repayment arrangements with the holder of the defaulted loan, or (b) you agree to repay your Direct Consolidation Loan under the Income Contingent Repayment (ICR) Plan or the Income-Based Repayment (IBR) Plan (see item 10).

*Existing consolidation loans.* Generally, you may consolidate an existing Direct Consolidation Loan or Federal Consolidation Loan into a new Direct Consolidation Loan only if you include at least one additional eligible loan in the consolidation. However, you may consolidate a Federal Consolidation Loan into a new Direct Consolidation Loan without including an additional loan if the Federal Consolidation Loan is delinquent and has been submitted by the lender to the guaranty agency for default aversion, or if the Federal Consolidation Loan is in default. In such cases, you must agree to repay the new Direct Consolidation Loan under the ICR Plan or the IBR Plan. You may also consolidate a single Federal Consolidation Loan into a new Direct Consolidation Loan to use the Public Service Loan Forgiveness program described in item 17 of this Borrower's Rights and Responsibilities Statement, or the no accrual of interest benefit for active duty service members described in item 8.

**6. Information you must report to us.** Until your loan is repaid, you must notify your servicer if you:

- Change your address or telephone number;
- Change your name (for example, maiden name to married name);
- Change your employer or your employer's address or telephone number changes; or
- Have any other change in status that would affect your loan (for example, if you receive a deferment while you are unemployed, but you find a job and therefore no longer meet the eligibility requirements for the deferment)

**7. Interest rate.** The interest rate on your Direct Consolidation Loan will be the lesser of the weighted average of the interest rates on the loans being consolidated, rounded to the nearest higher one-eighth of one percent, OR 8.25%. We will send you a notice that tells you the interest rate on your loan.

The interest rate on a Direct Consolidation Loan is a fixed rate. This means that the interest rate will remain the same throughout the life of your loan.

If you qualify under the Servicemembers Civil Relief Act, the interest rate on your loans obtained prior to military service may be limited to 6% during your military service. To receive this benefit, you must contact your servicer for information about the documentation you must provide to show that you qualify.

**8. Payment of interest.** Except as provided below for borrowers who serve in the military, interest accrues on a Direct Consolidation Loan from the date the loan is made until it is paid in full or discharged, including during periods of deferment or forbearance. You are responsible for paying all interest that accrues, except for interest that accrues on the subsidized portion of a Direct Consolidation Loan ("Direct Subsidized Consolidation Loan" – see item 3a.) during deferment periods.

If you do not pay the interest as it accrues during the periods described above, we will add the interest to the unpaid principal amount of your loan at the end of the deferment or forbearance period. This is called "capitalization." Capitalization increases the unpaid principal balance of your loan, and interest will then accrue on the increased principal amount.

FILED
CIVIL DIVISION

JUL 29 2025

Superior Court of the
District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

1
2
3

| | |
|---|---|
| Jason Christopher Long, | Case No.: 2025- CAB-4846 |
| **Plaintiff,** | |
| vs. | Judge: Tanya Jones Bosier |
| MAXIMUS, INC D/B/A AIDVANTAGE, | |
| **Defendant** | **Next Scheduled Remote Hearing:** 10/24/2025 9:30 AM |
| | **PLAINTIFF'S MOTION FOR SANCTIONS, CORRECTION OF RECORD, RE-FILING RIGHTS, AND MONETARY COMPENSATION DUE TO CLERICAL MISHANDLING** |

**PLAINTIFF'S MOTION FOR SANCTIONS, CORRECTION OF RECORD, RE-FILING RIGHTS, AND MONETARY COMPENSATION DUE TO CLERICAL MISHANDLING**

Plaintiff, Jason Christopher Long, specially appearing Pro Per, respectfully moves this Court for an Order finding the Civil Clerk's Office responsible for ministerial errors in handling, misfiling, and mutilating Plaintiff's documents, and awarding the following relief:

1. Recognition of the original filing date.

2. Correction and replacement of the faulty official record.

3. Leave to re-file original documents once received by mail.

4. Sanctions payable to Plaintiff and monetary compensation for damage and prejudice.

## FACTUAL BACKGROUND

On July 25, 2025, Plaintiff delivered a civil complaint and exhibits to the Clerk's Office in Room 5000 at the Moultrie Courthouse.

The clerk initially refused to file the documents, made undue comments on the substance, then processed the filing after delay.

PLAINTIFF'S MOTION FOR SANCTIONS, CORRECTION OF RECORD, RE-FILING RIGHTS, AND MONETARY COMPENSATION DUE TO CLERICAL MISHANDLING - 1

The official record reflects two missing pages, blurry, illegible material, and all attributable to the clerk's mishandling.

Plaintiff has not yet received the documents in the mail, delaying proper re-filing and causing prejudice, time loss, and inconvenience.

## LEGAL AUTHORITIES

A. D.C. Rule 45(c): Ministerial Duties Only

Superior Court Rule 45(c) requires clerks to accept, docket, and maintain custody of filings without evaluating their substance. Clerks have no legal discretion to reject, alter, or delay filings.

B. Filing Takes Effect Upon Submission — Not Docketing

In Courthouse News Serv. v. Yamasaki, the court ruled that access to the court attaches upon submission, not docketing, and clerks may not impede that access.

C. Relief Available for Clerk Error —In District of Columbia v. Watkins held that clerical omissions or errors that prejudice a party may justify equitable corrective measures, including retroactive recognition of filing date.

D. Monetary Sanctions & Compensation Under Court's Inherent Power

Under Chambers v. NASCO, courts possess inherent authority to sanction misconduct and compensate injured parties when court officers disrupt access to justice District of Columbia case law (e.g., Brooks v. United States) confirms factors courts should consider when assessing sanctions, including reasonableness, deterrence, and harm caused.

Rule 11 of the Superior Court (D.C. Civ. R. 11) authorizes sanctions payable directly to a party when conduct causes unnecessary delay or expense.

## ARGUMENT

1. The clerk acted ultra vires by refusing to file your documents and making legal comments, violating your right and D.C. Rule 45(c).

2. The resulting record is deficient—missing pages, duplicates, blurry—in prejudice to Plaintiff, and supports equitable relief under *Watkins.

3. The clerk's failure caused monetary harm: travel, time, delay, and emotional distress, for which compensation and sanctions are appropriate.

PLAINTIFF'S MOTION FOR SANCTIONS, CORRECTION OF RECORD, RE-FILING RIGHTS, AND MONETARY COMPENSATION DUE TO CLERICAL MISHANDLING - 2

4. Plaintiff has not yet received original documents in the mail, further delaying proper filing.

5. The Court's inherent authority supports ordering correction of the record, recognition of original filing date, leave to refile, sanctions, and compensation.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court:

1. Recognize Plaintiff's original filing date (July 25, 2025) as the effective date of filing;

2. Order correction of the court record, including:

 inclusion of the two missing pages;

removal of blurry or duplicated pages;

insertion of a complete, clean replacement copies once provided;

3. Grant Plaintiff leave to re-file originally submitted documents once they arrive by mail without additional fees or procedural hurdles;

4. Award monetary compensation to Plaintiff for:

 travel expenses,
 time lost,
 any mailing costs,
 emotional or equitable damages caused by delay;

5. Impose sanctions payable to Plaintiff for clerk's misconduct and institutional delay;

6. Admonish Clerk's Office to adhere strictly to ministerial duties as defined by D.C. Rule 45;

7. Grant any additional relief deemed just.


Respectfully submitted,

*Jason C Long*

Jason Christopher Long
Plaintiff, Pro Per
"Without Prejudice"
ALL RIGHTS ARE RESERVED.
July 29, 2025.

PLAINTIFF'S MOTION FOR SANCTIONS, CORRECTION OF RECORD, RE-FILING RIGHTS, AND MONETARY COMPENSATION DUE TO CLERICAL MISHANDLING - 3

1        ## PROPOSED ORDER

2

3       Upon review of Plaintiff's Motion for Sanctions and Compensation, it is hereby:

4       ORDERED that the Motion is GRANTED;

5       ORDERED that Plaintiff's Complaint and supporting documents in this case shall be treated as
6       improperly filed on July 25, 2025;

7       ORDERED that the Clerk's Office shall promptly:

8       1. Substitute a clean and complete copy of Plaintiff's Complaint into the official record
9       (incorporating two missing pages and removing duplicates/blurry pages);

10      2. Docket the submission as of the original filing date;

11      3. Upon receipt of Plaintiff's original documents by mail, accept them for re-filing without
12      additional fees or objections;

13      ORDERED that Plaintiff is awarded monetary compensation for travel, time, mailing costs, and
14      prejudice sustained, the specific amount to be submitted via declaration within 14 days;

15      ORDERED that sanctions payable to Plaintiff are imposed against the Clerk's Office for
16      improper and unauthorized handling of filing;

17      ORDERED that the Clerk's Office shall comply strictly with the ministerial duties under D.C.
        Super. Ct. Civ. R. 45(c) and refrain from evaluating or rejecting filings based on content.

18      SO, ORDERED.

19
20      Dated: July 29, 2025.
        Washington, D.C.

21

22      Judge Tanya Jones Bosier

23

24

25

26

27

28      PLAINTIFF'S MOTION FOR SANCTIONS, CORRECTION OF RECORD, RE-FILING RIGHTS, AND
        MONETARY COMPENSATION DUE TO CLERICAL MISHANDLING - 4

EX A. 2 Missing pages from Plaintiff's legal Documents that was filed on July 25, 2025.

# NAVIENT.

Department of Education
Loan Servicing

PO BOX 9635
WILKES-BARRE, PA 18773-9635

JASON LONG
629 LAMONT ST NW
APT 2
WASHINGTON DC 20010-2571

## JASON, we've enclosed a copy of the documents you recently requested.

**We're here to help**
We want to help you manage your account in a way that's convenient for you. If you have any questions about your account or your options, visit us online or give us a call.

Enclosure(s):

·Promissory Note·

**Account number**
9646961359 - 1

**Date**
01/16/19

**Manage your account online**
Navient.com

**Contact us**
800-722-1300

Monday – Thursday,
8 a.m. – 9 p.m.
Friday, 8 a.m. – 8 p.m. Eastern

Save money with Auto Pay: You may be able to earn an interest rate reduction by enrolling in Auto Pay. To enroll, log in to Navient.com and change your payment settings. Check your online account for benefit eligibility.

*9646961359105652099*

OCT 2 2 2013

| Borrower's Name (please print) | Jason Long | Social Security Number |

The body text is largely illegible.

**23. Borrower's Signature:** Jason Long     Today's Date (mm-dd-yyyy) 10/8/2013

10/08/2013



# Superior Court of the District of Columbia
## CIVIL DIVISION

**Check One:**

☐ **Civil Actions Branch**
500 Indiana Ave., N.W.
Room 5000
Washington, D.C. 20001
Telephone: (202) 879-1133

☐ **Landlord & Tenant Branch**
510 4th Street, N.W.
Room 110
Washington, D.C. 20001
Telephone: (202) 879-4879

☐ **Small Claims & Conciliation Branch**
510 4th Street, N.W.
Room 119
Washington, D.C. 20001
Telephone: (202) 879-1120

_____
                    Plaintiff
        **v.**                    CASE NUMBER: _____

_____
                    Defendant

## ANSWER OF DEFENDANT

The defendant answers the claim(s) of plaintiff(s) as follows:

_____

_____

_____

_____

_____

## SIGNATURE AND ADDRESS OF PARTY/ATTORNEY

_____          _____
Signature                                 Date

_____          _____
Printed Name and Bar Number (if applicable)   Street Address

_____          _____
Email Address and Phone Number            City, State, Zip

## CERTIFICATE OF SERVICE

I hereby certify that on _____ (date), that a copy of this Answer was sent in the manner indicated to the party/parties in this case or their attorney(s) as listed below:

☐ E-served on or ☐ Mailed to (check one)

_____          _____
Name                                      Name

_____          _____
Street Address                            Street Address

_____          _____
City, State, Zip                          City, State, Zip

_____          _____
Email Address and Phone Number            Email Address and Phone Number

Form CV(6)-451/Jan. 2020                  Super. Ct. Civ. R. 12; Super Ct. L&T R. 5 & Super. Ct. SC R. 5



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION - Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Jason Christopher Long
_____
*Plaintiff(s)*

v.

Case No: 2025-CAB-004846

# Maximus Inc, et al.
_____
*Defendant(s)*

## NOTICE AND ACKNOWLEDGMENT OF SERVICE

To (insert name and address of the party to be served):

Maximus Inc., d/b/a AIDVANTAGE
Attn: General Counsel John Martinez
1600 Tyson Blvd Ste 1400
McLean, VA 22102

  The enclosed summons, complaint, initial order, and any addendum are served in accordance with Superior Court Rule of Civil Procedure 4(c)(5).

  Please sign and date the Acknowledgement at the bottom of the page. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, please indicate your relationship to that entity in the space beside your signature. If you are served on behalf of another person and you are authorized to receive process, please indicate your authority in the space beside your signature.

  If you do not complete and return the form to the sender within 21 days after it was mailed and you do not show good cause for this failure, you (or the party on whose behalf you are being served) will be required to pay 1) the costs incurred in serving the summons, complaint, initial order, and any addendum in any other manner permitted by law and 2) the reasonable expenses, including attorney's fees, for any motion required to collect those service expenses.

  If you do complete and return this form, you (or the party on whose behalf you are being served) must answer the complaint within 21 days after you have signed, dated, and returned the form (or within 60 days if the party being served is the United States, the District of Columbia, or officers or employees of either). If you fail to do so, judgment by default may be entered against you for the relief demanded in the complaint.

  This Notice and Acknowledgment of Receipt of Summons, Complaint, Initial Order, and Any Addendum was mailed on (insert date): 8/4/2025  .

_____    8/4/2025
*Signature*          _____
                *Date of Signature*

## ACKNOWLEDGMENT OF RECEIPT OF SUMMONS, COMPLAINT, INITIAL ORDER, AND ANY ADDENDUM

  I (print name) _____ received a copy of the summons, complaint, initial order, and any addendum in the above captioned matter at (insert address): _____
_____
_____

_____ _____ _____
*Signature*     *Relationship to Defendant/Authority*  *Date of Signature*
       *to Receive Service*

Para pedir una traducción, llame al (202) 879-4828  如需翻译,请打电话 (202) 879-4828  Veuillez appeler au (202) 879-4828 pour une traduction
Để có một bài dịch, hãy gọi (202) 879-4828   የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ  번역을 원하시면, (202) 879-4828 로 전화주십시오



**Superior Court of the District of Columbia**
**Civil Division - Civil Actions Branch**
**500 Indiana Ave NW, Room 5000, Washington DC 20001**
**202-879-1133 | www.dccourts.gov**

**Case Number:** 2025-CAB-004846

**Case Style:** Jason Christopher Long v. Maximus Inc et al.

## INITIAL ORDER

| Initial Hearing Date: | Initial Hearing Time: | Courtroom Location: |
|---|---|---|
| Friday, 10/24/2025 | 9:30 AM | Remote Courtroom 212 |
| **Please see attached instructions for remote participation.** | | |

| Your case is assigned to Associate Judge Tanya Jones Bosier. |
|---|

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

1) This case is assigned to the judge and calendar designated above. All future filings in this case shall bear the calendar number and judge's name along with the case number in the caption.

2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of the summons, the complaint, and this Initial Order. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4.

3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

4) At the time stated above, all counsel and unrepresented parties shall participate in a hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients before the hearing whether the clients are agreeable to binding or non-binding arbitration. This order is the only notice that parties and counsel will receive concerning this hearing.

5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference once, with the consent of all parties, to either of the two succeeding days when the calendar is called. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date. No other continuance will be granted except upon motion for good cause shown.

6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Milton C. Lee, Jr.

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb212

   Meeting ID: 129 440 9070

2) When you are ready, click "Join Meeting".
3) You will be placed in the lobby until the courtroom clerk gives you access to the hearing.


**Or to Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
2) Enter the Webex Meeting ID listed above followed by "##"


**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here https://www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch Clerk's Office at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

## ACCESSIBILITY AND LANGUAGE ACCESS

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call 202-879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services:**

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office listed for your case. For more information, visit https://www.dccourts.gov/language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría de su caso.

Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች:**

የዲ.ሲ. ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። የቃል ወይም የጽሑፍ ትርጓሜ ለመጠየቅ እባክዎን በመዝገብዎ የተዘረዘረውን የጽሕፈት ቢሮ (ክለርክ'ስ ኦፊስ) ያናግሩ። ለተጨማሪ መረጃ https://www.dccourts.gov/language-access ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

# Tips for Attending Remote Hearings - Civil Division

*Your court hearing may be held remotely. This means that you will participate by phone or by video conference instead of coming to the courthouse. Here are some tips on how to prepare.*

## How do I know if I have a remote hearing?

The Court will contact you to tell you that your hearing is remote. They may contact you by sending you an email, letter in the mail, or by calling you.



## How do I take part in a remote hearing?

The Court will give you step-by-step instructions on how to take part in the remote hearing.

If you lose your written notice, call the Civil Actions Clerk's Office for instructions at:

 202-879-1133

## Is there anything that I should do before the day of the hearing?

- Let the court know immediately if you cannot join a hearing because you do not have a phone or computer.

  Civil Actions Clerk's Office: 202-879-1133

- You may want to contact an attorney for legal help.

- You can also find the list of legal services providers at www.dccourts.gov/services/represent-yourself by clicking on the link that says, "List of Legal Service Providers for Those Seeking an Attorney or Legal Advice".

- Evidence: if you want the judge to review photos or documents, ask the judge how to submit your evidence.

- Witnesses: tell the judge if you want a witness to testify at your hearing.

- Accommodations & Language Access: let the court know if you need an interpreter or other accommodation for your hearing.

## Tips for the Hearing



- Join the hearing a few minutes early!

- Charge your computer or phone and make sure you have enough minutes to join the call. Find a private and quiet space. If possible, be alone in a room during the hearing. Try to limit distractions as much as possible. If others are in the room with you, ask if they can be quiet during the hearing.

- Mute your microphone when you are not talking. Mute all sounds on your phone or computer.

- Say your name before you speak so the record is clear. Be prepared to identify your role in the hearing (e.g., observer, plaintiff, defendant, witness, etc.)

- Speak slowly and clearly so everyone hears what you are saying.

- Pause before speaking in case there is a lag. Use a headset or headphones if you can. This will free up your hands and sound better.

- Try not to talk over anyone else. Only one person can speak at a time. If you talk while someone else is talking, the judge will not be able to hear you.

- Have all your documents for the hearing in front of you. Have a pen and paper to take notes.

- If you are not ready for your hearing or want to speak with an attorney, you can ask the judge to postpone your hearing for another date.

- If your sound or video freezes during the hearing, use the chat feature or call the Clerk's Office to let them know that you are having technical issues.

## Special Tips for Video Hearings
## (Click here for more information)



- Download the court's hearing software, WebEx, in advance and do a test run! The Court will provide you with a WebEx link in advance of the hearing.

- Set up the camera at eye level. If you are using your phone, prop it up so you can look at it without holding it.

- Look at the camera when you speak and avoid moving around on the video.

- Wear what you would normally wear to court.

- Sit in a well-lit room with no bright lights behind you.

- If possible, find a blank wall to sit in front of. Remember the judge will be able to see everything on your screen, so pick a location that is not distracting.




# District of Columbia Courts
## Tips for Using DC Courts Remote Hearing Sites

The DC Courts have **remote hearing sites** available in various locations in the community to help persons who may not have computer devices or internet service at home to participate in scheduled remote hearings. The Courts are committed to enhancing access to justice for all.

There are four remote access sites throughout the community which will operate **Monday – Friday, 8:30 am – 4:00 pm.**




| | |
|---|---|
| **Remote Site – 1**<br><br>Balance and Restorative Justice Center<br>1215 South Capitol Street, SW<br>Washington, DC 20003 | **Remote Site – 3**<br><br>Balance and Restorative Justice Center<br>118 Q Street, NE<br>Washington, DC 20002 |
| **Remote Site – 2**<br><br>Balance and Restorative Justice Center<br>1110 V Street, SE<br>Washington, DC 20020 | **Remote Site – 4**<br><br>Balance and Restorative Justice Center<br>920 Rhode Island Avenue, NE<br>Washington, DC 20018 |

**If you want to use a remote site location for your hearing**, call 202-879-1900 or email DCCourtsRemoteSites@dcsc.gov at least 24 hours before your hearing to reserve a remote access computer station.

**If you require special accommodations such as an interpreter for your hearing**, please call 202-879-1900 at least 24 hours in advance of your hearing so the Courts can make arrangements.

**\*You should bring the following items when you come to your scheduled site location\***

1. Your case number and any hyperlinks provided by the Courts for your scheduled hearing.
2. Any documents you need for the hearing (evidence), including exhibits, receipts, photos, contracts, etc.
3. Materials for notetaking, including pen and paper.

*Safety and security measures are in place at the remote sites.*

**Contact information to schedule your remote access computer station:**
Call:  202-879-1900
Email:  DCCourtsRemoteSites@dcsc.gov




# Tribunales del Distrito de Columbia
## Consejos para usar los sitios de audiencia remota de los Tribunales de DC

Los Tribunales de DC disponen de **sitios de audiencia remota** en distintos centros de la comunidad para ayudar a que las personas que no tienen dispositivos informáticos o servicio de Internet en su casa puedan participar en audiencias remotas programadas. Los Tribunales honran el compromiso de mejorar el acceso de toda la población a la justicia.

En toda la comunidad hay cuatro sitios de acceso remoto que funcionarán **de Lunes a Viernes, de 8:30 am a 4:00 pm**.

| **Sito Remoto – 1** | **Sito Remoto – 3** |
|---|---|
| Balance and Restorative Justice Center 1215 South Capitol Street, SW Washington, DC 20003 | Balance and Restorative Justice Center 118 Q Street, NE Washington, DC 20002 |



| **Sito Remoto – 2** | **Sito Remoto – 4** |
|---|---|
| Balance and Restorative Justice Center 1110 V Street, SE Washington, DC 20020 | Balance and Restorative Justice Center 920 Rhode Island Avenue, NE Washington, DC 20018 |

**Si desea usar un sitio remoto para su audiencia**, llame al 202-879-1900 o envíe un mensaje de correo electrónico a DCCourtsRemoteSites@dcsc.gov al menos 24 horas antes de la audiencia, para reservar una estación de computadora de acceso remoto.

**Si necesita adaptaciones especiales**, como un intérprete para la audiencia, llame al 202-879-1900 al menos 24 horas antes de la audiencia para que los Tribunales puedan hacer los arreglos necesarios.

**\*Cuando concurra al sitio programado debe llevar los siguientes artículos\***
1. Su número de caso y todos los hipervínculos que le hayan proporcionado los Tribunales para la audiencia programada.
2. Cualquier documento que necesite para la audiencia (prueba), incluidos documentos probatorios, recibos, fotos, contratos, etc.
3. Materiales para tomar nota, como papel y lápiz.

\*Los sitios de acceso remoto cuentan con medidas de seguridad y protección.

**Información de contacto para programar su estación de computadora de acceso remoto:**
Teléfono: 202-879-1900
Correo electrónico: DCCourtsRemoteSites@dcsc.gov





**Superior Court of the District of Columbia**
**CIVIL DIVISION – Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Case No. _____

FILED
CIVIL DIVISION
JUL 25 ████
Superior Court of the
District of Columbia

Case No. 20██-███ 004846

## COMPLAINT

Jurisdiction of this Court is founded on D.C. Code § 11-921.

Jason Christopher Long
PLAINTIFF

5112 MacArthur BLVD, N.W., Unit 4
Address (No Post Office Boxes)

Washington, District of Columbia (20016)
City        State        Zip Code

Don't disclose in the docket
Telephone Number

jclong2070@yahoo.com
Email Address (optional)

vs

MAXIMUS, INC D/B/A ~~AIDVANTAGE~~ J.C.L.     AIDVANTAGE ELA
DEFENDANT
ATTN: General counsel John Martinez
1600 Tysons BLVD, STE 1400
Address (No Post Office Boxes)

McLean    VA    22102
City        State        Zip Code

(703) 251-8500
Telephone Number

_____
Email Address (optional)

1. Write a short and plain statement of your claim, including any relevant facts, dates, and locations:

Plaintiff honorably request the court to read and review my complaint and the exhibits included to show the wrong doing of the Defendants from 2021 or 2022. To right now.

2. What relief are you requesting from the Court? Include any request for money damages.

I kindly request the court to see prayer to relief section to determine the amount I am requesting.

3.  State any other information, of which the Court should be aware:

This court has jurisdiction to hold the defendants under the District of Columbia's Codes, citations, legal authorities, and etc. Please see Plaintiff's Statement of Claim and exhibits that will show this cannot be transferred to U.S.A. DC District Court. I object the court to have the defendants to do so

## SIGNATURE

To the best of my knowledge, everything in this Complaint is true and I am not filing this Complaint to harass the Defendant(s). Superior Court Civil Rules 11(b).

*Carson C. Fong* "without Prejudice" I-308

**SIGNATURE**

7-25-2025

**DATE**

Subscribed and sworn to before me this ____25____ day of ____Jul____

_____

(Notary Public, Deputy Clerk)

2



## ADDENDUM TO COMPLAINT

CASE NO. 2025-CAB 004845

### ADDITIONAL PARTY NAMES AND ADDRESSES

Sam Tandy

☐ PLAINTIF          ☒ DEFENDANT

1600 Tysons Blvd, STE 1400
Address (No Post Office Boxes)

McLean VA  22702
City          State          Zip

(703) 251 - 8500
Telephone Number

_____
Email Address (Optional)


Dominic Martin

☐ PLAINTIFF          ☒ DEFENDANT

1600 Tysons Blvd, STE 1400
Address (No Post Office Boxes)

McLean  UA  22702
City          State          Zip

(703) 251- 8500
Telephone Number

_____
Email Address (Optional)


_____
☐ PLAINTIF          ☐ DEFENDANT

_____
Address (No Post Office Boxes)

_____
City          State          Zip

_____
Telephone Number

_____
Email Address (Optional)


_____
☐ PLAINTIFF          ☐ DEFENDANT

_____
Address (No Post Office Boxes)

_____
City          State          Zip

_____
Telephone Number

_____
Email Address (Optional)

## ADDENDUM TO COMPLAINT

CASE NO. _____

## ADDITIONAL PARTY NAMES AND ADDRESSES

☐ PLAINTIFF         ☐ DEFENDANT

_____

Address (No Post Office Boxes)

_____

City          State          Zip

_____

Telephone Number

_____

Email Address (Optional)

☐ PLAINTIFF         ☐ DEFENDANT

_____

Address (No Post Office Boxes)

_____

City          State          Zip

_____

Telephone Number

_____

Email Address (Optional)

☐ PLAINTIF         ☐ DEFENDANT

_____

Address (No Post Office Boxes)

_____

City          State          Zip

_____

Telephone Number

_____

Email Address (Optional)

☐ PLAINTIFF         ☐ DEFENDANT

_____

Address (No Post Office Boxes)

_____

City          State          Zip

_____

Telephone Number

_____

Email Address (Optional)

# Superior Court of the District of Columbia

### CIVIL DIVISION - CIVIL ACTIONS BRANCH
### INFORMATION SHEET

Jason Christopher Long
_Plaintiff(s)_

Case Number: 2025-CAB-004845

vs

Date: 7-25-2025

MAXIMUS, INC DIBA AIDVANTAGE
EL AT.,
_Defendant(s)_

☐ One of the defendants is being sued in their official capacity.

| Name: *(Please Print)* Jason Christopher Long | Relationship to Lawsuit |
| Firm Name: | ☐ Attorney for Plaintiff |
| | ☐ Self (Pro Se) |
| Telephone No.: N/A    DC Bar No.: 723456 | ☑ Other: Pro Per |

TYPE OF CASE: ☐ Non-Jury    ☑ 6 Person Jury    ☐ 12 Person Jury

Demand: $ over 150,000    Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____ Judge:_____ Calendar #:_____

Case No.:_____ Judge:_____ Calendar #:_____

---

**NATURE OF SUIT:** *(Check One Box Only)*

**CONTRACT**
☐ Breach of Contract
☐ Breach of Warranty
☐ Condo/Homeowner Assn. Fees
☐ Contract Enforcement
☐ Negotiable Instrument

**COLLECTION/INS. SUB**
☐ Debt Collection
☐ Insurance Subrogation
☐ Motion/Application for Judgment by Confession
☐ Motion/Application Regarding Arbitration Award

**EMPLOYMENT DISPUTE**
☐ Breach of Contract
☐ Discrimination
☐ Wage Claim
☐ Whistle Blower
☐ Wrongful Termination

**REAL PROPERTY**
☐ Condo/Homeowner Assn. Foreclosure
☐ Declaratory Judgment
☐ Drug Related Nuisance Abatement
☐ Ejectment
☐ Eminent Domain
☐ Interpleader
☐ Other
☐ Quiet Title
☐ Specific Performance

☐ FRIENDLY SUIT
☐ HOUSING CODE REGULATIONS
☐ QUI TAM
☐ STRUCTURED SETTLEMENTS

**ADMINISTRATIVE PROCEEDINGS**
☐ Administrative Search Warrant
☐ App. for Entry of Jgt. Defaulted Compensation Benefits
☐ Enter Administrative Order as Judgment
☐ Libel of Information
☐ Master Meter
☐ Petition Other
☐ Release Mechanics Lien
☐ Request for Subpoena

**MALPRACTICE**
☐ Medical – Other
☐ Wrongful Death

**AGENCY APPEAL**
☐ Dangerous Animal Determination
☐ DCPS Residency Appeal
☐ Merit Personnel Act (OEA)
☐ Merit Personnel Act (OHR)
☐ Other Agency Appeal

☐ APPLICATION FOR INTERNATIONAL FOREIGN JUDGMENT

CV-496/February 2023

# Information Sheet, Continued

**CIVIL ASSET FORFEITURE**
- ☐ Currency
- ☐ Other
- ☐ Real Property
- ☐ Vehicle

**NAME CHANGE/VITAL RECORD AMENDMENT**
- ☐ Birth Certificate Amendment
- ☐ Death Certificate Amendment
- ☐ Gender Amendment
- ☐ Name Change

**TORT**
- ☐ Abuse of Process
- ☐ Assault/Battery
- ☐ Conversion
- ☐ False Arrest/Malicious Prosecution
- ☐ Libel/Slander/Defamation
- ☐ Personal Injury
- ☐ Toxic Mass
- ☐ Wrongful Death (Non-Medical Malpractice)

**GENERAL CIVIL**
- ☐ Accounting
- ☐ Deceit (Misrepresentation)
- ☐ Fraud
- ☐ Invasion of Privacy
- ☐ Lead Paint
- ☐ Legal Malpractice
- ☐ Motion/Application Regarding Arbitration Award
- ☐ Other - General Civil

- ☐ Product Liability
- ☐ Request for Liquidation
- ☐ Writ of Replevin
- ☐ Wrongful Eviction

**CIVIL I/COMPLEX CIVIL**
- ☐ Asbestos

**MORTGAGE FORECLOSURE**
- ☐ Non-Residential
- ☐ Residential

**STATUTORY CLAIM**
- ☐ Anti – SLAPP
- ☑ Consumer Protection Act
- ☐ Exploitation of Vulnerable Adult
- ☐ Freedom of Information Act (FOIA)
- ☐ Other

**TAX SALE FORECLOSURE**
- ☐ Tax Sale Annual
- ☐ Tax Sale Bid Off

**VEHICLE**
- ☐ Personal Injury
- ☐ Property Damage

- ☐ **TRAFFIC ADJUDICATION APPEAL**
- ☐ **REQUEST FOR FOREIGN JUDGMENT**

Jason Chong Without Prejudice    7-25-2025
PC Code 28:1-308
Filer/Attorney's Signature                Date

CV-496/February 2023

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**

**CIVIL DIVISION**

**CIVIL ACTIONS BRANCH DIVISION**

| | |
|---|---|
| Jason Christopher Long, | Case No.: **2025-CAB-004845** |
| Plaintiff, | |
| vs. | **PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF** |
| MAXIMUS D/B/A AIDVATANGE, EL AT., | |
| Defendant | |

**PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF**

Plaintiff, a living man on the Land of the District of Columbia, specially appearing as Pro Per in the District of Columbia, brings this action under District of Columbia statutory and common laws against the above-named Defendant and alleges as follows:

**INTRODUCTION**

This action arises from a pattern of egregious, unlawful conduct by federal student loan servicers and agents, including fraudulent loan origination, constructive forgery, record tampering, and deliberate denial of the Plaintiff's lawful rights under District of Columbia law. The Plaintiff seeks damages exceeding \$50,000, declaratory judgment invalidating fraudulent loan documents, and injunctive relief to stop ongoing harm and enforce compliance with D.C. borrower protections.

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction pursuant to D.C. Code § 11-921.

2. Venue is proper under D.C. Code § 13-423 as all acts or omissions occurred in the District of Columbia or affect a resident thereof.

3. Plaintiff brings claims exclusively under District of Columbia statutory and common law. No federal causes of action are asserted.

4. Plaintiff expressly objects to removal to federal court pursuant to 28 U.S.C. § 1441. Jurisdiction is proper in the Superior Court because the claims arise under local law and relate to

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF - 1

state-regulated entities and conduct.

5. The Superior Court of D.C. has broad jurisdiction to hear consumer protection and contract fraud claims arising within the District. See District of Columbia v. Graham, 824 A.2d 484, 488 (D.C. 2003).

## PARTIES

6. Plaintiff is a natural person and legal resident of the District of Columbia.

7. Defendant Maximus Federal Services, Inc., doing business as Aidvantage, is a federal loan servicer operating within the District.

8. Defendant Sam Tandy is an employee or agent of Maximus/Aidvantage and acted within the scope of employment.

9. Defendant Dominic Martin is an employee or agent of Maximus/Aidvantage and acted within the scope of employment.

## STATEMENT OF FACTS

11. On March 7, 2023, Plaintiff submitted a Borrower's Defense to Repayment (BDR) application to the U.S. Department of Education. By law, the Department must respond by March 6, 2026. The loan remains in forbearance pending that decision. See D.C. Student Loan Borrower Bill of Rights Amendment Act of 2024, D.C. Law 25-219; Fraternal Order of Police, D.C. Lodge No. 1 v. D.C., 238 A.3d 1187, 1195 (D.C. 2020).

12. Plaintiff objects to any repayment agreements based on the forged, unauthorized, and misrepresented nature of the underlying loan documents, including a William D. Ford Direct Loan Application submitted without consent on October 8, 2013. The D.C. courts have recognized that contracts procured by forgery or fraud are void and unenforceable. Cooper v. City of Georgetown, 137 A.3d 1140, 1146 (D.C. 2016).

13. The loan application contains five forged pages submitted by DMD Financial Services, Inc., including signatures not authored or approved by Plaintiff. These forged documents were created while Plaintiff was recovering from an arm injury sustained on July 28, 2011, precluding consent or authorization. Stern v. Smith, 703 A.2d 145, 151 (D.C. 1997) (recognizing constructive fraud by breach of duty).

14. Neither DMD Financial nor Saint Augustine's University submitted the required Program Participation Agreement or Third-Party Servicer Data Form in 2013, violating Title IV loan origination protocols and the local licensing mandates enacted under D.C. Code § 31–1134.01 et seq. The District maintains authority to regulate and protect borrowers from unlicensed servicers. Fraternal Order of Police, 238 A.3d at 1195.

15. Plaintiff provided hospital medical records and a handwriting analysis comparing 20

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF - 2

1    authentic signatures against the five forged ones in the loan application package. Courts
2    recognize handwriting analysis as valid evidence in fraud claims. District of Columbia v.
     Perkins, 987 A.2d 461, 465 (D.C. 2010).

3
4    16. Despite Plaintiff's submission of these documents, Aidvantage and its agents recklessly
     denied the claims and failed to correct the record, in violation of the District's Consumer
5    Protection Procedures Act. Grayson v. AT\&T, 15 A.3d 219 (D.C. 2011).

6    17. Sam Tandy repeatedly denied Plaintiff's requests for records from April through July 2025,
     falsely stating no such documents existed, obstructing Plaintiff's rights under the D.C. Consumer
7    Protection Procedures Act. Tommy Chew v. Wells Fargo Bank, 929 A.2d 1063, 1068 (D.C.
8    2007).

9    18. Dominic Martin failed to provide a document dated September 18, 2018 during October
     2024. Plaintiff independently retrieved this document, exposing Mr. Martin's false statements
10   and obstructive conduct. District of Columbia v. Jefferson, 765 A.2d 1133, 1136 (D.C. 2001)
11   (document tampering actionable).

12   19. Aidvantage altered documents by manipulating contrast on the Income-Driven Repayment
     (IDR) page, making terms unreadable, and inserted additional pages into the loan file not
13   included in prior servicing packages from Navient as of January 19, 2019. Such tampering
14   constitutes fraud warranting relief. Wright v. United States, 672 A.2d 1079, 1085 (D.C. 1996).

15   20. Navient failed to provide an authorization letter containing a forged date of birth, anonymous
     signature, and a handwritten "i" with a circle above it, indicating falsification by a third party.
16   This conduct voids any consent or authorization allegedly granted. Cooper, 137 A.3d at 1146.

17   21. Plaintiff maintains contemporaneous documentation, including notes from former counsel
18   Jane Cowles, chronicling misconduct by Aidvantage, Navient, Nelnet, Federal Student Aid, and
     the Department of Education from 2021 through 2022. Harris v. District of Columbia Water &
19   Sewer Auth., 791 A.2d 65, 69 (D.C. 2002) (documentary evidence supports claims of intentional
20   misconduct).

21                                    **CAUSES OF ACTION**

22   Count I – Violation of the D.C. Student Loan Borrower Bill of Rights Act (D.C. Law 25-219;
23   D.C. Code § 31–1134.01 et seq.)

24   22\. Defendants misrepresented loan terms, failed to provide required documents, and obstructed
     Plaintiff's ability to make informed repayment decisions, violating the Act's protections.
25
26   23\. Plaintiff seeks damages and equitable relief under this Act. The D.C. courts affirm the
     District's authority to regulate student loan servicers to protect consumers. Fraternal Order of
27   Police, 238 A.3d at 1195.

28   Count II – Violation of the D.C. Consumer Protection Procedures Act (D.C. Code § 28-3901 et
     PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF - 3

seq.)

24\. Defendants engaged in unfair and deceptive trade practices, including misrepresenting loan terms, providing false information, and concealing material facts.

25\. Plaintiff is entitled to damages, statutory penalties, and injunctive relief. The D.C. Court of Appeals recognizes the DCCPPA as providing robust consumer protections. Grayson v. AT\&T, 15 A.3d 219 (D.C. 2011).

Count III – Constructive Fraud and Forgery (Common Law)

26\. Defendants used forged signatures and false documents to create and enforce a loan agreement to which Plaintiff never consented.

27\. Plaintiff suffered damages as a direct result.

28\. Constructive fraud and forgery void contracts under D.C. law. Stern v. Smith, 703 A.2d 145, 151 (D.C. 1997); Cooper, 137 A.3d at 1146.

Count IV – Negligence and Gross Negligence

29\. Defendants owed Plaintiff a duty to act with due care in servicing the loan and handling documents.

30\. Their conduct represents a gross departure from reasonable standards, causing Plaintiff harm.

31\. See Kaufman v. Washington Metro. Area Transit Auth., 836 A.2d 734, 739 (D.C. 2003); District of Columbia v. Mitchell, 571 A.2d 793, 796 (D.C. 1990).

Count V – Intentional Infliction of Emotional Distress

32\. Defendants' repeated misconduct caused severe emotional distress to Plaintiff.

33\. Their actions were intentional or reckless, extreme, and outrageous.

34\. Plaintiff seeks damages for emotional harm.

35\. See Harris v. District of Columbia Water & Sewer Auth., 791 A.2d 65, 69 (D.C. 2002); Fialkowski v. Greenwich Hosp. Ass'n, 72 A.3d 857, 865 (D.C. 2013).

Count VI – Obstruction and Tampering with Records

36\. Defendants intentionally altered, obscured, or inserted false documents into Plaintiff's loan records, obstructing Plaintiff's rights and due process.

37\. This conduct constitutes actionable fraud and violates borrower protections under District

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF - 4

law.

38\. See Wright v. United States, 672 A.2d 1079, 1085 (D.C. 1996); District of Columbia v. Jefferson, 765 A
.2d 1133, 1136 (D.C. 2001).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court:

A. Declare the loan agreements forged, fraudulent, and unenforceable;
B. Award compensatory damages exceeding \$50,000, plus costs and attorney's fees;
C. Award statutory penalties and restitution under D.C. Consumer Protection Procedures Act;
D. Enjoin Defendants from further collection, reporting, or servicing related to the fraudulent loan;
E. Order Defendants to produce all original loan documents and communications;
F. Grant any other relief the Court deems just and proper.
G. Issue a permanent injunction barring Defendant Maximus Federal Services, Inc. d/b/a Aidvantage, and its agents, employees, and affiliates, including Sam Tandy and Dominic Martin, from servicing, collecting, or managing any student loans for residents of the District of Columbia, based on their repeated violations of District law, fraudulent conduct, and harmful practices;
H. Order the District of Columbia licensing authorities to revoke or suspend any licenses or registrations held by Defendant DMD Financial Services, Inc. and any other involved entities for failure to comply with Title IV requirements and the D.C. Student Loan Borrower Bill of Rights;
I. Require Defendants to provide a full accounting and submit to an independent audit overseen by the Court or the District of Columbia Attorney General to ensure full compliance with District laws and protect borrowers moving forward.

DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable under 7th Amendment.

Honorably submitted,

*Jason Christopher Long*

Jason Christopher Long
Pro Per
5112 MacArthur Boulevard N.W., Unit 4
Washington, District of Columbia (20016)
"Without Prejudice"
DC Code 28:1-308
ALL RIGHTS ARE RESERVED.
July 25, 2025

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF - 5

Exhibit 1:

November 5, 2021
Jason Christopher Long
DOB August 4, 1984
SS# ████
1319 Fairmont Street NW
Apt 1
Washington DC 20009
Navient
Fax No 866 266 0178 Attn: Forms

Call with Client @4pm
Mr. Long received no disclosures regarding rate, payment terms
Mr. Long did not receive all the details about the loan until 2009
VSac - Nelnet - Sallie Mae - Naviet
Mr. Long has call at 4:30 with Naviet to authorize Navient to get documents to me

November 6, 2021
Account No. ████████
Case No. 01661222

November 8, 2021
If underlying loans are valid Mr. Long is still responsible for the underlying loan and interest.
Deferment - if subsidized Dept of Education takes care of interest
Forbearance - payment delayed but interest accrues
Determine correct balance prior to consolidation
Consolidation December 6, 2013

December 6, 2013 balance at consolidation $21,981.26 subsidized $41,960.87 unsubsidized

Current balance as of November 8, 2021 $82,744.46

Contact Nelnet (888) 486 4722

Navient ████████

Nelnet
jclong8484
████████

November 9, 2021
Discussions with client to log into accounts to get loan history

FSA call @145

November 10, 2021
Omnibudsman Call @930
Tom
Reopen case and having file reviewed

Certification link https://www2.ed.gov/policy/gen/leg/foia/certification-of-identity-and-consent.pdf

November 12, 2021 @10:55
Matthew Navient
What is the balance is before consolidation?
Declining Balance History

Income driven program - loan forgiveness after 25 years
Work public service

studentaid.gov loan forgivenes programs. Told client to look into this https://studentaid.gov/borrower-defense/

Nelnet @11:30
Cannot speak without borrower on the phone

November 19, 2021
Records from Navient
Loan History

October 22, 2013
Direct Loan Consolidation Application
            $10,271.63
            $50,000.00
TOTAL       $60,271.63

December 6, 2013
    $22,286.61
    $42,302.82
TOTAL $64,020.23 increased amount was interest

LOAN PRINCIPAL INCREASES
 6/30/2014 $1,177.54
8/11/2015. $1,300.56

INTEREST

8/11/2015. $1,923.94
7/18/2017  $4,527.33
7/17/2018. $2,666.86
8/16/2019  $4,220.87

INCREASES $15,817.10

Left voicemail on November 18, 2021
Cassie Seaman 866-432-7939 x889190
Emailed advocate@navient.com

Steven from Navient called Jason @2:23 on November 18, 2021

November 22, 2021
Erika - case was escalated to review
Speaking with Cassie Seaman and Jason
Student Loan Defense Application

Navient confirmed that Jason made a valid point to show fraud. Department of Education
denied claim. The omnibus man has to escalate the case to review file.

Case No ▓▓▓▓▓▓

844 651 0077

Omnibus - Tyler @2:10pm
SS# ▓▓▓▓
08/04/1984
1319 Fairmont Street NW
Apt 1
Washington DC 20009
Dispute Case No ▓▓▓▓▓▓

Submitted for reopen on November 10th - refer to DC location and reviewed once a month

December 3, 2021
Casandra
Direct Lending processed consolidation paperwork
10/8/2013 Consolidation completed
Page of repayment plan selection mission - resubmitted 10/31/2013

Information regarding Brenda Stokes signature (Brenda Stokes is from Saint Augustine to verify loan information)

December 9, 2021
Documents
~~[redacted]~~

January 5, 2021 @10:45
William at the Department of Education
Student aid.Gov Help Center (844) 651 0077

Borrower's Defense
855 279 6207

January 28, 2022 @11am
Navient transferred Aviant
Cassie
Borrower's Defense is the right strategy
Sending letter regarding fraud

March 9, 2022
Discussions with client

March 10, 2022
Request to St Augustine for records

https://studentaid.gov/help-center/answers/article/what-is-borrower-defense

Did you receive disclosures? https://consumercomplianceoutlook.org/2010/second-quarter/regulation-z-private-education-loans/

Is the loan subsidized or unsubsidized

https://www.law.cornell.edu/cfr/text/34/682.205

Check identity? Law

Notification of servicer

https://studentaid.gov/articles/your-loan-was-transferred-whats-next/

Verify identity and personal data

https://fsapartners.ed.gov/knowledge-center/fsa-handbook/2021-2022/application-and-verification-guide/ch4-verification-updates-and-corrections

March 23, 2022
Follow up request to Saint Augustine for records
US Mail


April 6, 2022
Hannah @11am
Navient

Mike @ 11:11am
Transfered Advantage on December 2021
800 722 1300

Advantage
Donna Mitchell
Identify Theft Affidavit
Mail to Fairmont
Discharge Application and Forgery form
Reinstate Cares Act on Advantage website or by calling Advantage
Spoke with client regarding forms

**aidVantage** | Official Services of Federal Student Aid

Office of the Customer Advocate
P.O. Box 300003
Greenville, TX 75403-3003
Phone: 866-432-7939
Fax: 570-821-4550
Advocate@Aidvantage.studentaid.gov

Mr. Jason Long
jclong2010@yahoo.com

**Account Number: 9646961359**                                               July 24, 2025

Jason,

We received your complaint about your federal student loans owned by U.S. Department of Education (ED). We are here to assist you in any way we can, and we hope the following information is useful.

We understand you are requesting any Loan Discharge Denials and Deferment Denials from the year 2013 through 2019.

We have confirmed that we responded to your concerns through multiple Freedom of Information Act cases. We provided you a copy of our response to these cases on May 12, 2025, via email. If you have not received this information, please contact our office at 866-432-7939 and we will send the documentation via the United States Postal Service.

If you disagree with our results or believe they are wrong, you can contact the Federal Student Aid (FSA) Ombudsman Group of the United States Department of Education. The Ombudsman Group is an impartial, informal, and confidential resource for resolving concerns regarding federal student aid.

You can file a complaint online at https://studentaid.gov/feedback-center/. If you have previously filed a complaint, you can log in, update your case, and request that it be escalated to the Ombudsman Group.

You're welcome to call us at directly at 866-432-7939, with any additional questions you may have about this issue.

Sincerely,

Sam
Office of the Customer Advocate
Aidvantage – Official Servicer of Federal Student Aid

**Important disclosure(s)**

*Avoiding scams*
You **never** have to pay a fee for help with your federal student aid. If you have questions or concerns about your loan payments, you can contact Aidvantage for free help through Aidvantage.studentaid.gov. You might be contacted by a company via phone, email, or postal mail saying they will help you get loan discharge, forgiveness, cancellation, or debt relief for a fee. Make sure you work **only** with the U.S. Department of Education's loan servicers, like Aidvantage and **never** reveal your personal information or account password to anyone. Learn to avoid student aid scams at studentaid.gov/resources/scams. Our emails to borrowers come from customerservice@aidvantage.studentaid.gov. You can report scam attempts to the Federal Trade Commission by calling 1-877-382-4357 or by visiting reportfraud.ftc.gov.



Office of the Customer Advocate
P.O. Box 300003
Greenville, TX 75403-3003
Phone: 866-432-7939
Fax: 570-821-4550
Advocate@Aidvantage.studentaid.gov

Mr. Jason Long
JCLong2010@yahoo.com

---

**Account Number: 9646961359**                                                  May 7, 2025

Jason,

We received your inquiry about your federal student loans, Freedom of Information Act case #25-00332-PA, #25-00339-PA, #25-00340-PA, #25-00342-PA, #25-00344-PA, and #25-00348-PA We are here to assist you in any way we can, and we hope the following information is useful.,

Aidvantage services your Direct Consolidation loan disbursed December 6, 2013. We included all corresponding documents you requested and your complete transaction history of your account.

We are unable to fulfill your requests for documents for the underlying loans of your Direct Consolidation including but not limited to the Master Promissory notes for loans serviced by Nelnet.

As for the documents requested from Jane or John Doe Loan Analyst for the Department of Education Office of Federal Student Aid who made statement on November 22nd, 2019, you should be able to see this via the online portal in which the Inquiry was submitted. And for Jane or John Doe who made a statement to the Consumer Financial Protection Bureau (CFPB) in 2017 you will be able to find on CFPB.Gov.

We're unable to provide call recordings or transcripts to customers or third parties except as required by law. However, we will accommodate you through other means by providing transaction histories, narrative chronologies, or copies of documents you have signed.

If you disagree with our results or believe they are wrong, you can contact the Federal Student Aid (FSA) Ombudsman Group of the United States Department of Education. The Ombudsman Group is an impartial, informal, and confidential resource for resolving concerns regarding federal student aid. You can file a complaint online at https://studentaid.gov/feedback-center/. If you have previously filed a complaint, you can log in, update your case, and request that it be escalated to the Ombudsman Group.

You're welcome to call us at directly at 866-432-7939, with any additional questions you may have about this issue.

Sincerely,

Sam Tandy
Office of the Customer Advocate
Aidvantage – Official Servicer of Federal Student Aid

**Important disclosure(s)**

*Avoiding scams*

J. Long
May 7, 2025
Page 2

You **never** have to pay a fee for help with your federal student aid. If you have questions or concerns about your loan payments, you can contact Aidvantage for free help through Aidvantage.studentaid.gov. You might be contacted by a company via phone, email, or postal mail saying they will help you get loan discharge, forgiveness, cancellation, or debt relief for a fee. Make sure you work **only** with the U.S. Department of Education's loan servicers, like Aidvantage and **never** reveal your personal information or account password to anyone. Learn to avoid student aid scams at studentaid.gov/resources/scams. Our emails to borrowers come from customerservice@aidvantage.studentaid.gov. You can report scam attempts to the Federal Trade Commission by calling **1-877-382-4357** or by visiting reportfraud.ftc.gov.

LTR319



Office of the Customer Advocate
P.O. Box 300003
Greenville, TX 75403-3003
Phone: 866-432-7939
Fax: 570-821-4550
Advocate@Aidvantage.studentaid.gov

Mr. Jason Long
jclong2010@yahoo.com

Account Number: 9646961359                                          October 7, 2024

Jason,

We received your inquiry about your federal student loans, U.S. Department of Education (ED) Federal Student Aid case #22027248. We are here to assist you in any way we can, and we hope the following information is useful.

We understand that you are requesting assistance in accessing a letter sent to you in response to your prior Federal Student Aid case #01263805.

Firstly, we would like to thank you for taking the time to speak with us regarding your concerns. Following our conversation, we attempted to either locate the necessary password to access this document in question, or a copy of the original document itself.

Unfortunately, we were unable to locate either of these pieces of information from either Navient or ED. We do recommend contacting ED directly as we were not the original organization to which this prior case was assigned. They may be able to provide further assistance in retrieving this document.

If you disagree with our results or believe they are wrong, you can contact the Federal Student Aid (FSA) Ombudsman Group of the United States Department of Education. The Ombudsman Group is an impartial, informal, and confidential resource for resolving concerns regarding federal student aid.

You can file a complaint online at https://studentaid.gov/feedback-center/. If you have previously filed a complaint, you can log in, update your case, and request that it be escalated to the Ombudsman Group.

You're welcome to call me directly at 866-432-7939, x1122, with any additional questions you may have about this issue.

Sincerely,

Dominic Martin
Office of the Customer Advocate
Aidvantage – Official Servicer of Federal Student Aid

LTR318

**Important disclosure(s)**

*Avoiding scams*
You never have to pay a fee for help with your federal student aid. If you have questions or concerns about your loan payments, you can contact Aidvantage for free help through Aidvantage.studentaid.gov. You might be contacted by a company via phone, email, or postal mail saying they will help you get loan discharge, forgiveness, cancellation, or debt relief for a fee. Make sure you work only with the U.S. Department of Education's loan servicers, like Aidvantage and never reveal your personal information or account password to anyone. Learn to avoid student aid scams at studentaid.gov/resources/scams. Our emails to borrowers come from customerservice@aidvantage.studentaid.gov. You can report scam attempts to the Federal Trade Commission by calling 1-877-382-4357 or by visiting reportfraud.ftc.gov.

LTR318

# Exhibit 2



**United States Department of Education**

Office of the Deputy Secretary

FOIA Service Center

December 2, 2024

Jason Long
5112 MacArthur BLVD, Northwest
Washington, DC 20016

RE: FOIA Request No. 24-00441-PA

Dear Jason Long:

This letter is a final response to your request for information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, dated August 1, 2024, and received in the U.S. Department of Education's (Department) FOIA Service Center on August 2, 2024. You requested the following:

" A Master Promissory Note has been filed without consent. Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, I am requesting a copy of the document in which Jason Christopher Long provided consent to DMD Financial Services Inc., Saint Augustine's University, and Jane Cowles to obtain personal information and to complete and submit any documents on his behalf.

Please provide the complete and unredacted version of this document."

Your request was forwarded to the Federal Student Aid office. After a thorough search, no responsive records were located.

DMD Financial Services Inc. is not a Department of Education servicer. We suggest that you contact DMD Financial Services Inc. directly for assistance.

<div align="center">Fees</div>

There are no fees associated with processing this request. Therefore, any fee waiver request submitted for this FOIA request is not applicable.

<div align="center">Additional Assistance</div>

You have the right to seek assistance and/or dispute resolution services from the Department's FOIA Public Liaison or the Office of Government Information Services (OGIS). The FOIA Public Liaison is responsible, among other duties, for assisting in the resolution of FOIA disputes. OGIS, which is outside the Department, offers ombuds services, including dispute resolution, to assist FOIA requesters and Federal agencies as a

non-exclusive alternative to litigation. Please note, OGIS's assistance does not replace the administrative appeal process described below. You may contact the FOIA Public Liaison or OGIS at:

FOIA Public Liaison
Office of the Deputy Secretary
U.S. Department of Education
400 Maryland Ave., SW, LBJ 7W104
Washington, DC 20202-4500
Email: robert.wehausen@ed.gov
Phone: 202-205-0733
Fax: 202-401-0920

Office of Government Information Services
National Archives and Records Administration
8601 Adelphi Road, OGIS
College Park, MD  20740-6001
Email: OGIS@nara.gov
Phone: 202-741-5770 or 1-877-684-6448

You have the right to appeal this decision, as well as decisions in any previous interim releases, with the Department by submitting an appeal to the address below, no later than 90 calendar days from the date of this letter. Using the FOIA Public Liaison or OGIS services described above does not affect your right or the deadline to file an appeal. Your appeal must be in writing and must include a detailed statement of all legal and factual bases for the appeal. It should be accompanied by this letter, a copy of your initial letter of request, and any documentation that supports the argument you wish the Department to consider in making an administrative determination on your appeal. You may submit your appeal by:

Mail: Appeals Office
      Office of the Deputy Secretary
      U.S. Department of Education
      400 Maryland Avenue, SW, LBJ 7W104
      Washington, DC 20202-4536

Online Form: www.ed.gov/policy/gen/leg/foia/foia-appeal-form.pdf

E-mail: EDFOIAappeals@ed.gov

Fax: 202-401-0920

Sincerely,

Elise Cook
Elise Cook
Government Information Specialist
Office of the Deputy Secretary



**United States Department of Education**

Office of the Deputy Secretary

FOIA Service Center

April 8, 2025

Jason Christopher Long
5112 MacArthur BLVD, Northwest
Washington, DC 20016

RE: FOIA Request No. 25-03126-F

Dear Jason Christopher Long:

This letter is a final response to your request for information pursuant to the Freedom of
Information Act (FOIA), 5 U.S.C. § 552, dated March 31, 2025, and received in the U.S.
Department of Education's (Department) FOIA Service Center on April 1, 2025. You
requested the following:

" I want a copy of DMD Financial Services, Inc's certified PCA (Private Collection
Agency)documents to prove their corporation was administered in the title IV program before
October 8, 2013."

Your request was forwarded to Federal Student Aid. After a thorough search, no responsive
records were located. DMD Financial Services is/was not a Private Collection Agency (PCA). The
PCA contracts are located here: https://studentaid.gov/data-center/business-
info/contracts/collection-agency.

Fees

There are no fees associated with processing this request.

Additional Assistance

You have the right to seek assistance and/or dispute resolution services from the
Department's FOIA Public Liaison or the Office of Government Information Services
(OGIS). The FOIA Public Liaison is responsible, among other duties, for assisting in the
resolution of FOIA disputes. OGIS, which is outside the Department, offers ombuds
services, including dispute resolution, to assist FOIA requesters and Federal agencies as a
non-exclusive alternative to litigation. Please note, OGIS's assistance does not replace the
administrative appeal process described below. You may contact the FOIA Public Liaison
or OGIS at:

    FOIA Public Liaison
    Office of the Deputy Secretary

U.S. Department of Education
400 Maryland Ave., SW, LBJ 7W104
Washington, DC 20202-4500
Email: robert.wehausen@ed.gov
Phone: 202-205-0733
Fax: 202-401-0920

Office of Government Information Services
National Archives and Records Administration
8601 Adelphi Road, OGIS
College Park, MD  20740-6001
Email: OGIS@nara.gov
Phone: 202-741-5770 or 1-877-684-6448

You have the right to appeal this decision, as well as decisions in any previous interim releases, with the Department by submitting an appeal to the address below, no later than 90 calendar days from the date of this letter.  Using the FOIA Public Liaison or OGIS services described above does not affect your right or the deadline to file an appeal.  Your appeal must be in writing and must include a detailed statement of all legal and factual bases for the appeal. It should be accompanied by this letter, a copy of your initial letter of request, and any documentation that supports the argument you wish the Department to consider in making an administrative determination on your appeal. You may submit your appeal by:

Mail: Appeals Office
      Office of the Deputy Secretary
      U.S. Department of Education
      400 Maryland Avenue, SW, LBJ 7W104
      Washington, DC 20202-4536

Online Form: www.ed.gov/policy/gen/leg/foia/foia-appeal-form.pdf

E-mail: EDFOIAappeals@ed.gov

Fax: 202-401-0920

Sincerely,

*Sandra Lewandowski*
Government Information Specialist
Office of the Deputy Secretary



**United States Department of Education**

Office of the Deputy Secretary

FOIA Service Center

April 8, 2025

Jason Christopher Long
5112 MacArthur BLVD, Northwest
Washington, DC 20016

RE: FOIA Request No. 25-02838-F

Dear Jason Christopher Long:

This letter is a final response to your request for information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, dated March 12, 2025, and received in the U.S. Department of Education's (Department) FOIA Service Center on March 13, 2025. You requested the following:

" I am requesting Department of Education to send me a copy of Destroy Instrument Affidavit in regards to all of the MPN that were submitted by my alma mater Saint Augustine's University and company from the years 2004 to 2025."

Your request was forwarded to Federal Student Aid. After a thorough search, no responsive records were located.

<div align="center">Fees</div>

There are no fees associated with processing this request.

<div align="center">Additional Assistance</div>

You have the right to seek assistance and/or dispute resolution services from the Department's FOIA Public Liaison or the Office of Government Information Services (OGIS). The FOIA Public Liaison is responsible, among other duties, for assisting in the resolution of FOIA disputes. OGIS, which is outside the Department, offers ombuds services, including dispute resolution, to assist FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Please note, OGIS's assistance does not replace the administrative appeal process described below. You may contact the FOIA Public Liaison or OGIS at:

    FOIA Public Liaison
    Office of the Deputy Secretary
    U.S. Department of Education
    400 Maryland Ave., SW, LBJ 7W104

<div align="center">1</div>

Washington, DC 20202-4500
Email: robert.wehausen@ed.gov
Phone: 202-205-0733
Fax: 202-401-0920

Office of Government Information Services
National Archives and Records Administration
8601 Adelphi Road, OGIS
College Park, MD 20740-6001
Email: OGIS@nara.gov
Phone: 202-741-5770 or 1-877-684-6448

You have the right to appeal this decision, as well as decisions in any previous interim
releases, with the Department by submitting an appeal to the address below, no later than 90
calendar days from the date of this letter. Using the FOIA Public Liaison or OGIS services
described above does not affect your right or the deadline to file an appeal. Your appeal
must be in writing and must include a detailed statement of all legal and factual bases for the
appeal. It should be accompanied by this letter, a copy of your initial letter of request, and
any documentation that supports the argument you wish the Department to consider in
making an administrative determination on your appeal. You may submit your appeal by:

Mail: Appeals Office
    Office of the Deputy Secretary
    U.S. Department of Education
    400 Maryland Avenue, SW, LBJ 7W104
    Washington, DC 20202-4536

Online Form: www.ed.gov/policy/gen/leg/foia/foia-appeal-form.pdf

E-mail: EDFOIAappeals@ed.gov

Fax: 202-401-0920

                        Sincerely,

                        *Sandra Lewandowski*
                        Government Information Specialist
                        Office of the Deputy Secretary

2



**United States Department of Education**

Office of the Deputy Secretary

FOIA Service Center

May 6, 2025

Jason Christopher Long
5112 MacArthur BLVD, Northwest
Washington, DC 20016

RE: FOIA Request No. 25-03111-F

Dear Jason Christopher Long:

This letter is a final response to your request for information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, dated March 29, 2025, and received in the U.S. Department of Education's (Department) FOIA Service Center on April 1, 2025. You requested the following:

" I want to get records of DMD Financial Services, Inc., being either sworn in or administrated. By The Department of Education's aforementioned Secretary prior to 2013 loan consolidation. From the Higher Education Act itself, no debt collection can be involved with the Act because they do not provide educational products or services."

On March 31, 2025, you updated your request to the following:

"Certified True Copy
• Perkins Assignment Form
• Institutional Certification (OMB 1845-0048)
• Borrower and Loan Information (OMB 1845-0048)
• Original Promissory Note or Perkins Master Promissory Note (MPN)
• Repayment History
• Judgment Information (If applicable)
•copy of notification letter sent by the school to the judgment debtor
• Bankruptcy Information (If applicable)
•Bundled Loans:"

On April 3, 2025, you updated your request to the following:

"I would like to submit a FOIA request for records pertaining to DMD Financial Services, Inc. Specifically, I am seeking any documentation that shows the company being either sworn in or administered by the Secretary of the Department of Education prior to the 2013 loan consolidation.

1

Additionally, I would like to reference the Higher Education Act, which stipulates that debt collection agencies, such as DMD Financial Services, Inc., are not authorized to be involved in educational loan matters because they do not provide educational products or services."

Your request was forwarded to Federal Student Aid. The Department has identified 1 page, being released in full. After a thorough search, no other responsive records were located.

The pages are available for download via the Public Access Link (PAL). You can access your PAL account, or register for a PAL account, at this link:
https://foiaxpress.pal.ed.gov/app/PalLogin.aspx

<div align="center">Fees</div>

There are no fees associated with processing this request.

<div align="center">Additional Assistance</div>

You have the right to seek assistance and/or dispute resolution services from the Department's FOIA Public Liaison or the Office of Government Information Services (OGIS). The FOIA Public Liaison is responsible, among other duties, for assisting in the resolution of FOIA disputes. OGIS, which is outside the Department, offers ombuds services, including dispute resolution, to assist FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Please note, OGIS's assistance does not replace the administrative appeal process described below. You may contact the FOIA Public Liaison or OGIS at:

    FOIA Public Liaison
    Office of the Deputy Secretary
    U.S. Department of Education
    400 Maryland Ave., SW, LBJ 7W104
    Washington, DC 20202-4500
    Email: robert.wehausen@ed.gov
    Phone: 202-205-0733
    Fax: 202-401-0920

    Office of Government Information Services
    National Archives and Records Administration
    8601 Adelphi Road, OGIS
    College Park, MD 20740-6001
    Email: OGIS@nara.gov
    Phone: 202-741-5770 or 1-877-684-6448

You have the right to appeal this decision, as well as decisions in any previous interim releases, with the Department by submitting an appeal to the address below, no later than 90

<div align="center">2</div>

calendar days from the date of this letter. Using the FOIA Public Liaison or OGIS services described above does not affect your right or the deadline to file an appeal. Your appeal must be in writing and must include a detailed statement of all legal and factual bases for the appeal. It should be accompanied by this letter, a copy of your initial letter of request, and any documentation that supports the argument you wish the Department to consider in making an administrative determination on your appeal. You may submit your appeal by:

Mail: Appeals Office
      Office of the Deputy Secretary
      U.S. Department of Education
      400 Maryland Avenue, SW, LBJ 7W104
      Washington, DC 20202-4536

Online Form: www.ed.gov/policy/gen/leg/foia/foia-appeal-form.pdf

Email: EDFOIAappeals@ed.gov

Fax: 202-401-0920

Sincerely,

*Sandra Lewandowski*
Government Information Specialist
Office of the Deputy Secretary



**United States Department of Education**

Office of the Deputy Secretary

FOIA Service Center

May 29, 2025

Jason Christopher Long
5112 MacArthur BLVD, Northwest
Washington, DC  20016

RE: FOIA Request No. 25-03368-F

Dear Jason Christopher Long:

This letter is a final response to your request for information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, dated April 16, 2025, and received in the U.S. Department of Education's (Department) FOIA Service Center on April 17, 2025. You requested the following:

"I am writing to request, under the Freedom of Information Act (FOIA), a copy of the Title IV Participation Application submitted by DMD Financial Services, Inc. I am seeking to confirm whether DMD Financial Services, Inc. had the legal authority to submit William D. Ford Federal Direct Loan Program documents to the U.S. Department of Education and to determine the timeframe during which they were officially administered as a third-party servicer within the program."

On April 25, 2025, you updated your request to the following:

"I am requesting documents that shows DMD Financial Services, Inc Title IV Participation Application to verify their status in regards to October 8, 2013 incident."

On April 25, 2025, you updated your request to the following:

"DMD Financial Services, Inc sent loan consolidation application to Department of Education on October 8, 2013 and I want to make sure they completed a title IV participation application and was administered by ED Secretary prior to the loan consolidation application."

On April 26, 2025, you updated your request to the following:

"I am emailing you to correct the alleged years I attended. Aidvantage stated that my enrollment started in fall 2003 to Spring 2009. I started spring of 2004."

Your request was forwarded to Federal Student Aid. After a thorough search, no responsive records were located.

<u>Fees</u>

There are no fees associated with processing this request.

<u>Additional Assistance</u>

You have the right to seek assistance and/or dispute resolution services from the Department's FOIA Public Liaison or the Office of Government Information Services (OGIS). The FOIA Public Liaison is responsible, among other duties, for assisting in the resolution of FOIA disputes. OGIS, which is outside the Department, offers ombuds services, including dispute resolution, to assist FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Please note, OGIS's assistance does not replace the administrative appeal process described below. You may contact the FOIA Public Liaison or OGIS at:

> FOIA Public Liaison
> Office of the Deputy Secretary
> U.S. Department of Education
> 400 Maryland Ave., SW, LBJ 7W104
> Washington, DC 20202-4500
> Email: robert.wehausen@ed.gov
> Phone: 202-205-0733
> Fax: 202-401-0920

> Office of Government Information Services
> National Archives and Records Administration
> 8601 Adelphi Road, OGIS
> College Park, MD 20740-6001
> Email: OGIS@nara.gov
> Phone: 202-741-5770 or 1-877-684-6448

You have the right to appeal this decision, as well as decisions in any previous interim releases, with the Department by submitting an appeal to the address below, no later than 90 calendar days from the date of this letter. Using the FOIA Public Liaison or OGIS services described above does not affect your right or the deadline to file an appeal. Your appeal must be in writing and must include a detailed statement of all legal and factual bases for the appeal. It should be accompanied by this letter, a copy of your initial letter of request, and any documentation that supports the argument you wish the Department to consider in making an administrative determination on your appeal. You may submit your appeal by:

> Mail: Appeals Office
> Office of the Deputy Secretary
> U.S. Department of Education
> 400 Maryland Avenue, SW, LBJ 7W104
> Washington, DC 20202-4536

> Online Form: www.ed.gov/policy/gen/leg/foia/foia-appeal-form.pdf

E-mail: EDFOIAappeals@ed.gov
Fax: 202-401-0920

Sincerely,

*Sandra Lewandowski*
Government Information Specialist
Office of the Deputy Secretary

  

## Government of the District of Columbia
### Department of Insurance, Securities and Banking

Stephen C. Taylor
Commissioner

# District of Columbia
# Student Loan Borrower's Bill of Rights

Effective September 8, 2017, the District of Columbia Department of Insurance, Securities and Banking began licensing student loan servicers operating in the District of Columbia. Pursuant to the Student Loan Ombudsman Establishment and Servicing Regulation Amendment Act of 2016, (D.C. Code § 31-106.01.(c)(10)), DISB is issuing the District of Columbia Student Loan Borrower's Bill of Rights.

Student loan borrowers in the District of Columbia deserve a loan repayment process built on fairness, professionalism, and transparency. This bill of rights sets out the basic principles and protections that borrowers can rely on as they work to reduce their student debt. Beyond that, student loan servicers in the District are expected to uphold these key tenets with respect to all student loan borrowers and each student loan they service.

Every District student loan borrower has the right to:

### Article 1: Transparent Pricing and Terms

- *Transparent Rate* – Servicers must comply with the federal Truth-in-Lending Act and its implementing regulations. Disclose the Annual Percentage Rate (APR) as the all-in annualized price of the financing, and the annualized interest rate if one is used.
- *No Hidden Fees* – All upfront and scheduled charges must be disclosed.
- *Plain-English Terms* – All key terms should be described in an easy-to-understand manner, including the loan amount, total amount provided after deducting fees or charges, payment amount and frequency, total monthly payment amount if payment frequency is other than monthly, collateral requirements, and any prepayment charges.
- *Clear Comparison* – All pricing and other key terms should be presented clearly and prominently, in writing, to the borrower when the loan offer or repayment plan is summarized for the borrower.

### Article 2: Receive Non-Abusive Products

- *No Debt Traps* – If the borrower is unable to repay an existing loan, servicers should not extend new credit unless due diligence indicates that the borrower's situation has changed, enabling them to repay the new loan.

- *No "Double Dipping"* – Do not double-charge the borrower. When refinancing or modifying a loan with a fixed-fee as the primary financing charge, do not charge fees on the borrower's outstanding principal unless there is a tangible cost benefit to the borrower.
- *Appropriate Products* – Loan product design should match loan product use. If presenting a loan product as designed for one use, do not encourage borrowing behavior contrary to that use.

## Article 3: Fair and Responsible Underwriting

- *Believe in the Borrower* – Offer financing only with high confidence that the borrower can repay its entire debt burden without defaulting or re-borrowing. Repayment plans should be designed to maximize borrower ability to repay in a timely manner.
- *Alignment of Interests* – Servicers and lenders should not make loans that the borrower cannot truly afford, even if the lender or servicer can find a way to be repaid. Servicers should not generate unreasonable profits from late fees, and similar charges.
- *Right-sized Financing* – Size loans to meet the borrower's need, rather than to maximize the servicer's revenue. Seek to offer the borrower the size of loan that they need, rather than offering the largest amount they could qualify for.
- *Responsible Credit Reporting* – Report loan repayment information to major credit bureaus and consult credit data when underwriting a loan. Such reporting enables other lenders to responsibly underwrite the borrower and helps the borrower build a credit profile that may facilitate access to more affordable loans in the future. Servicers and lenders should inform the borrower and any guarantors if they intend to report loan repayment performance to guarantors' credit bureaus only in certain circumstances, such as after a default.

## Article 4: Fair Collection Practices

- *Fair Treatment* – Servicers should abide by the spirit of the Fair Debt Collection Practices Act and provide borrowers similar protections as described in that Act. All payments shall be applied to the borrower's account in accordance with the terms of applicable law or the contract governing servicing.
- *Responsible Oversight* – Diligently vet and oversee the collections practices of third-party collectors and debt buyers. Do not work with collectors or debt buyers who fail to treat borrowers fairly.
- *Accurate Information* – Servicers, lenders and debt collectors shall maintain and communicate accurate, current, and complete information about a borrower's loan.

## Article 5: Quality Customer Service

- *Responsive Complaint Management* – If a complaint is submitted, a confirmation of receipt should be provided in writing, within five days when possible. Every complaint should be researched and resolved in a timely manner.
- *Easy Accessibility* – Servicers should take proactive steps to inform borrowers of relevant organizational changes that could affect loan repayment or consumer interactions with

the servicer, including changes to the servicer's location or contact information, or the transfer of the borrower's account.

- *Non-Discrimination* – Borrowers shall not be discriminated against based on race, color, religion, national origin, sex, marital status, age, sexual orientation or identity, or any other protected classification.

Should you have any questions regarding this Bill of Rights or want to file a complaint against a servicer, please contact the District of Columbia's Student Loan Ombudsman by calling 202-727-8000.

ENROLLED ORIGINAL

AN ACT

## **D.C. ACT 25-558**

IN THE COUNCIL OF THE DISTRICT OF COLUMBIA

## **OCTOBER 7, 2024**

To amend the Department of Insurance and Securities Regulation Establishment Act of 1996 to prevent abusive acts or practices related to student education loans and private education loans, require the creation of a revised Student Loan Borrower Bill of Rights by January 1, 2025, clarify that student loan servicers under contract with the United States Department of Education shall be automatically issued a limited student loan servicing license upon meeting certain criteria, clarify the rights and obligations regarding denials of applications for approval, prescribe prohibited conduct on the part of student loan servicers and private education lenders, assign duties to student loan servicers and private education lenders, establish responsibilities of private education lenders regarding disability discharge and cosigner release, authorize the Attorney General to bring an action for a violation of certain provisions, and make a conforming amendment.

BE IT ENACTED BY THE COUNCIL OF THE DISTRICT OF COLUMBIA, That this act may be cited as the "New Student Loan Borrower Bill of Rights Amendment Act of 2024".

Sec. 2. The Department of Insurance and Securities Regulation Establishment Act of 1996, effective May 21, 1997 (D.C. Law 11-268; D.C. Official Code § 31-101 *et seq.*), is amended as follows:

(a) Section 2 (D.C. Official Code § 31-101) is amended as follows:

(1) Paragraph (1) is redesignated as paragraph (1A).

(2) A new paragraph (1) is added to read as follows:

"(1) "Abusive act or practice" means an act or practice that:

"(A) Materially interferes with the ability of a student loan borrower to understand a term or condition of a student education loan or private education loan;

"(B) Takes unreasonable advantage of:

"(i) A lack of understanding on the part of a student loan borrower of the material risks, costs, or conditions of a student education loan or private education loan;

"(ii) The inability of a student loan borrower to protect the interests of the student loan borrower when selecting or using:

"(I) A student education loan or private education loan; or

1

"(II) A feature, term, or condition of a student education loan or private education loan; or

"(iii) The reasonable reliance by the student loan borrower on a person engaged in servicing a student education loan or private education loan to act in the interests of the borrower; or

"(C) Misrepresents the amount, nature, or terms of any fee or payment due or claimed to be due on a student education loan or private education loan, the terms and conditions of the student education loan agreement or private education loan agreement or the student loan borrower's obligations under the student education loan or private education loan.".

(2) A new paragraph (2A) is added to read as follows:

"(2A)(A) "Cosigner" means an individual who is liable for the obligation of a student loan borrower without compensation, regardless of how the individual is designated in the contract or instrument with respect to that obligation, including an obligation under a private education loan extended to consolidate a student-loan borrower's pre-existing student loans.

"(B) The term includes an individual whose signature is requested as a condition to grant credit or to forbear on collection, but does not include a spouse of a student loan borrower, the signature of whom is needed to perfect the security interest in a loan.".

(3) New paragraphs (6C), (6D), (6E), (6F), and (6G) are added to read as follows:

"(6C) "Overpayment" means a payment on a student education loan or private education loan in excess of the monthly amount due from the student loan borrower on a student education loan or private education loan.

"(6D) "Partial payment" means a payment on a student education loan account that contains multiple individual loans in an amount less than the amount necessary to satisfy the outstanding payment due on all loans in the student education loan account.

"(6E)(A) "Postsecondary education expense" means an expense related to enrollment in or attendance at a postsecondary education institution regardless of whether the debt incurred by a student to pay those expenses is owed to the provider of postsecondary education whose school, program, or facility the student attends.

"(B) For the purpose of this paragraph, the term "postsecondary" has the same meaning as that term is defined in section 201(12B) of the Education Licensure Commission Act of 1976, effective April 6, 1977 (D.C. Law 1-104; D.C. Official Code § 38-1302(12B)).

"(6F) "Private education lender" means a person engaged in the business of securing, making, or extending private education loans, or a holder of a private education loan. The term does not include, to the extent preempted by federal law:

"(A) A bank or credit union;

"(B) A wholly-owned subsidiary of a bank or credit union; or

"(C) An operating subsidiary of a bank or credit union where each owner of the operating subsidiary is wholly owned by the same bank or credit union.

**ENROLLED ORIGINAL**

"(6G)(A) "Private education loan" means an extension of credit that is not made, insured, or guaranteed under Title IV of the Higher Education Act of 1965 (20 U.S.C. § 1070 *et seq.*), and is extended to a consumer expressly, in whole or in part, for postsecondary education expenses regardless of whether the loan is provided by the educational institution that the student attends.

"(B) The term does not include:

"(i) Open-end credit or any loan that is secured by real property or a dwelling; or

"(ii) An extension of credit in which the covered educational institution is the creditor if the term is 90 days or less or an interest rate will not be applied to the credit balance and the term of the extension of credit is one year or less, even if the credit is payable in more than 4 installments.

"(4) Paragraph (9) is amended to read as follows:

"(9) "Student loan borrower" means a resident of the District of Columbia who has received or agreed to pay a student education loan or a private education loan to fund his or her postsecondary education.".

"(5) A new paragraph (13) is added to read as follows:

"(13) "Total and permanent disability" is the condition of an individual who:

"(A) Has been determined by the United State Secretary of Veterans Affairs to be unemployable due to a service-connected disability; or

"(B) Is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, has lasted for a continuous period of not less than 12 months, or can be expected to last for a continuous period of not less than 12 months.".

"(b) Section 7a(c)(10) (D.C. Official Code § 31-106.01(c)(10)) is amended to read as follows:

"(10) By January 1, 2025, develop an updated consumer-facing student loan borrower bill of rights, and make it available on the Department's website.".

"(c) Section 7b (D.C. Official Code § 31-106.02) is amended as follows:

"(1) Subsection (c) is amended as follows:

"(A) Paragraph (1)(B) is amended by striking the phrase "Application fees and other fees" and inserting the phrase "Application fees, investigation fees, and other fees" in its place.

"(B) A new paragraph (3) is added to read as follows:

"(3) The Commissioner shall automatically issue a limited, irrevocable license to a person or entity servicing a student education loan under contract with the United States Department of Education provided that:

"(A)(i); A person or entity seeking to act within the District of Columbia as a student loan servicer is exempt from the application procedures established pursuant to this

3

**ENROLLED ORIGINAL**

subsection, other than the requirements of paragraphs (1)(B) and (1)(D) of this subsection, to the extent that the student loan servicing performed is conducted pursuant to a contract awarded by the United States Secretary of Education under 20 U.S.C. § 1087f.

"(ii) The Commissioner shall prescribe the procedure to document eligibility for the exemption and maintain records documenting each person and entity issued a license pursuant to this paragraph.

"(B) A person or entity meeting the criteria set forth in subparagraph (A) of this paragraph shall be issued a license by the Commissioner for the student loan servicing of student education loans under contract with the United States Department of Education and shall be deemed by the Commissioner to have met all the requirements established by subparagraphs (1)(A) and (C) of this subsection.

"(C) The provisions of subsection (h) of this section shall not apply to a person or entity issued a limited license pursuant to this section to the extent that the person or entity is servicing a federal student education loan.

"(D)(i) A person or entity issued a license pursuant to this section shall provide the Commissioner with written notice within 7 days following the notification of the expiration, revocation, or termination of any contract awarded by the United States Secretary of Education under 20 U.S.C § 1087f ("written notice").

"(ii) After providing the written notice required by sub-subparagraph (i) of this subparagraph, the person or entity shall have 30 days to satisfy all the requirements established under this section in order to continue to act within the District of Columbia as a student loan servicer for federal student education loans.

"(iii) At the expiration of the 30-day period provided in sub-subparagraph (ii) of this subparagraph, if the person or entity has not satisfied the requirements established pursuant to this section, the Commissioner shall immediately suspend any license granted under this section.

"(E) In the case of student loan servicing that is not conducted pursuant to a contract awarded by the United States Secretary of Education under 20 U.S.C. § 1087f, nothing in this section shall prevent the Commissioner from issuing an order to temporarily or permanently prohibit a person or entity from acting as a student loan servicer.

"(F) In the case of student loan servicing conducted pursuant to a contract awarded by the United States Secretary of Education under 20 U.S.C § 1087f, nothing in this section shall prevent the Commissioner from issuing a cease-and-desist order or an injunction against a student loan servicer to cease activities in violation of this act or D.C. Official Code §28-3901 *et seq.*".

(2) Subsection (g)(1)(C) is amended by striking the phrase "The Commissioner may deny an application for renewal" and inserting the phrase "Except as provided under subsection (e)(3) of this section, the Commissioner may deny an application for renewal" in its place.

4

ENROLLED ORIGINAL

(3) A new subsection (k) is added to read as follows:

"(k) In a format prescribed by the Commissioner, a licensee shall maintain the contact information for the Department and the Ombudsman, as defined in section 2(6B), on the licensee's website.".

(d) New sections 7b-1, 7b-2, 7b-3, 7b-4, and 7b-5 are added to read as follows:

"Sec. 7b-1. Prohibited conduct -- student loan servicers.

"(a) No student loan servicer shall:

"(1) Directly or indirectly employ any scheme, device, or artifice to defraud a student loan borrower;

"(2) Directly or indirectly employ any scheme, device, or artifice to mislead a student loan borrower;

"(3) Engage in any unfair or deceptive practice toward any person or misrepresent or omit any material information in connection with the servicing of a student education loan, including an abusive act and practice;

"(4) Obtain property by fraud;

"(5) Obtain property by misrepresentation;

"(6) Misapply student education loan payments to the outstanding balance of a student education loan;

"(7) Provide inaccurate information to a credit bureau, harming a student loan borrower's creditworthiness;

"(8) Fail to report both the favorable and unfavorable payment history of the student loan borrower to a nationally recognized consumer credit bureau at least annually if the student loan servicer regularly reports information to a credit bureau;

"(9) Refuse to communicate with an authorized representative of the student loan borrower who provides a written authorization signed by the student loan borrower; except, that the student loan servicer may adopt procedures reasonably related to verifying that the representative is authorized to act on behalf of the student loan borrower;

"(10) Make a false statement or make an omission of a material fact in connection with any information or report filed with a governmental agency or in connection with any investigation conducted by the Commissioner or another governmental agency;

"(11) Fail to respond within 15 business days to a communication from the Department, or the Office of the Attorney General, or within such shorter reasonable period of time as may be requested by the Department or the Attorney General; or

"(12)(A) Fail to respond within 15 business days to a consumer complaint submitted to the student loan servicer by the Department or the Office of the Attorney General.

"(B) A student loan servicer may request additional time to respond to the complaint, up to a maximum of 45 business days, provided that the request is accompanied by an explanation as to why additional time is reasonable and necessary.

"Sec. 7b-2. Affirmative duties -- student loan servicers.

5

"(a) Except as otherwise provided pursuant to federal law or a student education loan agreement, a student loan servicer shall:

"(1) Respond to any written inquiry from a student loan borrower or the representative of a student loan borrower by:

"(A) Acknowledging receipt of the inquiry within 10 business days; and

"(B) Providing information relating to the inquiry; and, if applicable, the action the student loan servicer will take to correct the account or an explanation of the student loan servicer's determination that the borrower's account is correct within 30 business days, including copies of all information and account information used by the student loan servicer in reaching the determination.

"(2) Inquire of a student loan borrower who has an overpayment on how the student loan borrower wants to apply the overpayment to a student education loan. A student loan borrower's instruction on how to apply an overpayment to a student education loan shall stay in effect for any future overpayments during the term of the student education loan until the borrower provides different instructions.

"(3)(A) In the absence of direction provided by a student loan borrower pursuant to paragraph (2) of this subsection, allocate an overpayment on a student loan account in a manner that reduces the total cost of the student loan, including principal and balance, interest, and fees.

"(B) A student loan servicer shall be deemed to meet the requirements of this paragraph if the servicer allocates the overpayment to the loan with the highest interest rate on the student loan borrower's account, unless the student loan borrower specifies otherwise.

"(4)(A) In the absence of direction provided by a student loan borrower pursuant to paragraph (2) of this subsection, apply partial payments in a manner that minimizes late fees and negative credit reporting.

"(B) If there are multiple loans on a student loan borrower's account with an equal stage of delinquency, apply the partial payment in a way that satisfies as many individual loan payments as possible on a student loan borrower's account.

"(b) Except as otherwise provided by federal law or regulation, the following requirements shall be applicable to a student loan servicer in the event of the sale, assignment, or other transfer of the servicing of a student education loan that results in a change in the identity of the student loan servicer to whom a student loan borrower is required to send payments or direct any communication concerning the student education loan:

"(1)(A) As a condition of a sale, an assignment, or any other transfer of the servicing of a student education loan, a student loan servicer shall require the new student loan servicer to honor all benefits originally represented as available to a student loan borrower during the repayment of the student education loan and preserve the availability of those benefits, including any benefits for which the student loan borrower has not yet qualified.

"(B) If a student loan servicer is not also the loan holder or is not acting on behalf of the loan holder, the student loan servicer satisfies the requirement established by this paragraph by providing the new student loan servicer with the information necessary for the new student loan servicer to honor all benefits originally represented as available to a student loan borrower during the repayment of the student education loan and preserve the availability of the benefits, including any benefits for which the student loan borrower has not yet qualified.

"(2) A student loan servicer shall transfer to the new student loan servicer for the student education loan all information regarding the student loan borrower, the account of the student loan borrower, and the student education loan of the student loan borrower. The information shall include the repayment status of the student loan borrower and any benefits associated with the student education loan of the borrower.

"(3) The student loan servicer shall complete the transfer of information required pursuant to paragraph (2) of this subsection within 45 calendar days after the sale, assignment, or other transfer of the servicing of the student education loan.

"(4) The transferring student loan servicer shall notify affected student loan borrowers of the sale, assignment, or other transfer of the servicing of the student education loan at least 7 days before the next payment on the loan is due, which notice shall include:

"(A) The identity of the new student loan servicer;

"(B) The effective date of the transfer of the student loan borrower's student education loan to the new student loan servicer;

"(C) The date on which the existing student loan servicer will no longer accept payments and whether and by when any action will need to be taken to update auto-debit payments; and

"(D) The contact information for the new student loan servicer, including phone number, email address, mailing address, and fax number.

"(c) A student loan servicer who obtains the right to service a student education loan shall adopt policies and procedures to verify that the student loan servicer has received all information regarding the student loan borrower, the account of the student loan borrower, and the student education loan of the student loan borrower, including the repayment status of the student loan borrower and any benefits associated with the student education loan of the student loan borrower.

"(d) A student loan servicer shall evaluate a student loan borrower for eligibility for an income-driven repayment program prior to placing the student loan borrower in forbearance or default if an income-driven repayment program is available to the student loan borrower.

"Sec. 7b-3. Prohibited acts – private education lenders.

"(a)(1) A private education loan executed after the applicability date of this section shall not include a provision that permits the private education lender to accelerate, in whole or in part, payments on a private education loan except in cases of payment default or place any loan or account into default or accelerate a loan for any reason other than for payment default.

"(2) A private education loan executed prior to the applicability date of this section shall permit the private education lender to accelerate payments only if the promissory note or private education loan agreement explicitly authorizes an acceleration and only for the reasons stated in the note or agreement.

"(3) In the event of the death of a cosigner, the lender shall not attempt to collect against the cosigner's estate other than for payment default.

"(4) Upon receiving notification of the death or bankruptcy of a cosigner, when the private education loan is not more than 60 days delinquent at the time of the notification, the private education lender shall not change any terms or benefits under the promissory note, repayment schedule, repayment terms, or monthly payment amount or any other provision associated with the private education loan.

"(5) A private education lender shall not place any private education loan or account into default or accelerate a private education loan while a student loan borrower is seeking a loan modification or enrollment in a flexible repayment plan; except, that a private education lender may place a private education loan or account into default or accelerate a private education loan for payment default 90 days after the student loan borrower's default.

"(b) A private education lender shall not:

"(1) Directly or indirectly employ any scheme, device, or artifice to defraud a student loan borrower;

"(2) Directly or indirectly employ any scheme, device, or artifice to mislead a student loan borrower;

"(3) Engage in any unfair or deceptive practice toward any person or misrepresent or omit any material information in connection with the servicing of a private education loan, including, abusive acts and practices;

"(4) Obtain property by fraud;

"(5) Obtain property by misrepresentation;

"(6) Misapply private education loan payments to the outstanding balance of a private education loan;

"(7) Provide inaccurate information to a credit bureau, thereby harming a student loan borrower's creditworthiness;

"(8) Fail to report both the favorable and unfavorable payment history of the student loan borrower to a nationally recognized consumer credit bureau at least annually if the private education lender regularly reports information to a credit bureau;

"(9) Refuse to communicate with an authorized representative of the student loan borrower who provides a written authorization signed by the student loan borrower; except, that the private education lender may adopt procedures reasonably related to verifying that the representative is authorized to act on behalf of the student loan borrower;

8

"(10) Make any false statement or make any omission of a material fact in connection with any information or reports filed with a governmental agency or in connection with any investigation conducted by the Commissioner or another governmental agency;

"(11) Fail to respond within 15 business days to communications from the Department or the Office of the Attorney General, or within such shorter reasonable period of time as may be requested by the Commissioner or the Attorney General; or

"(12)(A) Fail to respond within 15 business days to a consumer complaint transmitted to the private education lender by the Department or the Office of the Attorney General.

"(B) A private education lender may request additional time to respond to the complaint, up to a maximum of 45 business days, provided that the request is accompanied by an explanation as to why additional time is reasonable and necessary.

"Sec. 7b-4. Affirmative duties – private education lenders.

"(a) For a private education loan issued on or after the applicability date of this section:

"(1) A private education lender or student loan servicer acting on behalf of a private education lender when notified of the total and permanent disability of a student loan borrower or cosigner shall release any cosigner from the obligations under the private education loan. The private education lender shall not attempt to collect a payment from a cosigner after being notified of the total and permanent disability of the cosigner or borrower.

"(2) A private education lender shall notify a student loan borrower and cosigner for a private education loan if either a cosigner or the student loan borrower is released from the obligations of the private education loan under this subsection within 30 days of the release.

"(3) A private education lender that extends a private education loan to a student loan borrower shall provide the student loan borrower an option to designate an individual to have the legal authority to act on behalf of the student loan borrower with respect to the private education loan in the event of the total and permanent disability of the student loan borrower.

"(4) In the event a cosigner is released from the obligations of a private education loan pursuant to paragraph (1) of this subsection, the private education lender shall not require the student loan borrower to obtain another cosigner on the private education loan obligation.

"(5) A private education lender shall not declare a default or accelerate the debt against the student loan borrower on the sole basis of the release of the cosigner from the private education loan obligation.

"(6) A private education lender shall when notified of the total and permanent disability of a student loan borrower discharge the liability of the student loan borrower and cosigner on the private education loan.

"(7) After receiving a notification pursuant to paragraph (1) of this subsection, the private education lender shall not attempt to collect on the outstanding liability of the student loan borrower or cosigner or monitor the disability status of the student loan borrower after the date of discharge.

9

"(b) Availability of alternative repayment plans.

"(1) If a private education lender offers a student loan borrower flexible or modified repayment options in connection with a private education loan, those flexible repayment options shall be made available to all borrowers and the private education lender shall:

"(A) Provide on its website a description of any alternative repayment options offered by the private education lender for a private education loan; and

"(B) Establish policies and procedures to facilitate evaluation of private education loan flexible repayment option requests, including providing accurate information regarding any private education loan alternative repayment options that may be available to the student loan borrower through a promissory note or that may have been marketed to the student loan borrower through marketing materials.

"(2) A private education lender or a student loan servicer acting on behalf of a private education lender shall consistently present and offer flexible or modified private education loan repayment options to student loan borrowers with similar financial circumstances, if the private education lender offers such repayment options.

"(c)(1) Prior to the extension of a private education loan that requires a cosigner, a private education lender shall deliver the following information to the cosigner:

"(A) How the private education loan obligation shall appear on the cosigner's credit;

"(B) How the cosigner shall be notified if the private education loan becomes delinquent, including how the cosigner can cure the delinquency in order to avoid negative credit furnishing and loss of cosigner release eligibility; and

"(C) Eligibility for release of the cosigner's obligation on the private education loan, including the number of on-time payments and any other criteria required to approve the release of the cosigner from the private education loan obligation.

"(2) Prior to offering a person a private education loan that is being used to refinance an existing education loan, a private education lender shall provide the person a disclosure that benefits and protections applicable to the existing loan may be lost due to the refinancing.

"(3) The information provided pursuant to this section shall be provided on a one-page information sheet in a 12-point font and shall be written in simple, clear, understandable and easily readable language as provided in the Plain Writing Act of 2010 (5 U.S.C. § 301, note).

"(d)(1) For any private education loan that obligates a cosigner, a private education lender shall provide the student loan borrower and the cosigner an annual written notice containing information about cosigner release, including the administrative, objective criteria the private education lender requires to approve the release of the cosigner from the private education loan obligation and the process for applying for cosigner release.

"(2) If the student loan borrower has met the applicable requirements to be eligible for cosigner release, the private education lender shall send the student loan borrower and the cosigner a written notification by U.S. mail, and by electronic mail when a student loan borrower or cosigner has elected to receive electronic communications from the private education lender, informing the student loan borrower and cosigner that the requirements to be eligible for cosigner release have been met.

"(3) A private education lender shall provide written notice to a borrower who applies for cosigner release, but whose application is incomplete. The written notice shall include a description of the information needed to consider the application complete and the date by which the applicant must furnish the missing information.

"(4)(A) Within 30 days after a student loan borrower submits a completed application for cosigner release, the private education lender shall send the student loan borrower and the cosigner a written notice that informs the student loan borrower and cosigner whether the cosigner release application has been approved or denied.

"(B) If the private education lender denies the request for cosigner release, the student loan borrower may request any documents or information used in the determination, including the credit score threshold used by the private education lender, the student loan borrower's consumer report, the student loan borrower's credit score, and any other documents specific to the student loan borrower. The private education lender shall also provide any adverse action notices required under applicable federal law if the denial is based in whole or in part on any information contained in a consumer report.

"(5) In response to a written or oral request for cosigner release, a private education lender shall provide the information described in paragraph (1) of this subsection.

"(6) A private education lender shall not impose any restriction that permanently bars a student loan borrower from qualifying for cosigner release, including restricting the number of times a student loan borrower may apply for cosigner release.

"(7)(A) A private education lender shall not impose any negative consequences on a student loan borrower or cosigner during the 60 days following the issuance of the notice required pursuant to paragraph (3) of this subsection or until the private education lender makes a final determination about a borrower's cosigner release application.

"(B) For the purpose of this paragraph, the term "negative consequences" includes the imposition of additional eligibility criteria, negative credit reporting, lost eligibility for cosigner release, late fees, interest capitalization, or other financial penalty.

"(8)(A) For a private education loan executed after the applicable date of this section, a private education lender shall not require more than 12 consecutive, on-time payments as a requirement for cosigner release.

"(B) A student loan borrower who has paid the equivalent of 12 months of principal and interest payments within any 12-month period shall be considered to have satisfied

11

a consecutive, on-time payment requirement even if the student loan borrower has not made payments monthly during the 12-month period.

"(9) If a student loan borrower or cosigner requests a change in terms that restarts the counting of consecutive, on-time payments required for cosigner release, the private education lender shall notify the student loan borrower and cosigner in writing of the impact of the change and provide the student loan borrower or the cosigner the right to withdraw or reverse the request to avoid that impact.

"(10)(A) A student loan borrower shall have the right to request a reconsideration of a private education lender's denial of a request for cosigner release, and the private education lender shall permit the student loan borrower to submit additional documentation evidencing the borrower's ability to meet the payment obligations.

"(B) The student loan borrower may request review of the cosigner release determination by a different employee than the employee who made the original determination.

"(11)(A) A private education lender shall establish and maintain a comprehensive record-management system ("record-management system") reasonably designed to ensure the accuracy, integrity, and completeness of data and other information about cosigner release applications and compliance with applicable District and federal laws, including the Equal Credit Opportunity Act (15 U.S.C. § 1691 *et seq*.) and the Fair Credit Reporting Act (15 U.S.C. § 1681 *et seq*.).

"(B) The record-management system shall also include the:

"(i) Number of cosigner release applications received;

"(ii) Approval and denial rate; and

"(iii) primary reasons for any denial.

"(e)(1) A private education lender shall provide a cosigner with access to all documents or records related to the cosigned private education loan that are available to the student loan borrower.

"(2) If a private education lender provides electronic access to documents and records for a student loan borrower, it shall provide the equivalent electronic access to the cosigner.

"(3) Upon written notice from the student loan borrower or cosigner, the private education lender may redact or withhold contact information for the student loan borrower and cosigner.

"Sec. 7b-5. Enforcement.

"(a) In addition to complying with the requirements of the New Student Loan Borrower Bill of Rights Amendment Act of 2024, passed on 2nd reading on September 17, 2024 (Enrolled version of Bill 25-37) ("act"), a student loan servicer shall comply with all applicable federal laws relating to student loan servicing, as from time to time amended, and the regulations promulgated pursuant to those federal laws.

12

ENROLLED ORIGINAL

"(b) A violation of section 7b-1 or 7b-3 is an unfair or deceptive trade practice pursuant to D.C. Official Code § 28-3904.

"(c) Any person who suffers damage as a result of the failure of a student loan servicer or private education lender to comply with sections 7b, 7b-1, 7b-2, 7b-3, 7b-4, or 7b-5(a) may bring an action on their own behalf and on behalf of a similarly situated class of consumers against that student loan servicer or private education lender to recover or obtain:

"(1) Actual damages, but in no case shall the total award of damages be less than $500 per plaintiff, per violation;

"(2) An order enjoining the methods, acts, or practices;

"(3) Restitution of property;

"(4) Punitive damages;

"(5) Attorney's fees; or

"(6) Any other relief that the court considers proper.

"(d) In addition to any other remedies provided by this section or otherwise provided by law, whenever it is proven by a preponderance of the evidence that a student loan servicer or private education lender has engaged in conduct that substantially interferes with a student borrower's right to an alternative payment arrangement, loan forgiveness, cancellation, or discharge, or any other financial benefit, as established under the terms of a student loan borrower's promissory note or under the Higher Education Act of 1965 (20 U.S.C. § 1070a *et seq.*), ("Higher Education Act"), as from time to time amended, and regulations promulgated pursuant to the Higher Education Act, the court shall award treble actual damages to the plaintiff, but in no case shall the award of damages be less than $1,500 per violation.

"(e) The remedies provided in this section are not the exclusive remedies available to a student loan borrower or cosigner, nor must the student loan borrower exhaust any administrative remedies provided in this section or any other applicable law before proceeding pursuant to this section.

"(f) The Attorney General may bring an action for any violation of sections 7b, 7b-1, 7b-2, 7b-3, 7b-4 or 7b-5(a) under the authority granted in § 28-3909.

"(g) The Department shall share information on a quarterly basis related to the implementation, execution, and enforcement of sections 7b, 7b-1, 7b-2, 7b-3, 7b-4 and 7b-5(a) with the Office of the Attorney General.

(e) Section 7c is amended by striking the phrase "sections 7a and 7b." and inserting the phrase "sections 7b, 7b-1, 7b-2, 7b-3, 7b-4 and 7b-5(a)." in its place.

Sec. 3. Conforming amendment.

Section 28-3903 of the District of Columbia Official Code is amended by adding a new subsection (d) to read as follows:

"(d) The Attorney General may bring an action pursuant to section 7b-5(f) of the Department of Insurance and Securities Regulation Establishment Act of 1996, passed on 2nd

13

reading on September 17, 2024 (Enrolled version of Bill 25-37) ("act"), for a violation of sections 7b, 7b-1, 7b-2, 7b-3, 7b-4 or 7b-5(a) of the act.

Sec. 4. Applicability.
This act shall apply as of October 1, 2024.

Sec. 5. Fiscal impact statement.
The Council adopts the fiscal impact statement in the committee report as the fiscal impact statement required by section 4a of the General Legislative Procedures Act of 1975, approved October 16, 2006 (120 Stat. 2038; D.C. Official Code § 1-301.47a).

Sec. 6. Effective date.
This act shall take effect following approval by the Mayor (or in the event of veto by the Mayor, action by the Council to override the veto) and a 30-day period of congressional review as provided in section 602(c)(1) of the District of Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(1)).


Chairman
Council of the District of Columbia


Mayor
District of Columbia
APPROVED
OCTOBER 7, 2024

# COUNCIL OF THE DISTRICT OF COLUMBIA

## WASHINGTON, DC, 20004



Docket No. B25-0037

[ X ] ITEM ON CONSENT CALENDAR

[ X ] ACTION                                   First Reading, CC

[ X ] VOTE DATE                                July 9, 2024

[ ] VOICE VOTE

    RECORDED VOTE ON REQUEST

ABSENT                                         Gray

[ X ] ROLL CALL VOTE – Result                  Approved

| Council Member | Aye | Nay | NV | AB | Rec | Council Member | Aye | Nay | NV | AB | Rec | Council Member | Aye | Nay | NV | AB | Rec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chairman Mendelson | X | | | | | Henderson | X | | | | | Pinto | X | | | | |
| Allen | X | | | | | Lewis George | X | | | | | R. White | X | | | | |
| Bonds | X | | | | | McDuffie | X | | | | | T. White | X | | | | |
| Frumin | X | | | | | Nadeau | X | | | | | | | | | | |
| Gray | | | | X | | Parker | X | | | | | | | | | | |

X - Indicate Vote          AB – Absent          NV - Present, Not Voting          Rec - Recused

CERTIFICATION RECORD

Secretary to the Council

9 26 24
Date

---

Docket No. B25-0037

[ X ] ITEM ON CONSENT CALENDAR

[ X ] ACTION                                   Final Reading, CC

[ X ] VOTE DATE                                September 17, 2024

[ ] VOICE VOTE

    RECORDED VOTE ON REQUEST

ABSENT                                         Gray

[ X ] ROLL CALL VOTE – Result                  Approved

| Council Member | Aye | Nay | NV | AB | Rec | Council Member | Aye | Nay | NV | AB | Rec | Council Member | Aye | Nay | NV | AB | Rec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chairman Mendelson | X | | | | | Henderson | X | | | | | Pinto | X | | | | |
| Allen | X | | | | | Lewis George | X | | | | | R. White | X | | | | |
| Bonds | X | | | | | McDuffie | X | | | | | T. White | X | | | | |
| Frumin | X | | | | | Nadeau | X | | | | | | | | | | |
| Gray | | | | X | | Parker | X | | | | | | | | | | |

X - Indicate Vote          AB – Absent          NV - Present, Not Voting          Rec - Recused

CERTIFICATION RECORD

Secretary to the Council

9 26 24
Date

Ex 5. Original copy of Department of Education Notice of Interpretation these 5 pages addresses how the court shall move forward in any case against loan servicers and its employees who make false statements about inaccurate loan documents which defendant has knowingly engaged in.

# Federal **Student Aid**

An OFFICE *of the* U.S. DEPARTMENT *of* EDUCATION

Published on https://fsapartners.ed.gov/knowledge-center/library/dear-colleague-letters/2025-01-16/notice-interpretation-regarding-misrepresentations-third-party-service-providers-engaged-institution-higher-education

PUBLICATION DATE: January 16, 2025

DCL ID: GEN-25-01

SUBJECT: Notice of interpretation regarding misrepresentations by third-party service providers engaged by an institution of higher education

SUMMARY: This letter reminds eligible Title IV institutions of their obligations under the Higher Education Act to comply with requirements under section 487(c)(3) and the Department's regulations (subpart F of part 668) pertaining to misrepresentation.

Dear Colleague:

The U.S. Department of Education (Department) is sending this letter to remind eligible *Title IV* institutions (eligible institutions) of their obligations under the Higher Education Act (HEA) to comply with requirements under section 487(c)(3) of the HEA[1] and the Department's regulations (subpart F of part 668) pertaining to misrepresentation. These provisions prohibit an institution from providing false, misleading, or inaccurate information about the nature of its educational program(s), its financial charges, or the employability of its graduates. This letter reminds eligible institutions that such requirements apply with equal force to statements made by a third-party entity engaged by the eligible institution, including but not limited to an Online Program Manager (OPM), and their respective employees, contractors, or representatives (hereinafter "external service provider")[2] ; and that institutions may be responsible for the consequences of any misrepresentation committed by any external service provider that they engage. *See* 34 C.F.R. 668.71.

Consistent with the statutory and regulatory requirements related to misrepresentation, the Department highlights three types of statements that, if made by an eligible institution and/or any external service provider, under certain circumstances discussed further below, are likely to qualify as a misrepresentation:

1. Inaccurately identifying an individual employed by an external servicer provider as being employed by the eligible institution,

2. Inaccurately presenting a sales representative or recruiter employed by an eligible institution or an external service provider as an academic advisor, such as by referring to them as a "counselor," and

3. Describing a program, or any of its components or resources, provided in substantial part by the external service provider as "the same as" a corollary residential or campus-based version of the program provided by the eligible institution.

These three types of statements may result in a finding that an eligible institution has engaged in a substantial misrepresentation and may result in the Department imposing a fine or taking action to limit, suspend, or terminate an institution's access to *Title IV* funds.[3]

Although these examples do not constitute an exhaustive list, the Department is issuing this guidance because the Department has become aware of multiple instances in which eligible institutions or their external service providers have apparently engaged in making these types of statements to misrepresent, allow to be misrepresented, or facilitate the misrepresentation of, aspects of programs offered by the eligible institutions.[4] The Department seeks to remind institutions and their external service providers of their obligations to provide accurate and complete information to prospective and enrolled students in accordance with law, and as further clarified by the examples in this letter.

## Background

Section 487(c)(3) of the HEA authorizes the Secretary to suspend or terminate an institution's or program's eligibility for *Title IV* funds upon finding the institution substantially misrepresented the nature of the institution's educational program, its financial charges, or the employability of its graduates. 20 U.S.C. 1094(c)(3). Subpart F of the Department's *Title IV* regulations define misrepresentation as any "false, erroneous or misleading statement an eligible institution, organization, or person with whom the eligible institution has an agreement to provide education programs, or to provide marketing, advertising, recruiting or admissions services makes directly or indirectly to a student, prospective student or any member of the public[.]" 34 C.F.R.

668.71(c).[5] Misrepresentation "includes any statement that omits information in such a way as to make the statement false, erroneous, or misleading." *Id.*[6] A "substantial misrepresentation" occurs if the misrepresentation is one "on which the person to whom it was made could reasonably be expected to rely, or has reasonably relied, to that person's detriment." *Id.*

The Department's longstanding position has been that misrepresentation can occur through acts or omissions that falsely, inaccurately, or misleadingly identify the entity providing a good or service related to the institution's educational program, its financial charges, or the employability of its graduates. For example, since 2010, the Department's misrepresentation regulations have required institutions to provide accurate statements about the source of a program's educational services and characteristics, including statements "made in any advertising, promotional materials, or in the marketing or sale of courses or programs of instruction offered by the institution." *See* 34 C.F.R. 668.71(b); *see also* 34 C.F.R. 668.72-74.[7] As another example of the Department reminding institutions of obligations to be accurate in their representations about the source of educational services and characteristics, in DCL GEN-22-07, the Department reminded eligible institutions that they are required by 34 C.F.R. 668.43(a)(12) to attribute accurately the portions of a program provided by the eligible institution itself, as distinct from the portions of a program provided on behalf of the eligible institution by written agreement, often by an external service provider not itself eligible for *Title IV* participation.

## 1. False or misleading attribution of employment, status, or role with eligible institution

Many eligible institutions arrange for an external service provider to exclusively manage functions of online programs, such as recruitment, advising, and clinical placements. A misrepresentation can occur when an employee of an external service provider inaccurately presents themselves as an employee of the eligible institution in their communications with prospective and enrolled students, including but not limited to circumstances where the external service provider's employees use school-associated email addresses and/or email signatures that represent or imply that the individual is employed by the eligible institution. In addition, a misrepresentation may occur if an employee of an external service provider fails to inform students during phone conversations that they are not, in fact, directly employed by the institution.

Misrepresenting the role of an external service provider in these manners can be deceptive, and the Department is aware of numerous instances of this type of deception reportedly occurring. For example, the Department is aware of instances in which OPM employees, using titles such as "placement specialist," "placement manager," "student success advisor," "student success manager," "student support specialist," "admissions counselor," and "admissions manager," have sent emails to prospective and enrolled students in OPM-provided programs offered by eligible institutions from email addresses that implied institutional employment (@[eligible institution].edu), and do not indicate clearly their affiliation with or employment by the OPM.[8] Depending on the particular facts, the use of such titles or email addresses is likely to contribute to students misunderstanding these employees' roles and relying on information provided by them as if they were institutional employees.

Misrepresenting the role of an external service provider can deprive prospective and enrolled students of the ability to make fully informed decisions about their education and can undermine the effectiveness of the Department's existing regulations. Prospective and enrolled students report that they believe it is important to understand whether they are speaking to an employee of an external service provider rather than an employee of the institution. The status of the person they are talking with affects their evaluation of the services that the institution will provide, allowing students to make better-informed decisions about whether to undertake the significant cost of enrolling.[9]

As another example of how such conduct can undermine the Department's accountability requirements, eligible institutions are required to "make readily available" certain program information to enrolled and prospective students, including information about written arrangements the institution has entered into, to ensure students are aware of an external service provider's particular role in providing the educational programs, the costs incurred, and other key aspects of the program. 20 U.S.C. § 1092(a)(1)(G); 1094(a)(7); 34 C.F.R. 668.43(a)(12). However, a student will not know to request this critical information if an eligible institution or its external service provider either fails to inform a student of the existence of a contracted external service provider or makes false, misleading, or inaccurate representations about the role of the external service provider.

The Department's view that this type of conduct can be deceptive is consistent with other Federal and State consumer protection laws. For example, the Federal Trade Commission (FTC), in its guide for private vocational and distance education schools, 16 C.F.R. part 254, identifies as a deceptive act the misrepresentation that certain individuals are members of the institution or school, 16 C.F.R. 254.4(a)(7), and in its rule on impersonation, 16 C.F.R. Part 461, prohibits falsely posing as government or business entities or officials. In addition, the FTC has filed numerous enforcement actions involving false or unsubstantiated affiliation claims.[10] Under the rules enforced by the FTC, representations are deceptive if necessary, qualifications are not made, if material facts are not disclosed, or if these disclosures or qualifications are confusing or inconspicuous.[11] The touchstone is whether the overall net impression of the representation is deceptive, not its literal truth or falsity. *See, e.g., FTC v. Cyberspace.com, L.L.C.,* 453 F.3d 1196, 1200 (9th Cir. 2006); *see also FTC v. Med. Billers Network, Inc.,* 543 F. Supp. 2d 283, 304 (S.D.N.Y. 2008) (listing cases). "'Deception may be made by innuendo rather than by outright false statements,'...and statements can 'create deceptive impression on purchasers even though they may be technically interpreted as true or partially true.'" *FTC v. Bay Area Bus. Council, Inc.,* No. 02 C 5762, 2004 WL 769388, at *10 (N.D. Ill. Apr. 9, 2004), *aff'd,* 423 F.3d 627 (7th Cir. 2005) (quoting *National Bankers Services, Inc. v. FTC,* 329 F.2d 365, 367 (7th Cir.1964); *L.G. Balfour Co. v. FTC,* 442 F.2d 1, 17 (7th Cir.1971)).

These principles also apply to representations about the source of goods and services. For example, in *Waltham Watch Co. v. FTC*, 318 F.2d 28 (7th Cir. 1963), the Court held that a company's advertisements were knowingly false and misleading where it claimed that its products were from a "famous 150-year-old company" without disclosing that the manufacturer of these products had nothing to do with the original company, which had authorized the use of its name under a licensing agreement. *Id.* at 31. *See also Waltham Precision Instrument Co. v. FTC.*, 327 F.2d 427, 431 (7th Cir. 1964) ("Any right petitioners have to use the tradename 'Waltham' does not permit its use in a manner designed to deceive the public, and those who put into the hands of others the means by which they may mislead the public, are themselves guilty of a violation of Section 5 of the Federal Trade Commission Act.") (cleaned up); *Warner-Lambert Co. v. FTC*, 562 F.2d 749, 761 (D.C. Cir. 1977) (where a product has built up a widespread reputation over a period of years, it is false and deceptive to continue advertising on the "strength of the impression" without disclosing material changes to the product.)

Additionally, the Department's enforcement approach is consistent with a number of State rules related to misrepresentation. For example, California's prohibition on unfair, deceptive, unlawful, and unconscionable commercial practices in connection with the sale of educational services to consumers specifically prohibits "passing off goods or services as those of another," "misrepresenting the source...of goods and services," and "misrepresenting the affiliation, connection, or association with another." California Consumer Legal Remedies Act (CLRA), Civil Code 11/70 et seq. As another example, Texas's prohibition on deceptive trade practices specifies that the term "false, misleading, or deceptive acts or practices" includes, but is not limited to "passing off goods or services as those of another," "causing confusion or misunderstanding as to affiliation, connection, or association with, or certification of goods or services," "causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another," and "representing that goods or services have sponsorship, approval, [or] characteristics...which they do not have or that a person has a sponsorship, approval, status, affiliation or connection which the person does not [have]." Tex. Bus. & Com. Code § 17.46. And the District of Columbia's prohibition of unfair and deceptive trade practices prohibits "represent[ing] that the person has a sponsorship, approval, status, affiliation, certification, or connection that the person does not have" and "pass[ing] off goods or services as those of another." District of Columbia Consumer Protection Procedures Act (CPPA), D.C. Code § 28-3904.

## 2. Deceptive or misleading statements about an individual's role in student recruitment

The Department also notes that presenting a sales representative or recruiter as an "academic counselor" or similar position can be deceptive and misleading if it is not an accurate description of their position. For example, the Department is aware of circumstances in which individuals who have been awarded distinction based on their level of "sales" have reportedly described themselves as admission "counselors" of an eligible institution. Such practices create a high risk of misrepresentation since *rewarding an individual based on sales indicates that individual's role is not focused on impartially counseling prospective or enrolled students, but rather on securing a financial transaction. The Department's interpretation is consistent with many States' laws. *See, e.g.*, NY Comp Codes R. & Regs, tit. 8, sec. 126.12(e) (BPPS regs) ("Agents shall not identify themselves or be identified as counselors or by other titles which mislead the prospective student"), MA CMR, tit. 940 sec. 31.06(10) ("It is an unfair or deceptive act or practice for a school to refer to salespersons or recruiters as 'counselors' or 'advisors' or to imply that a salesperson or recruiter is an academic adviser or counselor")[12]. The FTC has also charged entities for deceptively claiming to be independent from the programs they advertise or not influenced by compensation received from those programs.[13]

## 3. False or misleading statement creating equivalency or identity between an eligible institution's program provided by an external service provider and a corollary campus-based or residential program

The Department is aware of instances in which the resources available to students enrolled in a program provided by an external service provider are entirely distinct and substantially different from those available to students in a corollary residential program. Such resources can include instructors, curriculum, advisors, placement coordinators, and registrars.

Absent specific evidence of actual parity with respect to each advertised aspect, it is highly likely to be misleading and deceptive to describe a program offered by the external service provider as the same as a campus-based program, or to otherwise imply an equivalent identity between the two if they are not equivalent in substantive ways. Such substantive items include differences in the degrees awarded (including the name of the school and college awarding the degree), the criteria for admissions, or the qualifications of faculty across both programs. Programs may not be equivalent if they have meaningful differences in rates of completion, job placement, earnings, or licensure. Stating that programs are equivalent when there are meaningful differences between them is highly likely to meet the statutory and regulatory definition of a misrepresentation. Institutions should also be clear if the credentials awarded in programs supported by an external servicer provider are different from the credentials students earn in the campus-based version of the program. For example, eligible institutions should be clear if the degree is awarded by an online division or campus of the institution that does or does not certify completion of the same curriculum taught by the same faculty as the campus-based degree.

In sum, eligible institutions and their external service providers are prohibited from providing false, misleading, or inaccurate information about the nature of their educational programs. See 20 U.S.C. 1094(c)(3); 34 CFR Part 668 Subpart F. This prohibition applies equally to circumstances where an institution has arranged for an external service provider to exclusively

manage functions of online programs, such as recruitment, advising, and clinical placements. See 34 C.F.R. 668.71. As set forth in detail above, the Department's interpretation is consistent with the applicable statute and regulations, as well as State consumer protection laws.

## Conclusion

Based on the evidence and support described in this letter, the Department provides these examples to clarify the type of statements made by an eligible institution or its external service provider that are likely to qualify as a misrepresentation under existing law. The Department reminds eligible institutions that they are responsible for statements made by an external service provider that amount to substantial misrepresentation, and that eligible institutions could, as a result, be subject to remedial action such as imposing a fine or limiting the institution's participation in the *Title IV* programs.

If you have any questions or comments, please submit through the Contact Customer Support form link in Federal Student Aid's Help Center.

Sincerely,

Nasser Paydar, Ph.D.
Assistant Secretary for Postsecondary Education

[1] 20 U.S.C. 1094(c)(3).

[2] The Department's regulations related to substantial misrepresentation apply to statements made by "an eligible institution, one of its representatives, or any ineligible institution, organization, or person with whom the eligible institution has an agreement to provide educational programs, or to provide marketing, advertising, recruiting or admissions services[.]" See 34 C.F.R. 668.71(c) (emphasis added).

[3] The Department considers the "totality of the circumstances in which a statement occurred, to determine whether it constitutes a substantial misrepresentation." 81 FR 75926-01, at *75945 (Nov. 1, 2016). While each determination is fact-dependent based on the particular circumstances, this letter clarifies types of statements that have a high risk of qualifying as a substantial misrepresentation because they are likely to be false, erroneous, or have the tendency to mislead prospective and enrolled students, and upon which a prospective or enrolled student would be likely to reasonably rely to their detriment. See 34 C.F.R. 668.71(c) (defining substantial misrepresentation).

[4] See, e.g., "Transcript of Virtual Listening Session," U.S. Department of Education, Office of Postsecondary Education (March 8, 2023), at 41-43, available at https://www.ed.gov/media/document/virtuasesstranscript3823finpdf ☑; "Comments from the Legal Aid Community to the U.S. Department of Education," Docket ID ED-2021-OPE-0077 (August 12, 2022), available for download at https://www.regulations.gov/comment/ED-2021-OPE-5337 ☑; see also, e.g., Luna v. Univ. of Southern California, Case No. 23STCV09981 (Cal. Super. Ct. May 4, 2023) (claiming misrepresentation based, in part, on allegations that employees of the third-party entity contracting with university misrepresented themselves as university employees); Bradford v. George Washington Univ., Case No. 16-858 (D.D.C., May 6, 2026) (claiming misrepresentation based, in part, on allegations that the university's online education program was "substantially identical" to its in-classroom equivalent when the programs was inferior) (dismissed on grounds that plaintiffs' claims were time-barred by statute of limitations).

[5] Although the Department revised its misrepresentation regulations (subpart F of part 668) in 2010 (75 FR 66832), 2016 (81 FR 75926), and 2022 (87 FR 65904), this regulatory definition of "misrepresentation" has remained the same since 2010.

[6] The Department added this clarification to the regulatory definition of misrepresentation in 2016 to make explicit the Department's view that misrepresentations may include omissions, which aligns with its interpretation of the 2010 regulations and longstanding position. See 81 FR at 75949 (explaining that this clarification in the 2016 rules aligned the definition of misrepresentation with the "the Department's long-standing purpose for part 668, subpart F, enforcement actions" and was consistent with enforcement actions taken under the 2010 regulations).

[7] This emphasis and regulatory language appears in the regulations promulgated in 2010 (75 FR 66832), 2016 (81 FR 75926), and 2022 (87 FR 65904). See also notes 4, 5, supra (explaining how the Department's regulations on misrepresentation have retained key definitions and concepts for over a decade).

[8] The Department recognizes that financial aid offices may temporarily use additional contractors to assist with during the busiest financial aid processing periods. Generally, the Department's concern relates to the use of contracted staff for recruitment purposes, when such relationships are not properly disclosed, which could impact a student's ability to make an informed decision, as discussed further below.

[9] See, e.g., "Transcript of Virtual Listening Session," U.S. Department of Education, Office of Postsecondary Education (March 8, 2023), at 41-43, available at https://www.ed.gov/media/document/virtuasesstranscript3823finpdf ☑; see also, "Comments from the Legal Aid Community to the U.S. Department of Education," Docket ID ED-2021-OPE-0077 (August 12, 2022), available for download at https://www.regulations.gov/comment/ED-2021-OPE-5337 ☑.

[10] See, e.g., FTC v. Career Educ. Corp., No. 1:19-cv-05739 (N.D. Ill., July 9, 2019) (alleging school's lead generators misrepresented that its schools were recommended or endorsed by U.S. military); FTC v. Sunkey Publ'g., Inc., No. 3:18-cv-01444 (N.D. Ala. Sept. 6, 2018) (alleging lead generators misrepresented that schools were recommended or endorsed by U.S. military); FTC v. Capital Network Distance Learning Programs, LLC, No. 2:16-cv-00350 (D. Ariz., Feb. 8, 2016) (misrepresenting that defendants were accredited by an independent, third-party accrediting body independent from defendants' online schools); FTC v. Stepping Stonez Dev., LLC, No. 2:16-cv-00351 (D. Ariz., Feb. 8, 2016) (same); FTC v. Diversified Educ. Ress., LLC (Jefferson High School Online), No. 14-cv-62118 (S.D. Fla., Sept. 18, 2014) (alleging diploma mill misrepresented that it was accredited by an independent, third party accrediting body).

[11] See Federal Trade Commission Policy Statement on Deception, appended to Cliffdale Assocs., Inc., 103 F.T.C. 110, 174-83 (1984).

[19] The Department observes that there are additional legal reasons why an individual employed by an external service provider that engages in recruitment under a revenue-sharing bundled services arrangement could not represent themselves as an admissions counselor to prospective or enrolled students. Per governing statutory and regulatory law, and consistent with DCL GEN-11-05, the Department views the incentive compensation ban as prohibiting revenue-sharing for recruitment unless the external service provider provides a bundle of services and certain conditions are met, including that the eligible institution determines admission and program enrollment independent of the external service provider. See DCL GEN-11-05; see also 20 U.S.C. § 1094(a)(20); 34 C.F.R. § 668.14(b) (22). Under this type of permitted bundled services arrangement, to maintain the necessary level of independence, an eligible institution cannot contract out to the external service provider the counseling function, and hence also cannot allow employees of an external service provider to represent themselves as counselors.

[20] See, e.g., In re Shop Tutors, Inc. (LendEDU), No. 182-3180 (May 26, 2020) (alleging that student loan website misrepresented that its rankings and ratings of student loan companies was not influenced by compensation from those companies); In re Victory Media, Inc., No. 162-3210 (Jan. 12, 2018) (alleging that respondent's website promoting for-profit colleges misrepresented that it promoted these schools based on them being "military friendly," and also misrepresented that respondent's endorsements were independent, when respondent was paid by schools listed); FTC v. Expand, Inc. (Digital), No. 6:16-cv-00714-CEM-TBS (M.D. Fla., Apr. 27, 2016) (alleging lead generator misrepresented that its employees were "independent" educational advisors, when it only recommended schools or programs that agreed to pay it for leads).

Ex 6. Original copy of the alleged 11 loans Saint Augustine's University loans in 2009 that shows from 2003 to 2009. In the amount of $43, 225.00 which shows I am being charged twice for both Career Technical Institute and Saint Augustine's University above.

START HERE
GO FURTHER
FEDERAL STUDENT AID

| | | Search |

**HOME    YOUR ACCOUNT    QUESTION CENTER    FORMS**

**View Account Information**
Account Summary
Payment History
Loan Consolidation Status
Payoff Amount
1098-E Tax Information
Electronic Promissory
Note/Agreement to Serve
Electronic Mailbox
**Manage Your Account**
Update Your Information
Consolidate Your Loans
Electronic Mail Services
Deferment Request
Forbearance Request
Change Repayment Plan
Change Payment Due Date
**Electronic Payment Methods**
Make Online Payment
Electronic Debit Account (EDA)
**Tools & Planning**
Entrance Counseling
Exit Counseling
Repayment Estimator
Interest Capitalization Estimator
Budget Calculator

## Direct Loan Exit Counseling

[< Back]   Page 2 of 19   [Next >]

### Direct Loan Balances

This page and the one following give information about your total school loan indebtedness, including any loans you have that are not Direct Loans. This first page shows your total Direct Loans borrowing. The next page gives details about your other loans.

| Loan Year | Original Balance | Principal Balance | Interest Outstanding | Interest Rate | School Attended |
|---|---|---|---|---|---|
| Loan ID: *****6319S09G02968001 - Subsidized Student Loan | | | | | |
| 2008-2009 | $2,625.00 | $2,625.00 | $0.00 | 6 | ST AUGUSTINES COLLEGE |
| Loan ID: *****6319U09G02968001 - Unsubsidized Student Loan | | | | | |
| 2008-2009 | $5,250.00 | $5,250.00 | $143.67 | 6.8 | ST AUGUSTINES COLLEGE |
| Loan ID: *****6319U09G02968002 - Unsubsidized Student Loan | | | | | |
| 2008-2009 | $4,600.00 | $4,600.00 | $125.89 | 6.8 | ST AUGUSTINES COLLEGE |
| Loan ID: *****6319S08G02968001 - Subsidized Student Loan | | | | | |
| 2007-2008 | $5,500.00 | $5,500.00 | $0.00 | 6.8 | ST AUGUSTINES COLLEGE |
| Loan ID: *****6319U08G02968001 - Unsubsidized Student Loan | | | | | |
| 2007-2008 | $5,000.00 | $5,000.00 | $478.95 | 6.3 | ST AUGUSTINES COLLEGE |
| Loan ID: *****6319S07G02968001 - Subsidized Student Loan | | | | | |
| 2006-2007 | $3,500.00 | $3,500.00 | $0.00 | 6.8 | ST AUGUSTINES COLLEGE |
| Loan ID: *****6319S06G02968001 - Subsidized Student Loan | | | | | |
| 2005-2006 | $3,500.00 | $3,500.00 | $0.00 | 3.61 | ST AUGUSTINES COLLEGE |
| Loan ID: *****6319U06G02968001 - Unsubsidized Student Loan | | | | | |
| 2005-2006 | $4,000.00 | $4,000.00 | $757.34 | 3.61 | ST AUGUSTINES COLLEGE |
| Loan ID: *****6319S05G02968001 - Subsidized Student Loan | | | | | |
| 2004-2005 | $2,625.00 | $2,625.00 | $0.00 | 3.61 | ST AUGUSTINES COLLEGE |
| Loan ID: *****6319S04G02968001 - Subsidized Student Loan | | | | | |

**Your Progress**
Welcome To Exit Counseling
Direct Loan Balances
Non-Direct Loans
Interest Rates
Entering Repayment
Your Repayment Plans
Billing Methods and Making Payments
Monthly Due Date
Prepayment
Consequences of Default
Loan Consolidation
Deferments
Forbearances
Loan Discharge
Contacting Direct Loan
Direct Loan Servicing Web Site
Review These Common Terms
Congratulations! It's The Final Exam
The Quiz

| 2003-2004 | $2,625.00 | $2,625.00 | $0.00 | 3.61 | ST AUGUSTINES COLLEGE |
|---|---|---|---|---|---|
| Loan ID: *****6319U04G02968001 - Unsubsidized Student Loan | | | | | |
| 2003-2004 | $4,000.00 | $4,000.00 | $972.39 | 3.61 | ST AUGUSTINES COLLEGE |
| Totals | $43,225.00 | $43,225.00 | $2,478.24 | N/A | N/A |

> **Remember:**
>
> - This page displays information about Direct Loans you have outstanding.
> - To view the definitions for the terms displayed on this page, Click here.



Back | Page 2 of 19 | Next

https://www.dl.ed.gov/borrower/ExitCounselingPage.do      4/16/2009

An official website of the United States government.

Help Center

**Federal Student Aid**

Log In

KNOWLEDGE CENTER ▾    TRAINING ▾    FINANCIAL AID DELIVERY ▾    TITLE IV PROGRAM ELIGIBILITY ▾    PARTNER CONNECT SERVICES ▾

Title IV Participation Application

# Title IV Participation Application

Postsecondary institutions use the E-App to apply for designation as an eligible institution, initial participation, recertification, reinstatement, change in ownership, to update a current approval, or report information. Updates include changes such as, but not limited to, name or address change, new location or program, increased level of offering, change of officials, or mailing address for publications.

## 📄 Pre-Eligibility Application

To participate in federal student financial aid programs (Title IV, HEA) as an eligible institution or as an eligible non-participating institution, institutions must apply and receive approval. Some institutions apply only for designation as an eligible non-participating institution so their students may receive deferments on FSA program loans or be eligible for tax credits or other non-Title IV programs that require institutions to be FSA-eligible.

Before beginning to participate in the FSA programs, a school should familiarize itself with FSA Program requirements, the administrative and other requirements that it will have to fulfill, including tracking student and program eligibility. Some of these requirements require substantial lead-time, so a school should begin planning for implementation as soon as possible. Once it begins participating in the FSA programs, a school must continue to meet certain academic, financial, and administrative standards. The applicable federal regulations are 34 CFR Parts 600 ☑ & 668 ☑.

Institutions are also strongly encouraged to watch the Training Video: Applying for First-Time Approval to Participate in Title IV FSA Programs ☑ and to review the student financial assistance regulations regarding the requirements that must be satisfied before seeking approval to participate in the federal student financial aid programs. To access the FSA training video, you will need an FSA Training Center account (username and password). Please note that your username and password for the FSA Training Center ☑ is not associated with your FSAID and password used to access other FSA systems.

The FSA Handbook Glossary is another helpful resource and defines terms and abbreviations that are related to the Title IV programs.

Click "Get Started" if you are an institution applying to participate in the FSA programs for the first time, an institution seeking to be reinstated, and/or an institution requesting designation as an eligible non-participating institution.

Get Started

## Help From Your School Participation Section

For help completing the E-App, please send an email to CaseTeams@ed.gov✉.

For issues with your user ID or password, contact Partner Connect Customer Support via the Help Center.

## ⚡ Application to Participate in the Federal Student Financial Aid Programs (E-App)

Postsecondary institutions must complete and submit an Eligibility application to be approved to participate in the Federal Student Financial Aid Programs. Institutions must submit this application:

- to be initially certified
- to be approved following a change of ownership or structure
- to be recertified to continue participation
- to have eligibility reinstated
- to be designated as an eligible non-participating institution, or
- to update/report information.

Updates include changes such as, but not limited to, name or address change, new location or program, increased level of offering, change of officials, report a third-party servicer, Federal School Code Address change or update to Eligibility and Oversight Administrator.

Got Started

## Resources

ez-Audit

Submit Financial Statements and Compliance Audits

Foreign Gift and Contract Disclosures [↗]

Report Foreign Gifts and Contracts

## Additional Information

### Paper Reduction Statement

OMB No. 1845-0012

Exp. Date 12/31/2025

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless such collection displays a valid OMB control number. Public reporting burden for this collection of information is estimated to average 17 hours per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. The obligation to respond to this collection is required to obtain or retain benefit (Higher Education Act of 1965, as amended (HEA)). Send comments regarding the burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Education, 400 Maryland Ave., SW, Washington, DC 20210-4537 or (TBD)

### Privacy Act Disclosure Notice

Thank you for visiting our Web site. Postsecondary institutions use the E-APP to apply for designation as an eligible institution, initial participation, recertification, reinstatement, or continued approval after a change in ownership, or to update a current approval. Updates include changes such as, but not limited to, name or address change, new location or program, increased level of offering, change of officials, or mailing address for publications. This includes information about the school's name, address, locations, programs, officials, authorizing agencies, owners and servicers. We only collect information that we need to determine if the institution is eligible, and if applicable, certified to participate in the Title IV, HEA programs. The information that is being requested is mandated by the Higher Education Act and Title 31 as amended by Section 31001 of Public Law 104-134 of the Debt Collection Improvement Act of 1996. Section 498A(a)(3) of the HEA requires the Secretary to establish a central database of information on institutional accreditation, eligibility, and certification that includes all information available to the Department. Section 498A(c) instructs the Secretary to make this information available to all institutions of higher education, guaranty agencies, states, and other organizations participating in the programs authorized under Title IV of the HEA. Please note: the Application requests the Social Security numbers (SSNs) of the owners of the institution. The SSNs are used to determine institutional eligibility and to verify identities. The SSNs are collected under the authority of the Debt Collection Improvement Act of 1996, Pub. L. 104-134. This act requires Federal agencies to secure the TIN (the Social Security Number, for individuals) of persons "doing business with the agency," a term that includes being "in a relationship with the agency that may give rise to a receivable due that agency." 31 U.S.C. §7701(c)(1), (2)(E).

**KNOWLEDGE CENTER**

Knowledge Center Home
FSA Handbook
Knowledge Center FAQs

**TRAINING**

Training Resources
FSA Training Conference
Financial Aid Toolkit

**FINANCIAL AID DELIVERY**

Application & Verification
Calculating Awards & Packaging
Origination & Disbursement
Campus-Based Processing
Return of Title IV Funds
National Student Loan Data System (NSLDS)
Reconciliation & Closeout
Default Prevention & Management
Federal Student Aid Systems & Services Enrollment Information

**TITLE IV PROGRAM ELIGIBILITY**

Title IV Participation Application
Third Party Servicers
Guaranty Agency Program Review
Audit Submissions
eCDR Appeals
Cybersecurity
School Closure

**STUDENT, PARENT, BORROWER ACCOUNTS**

Account Search
Data Range Search
Record ID Search

**PARTNER PROFILES**

School Search
School Third-Party Servicer Search

**ADDITIONAL RESOURCES**

Reports
Case Management

**MORE INFO**

About This Site
Data Center
Help Center
Feedback Center
Important Dates
Helpful Links

Federal Student Aid | PROUD SPONSOR of the AMERICAN MIND®

☑ An official website of the United States government.

Help Center

**Federal Student Aid** | OFFICE of FEDERAL STUDENT AID an office of the U.S. DEPARTMENT of EDUCATION

Log In

KNOWLEDGE CENTER ⌄     TRAINING ⌄     FINANCIAL AID DELIVERY ⌄     TITLE IV PROGRAM ELIGIBILITY ⌄     PARTNER CONNECT SERVICES ⌄

Third-Party Servicers

# Third-Party Servicers

The Third-Party Servicer Inquiry Form is an OMB-approved data collection tool utilized to obtain information needed to validate third-party servicer information reported to the Department by institutions, as well as to collect additional information from third-party servicers needed for effective oversight.

A third-party servicer is an entity or individual that administers any aspect of an institution's participation in the Title IV programs, including, but not limited to, services and functions necessary:

- For the institution to remain eligible to participate in the Title IV programs
- To determine a student's eligibility for Title IV funds,
- To account for Title IV funds,
- To deliver Title IV funds to students, or
- To perform any other aspect of the administration of the Title IV programs.

## Third-Party Servicer Data Inquiry Form

Entities or individuals that meet the definition of a third-party servicer are required to submit the Third-Party Servicer Inquiry Form to the Department. Third-Party Servicers are required to update information provided on the Third-Party Servicer Inquiry Form within 10 days of the date that:

- The servicer changes its name;
- The servicer changes the address or contact information for its primary location or additional location;
- The servicer adds or terminates a contract with an eligible Title IV institution; or
- The servicer buys, sells, or merges with another third-party servicer.

Get Started

## Help From the School Participation Section

For help with completing the Third-Party Servicer Inquiry Form, please send your questions to CaseTeams@ed.gov✉.

For issues with your user ID or password, contact Partner Connect Customer Support via Help Center.

## Resources

ez-Audit
Submit Annual Compliance Audits

## Additional Information

## Paperwork Reduction Statement

OMB CONTROL NUMBER: 1845-0130
EXPIRATION DATE: 02/28/2026

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless such collection displays a valid OMB control number. The valid OMB control number for this information collection is 1845-0130. Public reporting burden for this collection of information is estimated to average 75 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. The obligation to respond to this collection is required to retain the benefit to contract

with eligible institutions pursuant to 34 C.F.R. § 668.25. If you have comments or concerns regarding the status of your individual submission of this form, please contact the Third Party Servicer Oversight Group directly at (816) 268-0543 or fsapc3rdpartyserviceroversight@ed.gov⚲

## Privacy Act Disclosure Notice

Thank you for visiting our Web site. Postsecondary institutions use the E-APP to apply for designation as an eligible institution, initial participation, recertification, reinstatement, or continued approval after a change in ownership, or to update a current approval. Updates include changes such as, but not limited to, name or address change, new location or program, increased level of offering, change of officials, or mailing address for publications. This includes information about the school's name, address, locations, programs, officials, authorizing agencies, owners and servicers. We only collect information that we need to determine if the institution is eligible, and if applicable, certified to participate in the Title IV, HEA programs. The information that is being requested is mandated by the Higher Education Act and Title 31 as amended by Section 31001 of Public Law 104-134 of the Debt Collection Improvement Act of 1996. Section 498A(a)(3) of the HEA requires the Secretary to establish a central database of information on institutional accreditation, eligibility, and certification that includes all information available to the Department. Section 498A(c) instructs the Secretary to make this information available to all institutions of higher education, guaranty agencies, states, and other organizations participating in the programs authorized under Title IV of the HEA. Please note: the Application requests the Social Security numbers (SSNs) of the owners of the institution. The SSNs are used to determine institutional eligibility and to verify identities. The SSNs are collected under the authority of the Debt Collection Improvement Act of 1996, Pub. L. 104-134. This act requires Federal agencies to secure the TIN (the Social Security Number, for individuals) of persons "doing business with the agency," a term that includes being "in a relationship with the agency that may give rise to a receivable due that agency." 31 U.S.C. §7701(c)(1), (2)(E).

**KNOWLEDGE CENTER**

Knowledge Center Home
FSA Handbook
Knowledge Center FAQs

**TRAINING**

Training Resources
FSA Training Conference
Financial Aid Toolkit

**FINANCIAL AID DELIVERY**

Application & Verification
Calculating Awards & Packaging
Origination & Disbursement
Campus-Based Processing
Return of Title IV Funds
National Student Loan Data System (NSLDS)
Reconciliation & Closeout
Default Prevention & Management
Federal Student Aid Systems & Services Enrollment Information

**TITLE IV PROGRAM ELIGIBILITY**

Title IV Participation Application
Third-Party Servicers
Guaranty Agency Program Review
Audit Submissions
eCDR Appeals
Cybersecurity
School Closure

**STUDENT, PARENT, BORROWER ACCOUNTS**

Account Search
Data Range Search
Record ID Search

**PARTNER PROFILES**

School Search
School Third-Party Servicer Search

**ADDITIONAL RESOURCES**

Reports
Case Management

**MORE INFO**

About This Site
Data Center
Help Center
Feedback Center
Important Dates
Helpful Links

Federal **Student** Aid | PROUD SPONSOR of the AMERICAN MIND®

X  📘  📹   FOIA  |  Privacy  |  Security  |  Notices  |  USA.gov  |  ED.gov



### UNITED STATES DEPARTMENT OF EDUCATION

### FEDERAL STUDENT AID
### SCHOOL ELIGIBILITY AND OVERSIGHT SERVICE GROUP

# PROGRAM PARTICIPATION AGREEMENT

| | |
|---|---|
| **Effective Date of Approval:** | The date on which this Agreement is signed on behalf of the Secretary of Education |
| **Approval Expiration Date:** | Month, Date, Year |
| **Reapplication Date:** | Month, Date, Year |
| **Name of Institution:** | ABC Institution |
| **Address of Institution:** | Street Address, City, State, Zip Code + 4 |
| **OPE ID Number:** | XXXXXX00 |
| **Taxpayer Identification Number (TIN):** | XXXXXXXXX |

> **The execution of this Agreement by the Institution and the Secretary is a prerequisite to the Institution's initial or continued participation in any Title IV, HEA Program.**

The postsecondary educational institution listed above, referred to hereafter as the "Institution," and the United States Secretary of Education, referred to hereafter as the "Secretary," agree that the Institution may participate in those student financial assistance programs authorized by Title IV of the Higher Education Act of 1965, as amended (Title IV, HEA Programs) indicated under this Agreement and further agrees that such participation is subject to the Institution's compliance with the terms and conditions set forth in this Agreement. As used in this Agreement, the term "Department" refers to the U.S. Department of Education.

# SCOPE OF COVERAGE

This Agreement applies to all locations of the Institution as stated on the most current ELIGIBILITY AND CERTIFICATION APPROVAL REPORT issued by the Department. This Agreement covers the Institution's eligibility to participate in each of the following listed Title IV, HEA programs, and incorporates by reference the regulations cited.

- **FEDERAL PELL GRANT PROGRAM,** 20 U.S.C. §§ 1070a *et seq.*; 34 C.F.R. Part 690.

- **FEDERAL FAMILY EDUCATION LOAN PROGRAM,** 20 U.S.C. §§ 1071 *et seq.*; 34 C.F.R. Part 682.

XXXXXX00 - ABC Institution, PPA Expiration Date: Month, Date, Year

- **FEDERAL DIRECT STUDENT LOAN PROGRAM,** 20 U.S.C. §§ 1087a et seq.; 34 C.F.R. Part 685.

- **FEDERAL PERKINS LOAN PROGRAM,** 20 U.S.C. §§ 1087aa et seq.; 34 C.F.R. Part 674.

- **FEDERAL SUPPLEMENTAL EDUCATIONAL OPPORTUNITY GRANT PROGRAM,** 20 U.S.C. §§ 1070b et seq.; 34 C.F.R. Part 676.

- **FEDERAL WORK-STUDY PROGRAM,** 20 U.S.C. §§ 1087 et seq.; 34 C.F.R. Part 675.

- **IRAQ AND AFGHANISTAN SERVICE GRANT,** §§ 1070h et seq.


# GENERAL TERMS AND CONDITIONS

1. The Institution understands and agrees that it is subject to and will comply with, as they become effective, the program statutes and implementing regulations for institutional eligibility as set forth in 34 C.F.R. Part 600 and for each Title IV, HEA program in which it participates, as well as the general provisions set forth in Part F and Part G of Title IV of the HEA, and the Student Assistance General Provisions regulations set forth in 34 C.F.R. Part 668.

   *The recitation of any portion of the statute or regulations in this Agreement does not limit the Institution's obligation to comply with other applicable statutes and regulations.*

2.

   a. The Institution certifies that on the date it signs this Agreement, it has adopted and implemented the drug prevention program described in 34 C.F.R. § 86.100.
   b. The Institution certifies that on the date it signs this Agreement, it is in compliance with the disclosure requirements of Section 485(f) of the HEA (Campus Security Policy and Campus Crime Statistics).

3. The Institution agrees to comply with --

   a. Title VI of the Civil Rights Act of 1964, as amended, and the implementing regulations, 34 C.F.R. Parts 100 and 101 (nondiscrimination on the basis of race, color or national origin);
   b. Title IX of the Education Amendments of 1972 and the implementing regulations, 34 C.F.R. Part 106 (nondiscrimination on the basis of sex);
   c. The Family Educational Rights and Privacy Act of 1974 and the implementing regulations, 34 C.F.R. Part 99;
   d. Section 504 of the Rehabilitation Act of 1973 and the implementing regulations, 34 C.F.R. Part 104 (nondiscrimination on the basis of disability); and
   e. The Age Discrimination Act of 1975 and the implementing regulations, 34 C.F.R. Part 110.
   f. The Standards for Safeguarding Customer Information, 16 C.F.R. Part 314, issued by the Federal Trade Commission (FTC), as required by the Gramm-Leach-Bliley (GLB) Act, P.L. 106-102. These Standards are intended to ensure the security and confidentiality of customer records and information. The Secretary considers any breach to the security of student records and information as a demonstration of a potential lack of administrative capability as stated in 34 C.F.R. § 668.16(c).

Case 1:25-cv-03272-RC   Document 1-2   Filed 09/18/25   Page 211 of 370

Institutions are strongly encouraged to inform its students of any such breaches. Institutions are required, pursuant to the Student Aid Internet Gateway (SAIG) Agreement, to notify the Department of any suspected data breaches.

4. The Institution acknowledges that 34 C.F.R. Parts 602 and 668 require accrediting agencies, State regulatory bodies, and the Secretary to share information about institutions. The Institution agrees that the Secretary, any accrediting agency recognized by the Secretary, and any State regulatory body may share or report information to one another about the Institution without limitation.

5. The Institution acknowledges that the HEA prohibits the Secretary from recognizing the accreditation of any institution of higher education unless that institution agrees to submit any dispute involving an adverse action, such as the final denial, withdrawal, or termination of accreditation to arbitration prior to initiating any other legal action.

6. The Institution acknowledges that the Department is obligated to take appropriate measures in order to safeguard its systems and information as well as borrowers' personally identifiable information (PII) as required under Federal law, including but not limited to the requirements in the Privacy Act (*see* 5 U.S.C. § 552a(e)), E-Government Act of 2002 (*see* 44 U.S.C. § 3544), the Family Educational Rights and Privacy Act of 1974 (FERPA) (20 U.S.C. § 1232g; 34 C.F.R. Part 99), Federal Information Security Modernization Act (FISMA) of 2014 (44 U.S.C. § 3551, *et seq.*), and OMB Circular No. A-130. If the Institution has a cyber security incident that may negatively affect the Department's systems, the Department may terminate the Institution's access to the Department's systems. Access will be reconnected when the Department determines that the Institution has resolved any cyber security concerns and vulnerabilities to the Department's satisfaction.

7. The Institution acknowledges that any person who knowingly and willfully commits, or attempts to commit, any criminal action described in 20 U.S.C. § 1097, shall be subject to the penalties described therein.

# SELECTED PROVISIONS FROM
# GENERAL PROVISIONS REGULATIONS, 34 C.F.R. § 668.14

An institution's program participation agreement applies to each branch campus and other location of the institution that meets the applicable requirements of this part unless otherwise specified by the Secretary.
(b) By entering into a program participation agreement, an institution agrees that—
(1) It will comply with all statutory provisions of or applicable to Title IV of the HEA, all applicable regulatory provisions prescribed under that statutory authority, and all applicable special arrangements, agreements, and limitations entered into under the authority of statutes applicable to Title IV of the HEA, including the requirement that the institution will use funds it receives under any Title IV, HEA program and any interest or other earnings thereon, solely for the purposes specified in and in accordance with that program;
(2) As a fiduciary responsible for administering Federal funds, if the institution is permitted to request funds under a Title IV, HEA program advance payment method, the institution will time its requests for funds under the program to meet the institution's immediate Title IV, HEA program needs;
(3) It will not request from or charge any student a fee for processing or handling any application, form, or data required to determine a student's eligibility for, and amount of, Title IV, HEA program assistance;
(4) It will establish and maintain such administrative and fiscal procedures and records as may be necessary to ensure proper and efficient administration of funds received from the Secretary or from students under the Title IV, HEA programs, together with assurances that the institution will provide, upon request and in a

timely manner, information relating to the administrative capability and financial responsibility of the institution to--

(i) The Secretary;

(ii) A guaranty agency, as defined in 34 C.F.R. Part 682, that guarantees loans made under the Federal Stafford Loan and Federal PLUS programs for attendance at the institution or any of the institution's branch campuses or other locations;

(iii) The nationally recognized accrediting agency that accredits or preaccredits the institution or any of the institution's branch campuses, other locations, or educational programs;

(iv) The State agency that legally authorizes the institution and any branch campus or other location of the institution to provide postsecondary education; and

(v) In the case of a public postsecondary vocational educational institution that is approved by a State agency recognized for the approval of public postsecondary vocational education, that State agency;

(5) It will comply with the provisions of subpart L of this part relating to factors of financial responsibility;

(6) It will comply with the provisions of 34 C.F.R. § 668.16 relating to standards of administrative capability;

(7) It will submit reports to the Secretary and, in the case of an institution participating in the Federal Stafford Loan, Federal PLUS, or the Federal Perkins Loan Program, to holders of loans made to the institution's students under that program at such times and containing such information as the Secretary may reasonably require to carry out the purpose of the Title IV, HEA programs;

(8) It will not provide any statement to any student or certification to any lender in the case of an FFEL Program loan, or origination record to the Secretary in the case of a Direct Loan Program loan that qualifies the student or parent for a loan or loans in excess of the amount that the student or parent is eligible to borrow in accordance with sections 425(a), 428(a)(2), 428(b)(1)(A) and (B), 428B, 428H, and 455(a) of the HEA;

(9) It will comply with the requirements of Subpart D of this part concerning institutional and financial assistance information for students and prospective students;

(10) In the case of an institution that advertises job placement rates as a means of attracting students to enroll in the institution, the institution will make available to prospective students, at or before the time that those students apply for enrollment--

(i) The most recent available data concerning employment statistics, graduation statistics, and any other information necessary to substantiate the truthfulness of the advertisements; and

(ii) Relevant State licensing requirements of the State in which the institution is located for any job for which the course of instruction is designed to prepare such prospective students, as provided in 34 C.F.R. § 668.43(a)(5)(v);

(11) In the case of an institution participating in the FFEL Program, the institution will inform all eligible borrowers, as defined in 34 C.F.R. Part 682, enrolled in the institution about the availability and eligibility of those borrowers for State grant assistance from the State in which the institution is located, and will inform borrowers from another State of the source of further information concerning State grant assistance from that State;

(12) It will provide the certifications described in paragraph (c) of this section;

(13) In the case of an institution whose students receive financial assistance pursuant to section 484(d) of the HEA, the institution will make available to those students a program proven successful in assisting students in obtaining the recognized equivalent of a high school diploma;

(14) It will not deny any form of Federal financial aid to any eligible student solely on the grounds that the student is participating in a program of study abroad approved for credit by the institution;

(15) (i) Except as provided under paragraph (b)(15)(ii) of this section, the institution will use a default management plan approved by the Secretary with regard to its administration of the FFEL or Direct Loan programs, or both for at least the first two years of its participation in those programs, if the institution --

(A) Is participating in the FFEL or Direct Loan programs for the first time; or

(B) Is an institution that has undergone a change of ownership that results in a change in control and is participating in the FFEL or Direct Loan programs.

(ii) The institution does not have to use an approved default management plan if --

(A) The institution, including its main campus and any branch campus, does not have a cohort default rate in excess of 10 percent; and

(B) The owner of the institution does not own and has not owned any other institution that had a cohort

default rate in excess of 10 percent while that owner owned the institution.

(16) For a proprietary institution, the institution will derive at least 10 percent of its revenues for each fiscal year from sources other than Federal funds, as provided in 34 C.F.R. § 668.28(a), or be subject to sanctions described in 34 C.F.R. § 668.28(c);

(17) The Secretary, guaranty agencies, and lenders as defined in 34 C.F.R. part 682, nationally recognized accrediting agencies, Federal agencies, State agencies recognized under 34 C.F.R. Part 603 for the approval of public postsecondary vocational education, State agencies that legally authorize institutions and branch campuses or other locations of institutions to provide postsecondary education, and State attorneys general have the authority to share with each other any information pertaining to the institution's eligibility for or participation in the Title IV, HEA programs or any information on fraud, abuse, or other violations of law;

(18) It will not knowingly --

(i) Employ in a capacity that involves the administration of the Title IV, HEA programs or the receipt of funds under those programs, an individual who has been:

(A) Convicted of, or has pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds;

(B) Administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(C) An owner, director, officer, or employee who exercised substantial control over an institution, or a direct or indirect parent entity of an institution, that owes a liability for a violation of a title IV, HEA program requirement and is not making payments in accordance with an agreement to repay that liability; or

(D) A ten-percent-or-higher equity owner, director, officer, principal, executive, or contractor at an institution in any year in which the institution incurred a loss of Federal funds in excess of 5 percent of the participating institution's annual title IV, HEA program funds; or

(ii) Contract with any institution, third-party servicer, individual, agency, or organization that has, or whose owners, officers or employees have--

(A) Been convicted of, or pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds;

(B) Been administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(C) Had its participation in the title IV programs terminated, certification revoked, or application for certification or recertification for participation in the title IV programs denied;

(D) Been an owner, director, officer, or employee who exercised substantial control over an institution, or a direct or indirect parent entity of an institution, that owes a liability for a violation of a title IV, HEA program requirement and is not making payments in accordance with an agreement to repay that liability; or

(E) Been a 10 percent-or-higher equity owner, director, officer, principal, executive, or contractor affiliated with another institution in any year in which the other institution incurred a loss of Federal funds in excess of 5 percent of the participating institution's annual title IV, HEA program funds;

(19) It will complete, in a timely manner and to the satisfaction of the Secretary, surveys conducted as a part of the Integrated Postsecondary Education Data System (IPEDS) or any other Federal collection effort, as designated by the Secretary, regarding data on postsecondary institutions;

(20) In the case of an institution that is co-educational and has an intercollegiate athletic program, it will comply with the provisions of 34 C.F.R. § 668.48;

(21) It will not impose any penalty, including, but not limited to, the assessment of late fees, the denial of access to classes, libraries, or other institutional facilities, or the requirement that the student borrow additional funds for which interest or other charges are assessed, on any student because of the student's inability to meet his or her financial obligations to the institution as a result of the delayed disbursement of the proceeds of a Title IV, HEA program loan due to compliance with statutory and regulatory requirements of or applicable to the Title IV, HEA programs, or delays attributable to the institution;

(22) (i) It will not provide any commission, bonus, or other incentive payment based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid, to any person or entity who is engaged in any student recruitment or admission activity, or in making decisions regarding the award of Title IV, HEA program funds.(A) The restrictions in paragraph (b)(22) of this section do not apply to the recruitment of foreign students residing in foreign countries who are not eligible to receive Federal student

XXXXXX00 - ABC Institution, PPA Expiration Date: Month, Date, Year

assistance.

(B) For the purpose of paragraph (b)(22) of this section, an employee who receives multiple adjustments to compensation in a calendar year and is engaged in any student enrollment or admission activity or in making decisions regarding the award of Title IV, HEA program funds is considered to have received such adjustments based upon success in securing enrollments or the award of financial aid if those adjustments create compensation that is based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid.

(ii) Notwithstanding paragraph (b)(22)(i) of this section, eligible institutions, organizations that are contractors to eligible institutions, and other entities may make—

(A) Merit-based adjustments to employee compensation provided that such adjustments are not based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid; and

(B) Profit-sharing payments so long as such payments are not provided to any person or entity engaged in student recruitment or admission activity or in making decisions regarding the award of Title IV, HEA program funds.

(iii) As used in paragraph (b)(22) of this section,

(A) *Commission, bonus, or other incentive payment* means a sum of money or something of value, other than a fixed salary or wages, paid to or given to a person or an entity for services rendered.

(B) *Securing enrollments or the award of financial aid* means activities that a person or entity engages in at any point in time through completion of an educational program for the purpose of the admission or matriculation of students for any period of time or the award of financial aid to students.

(1) These activities include contact in any form with a prospective student, such as, but not limited to—contact through preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution, attendance at such an appointment, or involvement in a prospective student's signing of an enrollment agreement or financial aid application.

(2) These activities do not include making a payment to a third party for the provision of student contact information for prospective students provided that such payment is not based on—

(i) Any additional conduct or action by the third party or the prospective students, such as participation in preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution or attendance at such an appointment, or the signing, or being involved in the signing, of a prospective student's enrollment agreement or financial aid application; or

(ii) The number of students (calculated at any point in time of an educational program) who apply for enrollment, are awarded financial aid, or are enrolled for any period of time, including through completion of an educational program.

(C) *Entity or person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid* means—

(1) With respect to an entity engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any institution or organization that undertakes the recruiting or the admitting of students or that makes decisions about and awards Title IV, HEA program funds; and

(2) With respect to a person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any employee who undertakes recruiting or admitting of students or who makes decisions about and awards Title IV, HEA program funds, and any higher level employee with responsibility for recruitment or admission of students, or making decisions about awarding Title IV, HEA program funds.

(D) *Enrollment* means the admission or matriculation of a student into an eligible institution.

(23) It will meet the requirements established pursuant to Part H of Title IV of the HEA by the Secretary and nationally recognized accrediting agencies;

(24) It will comply with the requirements of 34 C.F.R. § 668.22;

(25) It is liable for all--

(i) Improperly spent or unspent funds received under the Title IV, HEA programs, including any funds administered by a third-party servicer; and

(ii) Returns of Title IV, HEA program funds that the institution or its servicer may be required to make;

(26) If an educational program offered by the institution on or after July 1, 2024, is required to prepare a student for gainful employment in a recognized occupation, the institution must—

(i) Establish the need for the training for the student to obtain employment in the recognized occupation for which the program prepares the student; and

(ii) Demonstrate a reasonable relationship between the length of the program and the entry level requirements for the recognized occupation for which the program prepares the student by limiting the number of hours in the program to the greater of—

(A) The required minimum number of clock hours, credit hours, or the equivalent required for training in the recognized occupation for which the program prepares the student, as established by the State in which the institution is located, if the State has established such a requirement or as established by any Federal agency; or

(B) Another State's required minimum number of clock hours, credit hours, or the equivalent required for training in the recognized occupation for which the program prepares the student, if the institution documents, with substantiation by a certified public accountant who prepares the institution's compliance audit report as required under §668.23 that—

(1) A majority of students resided in that State while enrolled in the program during the most recently completed award year;

(2) A majority of students who completed the program in the most recently completed award year were employed in that State; or

(3) The other State is part of the same metropolitan statistical area as the institution's home State and a majority of students, upon enrollment in the program during the most recently completed award year, stated in writing that they intended to work in that other State; and

(iii) Notwithstanding paragraph (a)(26)(ii) of this section, the program length limitation does not apply for occupations where the State entry level requirements include the completion of an associate or higher-level degree; or where the program is delivered entirely through distance education or correspondence courses;

(27) In the case of an institution participating in a Title IV, HEA loan program, the institution -- (i) Will develop, publish, administer, and enforce a code of conduct with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs in accordance with 34 C.F.R. § 601.21; and (ii) Must inform its officers, employees, and agents with responsibilities with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs annually of the provisions of the code required under paragraph (b)(27) of this section;

(28) For any year in which the institution has a preferred lender arrangement (as defined in 34 C.F.R. § 601.2(b)), it will at least annually compile, maintain, and make available for students attending the institution, and the families of such students, a list in print or other medium, of the specific lenders for loans made, insured, or guaranteed under Title IV of the HEA or private education loans that the institution recommends, promotes, or endorses in accordance with such preferred lender arrangement. In making such a list, the institution must comply with the requirements in 34 C.F.R. § 682.212(h) and 34 C.F.R. § 601.10;

(29) (i) It will, upon the request of an enrolled or admitted student who is an applicant for a private education loan (as defined in 34 C.F.R. § 601.2(b)), provide to the applicant the self-certification form required under 34 C.F.R. § 601.11(d) and the information required to complete the form, to the extent the institution possesses such information, including -- (A) The applicant's cost of attendance at the institution, as determined by the institution under part F of Title IV of the HEA;

(B) The applicant's estimated financial assistance, including amounts of financial assistance used to replace the expected family contribution as determined by the institution in accordance with Title IV, for students who have completed the Free Application for Federal Student Aid; and (C) The difference between the amounts under paragraphs (b)(29)(i)(A) and (29)(i)(B) of this section, as applicable. (ii) It will, upon the request of the applicant, discuss with the applicant the availability of Federal, State, and institutional student financial aid;

(30) The institution --

(i) Has developed and implemented written plans to effectively combat the unauthorized distribution of copyrighted material by users of the institution's network, without unduly interfering with educational and research use of the network, that include --

(A) The use of one or more technology-based deterrents;

(B) Mechanisms for educating and informing its community about appropriate versus inappropriate use of copyrighted material, including that described in 34 C.F.R. § 668.43(a)(10);

(C) Procedures for handling unauthorized distribution of copyrighted material, including disciplinary procedures; and

(D) Procedures for periodically reviewing the effectiveness of the plans to combat the unauthorized distribution of copyrighted materials by users of the institution's network using relevant assessment criteria. No particular technology measures are favored or required for inclusion in an institution's plans, and each institution retains the authority to determine what its particular plans for compliance with paragraph (b)(30) of this section will be, including those that prohibit content monitoring; and

(ii) Will, in consultation with the chief technology officer or other designated officer of the institution--

(A) Periodically review the legal alternatives for downloading or otherwise acquiring copyrighted material;

(B) Make available the results of the review in paragraph (b)(30)(ii)(A) of this section to its students through a Web site or other means; and

(C) To the extent practicable, offer legal alternatives for downloading or otherwise acquiring copyrighted material, as determined by the institution;

(31) The institution will submit a teach-out plan to its accrediting agency in compliance with 34 C.F.R. § 602.24(c) and the standards of the institution's accrediting agency. The institution will update its teach-out plan upon the occurrence of any of the following events:

(i) The Secretary initiates the limitation, suspension, or termination of the participation of an institution in any Title IV, HEA program under 34 C.F.R. § 600.41 or subpart G of this part or initiates an emergency action under 34 C.F.R. § 668.83.

(ii) The institution's accrediting agency acts to withdraw, terminate, or suspend the accreditation or preaccreditation of the institution.

(iii) The institution's State licensing or authorizing agency revokes the institution's license or legal authorization to provide an educational program.

(iv) The institution intends to close a location that provides 100 percent of at least one program.

(v) The institution otherwise intends to cease operations;

(32) In each State in which: the institution is located; students enrolled by the institution in distance education or correspondence courses are located, as determined at the time of initial enrollment in accordance with 34 CFR 600.9(c)(2); or for the purposes of paragraphs (b)(32)(i) and (ii) of this section, each student who enrolls in a program on or after July 1, 2024, and attests that they intend to seek employment, the institution must determine that each program eligible for title IV, HEA program funds—

(i) Is programmatically accredited if the State or a Federal agency requires such accreditation, including as a condition for employment in the occupation for which the program prepares the student, or is programmatically pre-accredited when programmatic pre-accreditation is sufficient according to the State or Federal agency;

(ii) Satisfies the applicable educational requirements for professional licensure or certification requirements in the State so that a student who enrolls in the program, and seeks employment in that State after completing the program, qualifies to take any licensure or certification exam that is needed for the student to practice or find employment in an occupation that the program prepares students to enter; and

(iii) Complies with all State laws related to closure, including record retention, teach-out plans or agreements, and tuition recovery funds or surety bonds;

(33) It will not withhold official transcripts or take any other negative action against a student related to a balance owed by the student that resulted from an error in the institution's administration of the title IV, HEA programs, or any fraud or misconduct by the institution or its personnel;

(34) Upon request by a student, the institution will provide an official transcript that includes all the credit or clock hours for payment periods—

(i) In which the student received title IV, HEA funds; and

(ii) For which all institutional charges were paid or included in an agreement to pay at the time the request is made; and

(35) It will not maintain policies and procedures to encourage, or that condition institutional aid or other student benefits in a manner that induces, a student to limit the amount of Federal student aid, including Federal loan funds, that the student receives, except that the institution may provide a scholarship on the condition that a student forego borrowing if the amount of the scholarship provided is equal to or greater than the amount of Federal loan funds that the student agrees not to borrow.

(c) In order to participate in any Title IV, HEA program (other than the LEAP and NEISP programs), the institution must certify that it--

(1) Has in operation a drug abuse prevention program that the institution has determined to be accessible to any officer, employee, or student at the institution; and

(2) (i) Has established a campus security policy in accordance with section 485(f) of the HEA; and
(ii) Has complied with the disclosure requirements of 34 C.F.R. § 668.47 as required by section 485(f) of the HEA.

(d) (1) The institution, if located in a State to which section 4(b) of the National Voter Registration Act (42 U.S.C. 1973gg-2(b)) does not apply, will make a good faith effort to distribute a mail voter registration form, requested and received from the State, to each student enrolled in a degree or certificate program and physically in attendance at the institution, and to make those forms widely available to students at the institution.

(2) The institution must request the forms from the State 120 days prior to the deadline for registering to vote within the State. If an institution has not received a sufficient quantity of forms to fulfill this section from the State within 60 days prior to the deadline for registering to vote in the State, the institution is not liable for not meeting the requirements of this section during that election year.

(3) This paragraph applies to elections as defined in Section 301(1) of the Federal Election Campaign Act of 1971 (2 U.S.C. 431(1)), and includes the election for Governor or other chief executive within such State.

...

(h) (1) A program participation agreement becomes effective on the date that the Secretary signs the agreement.

(2) A new program participation agreement supersedes any prior program participation agreement between the Secretary and the institution.

(i) (1) Except as provided in paragraphs (g) and (h) of this section, the Secretary terminates a program participation agreement through the proceedings in subpart G of this part. (2) An institution may terminate a program participation agreement.

(3) If the Secretary or the institution terminates a program participation agreement under paragraph (f) of this section, the Secretary establishes the termination date.

(j) An institution's program participation agreement automatically expires on the date that--

(l) The institution changes ownership that results in a change in control as determined by the Secretary under 34 C.F.R. Part 600; or

(2) The institution's participation ends under the provisions of 34 C.F.R. § 668.26(a)(1), (2), (4), or (7).

(k) An institution's program participation agreement no longer applies to or covers a location of the institution as of the date on which that location ceases to be a part of the participating institution.

## WILLIAM D. FORD FEDERAL DIRECT LOAN PROGRAM

If an institution participates in the William D. Ford Federal Direct Loan (Direct Loan) Program, the institution and its representatives shall comply with, as they become effective, the statute, guidelines, and regulations governing the Title IV, Part D, William D. Ford Federal Direct Loan Program as required by 20 U.S.C. §§ 1087a *et seq.* (Part C) and 34 C.F.R. Part 685.

The institution will:

1. Provide for the establishment and maintenance of a Direct Loan Program at the institution under which the institution will:

    Identify eligible students who seek student financial assistance in accordance with Section 484 of the HEA.

    Estimate the need of students as required under Title IV, Part F of the HEA.

Provide a certification statement of eligibility for students to receive loans that will not exceed the annual or aggregate limits, except the institution may exercise its authority, under exceptional circumstances identified by the Secretary, to refuse to certify a statement that permits a student to receive a loan, or certify a loan amount that is less than the student's determination of need, if the reason for such action is documented and provided in written form to a student.

Establish a schedule for disbursement of loan proceeds to meet the requirements of Section 428G of the HEA.

Reconcile institutional records with receipt and disbursement records on at least a monthly basis.

Provide timely and accurate information to the Secretary concerning 1) the status of students while in attendance, 2) any new information pertaining to student or parent borrowers of which the institution becomes aware after the student leaves the institution, and 3) student eligibility and need for Federal funds under Title IV, Part D of the HEA, at such times and in such manner as prescribed by the Secretary.

2. Comply with requirements established by the Secretary relating to student loan information with respect to the Direct Loan Program.

3. Implement a quality assurance system, as established by the Secretary and developed in consultation with institutions of higher education, to ensure that the institution is complying with program requirements and meeting program objectives.

4. Not charge any fees of any kind, regardless of how they are described, to student or parent borrowers for loan application, or origination activities (if applicable), or the provision and processing of any information necessary for a student or parent to receive a loan under Title IV, Part D of the HEA.

5. Comply with the provisions regarding student claims and disputes of 34 C.F.R. § 685.300(d) (borrower defense claims in an internal dispute process), (e) (class action bans), (f) (pre-dispute arbitration agreements), (g) (submission of arbitral records), (h) (submission of judicial records), and (i) (definitions).

6. Originate loans to eligible students and parents in accordance with the requirements of Title IV, Part D of the HEA and use funds advanced to it solely for that purpose.

7. Provide that the note or evidence of obligation of the loan shall be the property of the Secretary.

8. Comply with other provisions that the Secretary determines are necessary to protect the interests of the United States and to promote the purposes of Title IV, Part D of the HEA.

9. Accept responsibility and financial liability stemming from its failure to perform its functions under this Program Participation Agreement.

10. Accept responsibility and financial liability stemming from losses incurred by the Secretary for repayment of amounts discharged by the Secretary pursuant to 34 C.F.R. §§ 685.206, 685.214, 685.215, 685.216, and 685.222.

## CERTIFICATIONS REQUIRED FROM INSTITUTIONS

The Institution should refer to the regulations cited below. Signature on this Agreement provides for compliance with, as they become effective, the certification requirements under 34 C.F.R. Part 82, "New Restrictions on Lobbying," 34 C.F.R. Part 84, "Governmentwide Requirements for Drug-Free Workplace (Financial Assistance), 2 C.F.R. Part 180, Subpart C, "OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement)," 2 C.F.R. Part 3485, "Nonprocurement Debarment and Suspension," and 34 C.F.R. Part 86, "Drug and Alcohol Abuse Prevention." Breach of any of these certifications constitutes a breach of this Agreement.

# PART CERTIFICATION REGARDING LOBBYING; DRUG-FREE WORKPLACE;
# 1    DEBARMENT, SUSPENSION AND OTHER RESPONSIBILITY MATTERS;
#      AND DRUG AND ALCOHOL ABUSE PREVENTION

### *1. Lobbying*

As required by Section 1352, Title 31 of the U.S. Code, and implemented at 34 C.F.R. Part 82, for persons entering into a Federal contract, grant or cooperative agreement over $100,000, as defined at 34 C.F.R. Part 82, §§ 82.105 and 82.110, the undersigned certifies, to the best of his or her knowledge and belief, that:

(1) No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

(2) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan, or cooperative agreement, the undersigned shall complete and submit Standard Form - LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3) The Institution shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subcontracts, subgrants and contracts under grants, loans, and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

### *2a. Drug-Free Workplace (Grantees Other Than Individuals)*

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart B, for recipients other than individuals, as defined at 34 C.F.R. Part 84, §§ 84.200 through 84.230 - The Institution certifies that it will or will continue to provide a drug-free workplace by:

(a) Publishing a drug-free workplace statement notifying employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in the grantee's

Case 1:25-cv-03272-RC    Document 1-2    Filed 09/18/25    Page 220 of 370

workplace and specifying the actions that will be taken against employees for violation of such prohibition;

(b) Establishing an on-going drug-free awareness program to inform employees about

    (1) The dangers of drug abuse in the workplace;

    (2) The Institution's policy of maintaining a drug-free workplace;

    (3) Any available drug counseling, rehabilitation, and employee assistance programs; and

    (4) The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

(c) Making it a requirement that each employee to be engaged in the performance of the grant be given a copy of the statement required by paragraph (a)

(d) Notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the grant, the employee will -

    (1) Abide by the terms of the statement, and

    (2) Notify the employer in writing if he or she is convicted for a violation of a criminal drug statute occurring in the workplace no more than five calendar days after such conviction;

(e) Notifying the agency, in writing, within 10 calendar days after receiving notice under this subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction. Employers of convicted employees must provide notice, including position title, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant;

(f) Taking one of the following actions, within 30 calendar days of receiving notice under subparagraph (d)(2), with respect to any employee who is so convicted -

    (1)Taking appropriate personnel action against such an employee, up to and including termination, consistent with the requirements of the Rehabilitation Act of 1972, as amended; or

    (2) Requiring such employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency;

(g) Making a good faith effort to continue to maintain a drug-free workplace through implementation of paragraphs (a), (b), (c), (d), (e), and (f).

### *2b. Drug-Free Workplace (Grantees Who Are Individuals)*

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart C, for recipients who are individuals, as defined at 34 C.F.R. Part 84, § 84.300 -

1. As a condition of the grant, the Institution certifies that it will not engage in the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance in conducting any activity related to the award; and

2. If any officer or owner of the Institution is convicted of a criminal drug offense resulting from a violation occurring during the conduct of any award activity, the Institution will report the conviction, in writing, within 10 calendar days of the conviction, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant.

### 3. Debarment, Suspension, and Other Responsibility Matters

As required by Executive Order 12549, Debarment and Suspension, and implemented at 2 C.F.R. Part 180, for prospective participants in primary covered transactions as defined at 2 C.F.R. Part 180, §§ 180.200 and 180.210, the Institution certifies that it and its principals (per 2 C.F.R. § 180.335):

(a) Are not presently debarred, suspended, proposed for debarment, voluntarily excluded, or disqualified;
(b) Have not within a three-year period preceding this application been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction; violation of Federal or State antitrust statutes, including those proscribing price fixing between competitors, allocation of customers between competitors, and bid rigging; commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, receiving stolen property, making false claims, or obstruction of justice; or commission of any other offense indicating a lack of business integrity or business honesty that seriously and directly affects their present responsibility.
(c) Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State, or local) with commission of any of the offenses enumerated in paragraph (b) of this certification; and
(d) Have not within a three-year period preceding this application had one or more public transactions (Federal, State, or local) terminated for cause or default.

### 4. Drug and Alcohol Abuse Prevention

As required by the Drug-Free Schools and Communities Act Amendments of 1989, which added section 1213 to the Higher Education Act, and implemented at 34 C.F.R. Part 86, the undersigned Institution certifies that it has adopted and implemented a drug prevention program for its students and employees that, at a minimum, includes--

1. The annual distribution in writing to each employee, and to each student who is taking one or more classes for any kind of academic credit except for continuing education units, regardless of the length of the student's program of study, of:

   - Standards of conduct that clearly prohibit, at a minimum, the unlawful possession, use, or distribution of illicit drugs and alcohol by students and employees on its property or as part of any of its activities.
   - A description of the applicable legal sanctions under local, State, or Federal law for the unlawful possession or distribution of illicit drugs and alcohol.
   - A description of the health risks associated with the use of illicit drugs and the abuse of alcohol.
   - A description of any drug or alcohol counseling, treatment, or rehabilitation or re-entry programs that are available to employees or students.

   A clear statement that the Institution will impose disciplinary sanctions on students and employees (consistent with local, State, and Federal law), and a description of those sanctions, up to and including expulsion or termination of employment and referral for prosecution, for violation of the standards of conduct. A disciplinary sanction may include the completion of an appropriate rehabilitation program.

2. A biennial review by the Institution of its program to:

Page 13 of 18

- Determine its effectiveness and implement changes to the program if they are needed.
- Ensure that its disciplinary sanctions are consistently enforced.

## PART 2    CERTIFICATION REGARDING DEBARMENT, SUSPENSION, DISQUALIFICATION, AND VOLUNTARY EXCLUSION -- LOWER TIER COVERED TRANSACTIONS

The Institution is to obtain the signatures of Lower Tier Contractors on reproduced copies of the certification below, and retain the signed certification(s) in the Institution's files.

**CERTIFICATION BY LOWER TIER CONTRACTOR**
**(Before Completing Certification, Read Instructions for This Part, below)**

XXXXXX00 - ABC Institution, PPA Expiration Date: Month, Date, Year

(1) The prospective lower tier participant certifies by submission of this proposal that neither it nor its principals are presently debarred, suspended, proposed for debarment, voluntarily excluded, or disqualified from participation in this transaction by any Federal Department or Agency.

(2) Where the prospective lower tier participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

| | |
|---|---|
| Name of Lower Tier Organization | PR/Award Number or Project Name |
| Name of Authorized Representative | Title of Authorized Representative |
| Signature of Authorized Representative | Date |

1. By signing and submitting this proposal, the prospective lower tier participant is providing the certification set out below.

2. The certification in this clause is a material representation of fact upon which reliance was placed when this transaction was entered into. If it is later determined that the prospective lower tier participant knowingly rendered an erroneous certification, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

3. The prospective lower tier participant shall provide immediate written notice to the person to which this proposal is submitted if at any time the prospective lower tier participant learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

4. The terms "covered transaction," "debarred," "suspended," "disqualified," "lower tier covered transaction," "participant," "person," "primary covered transaction," "principal," "proposal," "voluntarily excluded," as used in this clause, have the meanings set out in the Definitions and Coverage sections of rules implementing Executive Order 12549. You may contact the person to whom this proposal is submitted for assistance in obtaining a copy of those regulations.

5. The prospective lower tier participant agrees by submitting this proposal that, should the proposed covered transaction be entered into, it shall not knowingly enter into any lower tier covered transaction with a person who is debarred, suspended, declared ineligible, or voluntarily excluded from participation in this covered transaction, unless authorized by the department or agency with which this transaction originated.

6. The prospective lower tier participant further agrees by submitting this proposal that it will include the clause titled "Certification Regarding Debarment, Suspension, Disqualification, and Voluntary Exclusion--Lower Tier Covered Transactions," without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions.

7. A participant in a covered transaction may rely upon a certification of a prospective participant in a lower tier covered transaction that is not debarred, suspended, disqualified, or voluntarily excluded from the covered transaction, unless it knows that the certification is erroneous. A participant may decide the method and frequency by which it determines the eligibility of its principals. Each participant may, but is not required to, check the Nonprocurement List.

8. Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of a participant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

9. Except for transactions authorized under paragraph 5 of these instructions, if a participant in a covered transaction knowingly enters into a lower tier covered transaction with a person who is suspended, debarred, disqualified, or voluntarily excluded from participation in this transaction, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

XXXXXX00 - ABC Institution, PPA Expiration Date: Month, Date, Year

NOTE: A completed copy of the "Certification Regarding Debarment, Suspension, Disqualification and Voluntary Exclusion--Lower Tier Covered Transactions" form must be retained by the Institution. The original blank certification must be returned with the PPA.

## IN WITNESS WHEREOF

the parties hereto have caused this Agreement to be executed by their duly authorized representatives.

Signature of Institution's Chief
Executive Officer
(CEO)/President/Chancellor: _____    Date: _____

Print Name and Title: _____
_____

For the Secretary: _____    Date: _____
U.S. Department of Education



OMB # 1845-0130
Form Approved
Exp. Date: 01/31/2018

## Third Party Servicer Data Form

1. What is the legal name of this company/organization?

2. Does the company/organization have another name such as a trade name or a d/b/a name, under which the company conducts business?  ☐ Yes   ☐ No

   If yes, please provide the names(s):

3. When did the company/organization begin conducting business as a third party servicer on behalf of Title IV, HEA institutions?

4. What name does the company/organization utilize to file its required annual compliance audit?

5. What is the company's/organization's fiscal year end date?

6. What is the company's/organization's Dun & Bradstreet (DUNS) number?   ☐ N/A

7. Who are the owner/owners of this company/organization?  If you need more space, please use additional space provided on last page of form or attach an additional sheet and include the following for each owner:

   Name:
   Job Title:
   Business Street Address:
   City:
   State and Zip: **Select**
   Telephone Number (including area code xxx-xxx-xxxx):
   Fax Number (including area code xxx-xxx-xxxx):
   E-Mail Address:

For purposes of this form, company/organization refers to an individual or a state, or a private, profit, or non-profit organization that enters into a contract or agreement with an eligible institution to administer any aspect of the institution's participation in the Title IV programs.

8. Who is completing this form?

Name: (include prefix, such as Mr., Ms., Dr.)
Job Title:
Telephone Number: (including area code xxx-xxx-xxxx)
E-Mail Address:

9. Who is the highest ranking officer (CEO/COO/President) of this company/organization?

Name:
Job Title:
Business Street Address:
City:
State and Zip:  Select
Telephone Number: (including area code xxx-xxx-xxxx)
Fax Number:  (including area code xxx-xxx-xxxx)
E-Mail Address:

10. Does this company/organization have a web site (or home page) on the Internet?    ☐ Yes    ☐ No
If yes, list the electronic address (URL):

11. Whom should we contact at this company/organization should we have questions regarding information on this form or need to respond to an institutional inquiry?

Name: (include prefix, such as Mr., Ms., Dr.)
Job Title:
Telephone Number: (including area code xxx-xxx-xxxx)
Fax Number: (including area code xxx-xxx-xxxx)
E-Mail Address:

12. ☐ Check here if this company/organization maintains more than one physical location (mailing address, processing center, etc.) and provide the primary contact person, address, and phone number for each location occupied.  If you need more space, please use additional space provided on last page of form or attach an additional sheet and include the following for each entity:

Name:  (primary contact person, include specific prefix)
Street Address:
City:
State and Zip:    Select
Purpose of Location: (mailing address, processing center, etc.)

For purposes of this form, company/organization refers to an individual or a state, or a private, profit, or non-profit organization that enters into a contract or agreement with an eligible institution to administer any aspect of the institution's participation in the Title IV programs.

13. Identify the ownership structure of this company/organization:

☐ For Profit
    ☐ Corporation – Publicly Traded
    ☐ Corporation – Not Publicly Traded
    ☐ Partnership
    ☐ Sole Proprietorship

☐ Not for Profit
    ☐ State Owned Organization
    ☐ State Affiliated Organization
    ☐ Private, Not For Profit Organization

14. ☐ Check here if this company/organization owns or is owned by an eligible institution of Higher Education (regardless of percentage) and provide the name of the entity, primary contact person, phone number and e-mail below. If you need more space, please use additional space provided on last page of form or attach an additional sheet and include the following for each entity:

Institution/Organization Name:
Name: (primary contact's name, include prefix, such as Mr., Ms., Dr.)
Telephone Number: (including area code xxx-xxx-xxxx)
Fax Number: (including area code xxx-xxx-xxxx)
E-Mail Address:
Description of Relationship with the entity listed above:

15. ☐ Check here if this company/organization owns or is owned by another company/organization (regardless of percentage) and provide the name of the entity, primary contact person, phone number, and e-mail below. If you need more space, please use additional space provided on last page of form or attach an additional sheet and include the following for each entity:

Company/Corporation/Organization Name:
Name: (primary contact's name, include prefix, such as Mr., Ms., Dr.)
Telephone Number: (including area code xxx-xxx-xxxx)
Fax Number: (including area code xxx-xxx-xxxx)
E-Mail Address:
Description of Relationship with the entity listed above:

16. Please indicate the Title IV, HEA services this company/organization performs on behalf of its clients:

☐ Process student financial aid applications, including FAFSA or Pre-FAFSA completion services performed on behalf of an eligible institution
☐ Collect, review, and/or maintain supporting documentation required to process Title IV funds
☐ Determine student eligibility and related activities (R2T4, SAP, Verification, Professional Judgment, Dependency Override, etc.)
☐ Award, certify, originate, and/or disburse Title IV funds
☐ Delivery of Title IV credit balance refunds to students or parents (via cash, check, ACH, debit card, or other means)

For purposes of this form, company/organization refers to an individual or a state, or a private, profit, or non-profit organization that enters into a contract or agreement with an eligible institution to administer any aspect of the institution's participation in the Title IV programs.

☐ Prepare and/or certify request for advance or reimbursement funding
☐ Fiscal reconciliation of Title IV, HEA program accounts
☐ Provide entrance and exit loan counseling, including in person, by mail, or electronically
☐ Federal Perkins Loan servicing
☐ Federal Perkins Loan collections
☐ Financial aid counseling, including assistance provided to students or parents in person, over the phone, or by any electronic means, including operation of call centers
☐ Perform default prevention management functions for Direct Loan, FFEL, and/or Perkins Loan programs, including cohort default analysis, enhanced loan counseling, delinquency assistance, development/implementation of a default management plan, and/or other default prevention outreach activities
☐ Preparation/dissemination of required consumer information disclosures, including general, campus crime, drug and alcohol prevention, graduation rates, placement rates and gainful employment disclosures
☐ Preparation and or submission of required reports including enrollment reporting to NSLDS, IPEDS, Campus Crime and Security, and FISAP reporting
☐ Financial aid consulting, including financial aid staffing, interim management, processing support, and/or development and maintenance of written policies and procedures
☐ Other, please describe:

17. Provide the names and OPE ID numbers for each client for who this company/organization contracts with to perform any aspect of the institution's participation under the Title IV, HEA programs. If you need more space, please use additional space provided on last page of form or attach an additional sheet and include the following for each client:

| OPE ID | Name of College, University, Institution of Higher Education | Service Start Date | Service End Date |
|--------|-------------------------------------------------------------|--------------------|------------------|
|        |                                                             |                    |                  |
|        |                                                             |                    |                  |
|        |                                                             |                    |                  |
|        |                                                             |                    |                  |
|        |                                                             |                    |                  |
|        |                                                             |                    |                  |
|        |                                                             |                    |                  |
|        |                                                             |                    |                  |
|        |                                                             |                    |                  |
|        |                                                             |                    |                  |

For purposes of this form, company/organization refers to an individual or a state, or a private, profit, or non-profit organization that enters into a contract or agreement with an eligible institution to administer any aspect of the institution's participation in the Title IV programs.

| OPE ID | Name of College, University, Institution of Higher Education | Service Start Date | Service End Date |
|--------|--------------------------------------------------------------|--------------------|------------------|
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |

For purposes of this form, company/organization refers to an individual or a state, or a private, profit, or non-profit organization that enters into a contract or agreement with an eligible institution to administer any aspect of the institution's participation in the Title IV programs.

I hereby certify that, to the best of my knowledge and belief, all information in this document is true and correct. I understand that if my company/organization provides false or misleading information, the Department considers this to be a breach of the fiduciary standard of conduct and may terminate the servicer's eligibility to contract with any institution to administer any aspect of an institution's participation in the Title IV, HEA programs. I also understand that I may be subject to a fine of not more than $25,000 or imprisonment of not more than five years, or both, for misinformation that is material to receipt and stewardship of federal student financial aid funds.

**Signature of individual completing this form:**

**Date:**

**Signature of President/CEO/COO:**
**(include prefix, such as Mr., Ms., Dr.)**

**Date:**

**Please attach a copy of this company's organizational chart with employee names and titles of those individuals who serve in a managerial or supervisory role and return this form to:**

> **Third Party Servicer Oversight Group**
> **U.S. Department of Education**
> **Kansas City School Participation Division**
> **1010 Walnut Street; Suite 336**
> **Kansas City, MO 64106**
> **(816) 268-0543**
> **fsapc3rdpartyserviceroversight@ed.gov**

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless such collection displays a valid OMB control number. The valid OMB control number for this information collection is 1845-0130. Public reporting burden for this collection of information is estimated to average 75 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. The obligation to respond to this collection is required to retain the benefit to contract with eligible institutions pursuant to 34 C.F.R. § 668.25. If you have comments or concerns regarding the status of your individual submission of this form, please contact the Third Party Servicer Oversight Group directly at (816) 268-0543 or fsapc3rdpartyserviceroversight@ed.gov

For purposes of this form, company/organization refers to an individual or a state, or a private, profit, or non-profit organization that enters into a contract or agreement with an eligible institution to administer any aspect of the institution's participation in the Title IV programs.

**Additional space for questions:**

**Q1.**

**Q2.**

**Q3.**

**Q4.**

**18.**

| OPE ID | Name of College, University, Institution of Higher Education | Service Start Date | Service End Date |
|--------|--------------------------------------------------------------|--------------------|------------------|
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |
|        |                                                              |                    |                  |

**Additional Clients:** 📌

For purposes of this form, company/organization refers to an individual or a state, or a private, profit, or non-profit organization that enters into a contract or agreement with an eligible institution to administer any aspect of the institution's participation in the Title IV programs.

<div align="center">

**│ SUBMIT │**

</div>

Exhibit 3

# NAVIENT.

Department of Education
Loan Servicing

PO BOX 9635
WILKES-BARRE, PA 18773-9635

JASON LONG
629 LAMONT ST NW
APT 2
WASHINGTON DC 20010-2571

## JASON, we've enclosed a copy of the documents you recently requested.

**We're here to help**
We want to help you manage your account in a way that's convenient for you. If you have any questions about your account or your options, visit us online or give us a call.

Enclosure(s):

Promissory Note

**Account number**
9646961359 - 1

**Date**
01/16/19

**Manage your account online**
Navient.com

**Contact us**
800-722-1300

Monday – Thursday,
8 a.m. – 9 p.m.
Friday, 8 a.m. – 8 p.m. Eastern

Save money with Auto Pay: You may be able to earn an interest rate reduction by enrolling in Auto Pay. To enroll, log in to Navient.com and change your payment settings. Check your online account for benefit eligibility.

Para comunicarse en Español con 'Atención al Cliente', llame gratis al (800) 722-1300, y marque el numero correspondiente.

9646961359105652099

K031          E58934          ED          3576

PUTCNSL
CONSOLIDATION LOAN ORIGINATION HISTORY RECORD          CREATED: 12/14/2015
PAGE: 001
Borrower: ████████     App: 8234210

SECTION 01:  BORROWER INFORMATION

BORROWER SSN: ████             APPLICATION ID: 8234210
BORROWER NAME:  JASON LONG                                DOB: 08/04/1984
ADDRESS: 629 LAMONT ST NW APT 2

CITY/STATE/ZIP: WASHINGTON, DC  20010
HOME PHONE: 202-421-4147 ALT PHONE: 000-000-0000
EMAIL:                          DRIVERS LICENSE:                DL
STATE:

********************************************************************************
******************************************

SECTION 02:  CO-BORROWER INFORMATION

CO-BORROWER: NO

********************************************************************************
******************************************

SECTION 03:  ENDORSER INFORMATION

ENDORSER: NO

********************************************************************************
*************************************

SECTION 04:  CONSOLIDATION LOAN INFORMATION

TOTAL AMOUNT CONSOLIDATED:     $63,942.13  LAST FUNDING DATE: 12/12/2013

AWARD ID: ██████████4G77778101  GROSS:    $21,981.26   REBATE:        $306.00
LOAN TYPE: DIRECT SUBSIDIZED CONSOLIDATION LOAN
PAYMENT PLAN: INCOME CONTINGENT     FORCED ICR: Y  CRC: 201456
BOOKED DATE: 12/06/2013 INTEREST RATE:  5.125%  1st DISB DATE: 12/06/2013
DISB NUM    DISB DATE     GROSS AMT     REBATE AMT    PROM NOTE ID
  001       12/06/2013    $21,981.26      $306.00      11880784

AWARD ID: ██████████4G77778101  GROSS:    $41,960.87   REBATE:        $342.00
LOAN TYPE: DIRECT UNSUBSIDIZED CONSOLIDATION LOAN
PAYMENT PLAN: INCOME CONTINGENT     FORCED ICR: Y  CRC: 201466
BOOKED DATE: 12/06/2013 INTEREST RATE:  5.125%  1st DISB DATE: 12/06/2013

                  CONSOLIDATION LOAN ORIGINATION HISTORY RECORD    CREATED:
12/14/2015        PAGE: 002
Borrower: ████████     App: 8234210

DISB NUM    DISB DATE     GROSS AMT     REBATE AMT    PROM NOTE ID
  001       12/06/2013    $41,960.87      $342.00      11880785

********************************************************************************
*******************************************

SECTION 05:  PROMISSORY NOTE INFORMATION

AWARD ID: ██████████G77778101   DLCS LOAN NUMBER: 25171709
DLCS NOTE ID    NOTE TYPE    MAIL DATE    BORR SIGNED DT    CO-BORR SIGN DT    RECD
DATE
                                          Page 1

| | | | PUTCNSL | |
|---|---|---|---|---|
| 11880784 | PAPER | N/A | 10/08/2013 | |

10/08/2013

AWARD ID: [        ]4G77778101    DLCS LOAN NUMBER: 25171710
DLCS NOTE ID    NOTE TYPE    MAIL DATE    BORR SIGNED DT    CO-BORR SIGN DT    RECD
DATE

| 11880785 | PAPER | N/A | 10/08/2013 | |
|---|---|---|---|---|

10/08/2013

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SECTION 06:   FUNDING HISTORY

NUM DT FUNDED   LENDER ID-NAME                       LOAN TYPE                    AMOUNT
  TYPE 1st DISB   FUND CK#/IDENT LN DISB

001 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L   $
6,196.98 DISB 08/22/2007  FCA             S  01
002 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L   $
3,943.17 DISB 08/22/2006  FCA             S  01
003 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L   $
3,688.47 DISB 08/24/2005  FCA             S  01
004 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L   $
2,923.73 DISB 08/27/2008  FCA             S  01
005 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L   $
2,767.13 DISB 08/23/2004  FCA             S  01
006 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L   $
2,767.13 DISB 02/09/2004  FCA             S  01
007 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  -$
39.74 ADJ  02/09/2004  FCA             S  01
008 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  -$
39.74 ADJ  08/23/2004  FCA             S  01
009 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  -$
39.96 ADJ  08/27/2008  FCA             S  01
010 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  -$
51.86 ADJ  08/22/2006  FCA             S  01
011 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  -$
51.93 ADJ  08/24/2005  FCA             S  01
012 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  -$
82.12 ADJ  08/22/2007  FCA             S  01
013 12/06/2013 33332-SAINT AUGUSTINES COLLEG  F-FEDERAL PERKINS LOANS     $
10,552.90 DISB 09/10/2004  EFT 000387811 U  01
014 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/   $
7,342.71 DISB 08/22/2007  FCA             U  01
015 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/   $
7,251.09 DISB 08/27/2008  FCA             U  01
016 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/   $
6,354.61 DISB 08/27/2008  FCA             U  01
017 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/   $
5,517.18 DISB 02/09/2004  FCA             U  01
018 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/   $
5,284.33 DISB 08/24/2005  FCA             U  01
019 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  -$
60.01 ADJ  02/09/2004  FCA             U  01
020 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  -$
60.16 ADJ  08/24/2005  FCA             U  01
021 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  -$
69.74 ADJ  08/27/2008  FCA             U  01

CONSOLIDATION LOAN ORIGINATION HISTORY RECORD         CREATED:
12/14/2015    PAGE: 003
Borrower: [        ]      App: 8234210

```
                              PUTCNSL
022 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  -$
73.94 ADJ 08/22/2007  FCA          U 01
023 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  -$
78.10 ADJ 08/27/2008  FCA          U 01
```

**********************************************************************
******************************************

SECTION 07:  APPLICATION DATA

```
APPLICATION REC'D DATE: 10/22/2013        SOURCE: PAPER
IN.SCHOOL: NO                             E-SIGNED: NO
LOANS ON.APPLICATION:
NUM DATE ADDED  LENDER                     LOAN TYPE
INCLUDE?    AMOUNT    LVC SENT DATE  LND TYPE
001 10/25/2013  42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA   YES
     $ 50,000.00      10/25/2013    DL
002 10/25/2013  33332-SAINT AUGUSTINES COLLEGE   F-FEDERAL PERKINS LOANS       YES
     $ 7,740.00       10/29/2013    PL
```

**********************************************************************
******************************************

SECTION 08:  LOAN CERTIFICATIONS

```
NUM  DATE CERT   LENDER ID-NAME            LOAN TYPE                      1ST
DISB     INT    TOT PAYOFF   DFLT SATISFIED
001  11/19/2013  33332-SAINT AUGUSTINES COLLEGE  F-FEDERAL PERKINS LOANS
09/10/2004  5.000%  $ 10,525.60  YES    NO
002  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  L-FED DIRECT UNSUB STAFF/FO
08/22/2007  6.800%  $ 7,299.91   NO     NO
003  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  L-FED DIRECT UNSUB STAFF/FO
08/27/2008  6.800%  $ 7,208.69   NO     NO
004  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  L-FED DIRECT UNSUB STAFF/FO
08/27/2008  6.800%  $ 6,317.81   NO     NO
005  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA
08/22/2007  6.800%  $ 6,155.78   NO     NO
006  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  L-FED DIRECT UNSUB STAFF/FO
02/09/2004  2.350%  $ 5,504.38   NO     NO
007  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  L-FED DIRECT UNSUB STAFF/FO
08/24/2005  2.350%  $ 5,271.93   NO     NO
008  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA
08/22/2006  6.800%  $ 3,917.17   NO     NO
009  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA
08/24/2005  2.350%  $ 3,679.67   NO     NO
010  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA
08/27/2008  6.000%  $ 2,906.53   NO     NO
011  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA
02/09/2004  2.350%  $ 2,760.73   NO     NO
012  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA
08/23/2004  2.350%  $ 2,760.73   NO     NO

LOAN CERTIFICATION CONT.
NUM  PRIN AMT    INTEREST AMT  LATE CHARGES  COLL COSTS  ACCOUNT NUMBER
CERT ID    STATUS        GRAD_DATE
001  $7,740.00    $354.75      $10.00      $2,420.85  ▬▬▬▬▬▬
61901641   IN REPAYMENT  05/15/2009
002  $5,847.44    $1,452.47    $0.00       $0.00      ▬▬▬U08G02968001
61312042   IN REPAYMENT  05/08/2009
003  $5,775.34    $1,433.35    $0.00       $0.00      ▬▬▬U09G02968001
61312039   IN REPAYMENT  05/08/2009
004  $5,061.97    $1,255.84    $0.00       $0.0J      ▬▬▬09G02968002
61312034   IN REPAYMENT  05/08/2009
```

Page 3



```
                                          PUTCNSL
005   $5,614.76        $541.02     $0.00         $0.00  ████████8G02968001
61312041   IN REPAYMENT   05/08/2009
006   $5,118.90        $385.48     $0.00         $0.00  ████████04G02968001
61312032   IN REPAYMENT   05/08/2009
007   $4,902.77        $369.16     $0.00         $0.00  ████████06G02968001
61312035   IN REPAYMENT   05/08/2009
008   $3,572.85        $344.32     $0.00         $0.00  ███████7G02968001
61312036   IN REPAYMENT   05/08/2009

           CONSOLIDATION LOAN ORIGINATION HISTORY RECORD      CREATED:
12/14/2015        PAGE: 004
Borrower: 577116319    App: 8234210

009   $3,559.32        $120.35     $0.00         $0.00  ████████06G02968001
61312033   IN REPAYMENT   05/08/2009
010   $2,678.79        $227.74     $0.00         $0.00  ████████09G02968001
61312038   IN REPAYMENT   05/08/2009
011   $2,670.49         $90.24     $0.00         $0.00  ████████04G02968001
61312040   IN REPAYMENT   05/08/2009
012   $2,670.49         $90.24     $0.00         $0.00  ████████05G02968001
61312037   IN REPAYMENT   05/08/2009
```

*****************************************************************************
*****************************************

SECTION 09:  PACKAGE/CORRESPONDENCE HISTORY

```
REQUEST DT     MAILED DT      PACKAGE TYPE NAME
04/05/2010     04/07/2010     LC COMBINED APP/P-NOTE PACKAGE
10/25/2013     10/27/2013     LC ADI PACKAGE
10/25/2013     10/27/2013     LC PERKINS HHS LOANS INCLUDED IN CONSOL.
10/29/2013     10/31/2013     LC VERIFICATION CERTIFICATE
11/21/2013     11/23/2013     LC CAP LOAN STATEMENT PACKAGE
```

*****************************************************************************
*****************************************

SECTION 10:  COMMENT HISTORY

DATE          DESCRIPTION/COMMENTS

10/18/2013    PERSON
              10/18/2013 : Loan Consolidation - FAX - RECV FAXED AUTHORIZATION TO
RELEASE INFORMATION TO DMD
              FINANCIAL SERVICES, INC.


10/25/2013    SCHOOL BATCH DETAIL
              10/25/2013 : Loan Consol. Edit Errors - ██████████


10/31/2013    PERSON
              10/31/2013 : Loan Consolidation - ████████ONG,JASON - BRWR ADVISED
APP IN CERT CE

*****************************************************************************
*****************************************

Page 4

# Direct Loans
United States Federal Direct Loan Program

## Federal Direct Consolidation Loan Verification Certificate

OMB No. 1845-0053
Form Approved
Exp. Date 11/30/2010

The borrower identified in item 3 of this Verification Certificate (certificate) has requested consolidation of his or her education loan(s). The Federal Direct Consolidation Loan Program (Direct Consolidation Loan Program) enables borrowers to apply for a loan to consolidate outstanding education loans pursuant to Title IV of the Higher Education Act of 1965, as amended. Loans that may be consolidated are listed in the instructions on the back of this certificate. This certificate is used to verify the payoff amount of the borrower's outstanding education loan(s) extended for consolidation. As part of the Federal Direct Consolidation Loan Application and Promissory Note, the borrower named in item 3 has authorized your disclosure of information regarding the education loan(s) listed in item 3. Please confirm that the information provided is accurate, complete blank items, and return within 10 business days of the date received to the address given on the back of this certificate.

For information or assistance when completing this certificate, please call the Consolidation Department at 1-800-557-7392.

| (1) Holder-Servicer Information | (2) Institution and Address to which payoff amount should be sent | (3) Borrower Information |
|---|---|---|
| Holder/Servicer is: ☐ Lender (check only one) ☐ Servicer for Lender | (if different from item 1) | |
| Name  SAINT AUGUSTINE'S UNIVERSITY | Name   SAINT AUGUSTINE'S UNIVERSITY | Name   JASON LONG |
| OPE Code  002988300 | OPE Code   002988300 | Social Security |
| Street  PERKINS LOAN SPECIALIST 1315 OAKW 27461 | Street   PERKINS LOAN SPECIALIST 1315 OAKWOOD AVE PO BOX 27461 | Street   619 LAMONT ST NW APT 2 |
| City, State, Zip Code   RALEIGH NC 27610-274. | City, State, Zip Code    RALEIGH NC 27610-2247 | City, State, Zip Code   WASHINGTON DC 20010 |
| Area Code/Telephone #   919-516-4358 | Area Code/Telephone #   919-516-4358 | Area Code/Telephone #   202-907-5339 |
| Area Code/Fax #   919-516-5909 | Area Code/Fax #   0 | |
| (4) Certification Date   11/11/2013 | Contact's Name     Brenda Stokes | |

See the reverse side for instructions.

| Acct ID (5) Account Number | (6) Loan Type | (7) Interest Rate (%) | (8) Principal Balance Outstanding | (9) Interest through Certification Date (item 4) | (10) Fees and Late Charges | (11) Collection Costs | (12) Total Due | (14) First/Only Disbursement Date (mm-dd-yyyy) | (15) Completion Date | (16) Grade Level Loan Code |
|---|---|---|---|---|---|---|---|---|---|---|
| #1 | P | 5.000 | 7,740.00 | 354.75 | 10.00 | 2,420.85 | 10,525.60 | 09/10/2004 | 05/15/2008 | DN |
| #2 | | | | | | | | | | |
| #3 | | | | | | | | | | |
| #4 | | | | | | | | | | |
| #5 | | | | | | | | | | |
| #6 | | | | | | | | | | |
| | | | | | (13) Total Payoff Amount | | 10,525.60 | | | |

## (17) Additional Comments

(18) Holder/Servicer Certification: I certify that (1) To the best of my knowledge and belief, the information on this certificate is accurate and complete; (2) Each loan identified above is a legal, valid, and binding obligation of the borrower; (3) Each such loan was made and serviced in compliance with all applicable laws and regulations; and (4) In the case of Federal Stafford Loans (subsidized and unsubsidized (GSL)), Federal PLUS Loans, Federal Supplemental Loans for Students (SLS) (and Auxiliary Loans to Assist Students (ALAS)), and Federal Insured Student Loans (FISL), the insurance on each such loan is in full force and effect. The loan amount(s) confirmed includes the amount(s) necessary to discharge the loan(s). This certificate will be relied on by the U.S. Department of Education in paying off the listed loan(s).

Signature of Authorized Official: _Brenda Stokes_

Name and Title of Authorized Official (Please Print): Brenda Stokes

SAINT AUGUSTINE'S UNIVERSITY
Holder/Servicer Name

919-516-4358
Area Code/Telephone Number

November 11, 2013
Date (mm-dd-yyyy)

RECEIVED NOV 1 2 2013

# Direct Loans

**Federal Direct Consolidation Loan Verification Certificate**

OMB No. 1845-0053
Form Approved
Exp. Date 11/30/2020

D3

10/29/2013

For information or assistance when completing this certificate, please call the Consolidation Department at 1-800-557-7392.

**Application Receipt Date:** 10/22/2013

(1) Holder/Servicer Information    **0000033332**    (2) Institution and Address to which payoff amount should be sent (if different from item 1)    (3) Borrower Information    **000008234210007**

Holder/Servicer is:    □ Lender    □ Guarantor
(check only one)    □ Servicer for Lender    □ Servicer for Guarantor

| Holder/Servicer | Institution | Borrower |
|---|---|---|
| Name: SAINT AUGUSTINES COLLEGE | Name: | Name: JASON LONG |
| OPE Code: 002985 | OPE Code: | Social Security #: |
| Street 1: PO BOX 27481 | Street 1: | Street 1: 629 LAMONT ST NW |
| Street 2: ATTN: DIR OF COLLECTIONS | Street 2: | Street 2: APT 2 |
| City, State, Zip Code: RALEIGH NC 27611 | City, State, Zip Code: | City, State, Zip Code: WASHINGTON DC 20010 |
| Area Code/Telephone #: (919)516-4166 | Area Code/Telephone #: | Area Code/Telephone #: (202)903-0052 |
| Area Code/Fax #: (000)000-0000 | Area Code/Fax #: | |
| | Contacts Name: | |

(4) Certification Date (mm-dd-yyyy)
See the reverse side for instructions.

| Acct ID | (5) Account Number | (6) Loan Type | (7) Interest Rate (%) | (8) Principal Balance Outstanding | (9) Interest through Certification Date (item 4) | (10) Fees and Late Charges | (11) Collection Costs | (12) Total Due | (13) First/Only Disbursement Date (mm-dd-yyyy) | (14) Completion Date | (15) Loan Status Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 01 | | | | | | | | | | | |
| 02 | | | | | | | | | | | |
| 03 | | | | | | | | | | | |
| 04 | | | | | | | | | | | |
| 05 | | | | | | | | | | | |
| 06 | | | | | | | | | | | |

(16) Total Payoff Amount

(17) Additional Comments

(18) Holder/Servicer Certification: I certify that: (1) To the best of my knowledge and belief, the information on this certificate is accurate and complete; (2) Each loan identified above is a legal, valid, and binding obligation of the borrower; (3) Each such loan was made and serviced in compliance with all applicable laws and regulations; and (4) in the case of Federal Stafford Loans (subsidized and unsubsidized (USA)), Federal PLUS Loans, Federal Supplemental Loans for Students (SLS) (and Auxiliary Loans to Assist Students (ALAS)), and Federal Insured Student Loans (FISL), the insurance on each such loan is in full force and effect. The loan amount(s) certified include the amount(s) necessary to discharge the loan(s). This certificate will be relied on by the U.S. Department of Education in paying off the listed loan(s).

| Signature of Authorized Official | Holder/Servicer Name | Date (mm-dd-yyyy) |
|---|---|---|
| Name and Title of Authorized Official (Please Print) | Area Code/Telephone Number | 23366326 |

VCT114
0

RECEIVED NOV 1 2 2013

11/11/2013 MON 14:29 FAX    @009/009

[OCT 2 2 2013]

# Direct Loans

## Federal Direct Consolidation Loan
## Application and Promissory Note

WARNING: Any person who knowingly makes a false statement or misrepresentation on this form or any accompanying documentation is subject to penalties that may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

| 1. Last Name: | First Name | Middle Initial | 2. Social Security Number |
| --- | --- | --- | --- |
| Long | Jason | | |

| 3. Permanent Address (if P.O. box or general delivery, see instructions) | 4. Area Code/Telephone Number |
| --- | --- |
| 629 Lamont Street NW  Apt. 2 | ( 202 ) 503 - 0052 |

| Washington | DC | 20010 | 5. E-Mail Address (Optional) |
| --- | --- | --- | --- |
| City | State | Zip Code | |

| 6. Former Name(s) | 7. Date of Birth (mm-dd-yyyy) | Driver's License State and Number |
| --- | --- | --- |
| | | State —        Number        N/A |

| 8. Employer's Name   Unemployed |
| --- |

| 10. Employer's Address |
| --- |

| 11. Work Area Code/Telephone Number | City | State | Zip Code |
| --- | --- | --- | --- |
| ( ) | | | |

12. References: List two persons with different U.S. addresses who do not live with you and who have known you for at least three years.

| Name | Rosewell Coleman | Charles Montant |
| --- | --- | --- |
| Permanent Address | 1718 5th Street NW | 29 Rexroth Circle SE Unit C |
| City, State, Zip Code | Washington, DC 20001 | Washington, DC 20019 |
| E-Mail Address (optional) | | |
| Area Code/Telephone Number | ( 202 ) 573 - 2853 | ( 202 ) 270 - 3543 |
| Relationship to Borrower | Friend | Friend |

| 13. Loan Code (See Instructions) | 14. Loan Holder/Servicer Name, Address, and Area Code/Telephone Number (See Instructions) | 15. Loan Account Number | 16. Estimated Payoff Amount |
| --- | --- | --- | --- |
| F | Saint Augustine's University  P. O. Box 27481 Raleigh, NC 27611  919-516-4356 | | $ 10,271.63 |
| D | Direct Loans Servicing Center  P. O. Box 4609 Utica, NY 13504  800-848-0979 | | $ 50,000.00 |

Submit pages 1, 2, and 3
Page 1 of 8

# Direct Loans

**Federal Direct Consolidation Loan Verification Certificate**

D3

OMB No. 1845-0053
Form Approved
Exp. Date 11/30/2013

10/28/2013

For information or assistance when completing this certificate, please call the Consolidation Department at 1-800-557-7392.

**Application Receipt Date:** 10/22/2013

| (1) Holder/Servicer Information | 0000033332 | (2) Institution and Address to where payoff account should be sent (if different from item 1) | (3) Borrower Information | 000008234210007 |
|---|---|---|---|---|

**Holder/Servicer is:** (check only one)
☐ Lender   ☐ Guarantor
☐ Servicer for Lender   ☐ Servicer for Guarantor

| Field | Holder/Servicer | Payoff (item 2) | Borrower |
|---|---|---|---|
| Name | SAINT AUGUSTINE'S COLLEGE | | JASON LONG |
| OPE Code | 002988 | | Social Security # |
| Street 1 | PO BOX 27401 | | 629 LAMONT ST NW |
| Street 2 | ATTN: DIR OF COLLECTIONS | | APT 2 |
| City, State, Zip Code | RALEIGH   NC   27611 | | WASHINGTON DC   20010 |
| Area Code/Telephone # | (919)516-4165 | | (202)333-0052 |
| Area Code/Fax # | (000)000-0000 | | |

(4) Certification Code (see 45-7777) _____

See the reverse side for instructions.

| Acct ID | (5) Account Number | (6) Loan Type | (7) Interest Rate (%) | (8) Principal Balance Outstanding | (9) Interest Benefit Certified to Date (item 4) | (10) Proposed Loan Charges | (11) Collection Costs | (12) Total Due | (13) Final/Only Disbursement Date (item 45-7773) | (14) Completion Date | (15) Late Issues Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| A1 | | | | | | | | | | | |
| A2 | | | | | | | | | | | |
| A3 | | | | | | | | | | | |
| A4 | | | | | | | | | | | |
| A5 | | | | | | | | | | | |
| A6 | | | | | | | | | | | |

(15) Total Payoff Amount

(17) Additional Comments

(16) Holder/Servicer Certification: I certify that: (1) To the best of my knowledge and belief, the information on this certificate is accurate and complete; (2) Each loan identified above is a legal, valid, and binding obligation of the borrower; (3) Each such loan was made and serviced in compliance with all applicable laws and regulations; and (4) In the case of Federal Stafford Loans (subsidized and unsubsidized (FFEL)), Federal PLUS Loans, Federal Supplemental Loans for Students (SLS) (and Auxiliary Loans to Assist Students (ALAS)), and Federal Insured Student Loans (FISL), the insurance on each such loan is in full force and effect. The loan amount(s) contained includes the amount(s) necessary to discharge the loan(s). This certificate will be relied on by the U.S. Department of Education in paying off the listed loan(s).

| Signature of Authorized Official | Holder/Servicer Name | Date (see 45-7777) |
|---|---|---|
| | | |
| Name and Title of Authorized Official (Please Print) | Area Code/Telephone Number | 23388328 |

VCT114

**RECEIVED NOV 1 2 2013**

11/21/2013   NOV 14:28   FAX

[0009/009]

# Direct Loans

### Federal Direct Consolidation Loan Verification Certificate

For information or assistance when completing this certificate, please call the Consolidation Department at 1-800-557-7392.

| (1) Holder-Servicer Information Holder/Servicer is: (check only one) ☐ Lender ☐ Servicer for Lender | (2) Institution and Address to which payoff amount should be sent (if different from Item 1) | (3) Borrower Information |
|---|---|---|
| Name SAINT AUGUSTINE'S UNIVERSITY | Name SAINT AUGUSTINE'S UNIVERSITY | Name JASON LONG |
| OPE Code 00200009 | OPE Code 00200009 | Social Security |
| Street PERKINS LOAN SPECIALIST 1315 OAKWE 27481 | Street PERKINS LOAN SPECIAL ST 1315 OAKWOOD AVE PO BOX 22411 | Street 570 LAMONT ST NW APT 2 |
| City, State, Zip Code RALEIGH NC 27810-224 | City, State, Zip Code RALEIGH NC 27610-2547 | City, State, Zip Code WASHINGTON DC 20010 |
| Area Code/Telephone # 919-510-6320 | Area Code/Telephone # 919-630-5376 | Area Code/Telephone # 202-907-5399 |
| Area Code/Fax # 919-515-5520 | Area Code/Fax # | |
| (4) Certification Date 11/12/2013 | Contacts Name Brenda Stokes | |

| (5) Acct. # | (6) Account Number | (8) Loan Type | (7) Imputed Rate (%) | (9) Factored Outstanding | (10) Interest through Compilation Date (Line Q) | (11) Accrued Int. Charges | (11) Collection Costs | (12) Total Due | (14) Pool/Orig Disbursement Date (mm-dd-yyyy) | (15) Compilation Date | (16) ... Loan Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| #1 | | P | 5.000 | 7,740.00 | 354.73 | 10.00 | 2,420.85 | 10,525.60 | 09/10/2004 | 05/15/2009 | DN |
| #2 | | | | | | | | | | | |
| #3 | | | | | | | | | | | |
| #4 | | | | | | | | | | | |
| #5 | | | | | | | | | | | |
| #6 | | | | | | | | | | | |

(13) Total Payoff Amount  10,525.60

(17) Additional Comments

(18) Holder/Servicer Certification. I certify that: (1) To the best of my knowledge and belief, the information on this certificate is accurate and complete; (2) Each loan identified above is a legal, valid, and binding obligation of the borrower; (3) Each such loan was made and serviced in compliance with all applicable laws and regulations; and (4) In the case of Federal Stafford Loans (subsidized and unsubsidized (GSL)), Federal PLUS Loans, Federal Supplemental Loans for Students (SLS) and Auxiliary Loans to Assist Students (ALAS), and Federal Insured Student Loans (FISL), the insurance on each such loan is in full force and effect. The loan amount(s) confirmed includes the amount(s) necessary to discharge the loan(s). This certificate will be relied on by the U.S. Department of Education in paying off the listed loan(s).

_Brenda Stokes_
Signature of Authorized Official

Brenda Stokes
Name and Title of Authorized Official (Please Print)

SAINT AUGUSTINE'S UNIVERSITY
Holder/Servicer Name

919-516-4359
Area Code/Telephone Number

November 11, 2013
Date

RECEIVED NOV 1 2 2013

PUTONSL

CONSOLIDATION LOAN ORIGINATION HISTORY RECORD          CREATED: 12/14/2015

PAGE: 001
Borrower:                    App: 8234210

**SECTION 01: BORROWER INFORMATION**

APPLICATION ID: 8234210
BORROWER SSN:
BORROWER NAME: JASON LONG
ADDRESS: 629 LAMONT ST NW APT 2                DOB: 08/04/1984
CITY/STATE/ZIP: WASHINGTON, DC 20010
HOME PHONE: 202-421-4147 ALT PHONE: 000-000-0000
DRIVERS LICENSE:                DL
EMAIL:
STATE:

**SECTION 02: CO-BORROWER INFORMATION**

CO-BORROWER: NO

**SECTION 03: ENDORSER INFORMATION**

ENDORSER: NO

**SECTION 04: CONSOLIDATION LOAN INFORMATION**

TOTAL AMOUNT CONSOLIDATED:   $63,942.13   LAST FUNDING DATE: 12/12/2013

AWARD ID:          4G777B101   GROSS: $21,981.26        REBATE: $306.00
LOAN TYPE: DIRECT SUBSIDIZED CONSOLIDATION LOAN
PAYMENT PLAN: INCOME CONTINGENT     FORCED ICR: Y   CRC: 201456
BOOKED DATE: 12/06/2013 INTEREST RATE: 5.125% 1st DISB DATE: 12/06/2013

| DISB NUM | DISB DATE | GROSS AMT | REBATE AMT | FROM NOTE ID |
|---|---|---|---|---|
| 001 | 12/06/2013 | $21,981.26 | $306.00 | 11880784 |

AWARD ID:          4G777B101   GROSS: $41,960.87        REBATE: $342.00
LOAN TYPE: DIRECT UNSUBSIDIZED CONSOLIDATION LOAN
PAYMENT PLAN: INCOME CONTINGENT     FORCED ICR: Y   CRC: 201466
BOOKED DATE: 12/06/2013 INTEREST RATE: 5.125% 1st DISB DATE: 12/06/2013

PAGE: 002                                      CREATED: 12/14/2015
Borrower:                    App: 8234210

| DISB NUM | DISB DATE | GROSS AMT | REBATE AMT | FROM NOTE ID |
|---|---|---|---|---|
| 001 | 12/06/2013 | $41,960.87 | $342.00 | 11880785 |

**SECTION 05: PROMISSORY NOTE INFORMATION**

AWARD ID:          DLCS LOAN NUMBER: 2517170?
| DLCS NOTE ID | NOTE TYPE | BORR SIGNED DT | CO-BORR SIGN DT | RECD DATE | MAIL DATE |
|---|---|---|---|---|---|

Page 1

```
                                    PUTCNSL
11880784      PAPER          N/A     10/08/2013
10/08/2013

AWARD ID:         4G77778101    DLCS LOAN NUMBER: 25171710
DLCS NOTE ID   NOTE TYPE   MAIL DATE   BORR SIGNED DT   CO-BORR SIGN DT   RECD
DATE
11880785      PAPER          N/A     10/08/2013
10/08/2013
```

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SECTION 06:  FUNDING HISTORY

```
NUM DT FUNDED  LENDER ID-NAME                 LOAN TYPE              AMOUNT
 TYPE 1st DISB   FUND CK#/IDENT LN DISB
001 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  $
6,196.98 DISB 08/22/2007  FCA          S 01
002 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  $
3,943.17 DISB 08/22/2006  FCA          S 01
003 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  $
3,688.47 DISB 08/24/2005  FCA          S 01
004 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  $
2,923.73 DISB 08/27/2008  FCA          S 01
005 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  $
2,767.13 DISB 08/23/2004  FCA          S 01
006 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  $
2,767.13 DISB 02/09/2004  FCA          S 01
007 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  -$
39.74 ADJ  02/09/2004  FCA          S 01
008 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  -$
39.74 ADJ  08/23/2004  FCA          S 01
009 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  -$
39.96 ADJ  08/27/2008  FCA          S 01
010 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  -$
51.86 ADJ  08/22/2006  FCA          S 01
011 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  -$
51.93 ADJ  08/24/2005  FCA          S 01
012 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  -$
82.12 ADJ  08/22/2007  FCA          S 01
013 12/06/2013 33332-SAINT AUGUSTINES COLLEG  F-FEDERAL PERKINS LOANS   $
10,552.90 DISB 09/10/2004  EFT 000387811  U 01
014 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  $
7,342.71 DISB 08/22/2007  FCA          U 01
015 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  $
7,251.09 DISB 08/27/2008  FCA          U 01
016 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  $
6,354.61 DISB 08/27/2008  FCA          U 01
017 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  $
5,517.18 DISB 02/09/2004  FCA          U 01
018 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  $
5,284.33 DISB 08/24/2005  FCA          U 01
019 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  -$
60.01 ADJ  02/09/2004  FCA          U 01
020 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  -$
60.16 ADJ  08/24/2005  FCA          U 01
021 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  -$
69.74 ADJ  08/27/2008  FCA          U 01
```

```
        CONSOLIDATION LOAN ORIGINATION HISTORY RECORD      CREATED:
12/14/2015     PAGE: 003
Borrower:            App: 8234210
```

Page 3

```
                                      PUTCNSL
022 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  -$
73.94 ADJ  08/22/2007  FCA            U  01
023 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  -$
78.10 ADJ  08/27/2008  FCA            U  01
```

**********************************************************************************
************************************************

SECTION 07:  APPLICATION DATA

APPLICATION REC'D DATE: 10/22/2013          SOURCE:  PAPER
IN SCHOOL: NO                               E-SIGNED: NO
LOANS ON APPLICATION:
NUM DATE? ADDED  LENDER                      LOAN TYPE
INCLUDE?  AMOUNT     LVC SENT DATE  LND TYPE
001 10/25/2013  42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA    YES
    $ 50,000.00    10/25/2013      DL
002 10/25/2013  33332-SAINT AUGUSTINES COLLEGE   F-FEDERAL PERKINS LOANS        YES
    $ 7,740.00     10/29/2013      PL

**********************************************************************************
************************************************

SECTION 08:  LOAN CERTIFICATIONS

```
NUM  DATE CERT   LENDER ID-NAME                LOAN TYPE                    1ST
DISB     INT     TOT PAYOFF   DFLT SATISFIED
001  11/19/2013  33332-SAINT AUGUSTINES COLLEGE  F-FEDERAL PERKINS LOANS
09/10/2004  5.000%  $ 10,525.60  YES    NO
002  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT L-FED DIRECT UNSUB STAFF/FO
08/22/2007  6.800%  $  7,299.91  NO     NO
003  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT L-FED DIRECT UNSUB STAFF/FO
08/27/2008  6.800%  $  7,208.69  NO     NO
004  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT L-FED DIRECT UNSUB STAFF/FO
08/27/2008  6.800%  $  6,317.81  NO     NO
005  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT D-FED DIRECT STAFF/FORD LOA
08/22/2007  6.800%  $  6,155.78  NO     NO
006  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT L-FED DIRECT UNSUB STAFF/FO
02/09/2004  2.350%  $  5,504.38  NO     NO
007  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT L-FED DIRECT UNSUB STAFF/FO
08/24/2005  2.350%  $  5,271.93  NO     NO
008  10/22/2006  42625-U.S. DEPARTMENT OF EDUCAT D-FED DIRECT STAFF/FORD LOA
08/22/2006  6.800%  $  3,917.17  NO     NO
009  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT D-FED DIRECT STAFF/FORD LOA
08/24/2005  2.350%  $  3,679.67  NO     NO
010  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT D-FED DIRECT STAFF/FORD LOA
08/27/2008  6.000%  $  2,906.53  NO     NO
011  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT D-FED DIRECT STAFF/FORD LOA
02/09/2004  2.350%  $  2,760.73  NO     NO
012  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT D-FED DIRECT STAFF/FORD LOA
08/23/2004  2.350%  $  2,760.73  NO     NO
```

LOAN CERTIFICATION CONT.

```
NUM   PRIN AMT    INTEREST AMT  LATE CHARGES COLL COSTS ACCOUNT NUMBER
CERT ID    STATUS         GRAD_DATE
001  $7,740.00    $354.75       $10.00      $2,420.85  ██████████
61901641   IN REPAYMENT  05/15/2009
002  $5,847.44    $1,452.47     $0.00       $0.00      ██████U08G02966001
61312042   IN REPAYMENT  05/08/2009
003  $5,775.34    $1,433.35     $0.00       $0.00      ██████U09G02968001
61312039   IN REPAYMENT  05/08/2009
004  $5,061.97    $1,255.84     $0.00       $0.0J      ██████9G02968002
61312034   IN REPAYMENT  05/08/2009
```

Page 3

```
                                    PUTCNSL
005   $5,614.76 |    $541.02        $0.00        $0.00  ████████8G02968001
61312041   IN REPAYMENT   05/08/2009
006   $5,118.90 |    $385.48        $0.00        $0.00  ████████04G02968001
61312032   IN REPAYMENT   05/08/2009
00/   $4,902.77 |    $369.16        $0.00        $0.00  ████████06G02968001
61312035   IN REPAYMENT   05/08/2009
008   $3,572.85 |    $344.32        $0.00        $0.00  ████████7G02968001
61312036   IN REPAYMENT   05/08/2009
```

                   CONSOLIDATION LOAN ORIGINATION HISTORY RECORD      CREATED:
12/14/2015    PAGE: 004
Borrower: 577116319    App: 8234210

```
009   $3,559.32 |    $120.35        $0.00        $0.00  ████████96G02968001
61312033   IN REPAYMENT   05/08/2009
010   $2,678.79 |    $227.74        $0.00        $0.00  ████████09G02968001
61312038   IN REPAYMENT   05/08/2009
011   $2,670.49 |     $90.24        $0.00        $0.00  ████████04G02968001
61312040   IN REPAYMENT   05/08/2009
012   $2,670.49 |     $90.24        $0.00        $0.00  ████████05G02968001
61312037   IN REPAYMENT   05/08/2009
```

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SECTION 09:  PACKAGE/CORRESPONDENCE HISTORY

REQUEST DT    MAILED DT    PACKAGE TYPE NAME
04/05/2010    04/07/2010   LC COMBINED APP/P-NOTE PACKAGE
10/25/2013    10/27/2013   LC ADI PACKAGE
10/25/2013    10/27/2013   LC PERKINS HHS LOANS INCLUDED IN CONSOL.
10/29/2013    10/31/2013   LC VERIFICATION CERTIFICATE
11/21/2013    11/23/2013   LC CAP LOAN STATEMENT PACKAGE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

SECTION 10:  COMMENT HISTORY

DATE          DESCRIPTION/COMMENTS

10/18/2013    PERSON
              10/18/2013 : Loan Consolidation - FAX - RECV FAXED AUTHORIZATION TO
RELEASE INFORMATION TO DMD
              FINANCIAL SERVICES, INC.


10/25/2013    SCHOOL BATCH DETAIL
              10/25/2013 : Loan Consol. Edit Errors - ████████


10/31/2013    PERSON
              10/31/2013 : Loan Consolidation - ███████ONG,JASON - BRWR ADVISED
APP IN CERT CE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Page 4

1OCT 22 2013

WBESC_APP2_2014

# Direct Loans

## Federal Direct Consolidation Loan
## Application and Promissory Note

OMB No. 1845-0053
Form Approved
Exp. Date 02/28/2014

WARNING: Any person who knowingly makes a false statement or misrepresentation on this form or any accompanying documentation is subject to penalties that may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

**Before You Begin**

Read the instructions for completing this Federal Direct Consolidation Loan Application and Promissory Note (Note). Print using blue or black ink or type. You must sign and date this form. If you cross out anything and write in new information, put your initials beside the change.

**NOTE: PAGES 1, 2, and 3 OF THIS NOTE MUST BE SUBMITTED FOR YOUR LOAN REQUEST TO BE PROCESSED.**

**Section A: Borrower Information**

| 1. Last Name | First Name | Middle Initial | 2. Social Security Number |
|---|---|---|---|
| Long | Jason | | |

| 3. Permanent Address (if P.O. box or general delivery, see instructions) | 4. Area Code/Telephone Number |
|---|---|
| 629 Lamont Street NW Apt. 2 | ( 202 ) 5 0 3 - 0 0 5 2 |

| City | State | Zip Code |
|---|---|---|
| Washington | DC | 20010 |

5. E-Mail Address (Optional)

| 6. Former Name(s) | 7. Date of Birth (mm-dd-yyyy) | 8. Driver's License State and Number |
|---|---|---|
| | | State —    Number    N/A |

| 9. Employer's Name | Unemployed |
|---|---|

10. Employer's Address

| 11. Work Area Code/Telephone Number | City | State | Zip Code |
|---|---|---|---|
| ( ) | | | |

**Section B: Reference Information**

12. References: List two persons with different U.S. addresses who do not live with you and who have known you for at least three years.

| Name | 1. Roosevelt Coleman | 2. Charles Morrison |
|---|---|---|
| Permanent Address | 1718 5th Street NW | 29 Random Circle SE Unit C |
| City, State, Zip Code | Washington, DC 20001 | Washington, DC 20019 |
| E-Mail Address (optional) | | |
| Area Code/Telephone Number | ( 202 ) 3 7 3 - 2 8 5 3 | ( 202 ) 2 7 0 - 3 5 4 3 |
| Relationship to Borrower | Friend | Friend |

**Section C: Consolidation Loan Indebtedness — Loans You Want to Consolidate (continued on page 2)**

Read the instructions before completing this section. List each federal education loan that you want to consolidate, including any William D. Ford Federal Direct Loan (Direct Loan) Program loans that you want to include in your Direct Consolidation Loan. If you need more space to list additional loans, use the Additional Loan Listing Sheet included with this Note. List each loan separately. Please print. IN THIS SECTION, LIST ONLY LOANS THAT YOU WANT TO CONSOLIDATE.

We will send you a notice before we consolidate your loans. This notice will (1) provide you with information about the loans and payoff amounts that we have verified, and (2) tell you the deadline by which you must notify us if you want to include in your Direct Consolidation Loan, or if you do not want to consolidate one or more of the loans listed in the notice. The notice will include information about loans eligible for consolidation that you listed in this section. It will also include information about additional loans eligible for consolidation that you did not list in this section, if you have additional eligible loans with a holder of a loan that you listed in this section. See the instructions for more information about the notice we will send.

| 13. Loan Code (See Instructions) | 14. Loan Holder/Servicer Name, Address, and Area Code/Telephone Number (See Instructions) | 15. Loan Account Number | 16. Estimated Payoff Amount |
|---|---|---|---|
| F | Saint Augustine's University P. O. Box 27481 Raleigh, NC 27611 919-516-4356 | | $ 10,771.63 |
| D | Direct Loans Servicing Center P. O. Box 4609 Utica, NY 13504 800-848-0979 | | $ 50,000.00 |

Submit pages 1, 2, and 3.
Page 1 of 9

**Ombudsman Case 01661222 [ ref:_00Dt0Gyiq._500t0KNYUT:ref ]**





Federal Student Aid Ombudsman Group <octsrply@ed.gov>
To: jclong2010@yahoo.com <jclong2010@yahoo.com>

Dear Jason Long:

Thank you for contacting the Federal Student Aid (FSA) Ombudsman Group. You raised concerns regarding the validity of your William D. Ford Direct (Direct) Consolidation. You assert that the signature on the Direct Consolidation Application and Promissory Note (PN) is not yours. Based on the information you provided, I was able to research your concerns. My summary follows.

**Role of the Ombudsman Group**

The Ombudsman Group is an independent office within the U. S. Department of Education (ED) and serves as an office of last resort to provide informal impartial assistance to borrowers to help resolve issues pertaining to their federal student loans. While our office does not have the authority to overturn a decision, we take into consideration the concerns, positions, and interests of all affected parties. We do not make binding decisions or testify at formal judicial or administrative hearings. We review the facts of the situation and explore possible resolutions that are in accordance with the federal statute governing FSA.

**Research Result**

I was unable to obtain documentation validating your assertion that you were the victim of identity theft.

**Research**

*Details Regarding the Documentation You Emailed to Our Office*

In the documentation you sent to our office on December 26, 2019, were copies of the first and the third pages of your existing Direct Consolidation Application and PN. This form is labeled "OMB No. 1845-0053 Exp. Date 02/28/2014". You can locate the page numbers at the bottom of each page. These pages are copies of the Consolidation Application and PN U.S. Department of Education (ED) Navient (ED-Navient) received on October 22, 2013, which were signed on October 8, 2013. Loan servicers are only required to keep a copy of the signature page of any borrower's PN; therefore, I have also attached a blank copy of the entire form for your records.

Also, included in the documentation you sent to our office are two separate Repayment Plan Selection forms, labeled "OMB No. 1845-0014 Exp. Date 11/30/2013". As titled, these forms are the forms borrowers may use to select a repayment plan for their Direct Loan Program loans. You may have completed more of these forms aside from the copies you emailed to our office, because any borrower can complete and submit these forms any time they request a change in repayment plans.

The first Repayment Plan Selection form you sent our office a copy of was dated October 8, 2013, which is the same date your Direct Consolidation Application and PN was signed. Based on the date stamp at the top of this Repayment Plan Selection form, ED-Navient received that form on October 22, 2013 - the same date they received your Direct Consolidation Application and PN. Borrowers applying to consolidate their federal student loans often submit Repayment Plan Selection forms along with their Consolidation Application and PNs if they wish to enter into any repayment plan other than the Standard Repayment Plan.

Subsequently, ED-Navient received another repayment plan selection form from you on November 7, 2013, which was dated October 31, 2013. The repayment plans you selected on the second form differ from the plan you selected on the form signed on October 8, 2013, which could be the reason that you submitted a secondary request so shortly after the initial request was submitted. I have attached a blank copy of all three pages of the form for your reference, as well.

Another document that you sent our office a copy of is the "Federal Direct Consolidation Loan Verification Certificates (LVCs)" ED-Navient received from Saint Augustine's University (SAU). As part of the application process for a Direct Consolidation, each loan holder (in this case for your Federal Perkins Loan from SAU, the school itself) listed on a borrower's application must complete a Loan Verification Certificate (LVC) and return it to ED for processing. The federal student loan borrower is not required to complete, sign, or authorize anything on an LVC. Hence, the reason that your signature is not on the LVCs you sent our office copies of. It is unclear as to why ED-Navient received two LVCs from SAU; however, it is likely because one copy is incomplete.

The other documentation you sent our office copies of is some of the pages from your Direct Consolidation Loan Origination History. This is a report that the loan servicer reports on when a consolidation originates. It details the borrower's demographic information, the terms of the new consolidation such as the interest rate of the loan and the original amount of the loan, and it also lists the underlying federal student loans that were included into the consolidation. This information is typically proprietary and confidential to the loan servicer; therefore, if you have any questions pertaining to this document, please address those concerns with ED-Navient directly, as our office does not create, manage, or interpret this data.

*Information I Obtained While Researching Your Concerns*

As stated in the "Results" section, I did not locate any information that would support your claim of identity theft. Attached is a copy of an agreement I obtained, in which it appears you entered into an agreement with the collection agency DMD Financial Services, Inc. (DMD) to assist you with your Direct Consolidation Application and PN. I confirmed that DMD Financial Services was the collection agency assigned to your defaulted Federal Perkins Loan at the time you applied for a Direct Consolidation in October 2013.

In addition, the mailing address on both your DMD Agreement and your Direct Consolidation Application and PN is the same mailing address that you provided our office when you initially contacted us for assistance on September 4, 2018. Since your initial request for assistance, you also confirmed your mailing address of 629 Lamont Street NW #2, Washington, DC 20010, on numerous occasions. This is also the mailing address that is on all of the documentation I reviewed while researching your concerns.

As detailed on the first page of your Direct Consolidation Application and PN in Section C1, it states (in part), "We will send you a notice before we consolidate your loans. This notice will (1) provide you with information about the loans and payoff amounts that we have verified, and (2) tell you the deadline by which you must notify us if you want to cancel the Direct Consolidation Loan, or if you do not want to consolidate one or more of the loans listed in the notice." ED-Navient would have mailed your Loan Disclosure Statement to the address on your Direct Consolidation Application and PN. That disclosure outlined the loans included in your consolidation, the interest rate of the consolidation, and the beginning principal balance of the consolidation. It also gave you the opportunity to cancel the consolidation within the time frame provided if you disagreed with the terms of the loan. ED-Navient did not receive contact from you within the allowable time frame; therefore, the origination process completed.

As mentioned in your November 22, 2019, Identity Theft Discharge Denial letter from FSA (attached), ED-Navient received an Unemployment Deferment Application from you after your Direct Consolidation originated: That application was signed in wet ink. The signature on that application is visibly similar to the wet signature on your Direct Consolidation Application and PN, on both Repayment Plan Selection forms, and the signature on the DMD Agreement I obtained while researching your concerns.

In your November 22, 2019, Identity Theft Discharge Denial letter from FSA, you were advised that if you disagree with the determination made, you may have your claim reconsidered by resubmitting your application to ED-Navient with new, compelling, evidence you would like considered. As we previously discussed, something that FSA would consider as new evidence is a determination from a Professional Handwriting Analyst that concludes the signature on the Direct Consolidation Application and PN is not yours. If you wish to pursue the Identity Theft Discharge, it may be beneficial to you to retain the services of a Handwriting Analyst that is certified to make a determination about the validity of the signature on your Direct Consolidation Application and PN.

If you are not currently repaying your Direct Consolidation, you may consider contacting ED-Navient to make arrangements for repayment, or postponement of payments, to avoid additional adverse credit reporting. Should your Direct Consolidation become 270 days or more delinquent, that shall constitute default on the loan, and if your consolidation defaults it will transfer to ED's loan servicer for defaulted federal student loans, the Default Resolution Group (DRG) for collection. If your Direct Consolidation defaults, you will become responsible for the collection costs DRG adds onto your outstanding principal and interest balance, per the terms and conditions of your PN.

**Next Steps**

If you have any additional concerns, you may contact ED-Navient's escalated department at (888) 545-4199 for additional assistance.

The research on your concern is complete and your case is closed with our office. If you have questions after speaking with ED-Navient, you may call me Monday-Thursday between 8:00 a.m. and 5:00 p.m. Eastern Time at our toll-free number, (877) 557-2575, and leave a message for me with a customer service representative.

Sincerely,


Jessica Hanson
Dispute Specialist

Attachments:   Blank Copy of OMB Form 1845-0053 Exp. Date 02/28/2014
               Blank Copy of OMB Form 1845-0014 Exp. Date 11/30/2013
               DMD Financial Services, Inc. Agreement
               November 22, 2019, Identity Theft Discharge Denial Letter from FSA


*If you would like to respond to this e-mail, please reply directly to the e-mail thread without modifying the Subject line. If the Subject line is modified, the Department may not receive your response or be able to connect your response to your case.*



ref:_00Dt0Gyiq._500t0KNYUT:ref

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

**1 File    1MB**

01661222 Long Closing Email Attachments.zip
1MB

DMD Financial Services                                    3362824256          p.1

44909274 41806244

William D. Ford
Consolidation Department
P. O. Box 242800
Louisville, KY 40224-2800

I, _Jason Long_____ do give DMD Financial Services, Inc. permission to assist me with the status of my consolidation application with W. D. Ford.

Listed below is my current information:

SS# █████████████
Date of Birth _07/04/1984_
Address _627 Lamont Street NW Apt. 2_
_Washington, DC 20010_
Phone# _202 503-0052_

Sincerely,

Signature _Jason O Long_

Date _10/08/2013_

**PERSONAL CONFIDENTIAL**

Insurance Permit# 100796

 Official Servicer of
Federal Student Aid

P.O. Box 300001
Greenville, TX 75403-3001

(800) 722-1300

Jason Long
5112 Macarthur Blvd NW
Washington, DC 20016-3336

December 26, 2023

Account number: 9646961359

## Jason, here are the documents you recently requested.

**We're here to help**
If you have any questions about your account, visit us online at Aidvantage.com or give us a call at 800-722-1300 Monday 8 a.m. to 9 p.m., Tuesday – Wednesday 8 a.m. to 8 p.m., and Thursday – Friday 8 a.m. to 6 p.m., Eastern.

**Enclosure(s):**

Fraud information

**Important disclosure(s)**

K031ED SLF

*Your loan servicer*
Your loans are serviced by Maximus Education, LLC, (NMLS# 2241381)

K031ED SLF

**Promissory Note – continued from page 3**

### Governing Law

The terms of this Federal Direct Consolidation Loan Application and Promissory Note (Note) will be interpreted in accordance with the Higher Education Act of 1965, as amended (20 U.S.C. 1070 et seq.), the U.S. Department of Education's (ED's) regulations, as they may be amended in accordance with their effective date, and other applicable federal laws and regulations (collectively referred to as the "Act"). Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this Note.

### Disclosure of Loan Terms

This Note applies to a Federal Direct Consolidation Loan (Direct Consolidation Loan). Under this Note, the principal amount that I owe and am required to repay will be equal to all sums disbursed to pay off my prior loan obligations, plus any unpaid interest that is capitalized and added to the principal amount.

My Direct Consolidation Loan may have up to two separate loan identification numbers depending on the loans I choose to consolidate. These loan identification numbers will represent prior subsidized loans and prior unsubsidized loans. Each applicable loan identification number is represented by this Note.

When the loans that I am consolidating are paid off, a disclosure statement will be provided to me. The disclosure will identify the amount of my Direct Consolidation Loan, the associated loan identification number(s), and additional terms of the loan, such as the interest rate and repayment schedule. If I have questions about the information disclosed, I may contact my servicer. Important additional information is also contained in the Borrower's Rights and Responsibilities Statement. The Borrower's Rights and Responsibilities Statement and any disclosure I receive in connection with the loan made under this Note are hereby incorporated into this Note.

I understand that ED may use a servicer to handle billing and other communications related to my loan.

### Interest

Interest will be calculated using a formula provided for by the Act. Unless ED notifies me in writing of a lower rate, the interest rate on my Direct Consolidation Loan will be based on the weighted average of the interest rates on the loans being consolidated, rounded to the nearest higher one-eighth of one percent, but will not exceed 8.25%. This is a fixed interest rate, which means that the rate will remain the same throughout the life of the loan.

I agree to pay interest on the principal amount of my Direct Consolidation Loan from the date of disbursement until the loan is paid in full or discharged, except for interest ED does not charge me during a deferment period on the subsidized portion of my Direct Consolidation Loan. ED may add interest that accrues but is not paid when due to the unpaid principal balance of this loan, as provided under the Act. This is called capitalization.

### Late Charges and Collection Costs

ED may collect from me: (1) a late charge of not more than six cents for each dollar of each late payment if I fail to make any part of a required installment payment within 30 days after it becomes due, and (2) any other charges and fees that are permitted by the Act related to the collection of my Direct Consolidation Loan. If I default on my loan, I will pay reasonable collection costs, plus court costs and attorney fees.

### Repayment

I must repay the full amount of the Direct Consolidation Loan made under this Note, plus accrued interest. I will repay my loan in monthly installments during a repayment period that begins on the date of the first disbursement of the loan, unless it is in a deferment or forbearance period. Payments made by me or on my behalf will be applied first to late charges and collection costs that are due, then to interest that has not been paid, and finally to the principal amount of the loan, except during periods of repayment under the Income-Based Repayment (IBR) Plan. Under the IBR Plan, payments will be applied first to interest that is due, then to fees that are due, and then to the principal amount.

ED will provide me with a choice of repayment plans. Information on these plans is included in the Borrower's Rights and Responsibilities Statement. I must select

a repayment plan. If I do not select a repayment plan, ED will choose a plan for me in accordance with the Act.

ED will provide me with a repayment schedule that identifies my payment amounts and due dates. My first payment will be due within 60 days of the first disbursement of my Direct Consolidation Loan unless it is in a deferment or forbearance period. If I am unable to make my scheduled loan payments, ED may allow me to temporarily stop making payments, reduce my payment amount, or extend the time for making payments, as long as I intend to repay my loan. Allowing me to temporarily delay or reduce loan payments is called forbearance.

ED may adjust payment dates on my Direct Consolidation Loan or may grant me forbearance to eliminate a delinquency that remains even though I am making scheduled installment payments.

I may prepay any part of the unpaid balance on my loan at any time without penalty. After I have repaid my Direct Consolidation Loan in full, ED will send me a notice telling me that I have paid off my loan.

### Acceleration and Default

At ED's option, the entire unpaid balance of the Direct Consolidation Loan will become immediately due and payable (this is called "acceleration") if either of the following events occurs: (1) I make a false representation that results in my receiving a loan for which I am not eligible; or (2) I default on the loan.

The following events will constitute a default on my loan: (1) I fail to pay the entire unpaid balance of the loan after ED has exercised its option under the preceding paragraph; (2) I fail to make installment payments when due, provided my failure has persisted for at least 270 days; or (3) I fail to comply with other terms of the loan, and ED reasonably concludes that I no longer intend to honor my repayment obligation. If I default, ED may capitalize all outstanding interest. This will increase the principal balance, and the full amount of the loan, including the new principal balance and collection costs, will become immediately due and payable.

If I default, the default will be reported to national consumer reporting agencies and will significantly and adversely affect my credit rating. I understand that a default will have additional adverse consequences to me as disclosed in the Borrower's Rights and Responsibilities Statement. Following default, I may be required to repay the loan (including potential collection of amounts in excess of the principal and interest) under the Income Contingent Repayment (ICR) Plan or the IBR Plan in accordance with the Act.

### Legal Notices

Any notice required to be given to me will be effective if sent by first class mail to the most recent address that ED has for me, by electronic means to an address I have provided, or by any other method of notification permitted or required by applicable statute or regulation. I will immediately notify ED of a change of contact information or status, as specified in the Borrower's Rights and Responsibilities Statement.

If ED fails to enforce or insist on compliance with any term on this Note, this does not waive any right of ED. No provision of this Note may be modified or waived except in writing by ED. If any provision of this Note is determined to be unenforceable, the remaining provisions will remain in force.

Information about my loan will be submitted to the National Student Loan Data System (NSLDS). Information in NSLDS is accessible to schools, lenders, and guarantors for specific purposes as authorized by ED.

OCT 22 2013

Borrower's Name (please print) Jason Long Social Security Number [redacted]

22. I understand that:

A. [illegible]

B. [illegible]

C. [illegible]

D. [illegible]

E. [illegible]

F. [illegible]

G. [illegible]

H. [illegible]

I. [illegible]

J. [illegible]

K. [illegible]

23. Under penalty of perjury, I certify that:

A. [illegible]

B. [illegible]

C. [illegible]

D. [illegible]

E. [illegible]

F. [illegible]

24. I make the following authorizations:

A. [illegible]

B. [illegible]

C. [illegible]

D. [illegible]

E. [illegible]

F. [illegible]

25. Promise to Pay: [illegible]

[illegible]

[illegible]

[illegible]

I UNDERSTAND THAT THIS IS A LOAN THAT I MUST REPAY.

28. Borrower's Signature Jason Long Today's Date (mm-dd-yyyy) 10/08/2013 10/8/2013

## Borrower's Rights and Responsibilities Statement

*Important Notice:* *This Borrower's Rights and Responsibilities Statement provides additional information about the terms and conditions of the loan you will receive under the accompanying Federal Direct Consolidation Loan (Direct Consolidation Loan) Application and Promissory Note (Note). Please keep a copy of the Note and this Borrower's Rights and Responsibilities Statement for your records.*

*In this document, the words "we," "us," and "our" refer to the U.S. Department of Education.*

**1. The William D. Ford Federal Direct Loan Program.** The William D. Ford Federal Direct Loan (Direct Loan) Program includes the following types of loans, known collectively as "Direct Loans":

- Federal Direct Stafford/Ford Loans (Direct Subsidized Loans)
- Federal Direct Unsubsidized Stafford/Ford Loans (Direct Unsubsidized Loans)
- Federal Direct PLUS Loans (Direct PLUS Loans)
- Federal Direct Consolidation Loans (Direct Consolidation Loans)

The Direct Loan Program is authorized by Title IV, Part D, of the Higher Education Act of 1965, as amended, 20 U.S.C. 1070 *et seq.* (HEA).

Direct Loans are made by the U.S. Department of Education. We contract with servicers to service, answer questions about, and process payments on Direct Loans. We will provide you with the address and telephone number of the servicer for your loan.

**2. Laws** that apply to this Note. The terms and conditions of loans made under this Note are determined by the HEA and other applicable federal laws and regulations. These laws and regulations are referred to as "the Act" throughout this Borrower's Rights and Responsibilities Statement. State law, unless it is preempted by federal law, may provide you with certain rights, remedies, and defenses in addition to those stated in the Note and this Borrower's Rights and Responsibilities Statement.

NOTE: Any change to the Act applies to loans in accordance with the effective date of the change.

**3. Direct Consolidation Loan identification numbers.** Depending on the type(s) of federal education loan(s) that you choose to consolidate, your Direct Consolidation Loan may have up to two individual loan identification numbers. However, you will have only one Direct Consolidation Loan and will receive only one bill.

**3a.** The subsidized portion of your Direct Consolidation Loan ("Direct Subsidized Consolidation Loan") will have one loan identification number representing the amount of the following types of loans that you consolidate:

- Subsidized Federal Stafford Loans
- Direct Subsidized Loans
- Subsidized Federal Consolidation Loans
- Direct Subsidized Consolidation Loans
- Federal Insured Student Loans (FISL)
- Guaranteed Student Loans (GSL)

**3b.** The unsubsidized portion of your Direct Consolidation Loan ("Direct Unsubsidized Consolidation Loan") will have one identification number representing the amount of the following types of loans that you consolidate:

- Unsubsidized and Nonsubsidized Federal Stafford Loans
- Direct Unsubsidized Loans
- Unsubsidized Federal Consolidation Loans
- Direct Unsubsidized Consolidation Loans
- Federal PLUS Loans (for parents or for graduate and professional students)
- Direct PLUS Loans (for parents or for graduate and professional students)
- Direct PLUS Consolidation Loans
- Federal Perkins Loans
- National Direct Student Loans (NDSL)
- National Defense Student Loans (NDSL)
- Federal Supplemental Loans for Students (SLS)
- Parent Loans for Undergraduate Students (PLUS)
- Auxiliary Loans to Assist Students (ALAS)
- Health Professions Student Loans (HPSL)
- Health Education Assistance Loans (HEAL)
- Nursing Student Loans (NSL)
- Loans for Disadvantaged Students (LDS)

**4. Adding eligible loans to your Direct Consolidation Loan.** You may add eligible loans to your Direct Consolidation Loan by submitting a request to us within 180 days of the date your Direct Consolidation Loan is made. (Your Direct Consolidation loan is "made" on the date we pay off the first loan that you are consolidating.) After we pay off any loans that you add during the 180-day period, we will notify you of the new total amount of your Direct Consolidation Loan and of any adjustments that must be made to your monthly payment amount and/or interest rate.

If you want to consolidate any additional eligible loan(s) after the 180-day period, you must apply for a new Direct Consolidation Loan.

**5. Loans that may be consolidated.** *General.* Only the federal education loans listed in Items 3a.and 3b. of this Borrower's Rights and Responsibilities Statement may be consolidated into a Direct Consolidation Loan. You may only consolidate loans that are in a grace period or in repayment (including loans in deferment or forbearance). At least one of the loans that you consolidate must be a Direct Loan Program loan or a Federal Family Education Loan (FFEL) Program loan.

*Defaulted loans.* You may consolidate a loan that is in default if (a) you first make satisfactory repayment arrangements with the holder of the defaulted loan, or (b) you agree to repay your Direct Consolidation Loan under the Income Contingent Repayment (ICR) Plan or the Income-Based Repayment (IBR) Plan (see Item 10).

*Existing consolidation loans.* Generally, you may consolidate an existing Direct Consolidation Loan or Federal Consolidation Loan into a new Direct Consolidation Loan only if you include at least one additional eligible loan in the consolidation. However, you may consolidate a Federal Consolidation Loan into a new Direct Consolidation Loan without including an additional loan if the Federal Consolidation Loan is delinquent and has been submitted by the lender to the guaranty agency for default aversion, or if the Federal Consolidation Loan is in default. In such cases, you agree to repay the new Direct Consolidation Loan under the ICR Plan or the IBR Plan. You may also consolidate a single Federal Consolidation Loan into a new Direct Consolidation Loan to use the Public Service Loan Forgiveness program described in Item 17 of this Borrower's Rights and Responsibilities Statement, or the no accrual of interest benefit for active duty service members described in Item 8.

**6. Information you must report to us.** Until your loan is repaid, you must notify your servicer if you:

- Change your address or telephone number;
- Change your name (for example, maiden name to married name);
- Change your employer or your employer's address or telephone number changes; or
- Have any other change in status that would affect your loan (for example, if you receive a deferment while you are unemployed, but you find a job and therefore no longer meet the eligibility requirements for the deferment)

**7. Interest rate.** The interest rate on your Direct Consolidation Loan will be the lesser of the weighted average of the interest rates on the loans being consolidated, rounded to the nearest higher one-eighth of one percent, OR 8.25%. We will send you a notice that tells you the interest rate on your loan.

The interest rate on a Direct Consolidation Loan is a fixed rate. This means that the interest rate will remain the same throughout the life of your loan.

If you qualify under the Servicemembers Civil Relief Act, the interest rate on your loans obtained prior to military service may be limited to 6% during your military service. To receive this benefit, you must contact your servicer for information about the documentation you must provide to show that you qualify.

**8. Payment of interest.** Except as provided below for borrowers who serve in the military, interest accrues on a Direct Consolidation Loan from the date the loan is made until it is paid in full or discharged, including during periods of deferment or forbearance. You are responsible for paying all interest that accrues, except for interest that accrues on the subsidized portion of a Direct Consolidation Loan ("Direct Subsidized Consolidation Loan" – see Item 3a.) during deferment periods.

If you do not pay the interest as it accrues during the periods described above, we will add the interest to the unpaid principal amount of your loan at the end of the deferment or forbearance period. This is called "capitalization." Capitalization increases the unpaid principal balance of your loan, and interest will then accrue on the increased principal amount.

FILED
CIVIL DIVISION

JUL 2 9 2025

Superior Court of the
District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Jason Christopher Long, | Case No.: 2025- CAB-4846 |
| **Plaintiff,** | |
| vs. | Judge: Tanya Jones Bosier |
| MAXIMUS, INC D/B/A AIDVANTAGE, | **Next Scheduled Remote Hearing:** |
| **Defendant** | **10/24/2025 9:30 AM** |
| | **PLAINTIFF'S MOTION FOR SANCTIONS, CORRECTION OF RECORD, RE-FILING RIGHTS, AND MONETARY COMPENSATION DUE TO CLERICAL MISHANDLING** |

### PLAINTIFF'S MOTION FOR SANCTIONS, CORRECTION OF RECORD, RE-FILING RIGHTS, AND MONETARY COMPENSATION DUE TO CLERICAL MISHANDLING

Plaintiff, Jason Christopher Long, specially appearing Pro Per, respectfully moves this Court for an Order finding the Civil Clerk's Office responsible for ministerial errors in handling, misfiling, and mutilating Plaintiff's documents, and awarding the following relief:

1. Recognition of the original filing date.

2. Correction and replacement of the faulty official record.

3. Leave to re-file original documents once received by mail.

4. Sanctions payable to Plaintiff and monetary compensation for damage and prejudice.

### FACTUAL BACKGROUND

On July 25, 2025, Plaintiff delivered a civil complaint and exhibits to the Clerk's Office in Room 5000 at the Moultrie Courthouse.

The clerk initially refused to file the documents, made undue comments on the substance, then processed the filing after delay.

PLAINTIFF'S MOTION FOR SANCTIONS, CORRECTION OF RECORD, RE-FILING RIGHTS, AND MONETARY COMPENSATION DUE TO CLERICAL MISHANDLING - 1

The official record reflects two missing pages, blurry, illegible material, and all attributable to the clerk's mishandling.

Plaintiff has not yet received the documents in the mail, delaying proper re-filing and causing prejudice, time loss, and inconvenience.

## LEGAL AUTHORITIES

A. D.C. Rule 45(c): Ministerial Duties Only

Superior Court Rule 45(c) requires clerks to accept, docket, and maintain custody of filings without evaluating their substance. Clerks have no legal discretion to reject, alter, or delay filings.

B. Filing Takes Effect Upon Submission — Not Docketing

In Courthouse News Serv. v. Yamasaki, the court ruled that access to the court attaches upon submission, not docketing, and clerks may not impede that access.

C. Relief Available for Clerk Error —In District of Columbia v. Watkins held that clerical omissions or errors that prejudice a party may justify equitable corrective measures, including retroactive recognition of filing date.

D. Monetary Sanctions & Compensation Under Court's Inherent Power

Under Chambers v. NASCO, courts possess inherent authority to sanction misconduct and compensate injured parties when court officers disrupt access to justice District of Columbia case law (e.g., Brooks v. United States) confirms factors courts should consider when assessing sanctions, including reasonableness, deterrence, and harm caused.

Rule 11 of the Superior Court (D.C. Civ. R. 11) authorizes sanctions payable directly to a party when conduct causes unnecessary delay or expense.

## ARGUMENT

1. The clerk acted ultra vires by refusing to file your documents and making legal comments, violating your right and D.C. Rule 45(c).

2. The resulting record is deficient—missing pages, duplicates, blurry—in prejudice to Plaintiff, and supports equitable relief under *Watkins.

3. The clerk's failure caused monetary harm: travel, time, delay, and emotional distress, for which compensation and sanctions are appropriate.

PLAINTIFF'S MOTION FOR SANCTIONS, CORRECTION OF RECORD, RE-FILING RIGHTS, AND MONETARY COMPENSATION DUE TO CLERICAL MISHANDLING - 2

4. Plaintiff has not yet received original documents in the mail, further delaying proper filing.

5. The Court's inherent authority supports ordering correction of the record, recognition of original filing date, leave to refile, sanctions, and compensation.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court:

1. Recognize Plaintiff's original filing date (July 25, 2025) as the effective date of filing;

2. Order correction of the court record, including:

 inclusion of the two missing pages;

removal of blurry or duplicated pages;

insertion of a complete, clean replacement copies once provided;

3. Grant Plaintiff leave to re-file originally submitted documents once they arrive by mail without additional fees or procedural hurdles;

4. Award monetary compensation to Plaintiff for:

 travel expenses,
 time lost,
 any mailing costs,
 emotional or equitable damages caused by delay;

5. Impose sanctions payable to Plaintiff for clerk's misconduct and institutional delay;

6. Admonish Clerk's Office to adhere strictly to ministerial duties as defined by D.C. Rule 45;

7. Grant any additional relief deemed just.

Respectfully submitted,

*Jason Christopher Long*
Jason Christopher Long
Plaintiff, Pro Per
"Without Prejudice"
ALL RIGHTS ARE RESERVED.
July 29, 2025.

PLAINTIFF'S MOTION FOR SANCTIONS, CORRECTION OF RECORD, RE-FILING RIGHTS, AND
MONETARY COMPENSATION DUE TO CLERICAL MISHANDLING - 3

1

## PROPOSED ORDER

2

3    Upon review of Plaintiff's Motion for Sanctions and Compensation, it is hereby:

4    ORDERED that the Motion is GRANTED;

5
     ORDERED that Plaintiff's Complaint and supporting documents in this case shall be treated as
6    improperly filed on July 25, 2025;

7    ORDERED that the Clerk's Office shall promptly:

8
     1. Substitute a clean and complete copy of Plaintiff's Complaint into the official record
9    (incorporating two missing pages and removing duplicates/blurry pages);

10   2. Docket the submission as of the original filing date;

11
     3. Upon receipt of Plaintiff's original documents by mail, accept them for re-filing without
12   additional fees or objections;

13   ORDERED that Plaintiff is awarded monetary compensation for travel, time, mailing costs, and
14   prejudice sustained, the specific amount to be submitted via declaration within 14 days;

15   ORDERED that sanctions payable to Plaintiff are imposed against the Clerk's Office for
     improper and unauthorized handling of filing;
16
     ORDERED that the Clerk's Office shall comply strictly with the ministerial duties under D.C.
17   Super. Ct. Civ. R. 45(c) and refrain from evaluating or rejecting filings based on content.

18   SO, ORDERED.
19
     Dated: July 29, 2025.
20   Washington, D.C.

21

     _____
22   Judge Tanya Jones Bosier

23

24

25

26

27

28   PLAINTIFF'S MOTION FOR SANCTIONS, CORRECTION OF RECORD, RE-FILING RIGHTS, AND
     MONETARY COMPENSATION DUE TO CLERICAL MISHANDLING - 4

EX A. 2 Missing pages from Plaintiff's legal Documents that was filed on July 25, 2025.

# NAVIƎNT.

Department of Education
Loan Servicing

PO BOX 9635
WILKES-BARRE, PA 18773-9635

JASON LONG
629 LAMONT ST NW
APT 2
WASHINGTON DC 20010-2571

## JASON, we've enclosed a copy of the documents you recently requested.

**We're here to help**
We want to help you manage your account in a way that's convenient for you. If you have any questions about your account or your options, visit us online or give us a call.

Enclosure(s):

Promissory Note

**Account number**
9646961359 - 1

**Date**
01/16/19

**Manage your account online**
Navient.com

**Contact us**
800-722-1300

Monday – Thursday,
8 a.m. – 9 p.m.
Friday, 8 a.m. – 8 p.m. Eastern

Save money with Auto Pay: You may be able to earn an interest rate reduction by enrolling in Auto Pay. To enroll, log in to Navient.com and change your payment settings. Check your online account for benefit eligibility.

Para comunicarse en Español con 'Atención al Cliente',
llame gratis al (800) 722-1300, y marque el numero correspondiente.

*9646961359105652099*

OCT 22 2013

Borrower's Name (please print) Jason Long Social Security Number [redacted]

[illegible]

22. I understand that:

A. [illegible]

B. [illegible]

C. [illegible]

D. [illegible]

E. [illegible]

F. [illegible]

G. [illegible]

H. [illegible]

I. [illegible]

J. [illegible]

K. [illegible]

23. Under penalty of perjury, I certify that:

A. [illegible]

B. [illegible]

C. [illegible]

D. [illegible]

E. [illegible]

F. [illegible]

24. I make the following authorizations:

A. [illegible]

B. [illegible]

C. [illegible]

D. [illegible]

E. [illegible]

F. [illegible]

[illegible]

25. [illegible]

[illegible]

[illegible]

[illegible]

I UNDERSTAND THAT THIS IS A LOAN THAT MUST BE REPAID.

26. Borrower's Signature Jason Long Today's Date (mm-dd-yyyy) 10/08/2013 10/8/2013



# Superior Court of the District of Columbia
## CIVIL DIVISION

**Check One:**

☐ **Civil Actions Branch**
500 Indiana Ave., N.W.
Room 5000
Washington, D.C. 20001
Telephone: (202) 879-1133

☐ **Landlord & Tenant Branch**
510 4th Street, N.W.
Room 110
Washington, D.C. 20001
Telephone: (202) 879-4879

☐ **Small Claims & Conciliation Branch**
510 4th Street, N.W.
Room 119
Washington, D.C. 20001
Telephone: (202) 879-1120

_____
                    Plaintiff

**v.**                                              CASE NUMBER: _____

_____
                    Defendant

## ANSWER OF DEFENDANT

The defendant answers the claim(s) of plaintiff(s) as follows:

_____

_____

_____

_____

_____

_____

### SIGNATURE AND ADDRESS OF PARTY/ATTORNEY

_____          _____
Signature                                 Date

_____          _____
Printed Name and Bar Number (if applicable)   Street Address

_____          _____
Email Address and Phone Number            City, State, Zip

### CERTIFICATE OF SERVICE

I hereby certify that on _____ (date), that a copy of this Answer was sent in the manner indicated to the party/parties in this case or their attorney(s) as listed below:

☐ E-served on or ☐ Mailed to (check one)

_____          _____
Name                                      Name

_____          _____
Street Address                            Street Address

_____          _____
City, State, Zip                          City, State, Zip

_____          _____
Email Address and Phone Number            Email Address and Phone Number

Form CV(6)-451/Jan. 2020                  Super. Ct. Civ. R. 12; Super Ct. L&T R. 5 & Super. Ct. SC R. 5



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION - Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Jason Christopher Long
_____
*Plaintiff(s)*

v.

Case No: 2025-CAB-004846

# Maximus Inc, et al.
_____
*Defendant(s)*

## NOTICE AND ACKNOWLEDGMENT OF SERVICE

To (insert name and address of the party to be served):
Sam Taylor
1600 Tyson Blvd
Ste 1400
McLean, VA 22102

The enclosed summons, complaint, initial order, and any addendum are served in accordance with Superior Court Rule of Civil Procedure 4(c)(5).

Please sign and date the Acknowledgement at the bottom of the page. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, please indicate your relationship to that entity in the space beside your signature. If you are served on behalf of another person and you are authorized to receive process, please indicate your authority in the space beside your signature.

If you do not complete and return the form to the sender within 21 days after it was mailed and you do not show good cause for this failure, you (or the party on whose behalf you are being served) will be required to pay 1) the costs incurred in serving the summons, complaint, initial order, and any addendum in any other manner permitted by law and 2) the reasonable expenses, including attorney's fees, for any motion required to collect those service expenses.

If you do complete and return this form, you (or the party on whose behalf you are being served) must answer the complaint within 21 days after you have signed, dated, and returned the form (or within 60 days if the party being served is the United States, the District of Columbia, or officers or employees of either). If you fail to do so, judgment by default may be entered against you for the relief demanded in the complaint.

This Notice and Acknowledgment of Receipt of Summons, Complaint, Initial Order, and Any Addendum was mailed on (insert date): 8/4/2025        .

_____
*Signature*

8/4/2025
_____
*Date of Signature*

## ACKNOWLEDGMENT OF RECEIPT OF SUMMONS, COMPLAINT, INITIAL ORDER, AND ANY ADDENDUM

I (print name) _____ received a copy of the summons, complaint, initial order, and any addendum in the above captioned matter at (insert address): _____
_____
_____

_____     _____     _____
*Signature*                  *Relationship to Defendant/Authority*     *Date of Signature*
                             *to Receive Service*

Para pedir una traducción, llame al (202) 879-4828        如欲翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction
Để có một bài dịch, hãy gọi (202) 879-4828        ? har?C?r?t? ???r?? ??ar?r?t? (202) 879-4828 ???ar??        번역을 원하시면, (202) 879-4828 로 전화주십시오

CA 1-A [Rev. June 2017]                                                                Super. Ct. Civ. R. 4



**Superior Court of the District of Columbia**
**Civil Division - Civil Actions Branch**
**500 Indiana Ave NW, Room 5000, Washington DC 20001**
**202-879-1133 | www.dccourts.gov**

**Case Number:** 2025-CAB-004846

**Case Style:** Jason Christopher Long v. Maximus Inc et al.

## INITIAL ORDER

| Initial Hearing Date: | Initial Hearing Time: | Courtroom Location: |
|---|---|---|
| Friday, 10/24/2025 | 9:30 AM | Remote Courtroom 212 |

**Please see attached instructions for remote participation.**

Your case is assigned to Associate Judge Tanya Jones Bosier.

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

1) This case is assigned to the judge and calendar designated above. All future filings in this case shall bear the calendar number and judge's name along with the case number in the caption.

2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of the summons, the complaint, and this Initial Order. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4.

3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

4) At the time stated above, all counsel and unrepresented parties shall participate in a hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients before the hearing whether the clients are agreeable to binding or non-binding arbitration. This order is the only notice that parties and counsel will receive concerning this hearing.

5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference once, with the consent of all parties, to either of the two succeeding days when the calendar is called. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date. No other continuance will be granted except upon motion for good cause shown.

6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Milton C. Lee, Jr.

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb212

   Meeting ID: 129 440 9070

2) When you are ready, click "Join Meeting".
3) You will be placed in the lobby until the courtroom clerk gives you access to the hearing.

**Or to Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
2) Enter the Webex Meeting ID listed above followed by "##"

**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here https://www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch Clerk's Office at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

## ACCESSIBILITY AND LANGUAGE ACCESS

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call 202-879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office listed for your case. For more information, visit https://www.dccourts.gov/language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría de su caso.

Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች:**

የዲ.ሲ. ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። የቃል ወይም የጽሑፍ ትርጓሜ ለመጠየቅ እባካዎን በመዝገብዎ የተዘረዘረውን የጸሀፊ ቢሮ (ክለርክ'ስ አፊስ) ያናግሩ። ለተጨማሪ መረጃ https://www.dccourts.gov/language-access ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

# Tips for Attending Remote Hearings - Civil Division

*Your court hearing may be held remotely. This means that you will participate by phone or by video conference instead of coming to the courthouse. Here are some tips on how to prepare.*

## How do I know if I have a remote hearing?

The Court will contact you to tell you that your hearing is remote. They may contact you by sending you an email, letter in the mail, or by calling you.



## How do I take part in a remote hearing?

The Court will give you step-by-step instructions on how to take part in the remote hearing.

If you lose your written notice, call the Civil Actions Clerk's Office for instructions at:

📞 202-879-1133

## Is there anything that I should do before the day of the hearing?

- Let the court know immediately if you cannot join a hearing because you do not have a phone or computer.

  📞 Civil Actions Clerk's Office: 202-879-1133

- You may want to contact an attorney for legal help.

- You can also find the list of legal services providers at www.dccourts.gov/services/represent-yourself by clicking on the link that says, "List of Legal Service Providers for Those Seeking an Attorney or Legal Advice".

- Evidence: if you want the judge to review photos or documents, ask the judge how to submit your evidence.

- Witnesses: tell the judge if you want a witness to testify at your hearing.

- Accommodations & Language Access: let the court know if you need an interpreter or other accommodation for your hearing.

## Tips for the Hearing



- Join the hearing a few minutes early!

- Charge your computer or phone and make sure you have enough minutes to join the call. Find a private and quiet space. If possible, be alone in a room during the hearing. Try to limit distractions as much as possible. If others are in the room with you, ask if they can be quiet during the hearing.

- Mute your microphone when you are not talking. Mute all sounds on your phone or computer.

- Say your name before you speak so the record is clear. Be prepared to identify your role in the hearing (e.g., observer, plaintiff, defendant, witness, etc.).

- Speak slowly and clearly so everyone hears what you are saying.

- Pause before speaking in case there is a lag. Use a headset or headphones if you can. This will free up your hands and sound better.

- Try not to talk over anyone else. Only one person can speak at a time. If you talk while someone else is talking, the judge will not be able to hear you.

- Have all your documents for the hearing in front of you. Have a pen and paper to take notes.

- If you are not ready for your hearing or want to speak with an attorney, you can ask the judge to postpone your hearing for another date.

- If your sound or video freezes during the hearing, use the chat feature or call the Clerk's Office to let them know that you are having technical issues.

## Special Tips for Video Hearings (Click here for more information)



- Download the court's hearing software, WebEx, in advance and do a test run! The Court will provide you with a WebEx link in advance of the hearing.

- Set up the camera at eye level. If you are using your phone, prop it up so you can look at it without holding it.

- Look at the camera when you speak and avoid moving around on the video.

- Wear what you would normally wear to court.

- Sit in a well-lit room with no bright lights behind you.

- If possible, find a blank wall to sit in front of. Remember the judge will be able to see everything on your screen, so pick a location that is not distracting.



The DC Courts have **remote hearing sites** available in various locations in the community to help persons who may not have computer devices or internet service at home to participate in scheduled remote hearings. The Courts are committed to enhancing access to justice for all.

There are four remote access sites throughout the community which will operate **Monday – Friday, 8:30 am – 4:00 pm.**

| | |
|---|---|
| **Remote Site – 1**<br><br>Balance and Restorative Justice Center<br>1215 South Capitol Street, SW<br>Washington, DC 20003 | **Remote Site – 3**<br><br>Balance and Restorative Justice Center<br>118 Q Street, NE<br>Washington, DC 20002 |




| | |
|---|---|
| **Remote Site – 2**<br><br>Balance and Restorative Justice Center<br>1110 V Street, SE<br>Washington, DC 20020 | **Remote Site – 4**<br><br>Balance and Restorative Justice Center<br>920 Rhode Island Avenue, NE<br>Washington, DC 20018 |

**If you want to use a remote site location for your hearing,** call 202-879-1900 or email DCCourtsRemoteSites@dcsc.gov at least 24 hours before your hearing to reserve a remote access computer station.

**If you require special accommodations such as an interpreter for your hearing,** please call 202-879-1900 at least 24 hours in advance of your hearing so the Courts can make arrangements.

**\*You should bring the following items when you come to your scheduled site location\***

1. Your case number and any hyperlinks provided by the Courts for your scheduled hearing.
2. Any documents you need for the hearing (evidence), including exhibits, receipts, photos, contracts, etc.
3. Materials for notetaking, including pen and paper.

\*Safety and security measures are in place at the remote sites.

**Contact information to schedule your remote access computer station:**
Call: 202-879-1900
Email: DCCourtsRemoteSites@dcsc.gov




# Tribunales del Distrito de Columbia
## Consejos para usar los sitios de
## audiencia remota de los Tribunales de DC

Los Tribunales de DC disponen de **sitios de audiencia remota** en distintos centros de la comunidad para ayudar a que las personas que no tienen dispositivos informáticos o servicio de Internet en su casa puedan participar en audiencias remotas programadas. Los Tribunales honran el compromiso de mejorar el acceso de toda la población a la justicia.

En toda la comunidad hay cuatro sitios de acceso remoto que funcionarán **de Lunes a Viernes, de 8:30 am a 4:00 pm**.

| **Sito Remoto – 1** |
| --- |
| Balance and Restorative Justice Center |
| 1215 South Capitol Street, SW |
| Washington, DC 20003 |

| **Sito Remoto – 3** |
| --- |
| Balance and Restorative Justice Center |
| 118 Q Street, NE |
| Washington, DC 20002 |



| **Sito Remoto – 2** |
| --- |
| Balance and Restorative Justice Center |
| 1110 V Street, SE |
| Washington, DC 20020 |

| **Sito Remoto – 4** |
| --- |
| Balance and Restorative Justice Center |
| 920 Rhode Island Avenue, NE |
| Washington, DC 20018 |

**Si desea usar un sitio remoto para su audiencia**, llame al 202-879-1900 o envíe un mensaje de correo electrónico a DCCourtsRemoteSites@dcsc.gov al menos 24 horas antes de la audiencia, para reservar una estación de computadora de acceso remoto.

**Si necesita adaptaciones especiales**, como un intérprete para la audiencia, llame al 202-879-1900 al menos 24 horas antes de la audiencia para que los Tribunales puedan hacer los arreglos necesarios.

**\*Cuando concurra al sitio programado debe llevar los siguientes artículos\***
1. Su número de caso y todos los hipervínculos que le hayan proporcionado los Tribunales para la audiencia programada.
2. Cualquier documento que necesite para la audiencia (prueba), incluidos documentos probatorios, recibos, fotos, contratos, etc.
3. Materiales para tomar nota, como papel y lápiz.

\*Los sitios de acceso remoto cuentan con medidas de seguridad y protección.

**Información de contacto para programar su estación de computadora de acceso remoto:**
Teléfono: 202-879-1900
Correo electrónico: DCCourtsRemoteSites@dcsc.gov



FILED
CIVIL DIVISION

JUL 29 2025

Superior Court of the
District of Columbia



**Superior Court of the District of Columbia**
**CIVIL DIVISION – Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Case No. _____2025-CAB-004846_____

## COMPLAINT

Jurisdiction of this Court is founded on D.C. Code § 11-921.

Jason Christopher Long
**PLAINTIFF**                                        vs

5112 MacArthur BLVD, N.W, Unity
Address (No Post Office Boxes)

Washington, District of Columbia (20016)
City            State        Zip Code

Don't disclose in the docket
Telephone Number

jclong2070@yahoo.com
Email Address (optional)

AFDVANTAGE ELA
MAXIMUS, INC. D/B/A AdvantageE J·c·L
**DEFENDANT**
ATTN: General Counsel John Martinez
1600 Tysons BLVD, STE 1400
Address (No Post Office Boxes)

McLean     VA      22102
City        State        Zip Code

(703) 251-8500
Telephone Number

_____
Email Address (optional)

1. Write a short and plain statement of your claim, including any relevant facts, dates, and locations:

Plaintiff honorably request the court to read and review my complaint and the exhibits included to show the wrongs doing of the Defendants from 2021 or 2022. To right now.

2. What relief are you requesting from the Court? Include any request for money damages.

I kindly request the court to see prayer to relief section to determine the amount I am requesting.

Form CA-3074 [Rev. Nov. 2017]                    1                    Super. Ct. Civ. R. 3

3. State any other information, of which the Court should be aware:

This court has jurisdiction to hold the defendants under the District of Columbic's codes, citations, legal authorities, and etc. Please see Plaintiff's statement of claim and exhibits that will show this cannot be transferred to U.S.A. DC District Court. I object the court to have the defendants to do so

## SIGNATURE

To the best of my knowledge, everything in this Complaint is true and I am not filing this Complaint to harass the Defendant(s). Superior Court Civil Rules 11(b).

Jason C. Pong "without Prejudice" I-308

**SIGNATURE**

7-25-2025

**DATE**

Subscribed and sworn to before me this ___25___ day of ___Ju___

_____

(Notary Public/Deputy Clerk)

2



**ADDENDUM TO COMPLAINT**

CASE NO. 2025-CAB-004845

ADDITIONAL PARTY NAMES AND ADDRESSES

Sam Tandy
☐ PLAINTIF          ☒ DEFENDANT

1600 Tysons BLVD, STE 1400
Address (No Post Office Boxes)

McLean  VA  22102
City        State        Zip

(703) 257 - 8500
Telephone Number

_____
Email Address (Optional)


Dominic Martin
☐ PLAINTIFF          ☒ DEFENDANT

1600 Tysons BLVD, STE 1400
Address (No Post Office Boxes)

McLean  VA  22102
City        State        Zip

(703) 257 - 8500
Telephone Number

_____
Email Address (Optional)


☐ PLAINTIF          ☐ DEFENDANT

_____
Address (No Post Office Boxes)

_____
City        State        Zip

_____
Telephone Number

_____
Email Address (Optional)


☐ PLAINTIFF          ☐ DEFENDANT

_____
Address (No Post Office Boxes)

_____
City        State        Zip

_____
Telephone Number

_____
Email Address (Optional)

**ADDENDUM TO COMPLAINT**

CASE NO._____

**ADDITIONAL PARTY NAMES AND ADDRESSES**

☐ PLAINTIFF    ☐ DEFENDANT

_____
Address (No Post Office Boxes)

_____
City         State        Zip

_____
Telephone Number

_____
Email Address (Optional)

☐ PLAINTIFF    ☐ DEFENDANT

_____
Address (No Post Office Boxes)

_____
City         State        Zip

_____
Telephone Number

_____
Email Address (Optional)

☐ PLAINTIF    ☐ DEFENDANT

_____
Address (No Post Office Boxes)

_____
City         State        Zip

_____
Telephone Number

_____
Email Address (Optional)

☐ PLAINTIFF    ☐ DEFENDANT

_____
Address (No Post Office Boxes)

_____
City         State        Zip

_____
Telephone Number

_____
Email Address (Optional)

# Superior Court of the District of Columbia

## CIVIL DIVISION - CIVIL ACTIONS BRANCH

### INFORMATION SHEET

Plaintiff(s): Jason Christopher Long

Case Number: 2025-CAB-004845

Date: 7-25-2025

vs

Defendant(s): MAXIMUS, INC DIBA ADVANTAGE EL AT.,

☐ One of the defendants is being sued in their official capacity.

Name: (Please Print): Jason Christopher Long

Firm Name:

Telephone No.: N/A    DC Bar No.: 123456

Relationship to Lawsuit
☐ Attorney for Plaintiff
☐ Self (Pro Se)
☒ Other: Pro Per

TYPE OF CASE: ☐ Non-Jury    ☒ 6 Person Jury    ☐ 12 Person Jury
Demand: $ Over 150,000    Other:

PENDING CASE(S) RELATED TO THE ACTION BEING FILED
Case No.: _____  Judge: _____  Calendar #: _____
Case No.: _____  Judge: _____  Calendar #: _____

---

NATURE OF SUIT:    (Check One Box Only)

**CONTRACT**
☐ Breach of Contract
☐ Breach of Warranty
☐ Condo/Homeowner Assn. Fees
☐ Contract Enforcement
☐ Negotiable Instrument

**COLLECTION/INS. SUB**
☐ Debt Collection
☐ Insurance Subrogation
☐ Motion Application for Judgment by Confession
☐ Motion Application Regarding Arbitration Award

**EMPLOYMENT DISPUTE**
☐ Breach of Contract
☐ Discrimination
☐ Wage Claim
☐ Whistle Blower
☐ Wrongful Termination

**REAL PROPERTY**
☐ Condo/Homeowner Assn. Foreclosure
☐ Declaratory Judgment
☐ Drug Related Nuisance Abatement
☐ Ejectment
☐ Eminent Domain
☐ Interpleader
☐ Other
☐ Quiet Title
☐ Specific Performance

☐ FRIENDLY SUIT
☐ HOUSING CODE REGULATIONS
☐ QUI TAM
☐ STRUCTURED SETTLEMENTS

**ADMINISTRATIVE PROCEEDINGS**
☐ Administrative Search Warrant
☐ App. for Entry of Jgt. Defaulted Compensation Benefits
☐ Enter Administrative Order as Judgment
☐ Libel of Information
☐ Master Meter
☐ Petition Other

☐ Release Mechanics Lien
☐ Request for Subpoena

**MALPRACTICE**
☐ Medical - Other
☐ Wrongful Death

**AGENCY APPEAL**
☐ Dangerous Animal Determination
☐ DCPS Residency Appeal
☐ Merit Personnel Act (OEA)
☐ Merit Personnel Act (OHR)
☐ Other Agency Appeal

☐ APPLICATION FOR INTERNATIONAL FOREIGN JUDGMENT

CV-496/February 2023

# Information Sheet, Continued

**CIVIL ASSET FORFEITURE**
- [ ] Currency
- [ ] Other
- [ ] Real Property
- [ ] Vehicle

**NAME CHANGE/VITAL RECORD AMENDMENT**
- [ ] Birth Certificate Amendment
- [ ] Death Certificate Amendment
- [ ] Gender Amendment
- [ ] Name Change

**TORT**
- [ ] Abuse of Process
- [ ] Assault/Battery
- [ ] Conversion
- [ ] False Arrest/Malicious Prosecution
- [ ] Libel/Slander/Defamation
- [ ] Personal Injury
- [ ] Toxic Mass
- [ ] Wrongful Death (Non-Medical Malpractice)

**GENERAL CIVIL**
- [ ] Accounting
- [ ] Deceit (Misrepresentation)
- [ ] Fraud
- [ ] Invasion of Privacy
- [ ] Lead Paint
- [ ] Legal Malpractice
- [ ] Motion/Application Regarding Arbitration Award
- [ ] Other - General Civil

- [ ] Product Liability
- [ ] Request for Liquidation
- [ ] Writ of Replevin
- [ ] Wrongful Eviction

**CIVIL I/COMPLEX CIVIL**
- [ ] Asbestos

**MORTGAGE FORECLOSURE**
- [ ] Non-Residential
- [ ] Residential

**STATUTORY CLAIM**
- [ ] Anti – SLAPP
- [■] Consumer Protection Act
- [ ] Exploitation of Vulnerable Adult
- [ ] Freedom of Information Act (FOIA)
- [ ] Other

**TAX SALE FORECLOSURE**
- [ ] Tax Sale Annual
- [ ] Tax Sale Bid Off

**VEHICLE**
- [ ] Personal Injury
- [ ] Property Damage

- [ ] TRAFFIC ADJUDICATION APPEAL
- [ ] REQUEST FOR FOREIGN JUDGMENT

_Jason Chong_ _without Prejudice_    7-25-2025
_PC Code 28:1-308_
Filer Attorney's Signature                Date

CV-496 February 2023

## IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

## CIVIL DIVISION

## CIVIL ACTIONS BRANCH DIVISION

Jason Christopher Long,

     Plaintiff,

vs.

MAXIMUS D/B/A AIDVATANGE, EL AT.,

     Defendant

Case No.: **2025-CAB-004845**

**PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF**

## PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF

Plaintiff, a living man on the Land of the District of Columbia, specially appearing as Pro Per in the District of Columbia, brings this action under District of Columbia statutory and common laws against the above-named Defendant and alleges as follows:

## INTRODUCTION

This action arises from a pattern of egregious, unlawful conduct by federal student loan servicers and agents, including fraudulent loan origination, constructive forgery, record tampering, and deliberate denial of the Plaintiff's lawful rights under District of Columbia law. The Plaintiff seeks damages exceeding \$50,000, declaratory judgment invalidating fraudulent loan documents, and injunctive relief to stop ongoing harm and enforce compliance with D.C. borrower protections.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to D.C. Code § 11-921.

2. Venue is proper under D.C. Code § 13-423 as all acts or omissions occurred in the District of Columbia or affect a resident thereof.

3. Plaintiff brings claims exclusively under District of Columbia statutory and common law. No federal causes of action are asserted.

4. Plaintiff expressly objects to removal to federal court pursuant to 28 U.S.C. § 1441. Jurisdiction is proper in the Superior Court because the claims arise under local law and relate to

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF - 1

1  state-regulated entities and conduct.

2  5. The Superior Court of D.C. has broad jurisdiction to hear consumer protection and contract
3  fraud claims arising within the District. See District of Columbia v. Graham, 824 A.2d 484, 488
   (D.C. 2003).
4

5                                    **PARTIES**

6  6. Plaintiff is a natural person and legal resident of the District of Columbia.

7  7. Defendant Maximus Federal Services, Inc., doing business as Aidvantage, is a federal loan
   servicer operating within the District.
8

9  8. Defendant Sam Tandy is an employee or agent of Maximus/Aidvantage and acted within the
   scope of employment.
10

11  9. Defendant Dominic Martin is an employee or agent of Maximus/Aidvantage and acted within
    the scope of employment.
12
                                **STATEMENT OF FACTS**
13

14  11. On March 7, 2023, Plaintiff submitted a Borrower's Defense to Repayment (BDR)
    application to the U.S. Department of Education. By law, the Department must respond by
15  March 6, 2026. The loan remains in forbearance pending that decision. See D.C. Student Loan
    Borrower Bill of Rights Amendment Act of 2024, D.C. Law 25-219; Fraternal Order of Police,
16  D.C. Lodge No. 1 v. D.C., 238 A.3d 1187, 1195 (D.C. 2020).

17
    12. Plaintiff objects to any repayment agreements based on the forged, unauthorized, and
18  misrepresented nature of the underlying loan documents, including a William D. Ford Direct
    Loan Application submitted without consent on October 8, 2013. The D.C. courts have
19  recognized that contracts procured by forgery or fraud are void and unenforceable. Cooper v.
    City of Georgetown, 137 A.3d 1140, 1146 (D.C. 2016).
20

21  13. The loan application contains five forged pages submitted by DMD Financial Services, Inc.,
    including signatures not authored or approved by Plaintiff. These forged documents were created
22  while Plaintiff was recovering from an arm injury sustained on July 28, 2011; precluding consent
    or authorization. Stern v. Smith, 703 A.2d 145, 151 (D.C. 1997) (recognizing constructive fraud
23  by breach of duty).

24
    14. Neither DMD Financial nor Saint Augustine's University submitted the required Program
25  Participation Agreement or Third-Party Servicer Data Form in 2013, violating Title IV loan
    origination protocols and the local licensing mandates enacted under D.C. Code § 31-1134.01 et
26  seq. The District maintains authority to regulate and protect borrowers from unlicensed servicers.
27  Fraternal Order of Police, 238 A.3d at 1195.

28  15. Plaintiff provided hospital medical records and a handwriting analysis comparing 20
    PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF - 2

law.

38\. See Wright v. United States, 672 A.2d 1079, 1085 (D.C. 1996); District of Columbia v. Jefferson, 765 A
.2d 1133, 1136 (D.C. 2001).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court:

A. Declare the loan agreements forged, fraudulent, and unenforceable;
B. Award compensatory damages exceeding \$50,000, plus costs and attorney's fees;
C. Award statutory penalties and restitution under D.C. Consumer Protection Procedures Act;
D. Enjoin Defendants from further collection, reporting, or servicing related to the fraudulent loan;
E. Order Defendants to produce all original loan documents and communications;
F. Grant any other relief the Court deems just and proper.
G. Issue a permanent injunction barring Defendant Maximus Federal Services, Inc. d/b/a Aidvantage, and its agents, employees, and affiliates, including Sam Tandy and Dominic Martin, from servicing, collecting, or managing any student loans for residents of the District of Columbia, based on their repeated violations of District law, fraudulent conduct, and harmful practices;
H. Order the District of Columbia licensing authorities to revoke or suspend any licenses or registrations held by Defendant DMD Financial Services, Inc. and any other involved entities for failure to comply with Title IV requirements and the D.C. Student Loan Borrower Bill of Rights;
I. Require Defendants to provide a full accounting and submit to an independent audit overseen by the Court or the District of Columbia Attorney General to ensure full compliance with District laws and protect borrowers moving forward.

DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable under 7th Amendment.

Honorably submitted,

*Jason Long*

Jason Christopher Long
Pro Per
5112 MacArthur Boulevard N.W., Unit 4
Washington, District of Columbia (20016)
"Without Prejudice"
DC Code 28:1-308
ALL RIGHTS ARE RESERVED.
July 25, 2025

PLAINTIFF'S COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF - 5

Exhibit 1:

November 5, 2021
Jason Christopher Long
DOB August 4, 1984
SS# ████
1319 Fairmont Street NW
Apt 1
Washington DC 20009
Navient
Fax No 866 266 0178 Attn: Forms

Call with Client @4pm
Mr. Long received no disclosures regarding rate, payment terms
Mr. Long did not receive all the details about the loan until 2009
VSac - Nelnet - Sallie Mae - Naviet
Mr. Long has call at 4:30 with Naviet to authorize Navient to get documents to me

November 6, 2021
Account No. ████████
Case No. 01661222

November 8, 2021
If underlying loans are valid Mr. Long is still responsible for the underlying loan and interest.
Deferment - if subsidized Dept of Education takes care of interest
Forbearance - payment delayed but interest accrues
Determine correct balance prior to consolidation
Consolidation December 6, 2013

December 6, 2013 balance at consolidation $21,981.26 subsidized $41,960.87 unsubsidized

Current balance as of November 8, 2021 $82,744.46

Contact Nelnet (888) 486 4722

Navient ████████

Nelnet
jclong8484
████████

November 9, 2021
Discussions with client to log into accounts to get loan history

FSA call @145

November 10, 2021
Omnibudsman Call @930
Tom
Reopen case and having file reviewed

Certification link https://www2.ed.gov/policy/gen/leg/foia/certification-of-identity-and-consent.pdf

November 12, 2021 @10:55
Matthew Navient
What is the balance is before consolidation?
Declining Balance History

Income driven program - loan forgiveness after 25 years
Work public service

studentaid.gov loan forgivenes programs. Told client to look into this https://studentaid.gov/borrower-defense/

Nelnet @11:30
Cannot speak without borrower on the phone

November 19, 2021
Records from Navient
Loan History

October 22, 2013
Direct Loan Consolidation Application
                $10,271.63
                $50,000.00
TOTAL        $60,271.63

December 6, 2013
        $22,286.61
        $42,302.82
TOTAL $64,020.23 increased amount was interest

LOAN PRINCIPAL INCREASES
 6/30/2014 $1,177.54
8/11/2015. $1,300.56

INTEREST

8/11/2015. $1,923.94
7/18/2017  $4,527.33
7/17/2018. $2,666.86
8/16/2019  $4,220.87

INCREASES $15,817.10


Left voicemail on November 18, 2021
Cassie Seaman 866-432-7939 x889190
Emailed advocate@navient.com

Steven from Navient called Jason @2:23 on November 18, 2021


November 22, 2021
Erika - case was escalated to review
Speaking with Cassie Seaman and Jason
Student Loan Defense Application

Navient confirmed that Jason made a valid point to show fraud. Department of Education
denied claim. The omnibus man has to escalate the case to review file.

Case No ☒☒☒☒☒☒

844 651 0077

Omnibus - Tyler @2:10pm
SS# ☒☒☒☒
08/04/1984
1319 Fairmont Street NW
Apt 1
Washington DC 20009
Dispute Case No ☒☒☒☒☒☒

Submitted for reopen on November 10th - refer to DC location and reviewed once a month

December 3, 2021
Casandra
Direct Lending processed consolidation paperwork
10/8/2013 Consolidation completed
Page of repayment plan selection mission - resubmitted 10/31/2013

Information regarding Brenda Stokes signature (Brenda Stokes is from Saint Augustine to verify loan information)

December 9, 2021
Documents
~~█████████~~

January 5, 2021 @10:45
William at the Department of Education
Student aid.Gov Help Center (844) 651 0077

Borrower's Defense
855 279 6207

January 28, 2022 @11am
Navient transferred Aviant
Cassie
Borrower's Defense is the right strategy
Sending letter regarding fraud

March 9, 2022
Discussions with client

March 10, 2022
Request to St Augustine for records

https://studentaid.gov/help-center/answers/article/what-is-borrower-defense

Did you receive disclosures? https://consumercomplianceoutlook.org/2010/second-quarter/regulation-z-private-education-loans/

Is the loan subsidized or unsubsidized

https://www.law.cornell.edu/cfr/text/34/682.205

Check identity? Law

Notification of servicer

https://studentaid.gov/articles/your-loan-was-transferred-whats-next/

Verify identity and personal data

https://fsapartners.ed.gov/knowledge-center/fsa-handbook/2021-2022/application-and-verification-guide/ch4-verification-updates-and-corrections

March 23, 2022
Follow up request to Saint Augustine for records
US Mail


April 6, 2022
Hannah @11am
Navient

Mike @ 11:11am
Transfered Advantage on December 2021
800 722 1300

Advantage
Donna Mitchell
Identify Theft Affidavit
Mail to Fairmont
Discharge Application and Forgery form
Reinstate Cares Act on Advantage website or by calling Advantage
Spoke with client regarding forms



**aidVantage** Official Servicer of Federal Student Aid

Office of the Customer Advocate
P.O. Box 300003
Greenville, TX 75403-3003
Phone: 866-432-7939
Fax: 570-821-4550
Advocate@Aidvantage.studentaid.gov

Mr. Jason Long
jclong2010@yahoo.com

**Account Number:** 9646961359                                        July 24, 2025

Jason,

We received your complaint about your federal student loans owned by U.S. Department of Education (ED). We are here to assist you in any way we can, and we hope the following information is useful.

We understand you are requesting any Loan Discharge Denials and Deferment Denials from the year 2013 through 2019.

We have confirmed that we responded to your concerns through multiple Freedom of Information Act cases. We provided you a copy of our response to these cases on May 12, 2025, via email. If you have not received this information, please contact our office at 866-432-7939 and we will send the documentation via the United States Postal Service.

If you disagree with our results or believe they are wrong, you can contact the Federal Student Aid (FSA) Ombudsman Group of the United States Department of Education. The Ombudsman Group is an impartial, informal, and confidential resource for resolving concerns regarding federal student aid.

You can file a complaint online at https://studentaid.gov/feedback-center/. If you have previously filed a complaint, you can log in, update your case, and request that it be escalated to the Ombudsman Group.

You're welcome to call us at directly at 866-432-7939, with any additional questions you may have about this issue.

Sincerely,

Sam
Office of the Customer Advocate
Aidvantage – Official Servicer of Federal Student Aid


**Important disclosure(s)**

*Avoiding scams*
You **never** have to pay a fee for help with your federal student aid. If you have questions or concerns about your loan payments, you can contact Aidvantage for free help through Aidvantage.studentaid.gov. You might be contacted by a company via phone, email, or postal mail saying they will help you get loan discharge, forgiveness, cancellation, or debt relief for a fee. Make sure you work **only** with the U.S. Department of Education's loan servicers, like Aidvantage and **never** reveal your personal information or account password to anyone. Learn to avoid student aid scams at studentaid.gov/resources/scams. Our emails to borrowers come from customerservice@aidvantage.studentaid.gov. You can report scam attempts to the Federal Trade Commission by calling 1-877-382-4357 or by visiting reportfraud.ftc.gov.



Office of the Customer Advocate
P.O. Box 300003
Greenville, TX 75403-3003
Phone: 866-432-7939
Fax: 570-821-4550
Advocate@Aidvantage.studentaid.gov

Mr. Jason Long
JCLong2010@yahoo.com

**Account Number:** 9646961359                                                    May 7, 2025

Jason,

We received your inquiry about your federal student loans, Freedom of Information Act case #25-00332-PA, #25-00339-PA, #25-00340-PA, #25-00342-PA, #25-00344-PA, and #25-00348-PA We are here to assist you in any way we can, and we hope the following information is useful.,

Aidvantage services your Direct Consolidation loan disbursed December 6, 2013. We included all corresponding documents you requested and your complete transaction history of your account.

We are unable to fulfill your requests for documents for the underlying loans of your Direct Consolidation including but not limited to the Master Promissory notes for loans serviced by Nelnet.

As for the documents requested from Jane or John Doe Loan Analyst for the Department of Education Office of Federal Student Aid who made statement on November 22nd, 2019, you should be able to see this via the online portal in which the Inquiry was submitted. And for Jane or John Doe who made a statement to the Consumer Financial Protection Bureau (CFPB) in 2017 you will be able to find on CFPB.Gov.

We're unable to provide call recordings or transcripts to customers or third parties except as required by law. However, we will accommodate you through other means by providing transaction histories, narrative chronologies, or copies of documents you have signed.

If you disagree with our results or believe they are wrong, you can contact the Federal Student Aid (FSA) Ombudsman Group of the United States Department of Education. The Ombudsman Group is an impartial, informal, and confidential resource for resolving concerns regarding federal student aid. You can file a complaint online at https://studentaid.gov/feedback-center/. If you have previously filed a complaint, you can log in, update your case, and request that it be escalated to the Ombudsman Group.

You're welcome to call us at directly at 866-432-7939, with any additional questions you may have about this issue.

Sincerely,

Sam Tandy
Office of the Customer Advocate
Aidvantage – Official Servicer of Federal Student Aid

**Important disclosure(s)**

*Avoiding scams*

J. Long
May 7, 2025
Page 2

You **never** have to pay a fee for help with your federal student aid. If you have questions or concerns about your loan payments, you can contact Aidvantage for free help through Aidvantage.studentaid.gov. You might be contacted by a company via phone, email, or postal mail saying they will help you get loan discharge, forgiveness, cancellation, or debt relief for a fee. Make sure you work **only** with the U.S. Department of Education's loan servicers, like Aidvantage and **never** reveal your personal information or account password to anyone. Learn to avoid student aid scams at studentaid.gov/resources/scams. Our emails to borrowers come from customerservice@aidvantage.studentaid.gov. You can report scam attempts to the Federal Trade Commission by calling **1-877-382-4357** or by visiting reportfraud.ftc.gov.



Office of the Customer Advocate
P.O. Box 300003
Greenville, TX 75403-3003
Phone: 866-432-7939
Fax: 570-821-4550
Advocate@Aidvantage.studentaid.gov

Mr. Jason Long
jclong2010@yahoo.com

Account Number: 9646961359                                      October 7, 2024

Jason,

We received your inquiry about your federal student loans, U.S. Department of Education (ED) Federal Student Aid case #22027248. We are here to assist you in any way we can, and we hope the following information is useful.

We understand that you are requesting assistance in accessing a letter sent to you in response to your prior Federal Student Aid case #01263805.

Firstly, we would like to thank you for taking the time to speak with us regarding your concerns. Following our conversation, we attempted to either locate the necessary password to access this document in question, or a copy of the original document itself.

Unfortunately, we were unable to locate either of these pieces of information from either Navient or ED. We do recommend contacting ED directly as we were not the original organization to which this prior case was assigned. They may be able to provide further assistance in retrieving this document.

If you disagree with our results or believe they are wrong, you can contact the Federal Student Aid (FSA) Ombudsman Group of the United States Department of Education. The Ombudsman Group is an impartial, informal, and confidential resource for resolving concerns regarding federal student aid.

You can file a complaint online at https://studentaid.gov/feedback-center/. If you have previously filed a complaint, you can log in, update your case, and request that it be escalated to the Ombudsman Group.

You're welcome to call me directly at 866-432-7939, x1122, with any additional questions you may have about this issue.

Sincerely,

Dominic Martin
Office of the Customer Advocate
Aidvantage – Official Servicer of Federal Student Aid

LTR318

**Important disclosure(s)**

*Avoiding scams*
You never have to pay a fee for help with your federal student aid. If you have questions or concerns about your loan payments, you can contact Aidvantage for free help through Aidvantage.studentaid.gov. You might be contacted by a company via phone, email, or postal mail saying they will help you get loan discharge, forgiveness, cancellation, or debt relief for a fee. Make sure you work only with the U.S. Department of Education's loan servicers, like Aidvantage and never reveal your personal information or account password to anyone. Learn to avoid student aid scams at studentaid.gov/resources/scams. Our emails to borrowers come from customerservice@aidvantage.studentaid.gov. You can report scam attempts to the Federal Trade Commission by calling 1-877-382-4357 or by visiting reportfraud.ftc.gov.

LTR318

# Exhibit 2



**United States Department of Education**

Office of the Deputy Secretary

FOIA Service Center

December 2, 2024

Jason Long
5112 MacArthur BLVD, Northwest
Washington, DC 20016

RE: FOIA Request No. 24-00441-PA

Dear Jason Long:

This letter is a final response to your request for information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, dated August 1, 2024, and received in the U.S. Department of Education's (Department) FOIA Service Center on August 2, 2024. You requested the following:

" A Master Promissory Note has been filed without consent. Pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, I am requesting a copy of the document in which Jason Christopher Long provided consent to DMD Financial Services Inc., Saint Augustine's University, and Jane Cowles to obtain personal information and to complete and submit any documents on his behalf.

Please provide the complete and unredacted version of this document."

Your request was forwarded to the Federal Student Aid office. After a thorough search, no responsive records were located.

DMD Financial Services Inc. is not a Department of Education servicer. We suggest that you contact DMD Financial Services Inc. directly for assistance.

<u>Fees</u>

There are no fees associated with processing this request. Therefore, any fee waiver request submitted for this FOIA request is not applicable.

<u>Additional Assistance</u>

You have the right to seek assistance and/or dispute resolution services from the Department's FOIA Public Liaison or the Office of Government Information Services (OGIS). The FOIA Public Liaison is responsible, among other duties, for assisting in the resolution of FOIA disputes. OGIS, which is outside the Department, offers ombuds services, including dispute resolution, to assist FOIA requesters and Federal agencies as a

non-exclusive alternative to litigation. Please note, OGIS's assistance does not replace the administrative appeal process described below. You may contact the FOIA Public Liaison or OGIS at:

FOIA Public Liaison
Office of the Deputy Secretary
U.S. Department of Education
400 Maryland Ave., SW, LBJ 7W104
Washington, DC 20202-4500
Email: robert.wehausen@ed.gov
Phone: 202-205-0733
Fax: 202-401-0920

Office of Government Information Services
National Archives and Records Administration
8601 Adelphi Road, OGIS
College Park, MD 20740-6001
Email: OGIS@nara.gov
Phone: 202-741-5770 or 1-877-684-6448

You have the right to appeal this decision, as well as decisions in any previous interim releases, with the Department by submitting an appeal to the address below, no later than 90 calendar days from the date of this letter. Using the FOIA Public Liaison or OGIS services described above does not affect your right or the deadline to file an appeal. Your appeal must be in writing and must include a detailed statement of all legal and factual bases for the appeal. It should be accompanied by this letter, a copy of your initial letter of request, and any documentation that supports the argument you wish the Department to consider in making an administrative determination on your appeal. You may submit your appeal by:

Mail: Appeals Office
Office of the Deputy Secretary
U.S. Department of Education
400 Maryland Avenue, SW, LBJ 7W104
Washington, DC 20202-4536

Online Form: www.ed.gov/policy/gen/leg/foia/foia-appeal-form.pdf

E-mail: EDFOIAappeals@ed.gov

Fax: 202-401-0920

Sincerely,

Elise Cook
Elise Cook
Government Information Specialist
Office of the Deputy Secretary



**United States Department of Education**

Office of the Deputy Secretary

FOIA Service Center

April 8, 2025

Jason Christopher Long
5112 MacArthur BLVD, Northwest
Washington, DC 20016

RE: FOIA Request No. 25-03126-F

Dear Jason Christopher Long:

This letter is a final response to your request for information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, dated March 31, 2025, and received in the U.S. Department of Education's (Department) FOIA Service Center on April 1, 2025. You requested the following:

" I want a copy of DMD Financial Services, Inc's certified PCA (Private Collection Agency)documents to prove their corporation was administered in the title IV program before October 8, 2013."

Your request was forwarded to Federal Student Aid. After a thorough search, no responsive records were located. DMD Financial Services is/was not a Private Collection Agency (PCA). The PCA contracts are located here: https://studentaid.gov/data-center/business-info/contracts/collection-agency.

<u>Fees</u>

There are no fees associated with processing this request.

<u>Additional Assistance</u>

You have the right to seek assistance and/or dispute resolution services from the Department's FOIA Public Liaison or the Office of Government Information Services (OGIS). The FOIA Public Liaison is responsible, among other duties, for assisting in the resolution of FOIA disputes. OGIS, which is outside the Department, offers ombuds services, including dispute resolution, to assist FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Please note, OGIS's assistance does not replace the administrative appeal process described below. You may contact the FOIA Public Liaison or OGIS at:

      FOIA Public Liaison
      Office of the Deputy Secretary

U.S. Department of Education
400 Maryland Ave., SW, LBJ 7W104
Washington, DC 20202-4500
Email: robert.wehausen@ed.gov
Phone: 202-205-0733
Fax: 202-401-0920

Office of Government Information Services
National Archives and Records Administration
8601 Adelphi Road, OGIS
College Park, MD 20740-6001
Email: OGIS@nara.gov
Phone: 202-741-5770 or 1-877-684-6448

You have the right to appeal this decision, as well as decisions in any previous interim
releases, with the Department by submitting an appeal to the address below, no later than 90
calendar days from the date of this letter. Using the FOIA Public Liaison or OGIS services
described above does not affect your right or the deadline to file an appeal. Your appeal
must be in writing and must include a detailed statement of all legal and factual bases for the
appeal. It should be accompanied by this letter, a copy of your initial letter of request, and
any documentation that supports the argument you wish the Department to consider in
making an administrative determination on your appeal. You may submit your appeal by:

    Mail: Appeals Office
        Office of the Deputy Secretary
        U.S. Department of Education
        400 Maryland Avenue, SW, LBJ 7W104
        Washington, DC 20202-4536

Online Form: www.ed.gov/policy/gen/leg/foia/foia-appeal-form.pdf

E-mail: EDFOIAappeals@ed.gov

Fax: 202-401-0920

                        Sincerely,

                        *Sandra Lewandowski*
                        Government Information Specialist
                        Office of the Deputy Secretary

2



**United States Department of Education**

Office of the Deputy Secretary

FOIA Service Center

April 8, 2025

Jason Christopher Long
5112 MacArthur BLVD, Northwest
Washington, DC 20016

RE: FOIA Request No. 25-02838-F

Dear Jason Christopher Long:

This letter is a final response to your request for information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, dated March 12, 2025, and received in the U.S. Department of Education's (Department) FOIA Service Center on March 13, 2025. You requested the following:

" I am requesting Department of Education to send me a copy of Destroy Instrument Affidavit in regards to all of the MPN that were submitted by my alma mater Saint Augustine's University and company from the years 2004 to 2025."

Your request was forwarded to Federal Student Aid. After a thorough search, no responsive records were located.

<u>Fees</u>

There are no fees associated with processing this request.

<u>Additional Assistance</u>

You have the right to seek assistance and/or dispute resolution services from the Department's FOIA Public Liaison or the Office of Government Information Services (OGIS). The FOIA Public Liaison is responsible, among other duties, for assisting in the resolution of FOIA disputes. OGIS, which is outside the Department, offers ombuds services, including dispute resolution, to assist FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Please note, OGIS's assistance does not replace the administrative appeal process described below. You may contact the FOIA Public Liaison or OGIS at:

> FOIA Public Liaison
> Office of the Deputy Secretary
> U.S. Department of Education
> 400 Maryland Ave., SW, LBJ 7W104

1

Washington, DC 20202-4500
Email: robert.wehausen@ed.gov
Phone: 202-205-0733
Fax: 202-401-0920

Office of Government Information Services
National Archives and Records Administration
8601 Adelphi Road, OGIS
College Park, MD  20740-6001
Email: OGIS@nara.gov
Phone: 202-741-5770 or 1-877-684-6448

You have the right to appeal this decision, as well as decisions in any previous interim releases, with the Department by submitting an appeal to the address below, no later than 90 calendar days from the date of this letter.  Using the FOIA Public Liaison or OGIS services described above does not affect your right or the deadline to file an appeal.  Your appeal must be in writing and must include a detailed statement of all legal and factual bases for the appeal. It should be accompanied by this letter, a copy of your initial letter of request, and any documentation that supports the argument you wish the Department to consider in making an administrative determination on your appeal. You may submit your appeal by:

Mail: Appeals Office
      Office of the Deputy Secretary
      U.S. Department of Education
      400 Maryland Avenue, SW, LBJ 7W104
      Washington, DC 20202-4536

Online Form: www.ed.gov/policy/gen/leg/foia/foia-appeal-form.pdf

E-mail: EDFOIAappeals@ed.gov

Fax: 202-401-0920

Sincerely,

*Sandra Lewandowski*
Government Information Specialist
Office of the Deputy Secretary



**United States Department of Education**

Office of the Deputy Secretary

FOIA Service Center

May 6, 2025

Jason Christopher Long
5112 MacArthur BLVD, Northwest
Washington, DC 20016

RE: FOIA Request No. 25-03111-F

Dear Jason Christopher Long:

This letter is a final response to your request for information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, dated March 29, 2025, and received in the U.S. Department of Education's (Department) FOIA Service Center on April 1, 2025. You requested the following:

" I want to get records of DMD Financial Services, Inc., being either sworn in or administrated. By The Department of Education's aforementioned Secretary prior to 2013 loan consolidation. From the Higher Education Act itself, no debt collection can be involved with the Act because they do not provide educational products or services."

On March 31, 2025, you updated your request to the following:

"Certified True Copy
• Perkins Assignment Form
• Institutional Certification (OMB 1845-0048)
• Borrower and Loan Information (OMB 1845-0048)
• Original Promissory Note or Perkins Master Promissory Note (MPN)
• Repayment History
• Judgment Information (If applicable)
•copy of notification letter sent by the school to the judgment debtor
• Bankruptcy Information (If applicable)
•Bundled Loans:"

On April 3, 2025, you updated your request to the following:

"I would like to submit a FOIA request for records pertaining to DMD Financial Services, Inc. Specifically, I am seeking any documentation that shows the company being either sworn in or administered by the Secretary of the Department of Education prior to the 2013 loan consolidation.

Additionally, I would like to reference the Higher Education Act, which stipulates that debt collection agencies, such as DMD Financial Services, Inc., are not authorized to be involved in educational loan matters because they do not provide educational products or services."

Your request was forwarded to Federal Student Aid. The Department has identified 1 page, being released in full. After a thorough search, no other responsive records were located.

The pages are available for download via the Public Access Link (PAL). You can access your PAL account, or register for a PAL account, at this link: https://foiaxpress.pal.ed.gov/app/PalLogin.aspx

<u>Fees</u>

There are no fees associated with processing this request.

<u>Additional Assistance</u>

You have the right to seek assistance and/or dispute resolution services from the Department's FOIA Public Liaison or the Office of Government Information Services (OGIS). The FOIA Public Liaison is responsible, among other duties, for assisting in the resolution of FOIA disputes. OGIS, which is outside the Department, offers ombuds services, including dispute resolution, to assist FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Please note, OGIS's assistance does not replace the administrative appeal process described below. You may contact the FOIA Public Liaison or OGIS at:

> FOIA Public Liaison
> Office of the Deputy Secretary
> U.S. Department of Education
> 400 Maryland Ave., SW, LBJ 7W104
> Washington, DC 20202-4500
> Email: robert.wehausen@ed.gov
> Phone: 202-205-0733
> Fax: 202-401-0920

> Office of Government Information Services
> National Archives and Records Administration
> 8601 Adelphi Road, OGIS
> College Park, MD 20740-6001
> Email: OGIS@nara.gov
> Phone: 202-741-5770 or 1-877-684-6448

You have the right to appeal this decision, as well as decisions in any previous interim releases, with the Department by submitting an appeal to the address below, no later than 90

calendar days from the date of this letter. Using the FOIA Public Liaison or OGIS services described above does not affect your right or the deadline to file an appeal. Your appeal must be in writing and must include a detailed statement of all legal and factual bases for the appeal. It should be accompanied by this letter, a copy of your initial letter of request, and any documentation that supports the argument you wish the Department to consider in making an administrative determination on your appeal. You may submit your appeal by:

Mail: Appeals Office
Office of the Deputy Secretary
U.S. Department of Education
400 Maryland Avenue, SW, LBJ 7W104
Washington, DC 20202-4536

Online Form: www.ed.gov/policy/gen/leg/foia/foia-appeal-form.pdf

Email: EDFOIAappeals@ed.gov

Fax: 202-401-0920

Sincerely,

*Sandra Lewandowski*
Government Information Specialist
Office of the Deputy Secretary

3

a consecutive, on-time payment requirement even if the student loan borrower has not made payments monthly during the 12-month period.

"(9) If a student loan borrower or cosigner requests a change in terms that restarts the counting of consecutive, on-time payments required for cosigner release, the private education lender shall notify the student loan borrower and cosigner in writing of the impact of the change and provide the student loan borrower or the cosigner the right to withdraw or reverse the request to avoid that impact.

"(10)(A) A student loan borrower shall have the right to request a reconsideration of a private education lender's denial of a request for cosigner release, and the private education lender shall permit the student loan borrower to submit additional documentation evidencing the borrower's ability to meet the payment obligations.

"(B) The student loan borrower may request review of the cosigner release determination by a different employee than the employee who made the original determination.

"(11)(A) A private education lender shall establish and maintain a comprehensive record-management system ("record-management system") reasonably designed to ensure the accuracy, integrity, and completeness of data and other information about cosigner release applications and compliance with applicable District and federal laws, including the Equal Credit Opportunity Act (15 U.S.C. § 1691 *et seq.*) and the Fair Credit Reporting Act (15 U.S.C. § 1681 *et seq.*).

"(B) The record-management system shall also include the:

"(i) Number of cosigner release applications received;

"(ii) Approval and denial rate; and

"(iii) primary reasons for any denial.

"(c)(1) A private education lender shall provide a cosigner with access to all documents or records related to the cosigned private education loan that are available to the student loan borrower.

"(2) If a private education lender provides electronic access to documents and records for a student loan borrower, it shall provide the equivalent electronic access to the cosigner.

"(3) Upon written notice from the student loan borrower or cosigner, the private education lender may redact or withhold contact information for the student loan borrower and cosigner.

"Sec. 7b-5. Enforcement.

"(a) In addition to complying with the requirements of the New Student Loan Borrower Bill of Rights Amendment Act of 2024, passed on 2nd reading on September 17, 2024 (Enrolled version of Bill 25-37) ("act"), a student loan servicer shall comply with all applicable federal laws relating to student loan servicing, as from time to time amended, and the regulations promulgated pursuant to those federal laws.

12

"(b) A violation of section 7b-1 or 7b-3 is an unfair or deceptive trade practice pursuant to D.C. Official Code § 28-3904.

"(c) Any person who suffers damage as a result of the failure of a student loan servicer or private education lender to comply with sections 7b, 7b-1, 7b-2, 7b-3, 7b-4, or 7b-5(a) may bring an action on their own behalf and on behalf of a similarly situated class of consumers against that student loan servicer or private education lender to recover or obtain:

"(1) Actual damages, but in no case shall the total award of damages be less than $500 per plaintiff, per violation;

"(2) An order enjoining the methods, acts, or practices;

"(3) Restitution of property;

"(4) Punitive damages;

"(5) Attorney's fees; or

"(6) Any other relief that the court considers proper.

"(d) In addition to any other remedies provided by this section or otherwise provided by law, whenever it is proven by a preponderance of the evidence that a student loan servicer or private education lender has engaged in conduct that substantially interferes with a student borrower's right to an alternative payment arrangement, loan forgiveness, cancellation, or discharge, or any other financial benefit, as established under the terms of a student loan borrower's promissory note or under the Higher Education Act of 1965 (20 U.S.C. § 1070a *et seq.*), ("Higher Education Act"), as from time to time amended, and regulations promulgated pursuant to the Higher Education Act, the court shall award treble actual damages to the plaintiff, but in no case shall the award of damages be less than $1,500 per violation.

"(e) The remedies provided in this section are not the exclusive remedies available to a student loan borrower or cosigner, nor must the student loan borrower exhaust any administrative remedies provided in this section or any other applicable law before proceeding pursuant to this section.

"(f) The Attorney General may bring an action for any violation of sections 7b, 7b-1, 7b-2, 7b-3, 7b-4 or 7b-5(a) under the authority granted in § 28-3909.

"(g) The Department shall share information on a quarterly basis related to the implementation, execution, and enforcement of sections 7b, 7b-1, 7b-2, 7b-3, 7b-4 and 7b-5(a) with the Office of the Attorney General.

(e) Section 7c is amended by striking the phrase "sections 7a and 7b." and inserting the phrase "sections 7b, 7b-1, 7b-2, 7b-3, 7b-4 and 7b-5(a)." in its place.

Sec. 3. Conforming amendment.

Section 28-3903 of the District of Columbia Official Code is amended by adding a new subsection (d) to read as follows:

"(d) The Attorney General may bring an action pursuant to section 7b-5(f) of the Department of Insurance and Securities Regulation Establishment Act of 1996, passed on 2nd

13

ENROLLED ORIGINAL

reading on September 17, 2024 (Enrolled version of Bill 25-37) ("act"), for a violation of sections 7b, 7b-1, 7b-2, 7b-3, 7b-4 or 7b-5(a) of the act.

Sec. 4. Applicability.
This act shall apply as of October 1, 2024.

Sec. 5. Fiscal impact statement.
The Council adopts the fiscal impact statement in the committee report as the fiscal impact statement required by section 4a of the General Legislative Procedures Act of 1975, approved October 16, 2006 (120 Stat. 2038; D.C. Official Code § 1-301.47a).

Sec. 6. Effective date.
This act shall take effect following approval by the Mayor (or in the event of veto by the Mayor, action by the Council to override the veto) and a 30-day period of congressional review as provided in section 602(c)(1) of the District of Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(1)).

Chairman
Council of the District of Columbia

Mayor
District of Columbia
APPROVED
OCTOBER 7, 2024

14

# COUNCIL OF THE DISTRICT OF COLUMBIA
## WASHINGTON, DC, 20004

Docket No. B25-0037

[ X ] ITEM ON CONSENT CALENDAR

[ X ] ACTION                               First Reading, CC

[ X ] VOTE DATE                            July 9, 2024

[ ] VOICE VOTE

   RECORDED VOTE ON REQUEST

ABSENT                                     Gray

[ X ] ROLL CALL VOTE - Result             Approved

| Council Member | Aye | Nay | NV | AB | Rec | Council Member | Aye | Nay | NV | AB | Rec | Council Member | Aye | Nay | NV | AB | Rec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chairman Mendelson | X | | | | | Henderson | X | | | | | Pinto | X | | | | |
| Allen | X | | | | | Lewis George | X | | | | | R. White | X | | | | |
| Bonds | X | | | | | McDuffie | X | | | | | T. White | X | | | | |
| Frumin | X | | | | | Nadeau | X | | | | | | | | | | |
| Gray | | | | X | | Parker | X | | | | | | | | | | |

X - Indicate Vote      AB – Absent      NV - Present, Not Voting      Rec - Recused

CERTIFICATION RECORD

_____
Secretary to the Council

9 26 24
Date

---

Docket No. B25-0037

[ X ] ITEM ON CONSENT CALENDAR

[ X ] ACTION                               Final Reading, CC

[ X ] VOTE DATE                            September 17, 2024

[ ] VOICE VOTE

   RECORDED VOTE ON REQUEST

ABSENT                                     Gray

[ X ] ROLL CALL VOTE – Result             Approved

| Council Member | Aye | Nay | NV | AB | Rec | Council Member | Aye | Nay | NV | AB | Rec | Council Member | Aye | Nay | NV | AB | Rec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chairman Mendelson | X | | | | | Henderson | X | | | | | Pinto | X | | | | |
| Allen | X | | | | | Lewis George | X | | | | | R. White | X | | | | |
| Bonds | X | | | | | McDuffie | X | | | | | T. White | X | | | | |
| Frumin | X | | | | | Nadeau | X | | | | | | | | | | |
| Gray | | | | X | | Parker | X | | | | | | | | | | |

X - Indicate Vote      AB – Absent      NV - Present, Not Voting      Rec - Recused

CERTIFICATION RECORD

_____
Secretary to the Council

9 26 24
Date

Ex 5. Original copy of Department of Education Notice of Interpretation these 5 pages addresses how the court shall move forward in any case against loan servicers and its employees who make false statements about inaccurate loan documents which defendant has knowingly engaged in.

# Federal **Student Aid**

*An OFFICE of the U.S. DEPARTMENT of EDUCATION*

Published on https://fsapartners.ed.gov/knowledge-center/library/dear-colleague-letters/2025-01-16/notice-interpretation-regarding-misrepresentations-third-party-service-providers-engaged-institution-higher-education

PUBLICATION DATE: January 16, 2025
DCL ID: GEN-25-01
SUBJECT: Notice of interpretation regarding misrepresentations by third-party service providers engaged by an institution of higher education

SUMMARY: This letter reminds eligible Title IV institutions of their obligations under the Higher Education Act to comply with requirements under section 487(c)(3) and the Department's regulations (subpart F of part 668) pertaining to misrepresentation.

Dear Colleague:

The U.S. Department of Education (Department) is sending this letter to remind eligible *Title IV* institutions (eligible institutions) of their obligations under the Higher Education Act (HEA) to comply with requirements under section 487(c)(3) of the HEA[1] and the Department's regulations (subpart F of part 668) pertaining to misrepresentation. These provisions prohibit an institution from providing false, misleading, or inaccurate information about the nature of its educational program(s), its financial charges, or the employability of its graduates. This letter reminds eligible institutions that such requirements apply with equal force to statements made by a third-party entity engaged by the eligible institution, including but not limited to an Online Program Manager (OPM), and their respective employees, contractors, or representatives (hereinafter "external service provider")[2] ; and that institutions may be responsible for the consequences of any misrepresentation committed by any external service provider that they engage. *See* 34 C.F.R. 668.71.

Consistent with the statutory and regulatory requirements related to misrepresentation, the Department highlights three types of statements that, if made by an eligible institution and/or any external service provider, under certain circumstances discussed further below, are likely to qualify as a misrepresentation:

1. Inaccurately identifying an individual employed by an external servicer provider as being employed by the eligible institution,

2. Inaccurately presenting a sales representative or recruiter employed by an eligible institution or an external service provider as an academic advisor, such as by referring to them as a "counselor," and

3. Describing a program, or any of its components or resources, provided in substantial part by the external service provider as "the same as" a corollary residential or campus-based version of the program provided by the eligible institution.

These three types of statements may result in a finding that an eligible institution has engaged in a substantial misrepresentation and may result in the Department imposing a fine or taking action to limit, suspend, or terminate an institution's access to *Title IV* funds.[3]

Although these examples do not constitute an exhaustive list, the Department is issuing this guidance because the Department has become aware of multiple instances in which eligible institutions or their external service providers have apparently engaged in making these types of statements to misrepresent, allow to be misrepresented, or facilitate the misrepresentation of, aspects of programs offered by the eligible institutions.[4] The Department seeks to remind institutions and their external service providers of their obligations to provide accurate and complete information to prospective and enrolled students in accordance with law, and as further clarified by the examples in this letter.

## Background

Section 487(c)(3) of the HEA authorizes the Secretary to suspend or terminate an institution's or program's eligibility for *Title IV* funds upon finding the institution substantially misrepresented the nature of the institution's educational program, its financial charges, or the employability of its graduates. 20 U.S.C. 1094(c)(3). Subpart F of the Department's *Title IV* regulations define misrepresentation as any "false, erroneous or misleading statement an eligible institution, organization, or person with whom the eligible institution has an agreement to provide education programs, or to provide marketing, advertising, recruiting or admissions services makes directly or indirectly to a student, prospective student or any member of the public[.]" 34 C.F.R.

668.71(c).[5] Misrepresentation "includes any statement that omits information in such a way as to make the statement false, erroneous, or misleading." Id.[6] A "substantial misrepresentation" occurs if the misrepresentation is one "on which the person to whom it was made could reasonably be expected to rely, or has reasonably relied, to that person's detriment." Id.

The Department's longstanding position has been that misrepresentation can occur through acts or omissions that falsely, inaccurately, or misleadingly identify the entity providing a good or service related to the institution's educational program, its financial charges, or the employability of its graduates. For example, since 2010, the Department's misrepresentation regulations have required institutions to provide accurate statements about the source of a program's educational services and characteristics, including statements "made in any advertising, promotional materials, or in the marketing or sale of courses or programs of instruction offered by the institution." See 34 C.F.R. 668.71(b); see also 34 C.F.R. 668.72-74.[7] As another example of the Department reminding institutions of obligations to be accurate in their representations about the source of educational services and characteristics, in DCL GEN-22-07, the Department reminded eligible institutions that they are required by 34 C.F.R. 668.43(a)(12) to attribute accurately the portions of a program provided by the eligible institution itself, as distinct from the portions of a program provided on behalf of the eligible institution by written agreement, often by an external service provider not itself eligible for Title IV participation.

## 1. False or misleading attribution of employment, status, or role with eligible institution

Many eligible institutions arrange for an external service provider to exclusively manage functions of online programs, such as recruitment, advising, and clinical placements. A misrepresentation can occur when an employee of an external service provider inaccurately presents themselves as an employee of the eligible institution in their communications with prospective and enrolled students, including but not limited to circumstances where the external service provider's employees use school-associated email addresses and/or email signatures that represent or imply that the individual is employed by the eligible institution. In addition, a misrepresentation may occur if an employee of an external service provider fails to inform students during phone conversations that they are not, in fact, directly employed by the institution.

Misrepresenting the role of an external service provider in these manners can be deceptive, and the Department is aware of numerous instances of this type of deception reportedly occurring. For example, the Department is aware of instances in which OPM employees, using titles such as "placement specialist," "placement manager," "student success advisor," "student success manager," "student support specialist," "admissions counselor," and "admissions manager," have sent emails to prospective and enrolled students in OPM-provided programs offered by eligible institutions from email addresses that implied institutional employment (@[eligible institution].edu), and do not indicate clearly their affiliation with or employment by the OPM.[8] Depending on the particular facts, the use of such titles or email addresses is likely to contribute to students misunderstanding these employees' roles and relying on information provided by them as if they were institutional employees.

Misrepresenting the role of an external service provider can deprive prospective and enrolled students of the ability to make fully informed decisions about their education and can undermine the effectiveness of the Department's existing regulations. Prospective and enrolled students report that they believe it is important to understand whether they are speaking to an employee of an external service provider rather than an employee of the institution. The status of the person they are talking with affects their evaluation of the services that the institution will provide, allowing students to make better-informed decisions about whether to undertake the significant cost of enrolling.[9]

As another example of how such conduct can undermine the Department's accountability requirements, eligible institutions are required to "make readily available" certain program information to enrolled and prospective students, including information about written arrangements the institution has entered into, to ensure students are aware of an external service provider's particular role in providing the educational programs, the costs incurred, and other key aspects of the program. 20 U.S.C. § 1092(a)(1)(G); 1094(a)(7); 34 C.F.R. 668.43(a)(12). However, a student will not know to request this critical information if an eligible institution or its external service provider either fails to inform a student of the existence of a contracted external service provider or makes false, misleading, or inaccurate representations about the role of the external service provider.

The Department's view that this type of conduct can be deceptive is consistent with other Federal and State consumer protection laws. For example, the Federal Trade Commission (FTC), in its guide for private vocational and distance education schools, 16 C.F.R. part 254, identifies as a deceptive act the misrepresentation that certain individuals are members of the institution or school, 16 C.F.R. 254.4(a)(7), and in its rule on impersonation, 16 C.F.R. Part 461, prohibits falsely posing as government or business entities or officials. In addition, the FTC has filed numerous enforcement actions involving false or unsubstantiated affiliation claims.[10] Under the rules enforced by the FTC, representations are deceptive if necessary, qualifications are not made, if material facts are not disclosed, or if these disclosures or qualifications are confusing or inconspicuous.[11] The touchstone is whether the overall net impression of the representation is deceptive, not its literal truth or falsity. See, e.g., FTC v. Cyberspace.com, L.L.C., 453 F.3d 1196, 1200 (9th Cir. 2006); see also FTC v. Med. Billers Network, Inc., 543 F. Supp. 2d 283, 304 (S.D.N.Y. 2008) (listing cases). "'Deception may be made by innuendo rather than outright false statements,'...and statements can 'create deceptive impression on purchasers even though they may be technically interpreted as true or partially true.'" FTC v. Bay Area Bus. Council, Inc., No. 02 C 5762, 2004 WL 769388, at *10 (N.D. Ill. Apr. 9, 2004), aff'd, 423 F.3d 627 (7th Cir. 2005) (quoting National Bankers Services, Inc. v. FTC, 329 F.2d 365, 367 (7th Cir.1964); L.G. Balfour Co. v. FTC, 442 F.2d 1, 17 (7th Cir.1971)).

These principles also apply to representations about the source of goods and services. For example, in *Waltham Watch Co. v. FTC*, 318 F.2d 28 (7th Cir. 1963), the Court held that a company's advertisements were knowingly false and misleading where it claimed that its products were from a "famous 150-year-old company" without disclosing that the manufacturer of these products had nothing to do with the original company, which had authorized the use of its name under a licensing agreement. *Id.* at 31. *See also Waltham Precision Instrument Co. v. FTC.*, 327 F.2d 427, 431 (7th Cir. 1964) ("Any right petitioners have to use the tradename 'Waltham' does not permit its use in a manner designed to deceive the public, and those who put into the hands of others the means by which they may mislead the public, are themselves guilty of a violation of Section 5 of the Federal Trade Commission Act.") (cleaned up); *Warner-Lambert Co. v. FTC*, 562 F.2d 749, 761 (D.C. Cir. 1977) (where a product has built up a widespread reputation over a period of years, it is false and deceptive to continue advertising on the "strength of the impression" without disclosing material changes to the product.)

Additionally, the Department's enforcement approach is consistent with a number of State rules related to misrepresentation. For example, California's prohibition on unfair, deceptive, unlawful, and unconscionable commercial practices in connection with the sale of educational services to consumers specifically prohibits "passing off goods or services as those of another," "misrepresenting the source...of goods and services," and "misrepresenting the affiliation, connection, or association with another." California Consumer Legal Remedies Act (CLRA), Civil Code 11/70 et seq. As another example, Texas's prohibition on deceptive trade practices specifies that the term "false, misleading, or deceptive acts or practices" includes, but is not limited to "passing off goods or services as those of another," "causing confusion or misunderstanding as to affiliation, connection, or association with, or certification of goods or services," "causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another," and "representing that goods or services have sponsorship, approval, [or] characteristics...which they do not have or that a person has a sponsorship, approval, status, affiliation or connection which the person does not [have]." Tex. Bus. & Com. Code § 17.46. And the District of Columbia's prohibition of unfair and deceptive trade practices prohibits "represent[ing] that the person has a sponsorship, approval, status, affiliation, certification, or connection that the person does not have" and "pass[ing] off goods or services as those of another." District of Columbia Consumer Protection Procedures Act (CPPA), D.C. Code § 28-3904.

## 2. Deceptive or misleading statements about an individual's role in student recruitment

The Department also notes that presenting a sales representative or recruiter as an "academic counselor" or similar position can be deceptive and misleading if it is not an accurate description of their position. For example, the Department is aware of circumstances in which individuals who have been awarded distinction based on their level of "sales" have reportedly described themselves as admission "counselors" of an eligible institution. Such practices create a high risk of misrepresentation since rewarding an individual based on sales indicates that individual's role is not focused on impartially counseling prospective or enrolled students, but rather on securing a financial transaction. The Department's interpretation is consistent with many States' laws. *See, e.g.*, NY Comp Codes R. & Regs, tit. 8, sec. 126.12(e) (BPPS regs) ("Agents shall not identify themselves or be identified as counselors or by other titles which mislead the prospective student"), MA CMR, tit. 940 sec. 31.06(10) ("It is an unfair or deceptive act or practice for a school to refer to salespersons or recruiters as 'counselors' or 'advisors' or to imply that a salesperson or recruiter is an academic adviser or counselor")[12]. The FTC has also charged entities for deceptively claiming to be independent from the programs they advertise or not influenced by compensation received from those programs.[13]

## 3. False or misleading statement creating equivalency or identity between an eligible institution's program provided by an external service provider and a corollary campus-based or residential program

The Department is aware of instances in which the resources available to students enrolled in a program provided by an external service provider are entirely distinct and substantially different from those available to students in a corollary residential program. Such resources can include instructors, curriculum, advisors, placement coordinators, and registrars.

Absent specific evidence of actual parity with respect to each advertised aspect, it is highly likely to be misleading and deceptive to describe a program offered by the external service provider as the same as a campus-based program, or to otherwise imply an equivalent identity between the two if they are not equivalent in substantive ways. Such substantive items include differences in the degrees awarded (including the name of the school and college awarding the degree), the criteria for admissions, or the qualifications of faculty across both programs. Programs may not be equivalent if they have meaningful differences in rates of completion, job placement, earnings, or licensure. Stating that programs are equivalent when there are meaningful differences between them is highly likely to meet the statutory and regulatory definition of a misrepresentation. Institutions should also be clear if the credentials awarded in programs supported by an external servicer provider are different from the credentials students earn in the campus-based version of the program. For example, eligible institutions should be clear if the degree is awarded by an online division or campus of the institution that does or does not certify completion of the same curriculum taught by the same faculty as the campus-based degree.

In sum, eligible institutions and their external service providers are prohibited from providing false, misleading, or inaccurate information about the nature of their educational programs. See 20 U.S.C. 1094(c)(3); 34 CFR Part 668 Subpart F. This prohibition applies equally to circumstances where an institution has arranged for an external service provider to exclusively

manage functions of online programs, such as recruitment, advising, and clinical placements. See 34 C.F.R. 668.71. As set forth in detail above, the Department's interpretation is consistent with the applicable statute and regulations, as well as State consumer protection laws.

## Conclusion

Based on the evidence and support described in this letter, the Department provides these examples to clarify the type of statements made by an eligible institution or its external service provider that are likely to qualify as a misrepresentation under existing law. The Department reminds eligible institutions that they are responsible for statements made by an external service provider that amount to substantial misrepresentation, and that eligible institutions could, as a result, be subject to remedial action such as imposing a fine or limiting the institution's participation in the *Title IV* programs.

If you have any questions or comments, please submit through the <u>Contact Customer Support form</u> link in Federal Student Aid's *Help Center*.

Sincerely,

Nasser Paydar, Ph.D.
Assistant Secretary for Postsecondary Education

---

[1] 20 U.S.C. 1094(c)(3).

[2] The Department's regulations related to substantial misrepresentation apply to statements made by "an eligible institution, **one of its representatives, or any ineligible institution, organization, or person with whom the eligible institution has an agreement to provide educational programs, or to provide marketing, advertising, recruiting or admissions services[.]**" See 34 C.F.R. 668.71(c) (emphasis added).

[3] The Department considers the "totality of the circumstances in which a statement occurred, to determine whether it constitutes a substantial misrepresentation." 81 FR 75926-01, at *75945 (Nov. 1, 2016). While each determination is fact-dependent based on the particular circumstances, this letter clarifies types of statements that have a high risk of qualifying as a substantial misrepresentation because they are likely to be false, erroneous, or have the tendency to mislead prospective and enrolled students, and upon which a prospective or enrolled student would be likely to reasonably rely to their detriment. See 34 C.F.R. 668.71(c) (defining substantial misrepresentation).

[4] See, e.g., "Transcript of Virtual Listening Session," U.S. Department of Education, Office of Postsecondary Education (March 8, 2023), at 41-43, available at https://www.ed.gov/media/document/virlstsesstranscript3823tinpdf [✔]; "Comments from the Legal Aid Community to the U.S. Department of Education," Docket ID ED-2021-OPE-0077 (August 12, 2022), available for download at https://www.regulations.gov/comment/ED-2021-OPE-5337 [✔]; see also, e.g., Luna v. Univ. of Southern California, Case No. 23STCV09981 (Cal. Super. Ct. May 4, 2023) (claiming misrepresentation based, in part, on allegations that employees of the third-party entity contracting with university misrepresented themselves as university employees); Bradford v. George Washington Univ., Case No. 16-858 (D.D.C., May 6, 2026) (claiming misrepresentation based, in part, on allegations that the university's online education program was "substantially identical" to its in-classroom equivalent when the programs was inferior) (dismissed on grounds that plaintiffs' claims were time-barred by statute of limitations).

[5] Although the Department revised its misrepresentation regulations (subpart F of part 668) in 2010 (75 FR 66832), 2016 (81 FR 75926), and 2022 (87 FR 65904), this regulatory definition of "misrepresentation" has remained the same since 2010.

[6] The Department added this clarification to the regulatory definition of misrepresentation in 2016 to make explicit the Department's view that misrepresentations may include omissions, which aligns with its interpretation of the 2010 regulations and longstanding position. See 81 FR at 75949 (explaining that this clarification in the 2016 rules aligned the definition of misrepresentation with the "the Department's long-standing purpose for part 668, subpart F, enforcement actions" and was consistent with enforcement actions taken under the 2010 regulations).

[7] This emphasis and regulatory language appears in the regulations promulgated in 2010 (75 FR 66832), 2016 (81 FR 75926), and 2022 (87 FR 65904). See also notes 4, 5, supra (explaining how the Department's regulations on misrepresentation have retained key definitions and concepts for over a decade).

[8] The Department recognizes that financial aid offices may temporarily use additional contractors to assist with during the busiest financial aid processing periods. Generally, the Department's concern relates to the use of contracted staff for recruitment purposes, when such relationships are not properly disclosed, which could impact a student's ability to make an informed decision, as discussed further below.

[9] See, e.g., "Transcript of Virtual Listening Session," U.S. Department of Education, Office of Postsecondary Education (March 8, 2023), at 41-43, available at https://www.ed.gov/media/document/virlstsesstranscript3823tinpdf [✔]; see also, "Comments from the Legal Aid Community to the U.S. Department of Education," Docket ID ED-2021-OPE-0077 (August 12, 2022), available for download at https://www.regulations.gov/comment/ED-2021-OPE-5337 [✔].

[10] See, e.g., FTC v. Career Educ. Corp., No. 1:19-cv-05739 (N.D. IL., July 9, 2019) (alleging school's lead generators misrepresented that its schools were recommended or endorsed by U.S. military); FTC v. Sunkey Pub'g., Inc., No. 3:18-cv-01444 (N.D. Ala. Sept. 6, 2018) (alleging lead generators misrepresented that schools were recommended or endorsed by U.S. military); FTC v. Capitol Network Distance Learning Programs, LLC, No. 2:16-cv-00350 (D. Ariz., Feb. 8, 2016) (misrepresenting that defendants were accredited by an independent, third-party accrediting body independent from defendants' online schools); FTC v. Stepping Stonez Dev., LLC, No. 2:16-cv-00351 (D. Ariz., Feb. 8, 2016) (same); FTC v. Diversified Educ. Ress., LLC (Jefferson High School Online), No. 14-cv-62119 (S.D. Fla., Sept. 16, 2014) (alleging diploma mill misrepresented that it was accredited by an independent, third party accrediting body).

[11] See Federal Trade Commission Policy Statement on Deception, appended to Cliffdale Assocs., Inc., 103 F.T.C. 110, 174-83 (1984).

[12] The Department observes that there are additional legal reasons why an individual employed by an external service provider that engages in recruitment under a revenue-sharing bundled services arrangement could not represent themselves as an admissions counselor to prospective or enrolled students. Per governing statutory and regulatory law, and consistent with DCL GEN-11-05, the Department views the incentive compensation ban as prohibiting revenue-sharing for recruitment unless the external service provider provides a bundle of services and certain conditions are met, including that the eligible institution determines admission and program enrollment independent of the external service provider. See DCL GEN-11-05; see also 20 U.S.C. § 1094(a)(20); 34 C.F.R. § 668.14(b) (22). Under the type of permitted bundled services arrangement, to maintain the necessary level of independence, an eligible institution cannot contract out to the external service provider the counseling function, and hence also cannot allow employees of an external service provider to represent themselves as counselors.

[13] See, e.g., In re Shop Tutors, Inc. (LendEDU), No. 182 3180 (May 26, 2020) (alleging that student loan website misrepresented that its rankings and ratings of student loan companies was not influenced by compensation from those companies); In re Victory Media, Inc., No. 162-3210 (Jan. 12, 2018) (alleging that respondent's website promoting for-profit colleges misrepresented that it promoted those schools based on them being "military friendly," and also misrepresented that respondent's endorsements were independent, when respondent was paid by schools listed); FTC v. Expand, Inc. (Digsta), No. 6:16-cv-00714-CEM-TBS (M.D. Fla., Apr. 27, 2016) (alleging lead generator misrepresented that its employees were "independent" educational advisors, when it only recommended schools or programs that agreed to pay it for leads).

- **FEDERAL DIRECT STUDENT LOAN PROGRAM,** 20 U.S.C. §§ 1087a et seq.; 34 C.F.R. Part 685.

- **FEDERAL PERKINS LOAN PROGRAM,** 20 U.S.C. §§ 1087aa et seq.; 34 C.F.R. Part 674.

- **FEDERAL SUPPLEMENTAL EDUCATIONAL OPPORTUNITY GRANT PROGRAM,** 20 U.S.C. §§ 1070b et seq.; 34 C.F.R. Part 676.

- **FEDERAL WORK-STUDY PROGRAM,** 20 U.S.C. §§ 1087 et seq.; 34 C.F.R. Part 675.

- **IRAQ AND AFGHANISTAN SERVICE GRANT,** §§ 1070h et seq.

# GENERAL TERMS AND CONDITIONS

1. The Institution understands and agrees that it is subject to and will comply with, as they become effective, the program statutes and implementing regulations for institutional eligibility as set forth in 34 C.F.R. Part 600 and for each Title IV, HEA program in which it participates, as well as the general provisions set forth in Part F and Part G of Title IV of the HEA, and the Student Assistance General Provisions regulations set forth in 34 C.F.R. Part 668.

   *The recitation of any portion of the statute or regulations in this Agreement does not limit the Institution's obligation to comply with other applicable statutes and regulations.*

2. 
   a. The Institution certifies that on the date it signs this Agreement, it has adopted and implemented the drug prevention program described in 34 C.F.R. § 86.100.
   b. The Institution certifies that on the date it signs this Agreement, it is in compliance with the disclosure requirements of Section 485(f) of the HEA (Campus Security Policy and Campus Crime Statistics).

3. The Institution agrees to comply with --
   a. Title VI of the Civil Rights Act of 1964, as amended, and the implementing regulations, 34 C.F.R. Parts 100 and 101 (nondiscrimination on the basis of race, color or national origin);
   b. Title IX of the Education Amendments of 1972 and the implementing regulations, 34 C.F.R. Part 106 (nondiscrimination on the basis of sex);
   c. The Family Educational Rights and Privacy Act of 1974 and the implementing regulations, 34 C.F.R. Part 99;
   d. Section 504 of the Rehabilitation Act of 1973 and the implementing regulations, 34 C.F.R. Part 104 (nondiscrimination on the basis of disability); and
   e. The Age Discrimination Act of 1975 and the implementing regulations, 34 C.F.R. Part 110.
   f. The Standards for Safeguarding Customer Information, 16 C.F.R. Part 314, issued by the Federal Trade Commission (FTC), as required by the Gramm-Leach-Bliley (GLB) Act, P.L. 106-102. These Standards are intended to ensure the security and confidentiality of customer records and information. The Secretary considers any breach to the security of student records and information as a demonstration of a potential lack of administrative capability as stated in 34 C.F.R. § 668.16(c).

Institutions are strongly encouraged to inform its students of any such breaches. Institutions are required, pursuant to the Student Aid Internet Gateway (SAIG) Agreement, to notify the Department of any suspected data breaches.

4. The Institution acknowledges that 34 C.F.R. Parts 602 and 668 require accrediting agencies, State regulatory bodies, and the Secretary to share information about institutions. The Institution agrees that the Secretary, any accrediting agency recognized by the Secretary, and any State regulatory body may share or report information to one another about the Institution without limitation.

5. The Institution acknowledges that the HEA prohibits the Secretary from recognizing the accreditation of any institution of higher education unless that institution agrees to submit any dispute involving an adverse action, such as the final denial, withdrawal, or termination of accreditation to arbitration prior to initiating any other legal action.

6. The Institution acknowledges that the Department is obligated to take appropriate measures in order to safeguard its systems and information as well as borrowers' personally identifiable information (PII) as required under Federal law, including but not limited to the requirements in the Privacy Act (*see* 5 U.S.C. § 552a(e)), E-Government Act of 2002 (*see* 44 U.S.C. § 3544), the Family Educational Rights and Privacy Act of 1974 (FERPA) (20 U.S.C. § 1232g; 34 C.F.R. Part 99), Federal Information Security Modernization Act (FISMA) of 2014 (44 U.S.C. § 3551, *et seq.*), and OMB Circular No. A-130. If the Institution has a cyber security incident that may negatively affect the Department's systems, the Department may terminate the Institution's access to the Department's systems. Access will be reconnected when the Department determines that the Institution has resolved any cyber security concerns and vulnerabilities to the Department's satisfaction.

7. The Institution acknowledges that any person who knowingly and willfully commits, or attempts to commit, any criminal action described in 20 U.S.C. § 1097, shall be subject to the penalties described therein.

# SELECTED PROVISIONS FROM
# GENERAL PROVISIONS REGULATIONS, 34 C.F.R. § 668.14

An institution's program participation agreement applies to each branch campus and other location of the institution that meets the applicable requirements of this part unless otherwise specified by the Secretary.
(b) By entering into a program participation agreement, an institution agrees that—
(1) It will comply with all statutory provisions of or applicable to Title IV of the HEA, all applicable regulatory provisions prescribed under that statutory authority, and all applicable special arrangements, agreements, and limitations entered into under the authority of statutes applicable to Title IV of the HEA, including the requirement that the institution will use funds it receives under any Title IV, HEA program and any interest or other earnings thereon, solely for the purposes specified in and in accordance with that program;
(2) As a fiduciary responsible for administering Federal funds, if the institution is permitted to request funds under a Title IV, HEA program advance payment method, the institution will time its requests for funds under the program to meet the institution's immediate Title IV, HEA program needs;
(3) It will not request from or charge any student a fee for processing or handling any application, form, or data required to determine a student's eligibility for, and amount of, Title IV, HEA program assistance;
(4) It will establish and maintain such administrative and fiscal procedures and records as may be necessary to ensure proper and efficient administration of funds received from the Secretary or from students under the Title IV, HEA programs, together with assurances that the institution will provide, upon request and in a

timely manner, information relating to the administrative capability and financial responsibility of the institution to--

(i) The Secretary;

(ii) A guaranty agency, as defined in 34 C.F.R. Part 682, that guarantees loans made under the Federal Stafford Loan and Federal PLUS programs for attendance at the institution or any of the institution's branch campuses or other locations;

(iii) The nationally recognized accrediting agency that accredits or preaccredits the institution or any of the institution's branch campuses, other locations, or educational programs;

(iv) The State agency that legally authorizes the institution and any branch campus or other location of the institution to provide postsecondary education; and

(v) In the case of a public postsecondary vocational educational institution that is approved by a State agency recognized for the approval of public postsecondary vocational education, that State agency;

(5) It will comply with the provisions of subpart L of this part relating to factors of financial responsibility;

(6) It will comply with the provisions of 34 C.F.R. § 668.16 relating to standards of administrative capability;

(7) It will submit reports to the Secretary and, in the case of an institution participating in the Federal Stafford Loan, Federal PLUS, or the Federal Perkins Loan Program, to holders of loans made to the institution's students under that program at such times and containing such information as the Secretary may reasonably require to carry out the purpose of the Title IV, HEA programs;

(8) It will not provide any statement to any student or certification to any lender in the case of an FFEL Program loan, or origination record to the Secretary in the case of a Direct Loan Program loan that qualifies the student or parent for a loan or loans in excess of the amount that the student or parent is eligible to borrow in accordance with sections 425(a), 428(a)(2), 428(b)(1)(A) and (B), 428B, 428H, and 455(a) of the HEA;

(9) It will comply with the requirements of Subpart D of this part concerning institutional and financial assistance information for students and prospective students;

(10) In the case of an institution that advertises job placement rates as a means of attracting students to enroll in the institution, the institution will make available to prospective students, at or before the time that those students apply for enrollment--

(i) The most recent available data concerning employment statistics, graduation statistics, and any other information necessary to substantiate the truthfulness of the advertisements; and

(ii) Relevant State licensing requirements of the State in which the institution is located for any job for which the course of instruction is designed to prepare such prospective students, as provided in 34 C.F.R. § 668.43(a)(5)(v);

(11) In the case of an institution participating in the FFEL Program, the institution will inform all eligible borrowers, as defined in 34 C.F.R. Part 682, enrolled in the institution about the availability and eligibility of those borrowers for State grant assistance from the State in which the institution is located, and will inform borrowers from another State of the source of further information concerning State grant assistance from that State;

(12) It will provide the certifications described in paragraph (c) of this section;

(13) In the case of an institution whose students receive financial assistance pursuant to section 484(d) of the HEA, the institution will make available to those students a program proven successful in assisting students in obtaining the recognized equivalent of a high school diploma;

(14) It will not deny any form of Federal financial aid to any eligible student solely on the grounds that the student is participating in a program of study abroad approved for credit by the institution;

(15) (i) Except as provided under paragraph (b)(15)(ii) of this section, the institution will use a default management plan approved by the Secretary with regard to its administration of the FFEL or Direct Loan programs, or both for at least the first two years of its participation in those programs, if the institution --

(A) Is participating in the FFEL or Direct Loan programs for the first time; or

(B) Is an institution that has undergone a change of ownership that results in a change in control and is participating in the FFEL or Direct Loan programs.

(ii) The institution does not have to use an approved default management plan if --

(A) The institution, including its main campus and any branch campus, does not have a cohort default rate in excess of 10 percent; and

(B) The owner of the institution does not own and has not owned any other institution that had a cohort

default rate in excess of 10 percent while that owner owned the institution.

(16) For a proprietary institution, the institution will derive at least 10 percent of its revenues for each fiscal year from sources other than Federal funds, as provided in 34 C.F.R. § 668.28(a), or be subject to sanctions described in 34 C.F.R. § 668.28(c);

(17) The Secretary, guaranty agencies, and lenders as defined in 34 C.F.R. part 682, nationally recognized accrediting agencies, Federal agencies, State agencies recognized under 34 C.F.R. Part 603 for the approval of public postsecondary vocational education, State agencies that legally authorize institutions and branch campuses or other locations of institutions to provide postsecondary education, and State attorneys general have the authority to share with each other any information pertaining to the institution's eligibility for or participation in the Title IV, HEA programs or any information on fraud, abuse, or other violations of law;

(18) It will not knowingly --

(i) Employ in a capacity that involves the administration of the Title IV, HEA programs or the receipt of funds under those programs, an individual who has been:

(A) Convicted of, or has pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds;

(B) Administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(C) An owner, director, officer, or employee who exercised substantial control over an institution, or a direct or indirect parent entity of an institution, that owes a liability for a violation of a title IV, HEA program requirement and is not making payments in accordance with an agreement to repay that liability; or

(D) A ten-percent-or-higher equity owner, director, officer, principal, executive, or contractor at an institution in any year in which the institution incurred a loss of Federal funds in excess of 5 percent of the participating institution's annual title IV, HEA program funds; or

(ii) Contract with any institution, third-party servicer, individual, agency, or organization that has, or whose owners, officers or employees have--

(A) Been convicted of, or pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds;

(B) Been administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(C) Had its participation in the title IV programs terminated, certification revoked, or application for certification or recertification for participation in the title IV programs denied;

(D) Been an owner, director, officer, or employee who exercised substantial control over an institution, or a direct or indirect parent entity of an institution, that owes a liability for a violation of a title IV, HEA program requirement and is not making payments in accordance with an agreement to repay that liability; or

(E) Been a 10 percent-or-higher equity owner, director, officer, principal, executive, or contractor affiliated with another institution in any year in which the other institution incurred a loss of Federal funds in excess of 5 percent of the participating institution's annual title IV, HEA program funds;

(19) It will complete, in a timely manner and to the satisfaction of the Secretary, surveys conducted as a part of the Integrated Postsecondary Education Data System (IPEDS) or any other Federal collection effort, as designated by the Secretary, regarding data on postsecondary institutions;

(20) In the case of an institution that is co-educational and has an intercollegiate athletic program, it will comply with the provisions of 34 C.F.R. § 668.48;

(21) It will not impose any penalty, including, but not limited to, the assessment of late fees, the denial of access to classes, libraries, or other institutional facilities, or the requirement that the student borrow additional funds for which interest or other charges are assessed, on any student because of the student's inability to meet his or her financial obligations to the institution as a result of the delayed disbursement of the proceeds of a Title IV, HEA program loan due to compliance with statutory and regulatory requirements of or applicable to the Title IV, HEA programs, or delays attributable to the institution;

(22) (i) It will not provide any commission, bonus, or other incentive payment based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid, to any person or entity who is engaged in any student recruitment or admission activity, or in making decisions regarding the award of Title IV, HEA program funds.(A) The restrictions in paragraph (b)(22) of this section do not apply to the recruitment of foreign students residing in foreign countries who are not eligible to receive Federal student

assistance.

(B) For the purpose of paragraph (b)(22) of this section, an employee who receives multiple adjustments to compensation in a calendar year and is engaged in any student enrollment or admission activity or in making decisions regarding the award of Title IV, HEA program funds is considered to have received such adjustments based upon success in securing enrollments or the award of financial aid if those adjustments create compensation that is based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid.

(ii) Notwithstanding paragraph (b)(22)(i) of this section, eligible institutions, organizations that are contractors to eligible institutions, and other entities may make—

(A) Merit-based adjustments to employee compensation provided that such adjustments are not based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid; and

(B) Profit-sharing payments so long as such payments are not provided to any person or entity engaged in student recruitment or admission activity or in making decisions regarding the award of Title IV, HEA program funds.

(iii) As used in paragraph (b)(22) of this section,

(A) *Commission, bonus, or other incentive payment* means a sum of money or something of value, other than a fixed salary or wages, paid to or given to a person or an entity for services rendered.

(B) *Securing enrollments or the award of financial aid* means activities that a person or entity engages in at any point in time through completion of an educational program for the purpose of the admission or matriculation of students for any period of time or the award of financial aid to students.

(1) These activities include contact in any form with a prospective student, such as, but not limited to—contact through preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution, attendance at such an appointment, or involvement in a prospective student's signing of an enrollment agreement or financial aid application.

(2) These activities do not include making a payment to a third party for the provision of student contact information for prospective students provided that such payment is not based on—

(i) Any additional conduct or action by the third party or the prospective students, such as participation in preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution or attendance at such an appointment, or the signing, or being involved in the signing, of a prospective student's enrollment agreement or financial aid application; or

(ii) The number of students (calculated at any point in time of an educational program) who apply for enrollment, are awarded financial aid, or are enrolled for any period of time, including through completion of an educational program.

(C) *Entity or person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid* means—

(1) With respect to an entity engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any institution or organization that undertakes the recruiting or the admitting of students or that makes decisions about and awards Title IV, HEA program funds; and

(2) With respect to a person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any employee who undertakes recruiting or admitting of students or who makes decisions about and awards Title IV, HEA program funds, and any higher level employee with responsibility for recruitment or admission of students, or making decisions about awarding Title IV, HEA program funds.

(D) *Enrollment* means the admission or matriculation of a student into an eligible institution.

(23) It will meet the requirements established pursuant to Part H of Title IV of the HEA by the Secretary and nationally recognized accrediting agencies;

(24) It will comply with the requirements of 34 C.F.R. § 668.22;

(25) It is liable for all--

(i) Improperly spent or unspent funds received under the Title IV, HEA programs, including any funds administered by a third-party servicer; and

(ii) Returns of Title IV, HEA program funds that the institution or its servicer may be required to make;

(26) If an educational program offered by the institution on or after July 1, 2024, is required to prepare a student for gainful employment in a recognized occupation, the institution must—

(i) Establish the need for the training for the student to obtain employment in the recognized occupation for which the program prepares the student; and

(ii) Demonstrate a reasonable relationship between the length of the program and the entry level requirements for the recognized occupation for which the program prepares the student by limiting the number of hours in the program to the greater of—

(A) The required minimum number of clock hours, credit hours, or the equivalent required for training in the recognized occupation for which the program prepares the student, as established by the State in which the institution is located, if the State has established such a requirement or as established by any Federal agency; or

(B) Another State's required minimum number of clock hours, credit hours, or the equivalent required for training in the recognized occupation for which the program prepares the student, if the institution documents, with substantiation by a certified public accountant who prepares the institution's compliance audit report as required under §668.23 that—

*(1)* A majority of students resided in that State while enrolled in the program during the most recently completed award year;

*(2)* A majority of students who completed the program in the most recently completed award year were employed in that State; or

*(3)* The other State is part of the same metropolitan statistical area as the institution's home State and a majority of students, upon enrollment in the program during the most recently completed award year, stated in writing that they intended to work in that other State; and

(iii) Notwithstanding paragraph (a)(26)(ii) of this section, the program length limitation does not apply for occupations where the State entry level requirements include the completion of an associate or higher-level degree; or where the program is delivered entirely through distance education or correspondence courses;

(27) In the case of an institution participating in a Title IV, HEA loan program, the institution -- (i) Will develop, publish, administer, and enforce a code of conduct with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs in accordance with 34 C.F.R. § 601.21; and (ii) Must inform its officers, employees, and agents with responsibilities with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs annually of the provisions of the code required under paragraph (b)(27) of this section;

(28) For any year in which the institution has a preferred lender arrangement (as defined in 34 C.F.R. § 601.2(b)), it will at least annually compile, maintain, and make available for students attending the institution, and the families of such students, a list in print or other medium, of the specific lenders for loans made, insured, or guaranteed under Title IV of the HEA or private education loans that the institution recommends, promotes, or endorses in accordance with such preferred lender arrangement. In making such a list, the institution must comply with the requirements in 34 C.F.R. § 682.212(h) and 34 C.F.R. § 601.10;

(29) (i) It will, upon the request of an enrolled or admitted student who is an applicant for a private education loan (as defined in 34 C.F.R. § 601.2(b)), provide to the applicant the self-certification form required under 34 C.F.R. § 601.11(d) and the information required to complete the form, to the extent the institution possesses such information, including -- (A) The applicant's cost of attendance at the institution, as determined by the institution under part F of Title IV of the HEA;

(B) The applicant's estimated financial assistance, including amounts of financial assistance used to replace the expected family contribution as determined by the institution in accordance with Title IV, for students who have completed the Free Application for Federal Student Aid; and (C) The difference between the amounts under paragraphs (b)(29)(i)(A) and (29)(i)(B) of this section, as applicable. (ii) It will, upon the request of the applicant, discuss with the applicant the availability of Federal, State, and institutional student financial aid;

(30) The institution --

(i) Has developed and implemented written plans to effectively combat the unauthorized distribution of copyrighted material by users of the institution's network, without unduly interfering with educational and research use of the network, that include --

(A) The use of one or more technology-based deterrents;

(B) Mechanisms for educating and informing its community about appropriate versus inappropriate use of copyrighted material, including that described in 34 C.F.R. § 668.43(a)(10);

(C) Procedures for handling unauthorized distribution of copyrighted material, including disciplinary procedures; and

(D) Procedures for periodically reviewing the effectiveness of the plans to combat the unauthorized distribution of copyrighted materials by users of the institution's network using relevant assessment criteria. No particular technology measures are favored or required for inclusion in an institution's plans, and each institution retains the authority to determine what its particular plans for compliance with paragraph (b)(30) of this section will be, including those that prohibit content monitoring; and

(ii) Will, in consultation with the chief technology officer or other designated officer of the institution--

(A) Periodically review the legal alternatives for downloading or otherwise acquiring copyrighted material;

(B) Make available the results of the review in paragraph (b)(30)(ii)(A) of this section to its students through a Web site or other means; and

(C) To the extent practicable, offer legal alternatives for downloading or otherwise acquiring copyrighted material, as determined by the institution;

(31) The institution will submit a teach-out plan to its accrediting agency in compliance with 34 C.F.R. § 602.24(c) and the standards of the institution's accrediting agency. The institution will update its teach-out plan upon the occurrence of any of the following events:

(i) The Secretary initiates the limitation, suspension, or termination of the participation of an institution in any Title IV, HEA program under 34 C.F.R. § 600.41 or subpart G of this part or initiates an emergency action under 34 C.F.R. § 668.83.

(ii) The institution's accrediting agency acts to withdraw, terminate, or suspend the accreditation or preaccreditation of the institution.

(iii) The institution's State licensing or authorizing agency revokes the institution's license or legal authorization to provide an educational program.

(iv) The institution intends to close a location that provides 100 percent of at least one program.

(v) The institution otherwise intends to cease operations;

(32) In each State in which: the institution is located; students enrolled by the institution in distance education or correspondence courses are located, as determined at the time of initial enrollment in accordance with 34 CFR 600.9(c)(2); or for the purposes of paragraphs (b)(32)(i) and (ii) of this section, each student who enrolls in a program on or after July 1, 2024, and attests that they intend to seek employment, the institution must determine that each program eligible for title IV, HEA program funds—

(i) Is programmatically accredited if the State or a Federal agency requires such accreditation, including as a condition for employment in the occupation for which the program prepares the student, or is programmatically pre-accredited when programmatic pre-accreditation is sufficient according to the State or Federal agency;

(ii) Satisfies the applicable educational requirements for professional licensure or certification requirements in the State so that a student who enrolls in the program, and seeks employment in that State after completing the program, qualifies to take any licensure or certification exam that is needed for the student to practice or find employment in an occupation that the program prepares students to enter; and

(iii) Complies with all State laws related to closure, including record retention, teach-out plans or agreements, and tuition recovery funds or surety bonds;

(33) It will not withhold official transcripts or take any other negative action against a student related to a balance owed by the student that resulted from an error in the institution's administration of the title IV, HEA programs, or any fraud or misconduct by the institution or its personnel;

(34) Upon request by a student, the institution will provide an official transcript that includes all the credit or clock hours for payment periods—

(i) In which the student received title IV, HEA funds; and

(ii) For which all institutional charges were paid or included in an agreement to pay at the time the request is made; and

(35) It will not maintain policies and procedures to encourage, or that condition institutional aid or other student benefits in a manner that induces, a student to limit the amount of Federal student aid, including Federal loan funds, that the student receives, except that the institution may provide a scholarship on the condition that a student forego borrowing if the amount of the scholarship provided is equal to or greater than the amount of Federal loan funds that the student agrees not to borrow.

(c) In order to participate in any Title IV, HEA program (other than the LEAP and NEISP programs), the institution must certify that it--

(1) Has in operation a drug abuse prevention program that the institution has determined to be accessible to any officer, employee, or student at the institution; and

(2) (i) Has established a campus security policy in accordance with section 485(f) of the HEA; and

(ii) Has complied with the disclosure requirements of 34 C.F.R. § 668.47 as required by section 485(f) of the HEA.

(d) (1) The institution, if located in a State to which section 4(b) of the National Voter Registration Act (42 U.S.C. 1973gg-2(b)) does not apply, will make a good faith effort to distribute a mail voter registration form, requested and received from the State, to each student enrolled in a degree or certificate program and physically in attendance at the institution, and to make those forms widely available to students at the institution.

(2) The institution must request the forms from the State 120 days prior to the deadline for registering to vote within the State. If an institution has not received a sufficient quantity of forms to fulfill this section from the State within 60 days prior to the deadline for registering to vote in the State, the institution is not liable for not meeting the requirements of this section during that election year.

(3) This paragraph applies to elections as defined in Section 301(1) of the Federal Election Campaign Act of 1971 (2 U.S.C. 431(1)), and includes the election for Governor or other chief executive within such State.

...

(h) (1) A program participation agreement becomes effective on the date that the Secretary signs the agreement.

(2) A new program participation agreement supersedes any prior program participation agreement between the Secretary and the institution.

(i) (1) Except as provided in paragraphs (g) and (h) of this section, the Secretary terminates a program participation agreement through the proceedings in subpart G of this part.   (2) An institution may terminate a program participation agreement.

(3) If the Secretary or the institution terminates a program participation agreement under paragraph (f) of this section, the Secretary establishes the termination date.

(j) An institution's program participation agreement automatically expires on the date that--

(l) The institution changes ownership that results in a change in control as determined by the Secretary under 34 C.F.R. Part 600; or

(2) The institution's participation ends under the provisions of 34 C.F.R. § 668.26(a)(1), (2), (4), or (7).

(k) An institution's program participation agreement no longer applies to or covers a location of the institution as of the date on which that location ceases to be a part of the participating institution.

## WILLIAM D. FORD FEDERAL DIRECT LOAN PROGRAM

If an institution participates in the William D. Ford Federal Direct Loan (Direct Loan) Program, the institution and its representatives shall comply with, as they become effective, the statute, guidelines, and regulations governing the Title IV, Part D, William D. Ford Federal Direct Loan Program as required by 20 U.S.C. §§ 1087a *et seq.* (Part C) and 34 C.F.R. Part 685.

The institution will:

1. Provide for the establishment and maintenance of a Direct Loan Program at the institution under which the institution will:

   Identify eligible students who seek student financial assistance in accordance with Section 484 of the HEA.

   Estimate the need of students as required under Title IV, Part F of the HEA.

Provide a certification statement of eligibility for students to receive loans that will not exceed the annual or aggregate limits, except the institution may exercise its authority, under exceptional circumstances identified by the Secretary, to refuse to certify a statement that permits a student to receive a loan, or certify a loan amount that is less than the student's determination of need, if the reason for such action is documented and provided in written form to a student.

Establish a schedule for disbursement of loan proceeds to meet the requirements of Section 428G of the HEA.

Reconcile institutional records with receipt and disbursement records on at least a monthly basis.

Provide timely and accurate information to the Secretary concerning 1) the status of students while in attendance, 2) any new information pertaining to student or parent borrowers of which the institution becomes aware after the student leaves the institution, and 3) student eligibility and need for Federal funds under Title IV, Part D of the HEA, at such times and in such manner as prescribed by the Secretary.

2. Comply with requirements established by the Secretary relating to student loan information with respect to the Direct Loan Program.

3. Implement a quality assurance system, as established by the Secretary and developed in consultation with institutions of higher education, to ensure that the institution is complying with program requirements and meeting program objectives.

4. Not charge any fees of any kind, regardless of how they are described, to student or parent borrowers for loan application, or origination activities (if applicable), or the provision and processing of any information necessary for a student or parent to receive a loan under Title IV, Part D of the HEA.

5. Comply with the provisions regarding student claims and disputes of 34 C.F.R. § 685.300(d) (borrower defense claims in an internal dispute process), (e) (class action bans), (f) (pre-dispute arbitration agreements), (g) (submission of arbitral records), (h) (submission of judicial records), and (i) (definitions).

6. Originate loans to eligible students and parents in accordance with the requirements of Title IV, Part D of the HEA and use funds advanced to it solely for that purpose.

7. Provide that the note or evidence of obligation of the loan shall be the property of the Secretary.

8. Comply with other provisions that the Secretary determines are necessary to protect the interests of the United States and to promote the purposes of Title IV, Part D of the HEA.

9. Accept responsibility and financial liability stemming from its failure to perform its functions under this Program Participation Agreement.

10. Accept responsibility and financial liability stemming from losses incurred by the Secretary for repayment of amounts discharged by the Secretary pursuant to 34 C.F.R. §§ 685.206, 685.214, 685.215, 685.216, and 685.222.

## CERTIFICATIONS REQUIRED FROM INSTITUTIONS

The Institution should refer to the regulations cited below. Signature on this Agreement provides for compliance with, as they become effective, the certification requirements under 34 C.F.R. Part 82, "New Restrictions on Lobbying," 34 C.F.R. Part 84, "Governmentwide Requirements for Drug-Free Workplace (Financial Assistance), 2 C.F.R. Part 180, Subpart C, "OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement)," 2 C.F.R. Part 3485, "Nonprocurement Debarment and Suspension," and 34 C.F.R. Part 86, "Drug and Alcohol Abuse Prevention." Breach of any of these certifications constitutes a breach of this Agreement.

# PART 1    CERTIFICATION REGARDING LOBBYING; DRUG-FREE WORKPLACE; DEBARMENT, SUSPENSION AND OTHER RESPONSIBILITY MATTERS; AND DRUG AND ALCOHOL ABUSE PREVENTION

## *1. Lobbying*

As required by Section 1352, Title 31 of the U.S. Code, and implemented at 34 C.F.R. Part 82, for persons entering into a Federal contract, grant or cooperative agreement over $100,000, as defined at 34 C.F.R. Part 82, §§ 82.105 and 82.110, the undersigned certifies, to the best of his or her knowledge and belief, that:

(1) No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

(2) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan, or cooperative agreement, the undersigned shall complete and submit Standard Form - LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3) The Institution shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subcontracts, subgrants and contracts under grants, loans, and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

## *2a. Drug-Free Workplace (Grantees Other Than Individuals)*

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart B, for recipients other than individuals, as defined at 34 C.F.R. Part 84, §§ 84.200 through 84.230 - The Institution certifies that it will or will continue to provide a drug-free workplace by:

(a) Publishing a drug-free workplace statement notifying employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in the grantee's

Page 11 of 18

workplace and specifying the actions that will be taken against employees for violation of such prohibition;

(b) Establishing an on-going drug-free awareness program to inform employees about

(1) The dangers of drug abuse in the workplace;

(2) The Institution's policy of maintaining a drug-free workplace;

(3) Any available drug counseling, rehabilitation, and employee assistance programs; and

(4) The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

(c) Making it a requirement that each employee to be engaged in the performance of the grant be given a copy of the statement required by paragraph (a)

(d) Notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the grant, the employee will -

(1) Abide by the terms of the statement, and

(2) Notify the employer in writing if he or she is convicted for a violation of a criminal drug statute occurring in the workplace no more than five calendar days after such conviction;

(e) Notifying the agency, in writing, within 10 calendar days after receiving notice under this subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction. Employers of convicted employees must provide notice, including position title, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant;

(f) Taking one of the following actions, within 30 calendar days of receiving notice under subparagraph (d)(2), with respect to any employee who is so convicted -

(1) Taking appropriate personnel action against such an employee, up to and including termination, consistent with the requirements of the Rehabilitation Act of 1972, as amended; or

(2) Requiring such employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency;

(g) Making a good faith effort to continue to maintain a drug-free workplace through implementation of paragraphs (a), (b), (c), (d), (e), and (f).

### *2b. Drug-Free Workplace (Grantees Who Are Individuals)*

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart C, for recipients who are individuals, as defined at 34 C.F.R. Part 84, § 84.300 -

1. As a condition of the grant, the Institution certifies that it will not engage in the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance in conducting any activity related to the award; and

2. If any officer or owner of the Institution is convicted of a criminal drug offense resulting from a violation occurring during the conduct of any award activity, the Institution will report the conviction, in writing, within 10 calendar days of the conviction, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant.

### 3. Debarment, Suspension, and Other Responsibility Matters

As required by Executive Order 12549, Debarment and Suspension, and implemented at 2 C.F.R. Part 180, for prospective participants in primary covered transactions as defined at 2 C.F.R. Part 180, §§ 180.200 and 180.210, the Institution certifies that it and its principals (per 2 C.F.R. § 180.335):

(a) Are not presently debarred, suspended, proposed for debarment, voluntarily excluded, or disqualified;
(b) Have not within a three-year period preceding this application been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction; violation of Federal or State antitrust statutes, including those proscribing price fixing between competitors, allocation of customers between competitors, and bid rigging; commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, receiving stolen property, making false claims, or obstruction of justice; or commission of any other offense indicating a lack of business integrity or business honesty that seriously and directly affects their present responsibility.
(c) Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State, or local) with commission of any of the offenses enumerated in paragraph (b) of this certification; and
(d) Have not within a three-year period preceding this application had one or more public transactions (Federal, State, or local) terminated for cause or default.

### 4. Drug and Alcohol Abuse Prevention

As required by the Drug-Free Schools and Communities Act Amendments of 1989, which added section 1213 to the Higher Education Act, and implemented at 34 C.F.R. Part 86, the undersigned Institution certifies that it has adopted and implemented a drug prevention program for its students and employees that, at a minimum, includes--

1. The annual distribution in writing to each employee, and to each student who is taking one or more classes for any kind of academic credit except for continuing education units, regardless of the length of the student's program of study, of:

   • Standards of conduct that clearly prohibit, at a minimum, the unlawful possession, use, or distribution of illicit drugs and alcohol by students and employees on its property or as part of any of its activities.
   • A description of the applicable legal sanctions under local, State, or Federal law for the unlawful possession or distribution of illicit drugs and alcohol.
   • A description of the health risks associated with the use of illicit drugs and the abuse of alcohol.
   • A description of any drug or alcohol counseling, treatment, or rehabilitation or re-entry programs that are available to employees or students.

   A clear statement that the Institution will impose disciplinary sanctions on students and employees (consistent with local, State, and Federal law), and a description of those sanctions, up to and including expulsion or termination of employment and referral for prosecution, for violation of the standards of conduct. A disciplinary sanction may include the completion of an appropriate rehabilitation program.

2. A biennial review by the Institution of its program to:

Page 13 of 18

Case 1:25-cv-00221-RC  Document 1-2  Filed 09/18/25  Page 328 of 370

• Determine its effectiveness and implement changes to the program if they are needed.
• Ensure that its disciplinary sanctions are consistently enforced.

# PART 2
# CERTIFICATION REGARDING DEBARMENT, SUSPENSION, DISQUALIFICATION, AND VOLUNTARY EXCLUSION -- LOWER TIER COVERED TRANSACTIONS

The Institution is to obtain the signatures of Lower Tier Contractors on reproduced copies of the certification below, and retain the signed certification(s) in the Institution's files.

---

**CERTIFICATION BY LOWER TIER CONTRACTOR**
**(Before Completing Certification, Read Instructions for This Part, below)**

---

(1) The prospective lower tier participant certifies by submission of this proposal, that neither it nor its principals are presently debarred, suspended, proposed for debarment, voluntarily excluded, or disqualified from participation in this transaction by any Federal Department or Agency.

(2) Where the prospective lower tier participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

| | |
|---|---|
| Name of Lower Tier Organization | PR/Award Number or Project Name |
| Name of Authorized Representative | Title of Authorized Representative |
| Signature of Authorized Representative | Date |

1. By signing and submitting this proposal, the prospective lower tier participant is providing the certification set out below.

2. The certification in this clause is a material representation of fact upon which reliance was placed when this transaction was entered into. If it is later determined that the prospective lower tier participant knowingly rendered an erroneous certification, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

3. The prospective lower tier participant shall provide immediate written notice to the person to which this proposal is submitted if at any time the prospective lower tier participant learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

4. The terms "covered transaction," "debarred," "suspended," "disqualified," "lower tier covered transaction," "participant," "person," "primary covered transaction," "principal," "proposal," "voluntarily excluded," as used in this clause, have the meanings set out in the Definitions and Coverage sections of rules implementing Executive Order 12549. You may contact the person to whom this proposal is submitted for assistance in obtaining a copy of those regulations.

5. The prospective lower tier participant agrees by submitting this proposal that, should the proposed covered transaction be entered into, it shall not knowingly enter into any lower tier covered transaction with a person who is debarred, suspended, declared ineligible, or voluntarily excluded from participation in this covered transaction, unless authorized by the department or agency with which this transaction originated.

6. The prospective lower tier participant further agrees by submitting this proposal that it will include the clause titled "Certification Regarding Debarment, Suspension, Disqualification, and Voluntary Exclusion--Lower Tier Covered Transactions," without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions.

7. A participant in a covered transaction may rely upon a certification of a prospective participant in a lower tier covered transaction that is not debarred, suspended, disqualified, or voluntarily excluded from the covered transaction, unless it knows that the certification is erroneous. A participant may decide the method and frequency by which it determines the eligibility of its principals. Each participant may, but is not required to, check the Nonprocurement List.

8. Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of a participant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

9. Except for transactions authorized under paragraph 5 of these instructions, if a participant in a covered transaction knowingly enters into a lower tier covered transaction with a person who is suspended, debarred, disqualified, or voluntarily excluded from participation in this transaction, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

NOTE: A completed copy of the "Certification Regarding Debarment, Suspension, Disqualification and Voluntary Exclusion--Lower Tier Covered Transactions" form must be retained by the Institution. The original blank certification must be returned with the PPA.

## IN WITNESS WHEREOF

the parties hereto have caused this Agreement to be executed by their duly authorized representatives.

Signature of Institution's Chief
Executive Officer
(CEO)/President/Chancellor: _____     Date: _____
Print Name and Title: _____

For the Secretary: _____     Date: _____
U.S. Department of Education



OMB # 1845-0130
Form Approved
Exp. Date: 01/31/2018

## Third Party Servicer Data Form

| | |
|---|---|
| 1. What is the legal name of this company/organization? | |

2. Does the company/organization have another name such as a trade name or a d/b/a name, under which the company conducts business?  ☐ Yes  ☐ No

If yes, please provide the names(s):

3. When did the company/organization begin conducting business as a third party servicer on behalf of Title IV, HEA institutions?

4. What name does the company/organization utilize to file its required annual compliance audit?

5. What is the company's/organization's fiscal year end date?

6. What is the company's/organization's Dun & Bradstreet (DUNS) number?   ☐ N/A

7. Who are the owner/owners of this company/organization? If you need more space, please use additional space provided on last page of form or attach an additional sheet and include the following for each owner:

Name:
Job Title:
Business Street Address:
City:
State and Zip: **Select**
Telephone Number (including area code xxx-xxx-xxxx):
Fax Number (including area code xxx-xxx-xxxx):
E-Mail Address:

For purposes of this form, company/organization refers to an individual or a state, or a private, profit, or non-profit organization that enters into a contract or agreement with an eligible institution to administer any aspect of the institution's participation in the Title IV programs.

8. Who is completing this form?

Name: (include prefix, such as Mr., Ms., Dr.)
Job Title:
Telephone Number: (including area code xxx-xxx-xxxx)
E-Mail Address:

9. Who is the highest ranking officer (CEO/COO/President) of this company/organization?

Name:
Job Title:
Business Street Address:
City:
State and Zip:  Select
Telephone Number: (including area code xxx-xxx-xxxx)
Fax Number:  (including area code xxx-xxx-xxxx)
E-Mail Address:

10. Does this company/organization have a web site (or home page) on the Internet?          ☐ Yes    ☐ No
    If yes, list the electronic address (URL):

11. Whom should we contact at this company/organization should we have questions regarding information on this form or need to respond to an institutional inquiry?

Name: (include prefix, such as Mr., Ms., Dr.)
Job Title:
Telephone Number: (including area code xxx-xxx-xxxx)
Fax Number: (including area code xxx-xxx-xxxx)
E-Mail Address:

12. ☐ Check here if this company/organization maintains more than one physical location (mailing address, processing center, etc.) and provide the primary contact person, address, and phone number for each location occupied.  If you need more space, please use additional space provided on last page of form or attach an additional sheet and include the following for each entity:

Name:  (primary contact person, include specific prefix)
Street Address:
City:
State and Zip:    Select
Purpose of Location: (mailing address, processing center, etc.)

For purposes of this form, company/organization refers to an individual or a state, or a private, profit, or non-profit organization that enters into a contract or agreement with an eligible institution to administer any aspect of the institution's participation in the Title IV programs.

13. Identify the ownership structure of this company/organization:

☐ For Profit
    ☐ Corporation – Publicly Traded
    ☐ Corporation – Not Publicly Traded
    ☐ Partnership
    ☐ Sole Proprietorship

☐ Not for Profit
    ☐ State Owned Organization
    ☐ State Affiliated Organization
    ☐ Private, Not For Profit Organization

14. ☐ Check here if this company/organization owns or is owned by an eligible institution of Higher Education (regardless of percentage) and provide the name of the entity, primary contact person, phone number and e-mail below. If you need more space, please use additional space provided on last page of form or attach an additional sheet and include the following for each entity:

Institution/Organization Name:
Name: (primary contact's name, include prefix, such as Mr., Ms., Dr.)
Telephone Number: (including area code xxx-xxx-xxxx)
Fax Number: (including area code xxx-xxx-xxxx)
E-Mail Address:
Description of Relationship with the entity listed above:

15. ☐ Check here if this company/organization owns or is owned by another company/organization (regardless of percentage) and provide the name of the entity, primary contact person, phone number, and e-mail below. If you need more space, please use additional space provided on last page of form or attach an additional sheet and include the following for each entity:

Company/Corporation/Organization Name:
Name: (primary contact's name, include prefix, such as Mr., Ms., Dr.)
Telephone Number: (including area code xxx-xxx-xxxx)
Fax Number: (including area code xxx-xxx-xxxx)
E-Mail Address:
Description of Relationship with the entity listed above:

16. Please indicate the Title IV, HEA services this company/organization performs on behalf of its clients:

☐ Process student financial aid applications, including FAFSA or Pre-FAFSA completion services performed on behalf of an eligible institution
☐ Collect, review, and/or maintain supporting documentation required to process Title IV funds
☐ Determine student eligibility and related activities (R2T4, SAP, Verification, Professional Judgment, Dependency Override, etc.)
☐ Award, certify, originate, and/or disburse Title IV funds
☐ Delivery of Title IV credit balance refunds to students or parents (via cash, check, ACH, debit card, or other means)

For purposes of this form, company/organization refers to an individual or a state, or a private, profit, or non-profit organization that enters into a contract or agreement with an eligible institution to administer any aspect of the institution's participation in the Title IV programs.

☐ Prepare and/or certify request for advance or reimbursement funding
☐ Fiscal reconciliation of Title IV, HEA program accounts
☐ Provide entrance and exit loan counseling, including in person, by mail, or electronically
☐ Federal Perkins Loan servicing
☐ Federal Perkins Loan collections
☐ Financial aid counseling, including assistance provided to students or parents in person, over the phone, or by any electronic means, including operation of call centers
☐ Perform default prevention management functions for Direct Loan, FFEL, and/or Perkins Loan programs, including cohort default analysis, enhanced loan counseling, delinquency assistance, development/implementation of a default management plan, and/or other default prevention outreach activities
☐ Preparation/dissemination of required consumer information disclosures, including general, campus crime, drug and alcohol prevention, graduation rates, placement rates and gainful employment disclosures
☐ Preparation and or submission of required reports including enrollment reporting to NSLDS, IPEDS, Campus Crime and Security, and FISAP reporting
☐ Financial aid consulting, including financial aid staffing, interim management, processing support, and/or development and maintenance of written policies and procedures
☐ Other, please describe:

17. Provide the names and OPE ID numbers for each client for who this company/organization contracts with to perform any aspect of the institution's participation under the Title IV, HEA programs. If you need more space, please use additional space provided on last page of form or attach an additional sheet and include the following for each client:

| OPE ID | Name of College, University, Institution of Higher Education | Service Start Date | Service End Date |
|--------|----------------------------------------------------|-----|-----|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

For purposes of this form, company/organization refers to an individual or a state, or a private, profit, or non-profit organization that enters into a contract or agreement with an eligible institution to administer any aspect of the institution's participation in the Title IV programs.

| OPE ID | Name of College, University, Institution of Higher Education | Service Start Date | Service End Date |
|--------|--------------------------------------------------------------|-------------------|------------------|
|        |                                                              |                   |                  |
|        |                                                              |                   |                  |
|        |                                                              |                   |                  |
|        |                                                              |                   |                  |
|        |                                                              |                   |                  |
|        |                                                              |                   |                  |
|        |                                                              |                   |                  |
|        |                                                              |                   |                  |
|        |                                                              |                   |                  |
|        |                                                              |                   |                  |
|        |                                                              |                   |                  |
|        |                                                              |                   |                  |
|        |                                                              |                   |                  |
|        |                                                              |                   |                  |
|        |                                                              |                   |                  |
|        |                                                              |                   |                  |
|        |                                                              |                   |                  |
|        |                                                              |                   |                  |
|        |                                                              |                   |                  |
|        |                                                              |                   |                  |
|        |                                                              |                   |                  |
|        |                                                              |                   |                  |
|        |                                                              |                   |                  |
|        |                                                              |                   |                  |
|        |                                                              |                   |                  |
|        |                                                              |                   |                  |

For purposes of this form, company/organization refers to an individual or a state, or a private, profit, or non-profit organization that enters into a contract or agreement with an eligible institution to administer any aspect of the institution's participation in the Title IV programs.

I hereby certify that, to the best of my knowledge and belief, all information in this document is true and correct. I understand that if my company/organization provides false or misleading information, the Department considers this to be a breach of the fiduciary standard of conduct and may terminate the servicer's eligibility to contract with any institution to administer any aspect of an institution's participation in the Title IV, HEA programs. I also understand that I may be subject to a fine of not more than $25,000 or imprisonment of not more than five years, or both, for misinformation that is material to receipt and stewardship of federal student financial aid funds.

Signature of individual completing this form:

Date:

Signature of President/CEO/COO:
(include prefix, such as Mr., Ms., Dr.)

Date:

Please attach a copy of this company's organizational chart with employee names and titles of those individuals who serve in a managerial or supervisory role and return this form to:

> **Third Party Servicer Oversight Group**
> **U.S. Department of Education**
> **Kansas City School Participation Division**
> **1010 Walnut Street; Suite 336**
> **Kansas City, MO  64106**
> **(816) 268-0543**
> **fsapc3rdpartyserviceroversight@ed.gov**

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless such collection displays a valid OMB control number. The valid OMB control number for this information collection is 1845-0130. Public reporting burden for this collection of information is estimated to average 75 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. The obligation to respond to this collection is required to retain the benefit to contract with eligible institutions pursuant to 34 C.F.R. § 668.25. If you have comments or concerns regarding the status of your individual submission of this form, please contact the Third Party Servicer Oversight Group directly at (816) 268-0543 or fsapc3rdpartyserviceroversight@ed.gov

For purposes of this form, company/organization refers to an individual or a state, or a private, profit, or non-profit organization that enters into a contract or agreement with an eligible institution to administer any aspect of the institution's participation in the Title IV programs.

| Additional space for questions: | | |
|---|---|---|
| **Q1.** | | |
| **Q2.** | | |
| **Q3.** | | |
| **Q4.** | | |
| **18.** | | |

| OPE ID | Name of College, University, Institution of Higher Education | Service Start Date | Service End Date |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Additional Clients:** 📌

For purposes of this form, company/organization refers to an individual or a state, or a private, profit, or non-profit organization that enters into a contract or agreement with an eligible institution to administer any aspect of the institution's participation in the Title IV programs.

**SUBMIT**

PUTCNSL
CONSOLIDATION LOAN ORIGINATION HISTORY RECORD          CREATED: 12/14/2015
PAGE: 001
Borrower: ███████          App: 8234210

SECTION 01:  BORROWER INFORMATION

BORROWER SSN: ███████          APPLICATION ID: 8234210
BORROWER NAME:  JASON LONG                                        DOB: 08/04/1984
ADDRESS: 629 LAMONT ST NW APT 2

CITY/STATE/ZIP: WASHINGTON, DC  20010
HOME PHONE: 202-421-4147 ALT PHONE: 000-000-0000
EMAIL:                                DRIVERS LICENSE:                     DL
STATE:

*******************************************************************************
************************************************

SECTION 02:  CO-BORROWER INFORMATION

CO-BORROWER: NO

*******************************************************************************
************************************************

SECTION 03:  ENDORSER INFORMATION

ENDORSER: NO

*******************************************************************************
************************************************

SECTION 04:  CONSOLIDATION LOAN INFORMATION

TOTAL AMOUNT CONSOLIDATED:      $63,942.13  LAST FUNDING DATE: 12/12/2013

AWARD ID: ███████4G77778101 GROSS:   $21,981.26   REBATE:      $306.00
LOAN TYPE: DIRECT SUBSIDIZED CONSOLIDATION LOAN
PAYMENT PLAN: INCOME CONTINGENT      FORCED ICR: Y  CRC: 201456
BOOKED DATE: 12/06/2013 INTEREST RATE:  5.125% 1st DISB DATE: 12/06/2013
DISB NUM     DISB DATE     GROSS AMT     REBATE AMT    PROM NOTE ID
 001        12/06/2013    $21,981.26      $306.00      11880784

AWARD ID: ███████4G77778101 GROSS:   $41,960.87   REBATE:      $342.00
LOAN TYPE: DIRECT UNSUBSIDIZED CONSOLIDATION LOAN
PAYMENT PLAN: INCOME CONTINGENT      FORCED ICR: Y  CRC: 201466
BOOKED DATE: 12/06/2013 INTEREST RATE:  5.125% 1st DISB DATE: 12/06/2013

              CONSOLIDATION LOAN ORIGINATION HISTORY RECORD          CREATED:
12/14/2015     PAGE: 002
Borrower: ███████        App: 8234210

DISB NUM     DISB DATE     GROSS AMT     REBATE AMT    PROM NOTE ID
 001        12/06/2013    $41,960.87      $342.00      11880785

*******************************************************************************
************************************************

SECTION 05:  PROMISSORY NOTE INFORMATION

AWARD ID: ███████G77778101   DLCS LOAN NUMBER: 25171709
DLCS NOTE ID   NOTE TYPE    MAIL DATE    BORR SIGNED DT   CO-BORR SIGN DT   RECD
DATE

Page 1

PUTCNSL
11880784      PAPER          N/A        10/08/2013
10/08/2013

AWARD ID: ████████14G77778101   DLCS LOAN NUMBER: 25171710
DLCS NOTE ID   NOTE TYPE    MAIL DATE    BORR SIGNED DT    CO-BORR SIGN DT   RECD
DATE
11880785      PAPER          N/A        10/08/2013
10/08/2013

************************************************************************************
*************************************************

SECTION 06:  FUNDING HISTORY

| NUM | DT FUNDED | LENDER ID-NAME | LOAN TYPE | AMOUNT |
|---|---|---|---|---|
| TYPE | 1st DISB | FUND CK#/IDENT LN DISB | | |
| 001 | 12/06/2013 | 42625-U.S. DEPARTMENT OF EDUC | D-FED DIRECT STAFF/FORD L | $ |
| | 6,196.98 DISB 08/22/2007 | FCA | S  01 | |
| 002 | 12/06/2013 | 42625-U.S. DEPARTMENT OF EDUC | D-FED DIRECT STAFF/FORD L | $ |
| | 3,943.17 DISB 08/22/2006 | FCA | S  01 | |
| 003 | 12/06/2013 | 42625-U.S. DEPARTMENT OF EDUC | D-FED DIRECT STAFF/FORD L | $ |
| | 3,688.47 DISB 08/24/2005 | FCA | S  01 | |
| 004 | 12/06/2013 | 42625-U.S. DEPARTMENT OF EDUC | D-FED DIRECT STAFF/FORD L | $ |
| | 2,923.73 DISB 08/27/2008 | FCA | S  01 | |
| 005 | 12/06/2013 | 42625-U.S. DEPARTMENT OF EDUC | D-FED DIRECT STAFF/FORD L | $ |
| | 2,767.13 DISB 08/23/2004 | FCA | S  01 | |
| 006 | 12/06/2013 | 42625-U.S. DEPARTMENT OF EDUC | D-FED DIRECT STAFF/FORD L | $ |
| | 2,767.13 DISB 02/09/2004 | FCA | S  01 | |
| 007 | 12/12/2013 | 42625-U.S. DEPARTMENT OF EDUC | D-FED DIRECT STAFF/FORD L | -$ |
| | 39.74 ADJ  02/09/2004 FCA | | S  01 | |
| 008 | 12/12/2013 | 42625-U.S. DEPARTMENT OF EDUC | D-FED DIRECT STAFF/FORD L | -$ |
| | 39.74 ADJ  08/23/2004 FCA | | S  01 | |
| 009 | 12/12/2013 | 42625-U.S. DEPARTMENT OF EDUC | D-FED DIRECT STAFF/FORD L | -$ |
| | 39.96 ADJ  08/27/2008 FCA | | S  01 | |
| 010 | 12/12/2013 | 42625-U.S. DEPARTMENT OF EDUC | D-FED DIRECT STAFF/FORD L | -$ |
| | 51.86 ADJ  08/22/2006 FCA | | S  01 | |
| 011 | 12/12/2013 | 42625-U.S. DEPARTMENT OF EDUC | D-FED DIRECT STAFF/FORD L | -$ |
| | 51.93 ADJ  08/24/2005 FCA | | S  01 | |
| 012 | 12/12/2013 | 42625-U.S. DEPARTMENT OF EDUC | D-FED DIRECT STAFF/FORD L | -$ |
| | 82.12 ADJ  08/22/2007 FCA | | S  01 | |
| 013 | 12/06/2013 | 33332-SAINT AUGUSTINES COLLEG | F-FEDERAL PERKINS LOANS | $ |
| | 10,552.90 DISB 09/10/2004 | EFT 000387811  U  01 | | |
| 014 | 12/06/2013 | 42625-U.S. DEPARTMENT OF EDUC | L-FED DIRECT UNSUB STAFF/ | $ |
| | 7,342.71 DISB 08/22/2007 | FCA | U  01 | |
| 015 | 12/06/2013 | 42625-U.S. DEPARTMENT OF EDUC | L-FED DIRECT UNSUB STAFF/ | $ |
| | 7,251.09 DISB 08/27/2008 | FCA | U  01 | |
| 016 | 12/06/2013 | 42625-U.S. DEPARTMENT OF EDUC | L-FED DIRECT UNSUB STAFF/ | $ |
| | 6,354.61 DISB 08/27/2008 | FCA | U  01 | |
| 017 | 12/06/2013 | 42625-U.S. DEPARTMENT OF EDUC | L-FED DIRECT UNSUB STAFF/ | $ |
| | 5,517.18 DISB 02/09/2004 | FCA | U  01 | |
| 018 | 12/06/2013 | 42625-U.S. DEPARTMENT OF EDUC | L-FED DIRECT UNSUB STAFF/ | $ |
| | 5,284.33 DISB 08/24/2005 | FCA | U  01 | |
| 019 | 12/12/2013 | 42625-U.S. DEPARTMENT OF EDUC | L-FED DIRECT UNSUB STAFF/ | -$ |
| | 60.01 ADJ  02/09/2004 FCA | | U  01 | |
| 020 | 12/12/2013 | 42625-U.S. DEPARTMENT OF EDUC | L-FED DIRECT UNSUB STAFF/ | -$ |
| | 60.16 ADJ  08/24/2005 FCA | | U  01 | |
| 021 | 12/12/2013 | 42625-U.S. DEPARTMENT OF EDUC | L-FED DIRECT UNSUB STAFF/ | -$ |
| | 69.74 ADJ  08/27/2008 FCA | | U  01 | |

8               CONSOLIDATION LOAN ORIGINATION HISTORY RECORD         CREATED:
12/14/2015     PAGE: 003
Borrower: ████████      App: 8234210

PUTCNSL
022 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  -$
73.94 ADJ  08/22/2007  FCA           U 01
023 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  -$
78.10 ADJ  08/27/2008  FCA           U 01

*****************************************************************************
************************************************

SECTION 07:  APPLICATION DATA

APPLICATION REC'D DATE: 10/22/2013        SOURCE:  PAPER
IN SCHOOL: NO                             E-SIGNED: NO
LOANS ON APPLICATION:
NUM DATE ADDED  LENDER                       LOAN TYPE
INCLUDE?    AMOUNT    LVC SENT DATE  LND TYPE
001 10/25/2013 42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA   YES
    $ 50,000.00    10/25/2013    DL
002 10/25/2013 33332-SAINT AUGUSTINES COLLEGE   F-FEDERAL PERKINS LOANS       YES
    $ 7,740.00     10/29/2013    PL

*****************************************************************************
************************************************

SECTION 08:  LOAN CERTIFICATIONS

NUM  DATE CERT   LENDER ID-NAME              LOAN TYPE              1ST
DISB    INT    TOT PAYOFF    DFLT SATISFIED
001  11/19/2013 33332-SAINT AUGUSTINES COLLEGE  F-FEDERAL PERKINS LOANS
09/10/2004 5.000% $ 10,525.60  YES    NO
002  10/29/2013 42625-U.S. DEPARTMENT OF EDUCAT  L-FED DIRECT UNSUB STAFF/FO
08/22/2007 6.800% $ 7,299.91   NO     NO
003  10/29/2013 42625-U.S. DEPARTMENT OF EDUCAT  L-FED DIRECT UNSUB STAFF/FO
08/27/2008 6.800% $ 7,208.69   NO     NO
004  10/29/2013 42625-U.S. DEPARTMENT OF EDUCAT  L-FED DIRECT UNSUB STAFF/FO
08/27/2008 6.800% $ 6,317.81   NO     NO
005  10/29/2013 42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA
08/22/2007 6.800% $ 6,155.78   NO     NO
006  10/29/2013 42625-U.S. DEPARTMENT OF EDUCAT  L-FED DIRECT UNSUB STAFF/FO
02/09/2004 2.350% $ 5,504.38   NO     NO
007  10/29/2013 42625-U.S. DEPARTMENT OF EDUCAT  L-FED DIRECT UNSUB STAFF/FO
08/24/2005 2.350% $ 5,271.93   NO     NO
008  10/29/2013 42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA
08/22/2006 6.800% $ 3,917.17   NO     NO
009  10/29/2013 42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA
08/24/2005 2.350% $ 3,679.67   NO     NO
010  10/29/2013 42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA
08/27/2004 6.000% $ 2,906.53   NO     NO
011  10/29/2013 42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA
02/09/2004 2.350% $ 2,760.73   NO     NO
012  10/29/2013 42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA
08/23/2004 2.350% $ 2,760.73   NO     NO

LOAN CERTIFICATION CONT.
NUM   PRIN AMT     INTEREST AMT  LATE CHARGES COLL COSTS ACCOUNT NUMBER
CERT ID    STATUS        GRAD DATE
001   $7,740.00    $354.75      $10.00     $2,420.85  ██████████
61901641  IN REPAYMENT  05/15/2009
002   $5,847.44    $1,452.47    $0.00      $0.00      ████U08G02968001
61312042  IN REPAYMENT  05/08/2009
003   $5,775.34    $1,433.35    $0.00      $0.00      ████U09G02968001
61312039  IN REPAYMENT  05/08/2009
004   $5,061.97    $1,255.84    $0.00      $0.0J      ████09G02968002
61312034  IN REPAYMENT  05/08/2009

Page 3

```
                                    PUTCNSL
005   $5,614.76        $541.02      $0.00        $0.00    ████████8G02968001
61312041   IN REPAYMENT  05/08/2009
006   $5,118.90        $385.48      $0.00        $0.00    ████████04G02968001
61312032   IN REPAYMENT  05/08/2009
007   $4,902.77        $369.16      $0.00        $0.00    ███████06G02968001
61312035   IN REPAYMENT  05/08/2009
008   $3,572.85        $344.32      $0.00        $0.00    ███████7G02968001
61312036   IN REPAYMENT  05/08/2009
```

§          CONSOLIDATION LOAN ORIGINATION HISTORY RECORD      CREATED:
12/14/2015    PAGE: 004
Borrower: 577116319    App: 8234210

```
009   $3,559.32        $120.35      $0.00        $0.00    ████████06G02968001
61312033   IN REPAYMENT  05/08/2009
010   $2,678.79        $227.74      $0.00        $0.00    ████████09G02968001
61312038   IN REPAYMENT  05/08/2009
011   $2,670.49        $90.24       $0.00        $0.00    ████████04G02968001
61312040   IN REPAYMENT  05/08/2009
012   $2,670.49        $90.24       $0.00        $0.00    ████████05G02968001
61312037   IN REPAYMENT  05/08/2009
```

*****************************************************************
*****************************************

SECTION 09:  PACKAGE/CORRESPONDENCE HISTORY

REQUEST DT    MAILED DT     PACKAGE TYPE NAME
04/05/2010    04/07/2010    LC COMBINED APP/P-NOTE PACKAGE
10/25/2013    10/27/2013    LC ADI PACKAGE
10/25/2013    10/27/2013    LC PERKINS HHS LOANS INCLUDED IN CONSOL.
10/29/2013    10/31/2013    LC VERIFICATION CERTIFICATE
11/21/2013    11/23/2013    LC CAP LOAN STATEMENT PACKAGE

*****************************************************************
*****************************************

SECTION 10:  COMMENT HISTORY

DATE          DESCRIPTION/COMMENTS

10/18/2013    PERSON
              10/18/2013 : Loan Consolidation - FAX - RECV FAXED AUTHORIZATION TO
RELEASE INFORMATION TO DMD
              FINANCIAL SERVICES, INC.


10/25/2013    SCHOOL BATCH DETAIL
              10/25/2013 : Loan Consol. Edit Errors - ████████


10/31/2013    PERSON
              10/31/2013 : Loan Consolidation - ████████ONG,JASON - BRWR ADVISED
APP IN CERT CE

*****************************************************************
*****************************************

                          Page 4
```

# Direct Loans

Watco & Ford Federal Direct Loan Program

## Federal Direct Consolidation Loan Verification Certificate

OMB No. 1845-0053
Form Approved
Exp. Date 11/30/2010

The borrower identified in Item 3 of this Verification Certificate (certificate) has requested consolidation of his or her education loan(s). The Federal Direct Consolidation Loan Program (Direct Loan Program) enables borrowers to apply for a loan to consolidate outstanding education loans pursuant to Title IV of the Higher Education Act of 1965, as amended. Loans that may be consolidated are listed in the instructions on the back of this certificate. This certificate is used to verify the payoff amount of the borrower's outstanding education loan(s) selected for consolidation. As part of the Federal Direct Consolidation Loan Application and Promissory Note, the borrower named in Item 3 has authorized your disclosure of information regarding the education loan(s) listed in Item 3. Please confirm that the information provided is accurate, complete black boxes, and retain within 10 business days of the date received to the address given on the back of this certificate.

For information or assistance when completing this certificate, please call the Consolidation Department at 1-800-557-7392.

| (1) Holder/Servicer Information | (2) Institution and Address to which payoff amount should be sent | (3) Borrower Information |
|---|---|---|
| Holder/Servicer Is: ☐ Lender ☐ | (if different from Item 1) | |
| (check only one) ☐ Servicer for Lender ☐ | | |
| Name SAINT AUGUSTINE'S UNIVERSITY | Name SAINT AUGUSTINE'S UNIVERSITY | Name JASON LONG |
| OPE Code 002908800 | OPE Code 002908800 | Social Security |
| Street PERKINS LOAN SPECIALIST 1315 OAKW | Street PERKINS LOAN SPECIALIST 1315 OAKWOOD AVE PO BOX 27481 | Street 629 LAMONT ST NW APT 2 |
| 27481 | City, State, Zip Code RALEIGH NC 27610-2247 | City, State, Zip Code WASHINGTON DC 20010 |
| City, State, Zip Code RALEIGH NC 27610-2247 | Area Code/Telephone # 919-516-4356 | Area Code/Telephone # 202-907-5399 |
| Area Code/Telephone # 919-516-4356 | Area Code/Fax # | |
| Area Code/Fax # 919/516-5809 | Contact's Name Brandi Stokes | |
| (4) Certification Date 11/11/2013 | | |

See the reverse side for instructions.

| Acct ID (5) Account Number | (6) Loan Type | (7) Interest Rate (%) | (8) Principal Balance 01/01/2013 | (9) Interest through Certification Date (Item 4) | (10) Accrued Late Charges | (11) Collection Costs | (12) Total Due | (14) First/Only Disbursement Date (mm-dd-yyyy) | (15) Completion Date | (16) U.S. Loan Code |
|---|---|---|---|---|---|---|---|---|---|---|
| 01 | P | 5.000 | 7,740.00 | 354.75 | | 10.00 | 2,420.85 | 10,525.60 | 09/10/2004 | 05/15/2008 | DN |
| 02 | | | | | | | | | | | |
| 03 | | | | | | | | | | | |
| 04 | | | | | | | | | | | |
| 05 | | | | | | | | | | | |
| 06 | | | | | | | | | | | |
| | | | | (13) Total Payoff Amount | | | 10,525.60 | | | | |

## (17) Additional Comments

(18) Holder/Servicer Certification: I certify that: (1) To the best of my knowledge and belief, the information on this certificate is accurate and complete; (2) Each loan identified above is a legal, valid, and binding obligation of the borrower; (3) Each such loan was made and serviced in compliance with all applicable laws and regulations; and (4) In the case of Federal Stafford Loans (subsidized and unsubsidized (GSL)), Federal PLUS Loans, Federal Supplemental Loans for Students (SLS) and Auxiliary Loans to Assist Students (ALAS), and Federal Insured Student Loans (FISL), the insurance on each such loan is in full force and effect. The loan amount(s) confirmed includes the amount(s) necessary to discharge the loan(s). This certificate will be relied on by the U.S. Department of Education in paying off the listed loan(s).

_Brenda Stokes_
Signature of Authorized Official

Brenda Stokes
Name and Title of Authorized Official (Please Print)

SAINT AUGUSTINE'S UNIVERSITY
Holder/Servicer Name

919-516-4356
Area Code/Telephone Number

November 11, 2013
Date (mm-dd-yyyy)

RECEIVED NOV 1 2 2013

11/11/2013 MON 14:28 FAX                                   @008/009

# Direct Loans

**Federal Direct Consolidation Loan Verification Certificate**

OMB No. 1845-0053
Form Approved
Exp. Date 11/30/2020

D3

10/29/2013

For information or assistance when completing this certificate, please call the Consolidation Department at 1-800-557-7392.

**Application Receipt Date: 10/22/2013**

| (1) Holder/Servicer Information | 0000033332 | (2) Institution and Address to which payoff amount should be sent (if different from Item 1) | (3) Borrower Information | 000008234210007 |
|---|---|---|---|---|

Holder/Servicer is:
(check only one)   ☐ Lender   ☐ Guarantor
☐ Servicer for Lender   ☐ Servicer for Guarantor

| | | |
|---|---|---|
| Name  SAINT AUGUSTINES COLLEGE | Name | Name  JASON LONG |
| OPE Code   002969 | OPE Code | Social Security # |
| Street 1  PO BOX 27481 | Street 1 | Street 1  629 LAMONT ST NW |
| Street 2  ATTN: DIR OF COLLECTIONS | Street 2 | Street 2  APT 2 |
| City, State, Zip Code  RALEIGH  NC  27611 | City, State, Zip Code | City, State, Zip Code  WASHINGTON DC  20010 |
| Area Code/Telephone #  (919)516-4155 | Area Code/Telephone # | Area Code/Telephone #  (202)903-0052 |
| Area Code/Fax #  (000)000-0000 | Area Code/Fax # | |
| (4) Certification Date (mm-dd-yyyy) | Contact's Name | |

See the reverse side for instructions.

| (4) Acct ID | (5) Account Number | (6) Loan Type | (7) Interest Rate (%) | (8) Principal Balance Outstanding | (9) Interest through Certification Date (Item 4) | (10) Fees and Late Charges | (11) Collection Costs | (12) Total Due | (13) First Disbursement Date (mm-dd-yyyy) | (14) Completion Date | (15) Loan Status Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 01 | | | | | | | | | | | |
| 02 | | | | | | | | | | | |
| 03 | | | | | | | | | | | |
| 04 | | | | | | | | | | | |
| 05 | | | | | | | | | | | |
| | | | | | | | | (16) Total Payoff Amount | | | |

**(17) Additional Comments**

(18) Holder/Servicer Certification: I certify that: (1) To the best of my knowledge and belief, the information on this certificate is accurate and complete; (2) Each loan identified above is a legal, valid, and binding obligation of the borrower; (3) Each such loan was made and serviced in compliance with applicable laws and regulations; and (4) in the case of Federal Stafford Loans (subsidized and unsubsidized (USL)), Federal PLUS Loans, Federal Supplemental Loans for Students (SLS) and Auxiliary Loans to Assist Students (ALAS)], and Federal Insured Student Loans (FISL), the insurance on each such loan is in full force and effect. The loan amount(s) I certified includes the amount(s) necessary to discharge the loan(s). This certificate will be relied on by the U.S. Department of Education in paying off the listed loan(s).

| Signature of Authorized Official | Holder/Servicer Name | Date (mm-dd-yyyy) | |
|---|---|---|---|
| | | 23366325 | VCT114 |
| Name and Title of Authorized Official (Please Print) | Area Code/Telephone Number | | 0 |

**RECEIVED NOV 1 2 2013**

[OCT 2 2 2013]

WDBNC_APP2_3214

# Direct Loans

## Federal Direct Consolidation Loan
### Application and Promissory Note

OMB No. 1845-0053
Form Approved
Exp. Date 02/29/2014

WARNING: Any person who knowingly makes a false statement or misrepresentation on this form or any accompanying documents is subject to penalties that may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

Read the instructions for completing the Federal Direct Consolidation Loan Application and Promissory Note (Note). Print using blue or black ink or type. You must sign and date this form. If you cross out anything and write in servicer/source, put your initials beside the change.

NOTE: PAGES 1, 2, and 3 OF THIS NOTE MUST BE SUBMITTED FOR YOUR LOAN REQUEST TO BE PROCESSED.

**Section 1: Borrower Information**

| 1. Last Name | First Name | Middle Initial | 2. Social Security Number |
|---|---|---|---|
| Long | Jason | | |

3. Permanent Address (if P.O. box or general delivery, see instructions)
629 Lamont Street NW   Apt. 2

| City | State | Zip Code |
|---|---|---|
| Washington | DC | 20010 |

4. Area Code/Telephone Number
( 202 ) 503 - 0052

5. E-Mail Address (Optional)

| 6. Former Name(s) | 7. Date of Birth (mm-dd-yyyy) | 8. Driver's License State and Number |
|---|---|---|
| | | State          Number          N/A |

9. Employer's Name   Unemployed

10. Employer's Address

| 11. Work Area Code/Telephone Number | City | State | Zip Code |
|---|---|---|---|

**Section 2: References**

12. References: List two persons with different U.S. addresses who do not live with you and who have known you for at least three years.

| Name | 1. Rosemarie Cotness | 2. Charles Montient |
|---|---|---|
| Permanent Address | 1718 Sin Street NW | 29 Randall Circle SE Unit C |
| City, State, Zip Code | Washington, DC 20001 | Washington, DC 20019 |
| E-Mail Address (optional) | | |
| Area Code/Telephone Number | ( 202 ) 373 - 2853 | ( 202 ) 270 - 3543 |
| Relationship to Borrower | Friend | Friend |

**Section 3: Loan Information**

Read the instructions before completing this section. List each federal education loan that you want to consolidate, including any William D. Ford Federal Direct Loan (Direct Loan) Program loans that you need to include in your Direct Consolidation Loan. If you need more space to list additional loans, use the Additional Loan Listing Sheet provided with this Note. List each loan separately. Please print on THIS SECTION, LIST ONLY LOANS THAT YOU WANT TO CONSOLIDATE.

We will send you a notice before we consolidate your loans. This notice will (1) provide you with information about the loans and payoff amounts that we have verified, and (2) tell you the deadline by which you must notify us if you want to cancel the Direct Consolidation Loan, or if you do not want to consolidate one or more of the loans listed in the notice. The notice will include information about loans eligible for consolidation that you listed in this section. It will also include information about additional loans eligible for consolidation that you did not list in this section. If you have additional eligible loans with a holder of a loan that you listed in this section, see the instructions for more information about any notice we will send.

| 12. Loan Code (See Instructions) | 14. Loan Holder/Servicer Name, Address, and Area Code/Telephone Number (See Instructions) | 15. Loan Account Number | 16. Estimated Payoff Amount |
|---|---|---|---|
| F | Saint Augustine's University<br>P. O. Box 27481 Raleigh, NC 27611<br>919-516-4356 | | $ 10,271.63 |
| D | Direct Loans Servicing Center<br>P. O. Box 4609 Utica, NY 13504<br>800-848-0979 | | $ 50,000.00 |

Submit pages 1, 2, and 3.
Page 1 of 9

# Direct Loans

**Federal Direct Consolidation Loan Verification Certificate**

D3

10/29/2013

Application Receipt Date: 10/22/2013

(1) Holder/Servicer Information    0000033332

(2) Institution and Address to whom payoff/account should be sent (if different from Item 1)

(3) Borrower Information    000009234210007

Holder/Servicer is: ☐ Lender    ☐ Guarantor
☐ Secondary Lender    ☐ Servicer for Guarantor

Name: SAINT AUGUSTINES COLLEGE

OPE Code: C02986

Street 1: PO BOX 27401

Street 2: ATTN: DIR OF COLLECTIONS

City, State, Zip Code: RALEIGH    NC    27611

Area Code/Telephone #: (919)516-4166

Area Code/Fax #: (000)000-0000

Name:

OPE Code:

Street 1:

Street 2:

City, State, Zip Code:

Area Code/Telephone #:

Contact Name:

Name: JASON LONG

Social Security #:

Street 1: 628 LAMONT ST NW

Street 2: APT 2

City, State, Zip Code: WASHINGTON DC    20010

Area Code/Telephone #: (202)503-0252

(4) Certification Date (mm-dd-yyyy):

| Acct ID | (5) Award Number | (6) Loan Type | (7) Interest Rate (%) | (8) Principal Balance Outstanding | (9) Interest Benefit Certification Date (Item 4) | (10) Frequent Late Charges | (11) Collection Costs | (12) First Due | (13) First/Only Disbursement Date (mm-dd-yyyy) | (14) Completion Date | (15) Loan Issue Code |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 01 | | | | | | | | | | | |
| 02 | | | | | | | | | | | |
| 03 | | | | | | | | | | | |
| 04 | | | | | | | | | | | |
| 05 | | | | | | | | | | | |

(16) Total Payoff Amount

(17) Additional Comments

(18) Holder/Servicer Certification: I certify that: (1) To the best of my knowledge and belief, the information on this certificate is accurate and complete; (2) Each loan identified above is a legal, valid, and binding obligation of the borrower; (3) Each such loan was made and serviced in compliance with all applicable laws and regulations; and (4) In the case of Federal Stafford Loans (subsidized and unsubsidized) (FFEL), Federal PLUS Loans, Federal Supplemental Loans for Students (SLS) and Auxiliary Loans to Assist Students (ALAS), and Federal Insured Student Loans (FISL), the insurance on each such loan is in full force and effect. The loan amount(s) contained includes the amount(s) necessary to discharge the loan(s). This certificate will be relied on by the U.S. Department of Education in paying off the listed loan(s).

Signature of Authorized Official

Name and Title of Authorized Official (Please Print)

Holder/Servicer Name

Area Code/Telephone Number

Date (mm-dd-yyyy)

23366328

VCT114

RECEIVED NOV 1 2 2013

# Direct Loans

## Federal Direct Consolidation Loan Verification Certificate

OMB No. 1845-0003
Form Approved
Exp. Date 11/30/2010

The borrower identified in Item 3 of this Verification Certificate (certificate) has requested consolidation of one or more education loan(s). The Federal Direct Consolidation Loan Program (Direct Consolidation Loan Program) enables borrowers to apply for a loan to consolidate individual loans. Consolidation loans pursuant to Title IV of the Higher Education Act of 1965, as amended. Loans that may be consolidated are listed in the instructions on the back of this certificate. This certificate is used to verify the payoff amounts of the borrower's outstanding education loan(s) selected for consolidation. As part of the Federal Direct Consolidation Loan Application and Promissory Note, the borrower named in Item 3 has consolidated your education loan(s) listed in Item 3. Please confirm that the information provided is accurate, complete blank items, and return within 10 business days of the date received to the address given on the back of this certificate.

For information or assistance when completing this certificate, please call the Consolidation Department at 1-800-557-7392.

**(1) Holder/Servicer Information**
Holder/Servicer is: ☐ Lender   ☐
(check only one)         ☐ Servicer for Lender

Ho. no  SAINT AUGUSTINE'S UNIVERSITY

OPE Code  00008898

Street  PERKINS LOAN SPECIALIST 1315 OAKWOOD 27481

City, State, Zip Code  RALEIGH NC 27610-2274

Area Code/Telephone #  919-516-4439

Area Code/Fax #  919-516-4459

**(4) Certification Date**  11/12/2013

**(2) Institution and Address to which payoff account should be sent**
(if different from Item 1)

Name  SAINT AUGUSTINE'S UNIVERSITY

OPE Code  00008898

Street  PERKINS LOAN SPECIALIST 1315 OAKWOOD AVE PO BOX 27481

City, State, Zip Code  RALEIGH NC 27610-2347

Area Code/Telephone #  919-516-4375

Area Code/Fax #

Servicer's Name  Brenda Stokes

**(3) Borrower Information**

Name  JASON LONG

Social Security #

Street  629 LAMONT ST NW APT 2

City, State, Zip Code  WASHINGTON DC 20010

Area Code/Telephone #  202-407-3799

See the reverse side for instructions.

| (4)(5) Account Number | (6) Loan Type | (7) Interest Rate (%) | (8) Accrued Interest Balance Outstanding | (9) Interest through Certification Date (use c) | (10) Interest Unit Charges | (11) Collection Costs | (12) Total Due | (14) Flexibility Endorsement Date (Pre-disbursed) | (15) Origination Date | (16) L-Loan Code |
|---|---|---|---|---|---|---|---|---|---|---|
| 01 | F | 8.000 | 7,740.00 | 354.75 | 10.00 | 2,420.85 | 10,525.60 | 08/10/2004 | 05/15/2008 | DN |
| 02 | | | | | | | | | | |
| 03 | | | | | | | | | | |
| 04 | | | | | | | | | | |
| 05 | | | | | | | | | | |
| 06 | | | | | | | | | | |
| | | | | **(13) Total Payoff Amount** | | 10,525.60 | | | | |

**(17) Additional Comments**

**(18) Holder/Servicer Certification.** I certify that: (1) To the best of my knowledge and belief, the information on this certificate is accurate and complete; (2) Each loan identified above is a legal, valid, and binding obligation of the borrower; (3) Each such loan was made and serviced in compliance with all applicable laws and regulations; and (4) In the case of Federal Guaranteed Loans (subsidized and unsubsidized (GSL)), Federal PLUS Loans, Federal Supplemental Loans for Students (SLS) (and Auxiliary Loans to Assist Students (ALAS)), and Federal Insured Student Loans (FISL), the insurance on each such loan is in full force and effect. The loan amount(s) confirmed includes the amount(s) necessary to discharge the loan(s). This certificate will be relied on by the U.S. Department of Education in paying off the listed loan(s).

Brenda Stokes
Signature of Authorized Official

Brenda Stokes
Name and Title of Authorized Official (Please Print)

SAINT AUGUSTINE'S UNIVERSITY
Holder/Servicer Name

919-516-4439
Area Code/Telephone Number

November 11, 2013
Complete date  77777

RECEIVED NOV 1 2 2013

PUTCNSL
CONSOLIDATION LOAN ORIGINATION HISTORY RECORD          CREATED: 12/14/2015
PAGE: 001
Borrower: ▮▮▮▮          App: 8234210

SECTION 01: BORROWER INFORMATION

BORROWER SSN: ▮▮▮▮          APPLICATION ID: 8234210
BORROWER NAME: JASON LONG          DOB: 08/04/1984
ADDRESS: 629 LAMONT ST NW APT 2

CITY/STATE/ZIP: WASHINGTON, DC 20010
HOME PHONE: 202-421-4147 ALT PHONE: 000-000-0000
EMAIL:          DRIVERS LICENSE:          DL
STATE:

***********************************************************************
****************************************

SECTION 02: CO-BORROWER INFORMATION

CO-BORROWER: NO

***********************************************************************
****************************************

SECTION 03: ENDORSER INFORMATION

ENDORSER: NO

***********************************************************************
****************************************

SECTION 04: CONSOLIDATION LOAN INFORMATION

TOTAL AMOUNT CONSOLIDATED:     $63,942.13 LAST FUNDING DATE: 12/12/2013

AWARD ID: ▮▮▮▮4G77778101 GROSS:  $21,981.26 REBATE:     $306.00
LOAN TYPE: DIRECT SUBSIDIZED CONSOLIDATION LOAN
PAYMENT PLAN: INCOME CONTINGENT   FORCED ICR: Y CRC: 201456
BOOKED DATE: 12/06/2013 INTEREST RATE: 5.125% 1st DISB DATE: 12/06/2013

| DISB NUM | DISB DATE | GROSS AMT | REBATE AMT | PROM NOTE ID |
|----------|-----------|-----------|------------|--------------|
| 001 | 12/06/2013 | $21,981.26 | $306.00 | 11880784 |

AWARD ID: ▮▮▮▮4G77778101 GROSS:  $41,960.87 REBATE:     $342.00
LOAN TYPE: DIRECT UNSUBSIDIZED CONSOLIDATION LOAN
PAYMENT PLAN: INCOME CONTINGENT   FORCED ICR: Y CRC: 201466
BOOKED DATE: 12/06/2013 INTEREST RATE: 5.125% 1st DISB DATE: 12/06/2013

CONSOLIDATION LOAN ORIGINATION HISTORY RECORD          CREATED:
12/14/2015     PAGE: 002
Borrower: ▮▮▮▮          App: 8234210

| DISB NUM | DISB DATE | GROSS AMT | REBATE AMT | PROM NOTE ID |
|----------|-----------|-----------|------------|--------------|
| 001 | 12/06/2013 | $41,960.87 | $342.00 | 11880785 |

***********************************************************************
****************************************

SECTION 05: PROMISSORY NOTE INFORMATION

AWARD ID: ▮▮▮▮G77778101   DLCS LOAN NUMBER: 25171709
DLCS NOTE ID   NOTE TYPE   MAIL DATE   BORR SIGNED DT   CO-BORR SIGN DT   RECD
DATE

Page 1

```
                                         PUTCNSL
11880784        PAPER          N/A       10/08/2013
10/08/2013

AWARD ID: ████████4G77778101   DLCS LOAN NUMBER: 25171710
DLCS NOTE ID   NOTE TYPE   MAIL DATE    BORR SIGNED DT   CO-BORR SIGN DT   RECD
DATE
11880785        PAPER          N/A       10/08/2013
10/08/2013
```

```
****************************************************************************
*********************************************
```

SECTION 06:  FUNDING HISTORY

```
NUM DT FUNDED  LENDER ID-NAME                     LOAN TYPE              AMOUNT
   TYPE 1st DISB   FUND CK#/IDENT LN DISB
001 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  $
6,196.98 DISB 08/22/2007      FCA          S 01
002 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  $
3,943.17 DISB 08/22/2006      FCA          S 01
003 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  $
3,688.47 DISB 08/24/2005      FCA          S 01
004 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  $
2,923.73 DISB 08/27/2008      FCA          S 01
005 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  $
2,767.13 DISB 08/23/2004      FCA          S 01
006 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  $
2,767.13 DISB 02/09/2004      FCA          S 01
007 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  -$
39.74 ADJ  02/09/2004      FCA          S 01
008 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  -$
39.74 ADJ  08/23/2004      FCA          S 01
009 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  -$
39.96 ADJ  08/27/2008      FCA          S 01
010 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  -$
51.86 ADJ  08/22/2006      FCA          S 01
011 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  -$
51.93 ADJ  08/24/2005      FCA          S 01
012 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  D-FED DIRECT STAFF/FORD L  -$
82.12 ADJ  08/22/2007      FCA          S 01
013 12/06/2013 33332-SAINT AUGUSTINES COLLEG  F-FEDERAL PERKINS LOANS    $
10,552.90 DISB 09/10/2004     EFT 000387811  U 01
014 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  $
7,342.71 DISB 08/22/2007      FCA          U 01
015 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  $
7,251.09 DISB 08/27/2008      FCA          U 01
016 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  $
6,354.61 DISB 08/27/2008      FCA          U 01
017 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  $
5,517.18 DISB 02/09/2004      FCA          U 01
018 12/06/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  $
5,284.33 DISB 08/24/2005      FCA          U 01
019 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  -$
60.01 ADJ  02/09/2004      FCA          U 01
020 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  -$
60.16 ADJ  08/24/2005      FCA          U 01
021 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  -$
69.74 ADJ  08/27/2008      FCA          U 01
```

```
                CONSOLIDATION LOAN ORIGINATION HISTORY RECORD      CREATED:
12/14/2015      PAGE: 003
Borrower: ██████████     App: 8234210
```

Page 3

```
                                        PUTCNSL
022 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  -$
73.94 ADJ 08/22/2007  FCA              U 01
023 12/12/2013 42625-U.S. DEPARTMENT OF EDUC  L-FED DIRECT UNSUB STAFF/  -$
78.10 ADJ 08/27/2008  FCA              U 01
```

*************************************************************************
**************************************************

SECTION 07:  APPLICATION DATA

```
APPLICATION REC'D DATE: 10/22/2013        SOURCE:  PAPER
IN.SCHOOL: NO                             E-SIGNED: NO
LOANS ON.APPLICATION:
NUM DATE ADDED  LENDER                    LOAN TYPE
INCLUDE?   AMOUNT      LVC SENT DATE  LND TYPE
001 10/25/2013  42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA   YES
   $ 50,000.00    10/25/2013    DL
002 10/25/2013  33332-SAINT AUGUSTINES COLLEGE   F-FEDERAL PERKINS LOANS       YES
   $ 7,740.00     10/25/2013    PL
```

*************************************************************************
**************************************************

SECTION 08:  LOAN CERTIFICATIONS

```
NUM  DATE CERT   LENDER ID-NAME                   LOAN TYPE                    1ST
DISB     INT     TOT PAYOFF   DFLT SATISFIED
001  11/19/2013  33332-SAINT AUGUSTINES COLLEGE   F-FEDERAL PERKINS LOANS
09/10/2004  5.000% $ 10,525.60  YES     NO
002  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  L-FED DIRECT UNSUB STAFF/FO
08/22/2007  6.800% $ 7,299.91   NO      NO
003  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  L-FED DIRECT UNSUB STAFF/FO
08/27/2008  6.800% $ 7,208.69   NO      NO
004  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  L-FED DIRECT UNSUB STAFF/FO
08/27/2008  6.800% $ 6,317.81   NO      NO
005  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA
08/22/2007  6.800% $ 6,155.78   NO      NO
006  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  L-FED DIRECT UNSUB STAFF/FO
02/09/2004  2.350% $ 5,504.38   NO      NO
007  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  L-FED DIRECT UNSUB STAFF/FO
08/24/2005  2.350% $ 5,271.93   NO      NO
008  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA
08/22/2006  6.800% $ 3,917.17   NO      NO
009  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA
08/24/2005  2.350% $ 3,679.67   NO      NO
010  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA
08/27/2008  6.000% $ 2,906.53   NO      NO
011  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA
02/09/2004  2.350% $ 2,760.73   NO      NO
012  10/29/2013  42625-U.S. DEPARTMENT OF EDUCAT  D-FED DIRECT STAFF/FORD LOA
08/23/2004  2.350% $ 2,760.73   NO      NO
```

```
LOAN CERTIFICATION CONT.
NUM   PRIN AMT     INTEREST AMT  LATE CHARGES COLL COSTS ACCOUNT NUMBER
CERT ID   STATUS       GRAD_DATE
001   $7,740.00     $354.75        $10.00    $2,420.85  [        ]
61901641   IN REPAYMENT   05/15/2009
002   $5,847.44     $1,452.47      $0.00     $0.00      [        ]J08G02966001
61312042   IN REPAYMENT   05/08/2009
003   $5,775.34     $1,433.35      $0.00     $0.00      [        ]J09G02968001
61312039   IN REPAYMENT   05/08/2009
004   $5,061.97     $1,255.84      $0.00     $0.0J      [        ]9G02968002
61312034   IN REPAYMENT   05/08/2009
```

Page 3

```
                                        PUTCNSL
005   $5,614.76 |    $541.02      $0.00        $0.00    ██████████8G02968001
61312041   IN REPAYMENT   05/08/2009
006   $5,118.90 |    $385.48      $0.00        $0.00    ██████████04G02968001
61312032   IN REPAYMENT   05/08/2009
007   $4,902.77 |    $369.16      $0.00        $0.00    ██████████06G02968001
61312035   IN REPAYMENT   05/08/2009
008   $3,572.85 |    $344.32      $0.00        $0.00    ██████████7G02968001
61312036   IN REPAYMENT   05/08/2009
```

                   CONSOLIDATION LOAN ORIGINATION HISTORY RECORD       CREATED:
12/14/2015      PAGE: 004
Borrower: 577116319     App: 8234210

```
009   $3,559.32 |    $120.35      $0.00        $0.00    ██████████9G02968001
61312033   IN REPAYMENT   05/08/2009
010   $2,678.79 |    $227.74      $0.00        $0.00    ██████████09G02968001
61312038   IN REPAYMENT   05/08/2009
011   $2,670.49 |     $90.24      $0.00        $0.00    ██████████04G02968001
61312040   IN REPAYMENT   05/08/2009
012   $2,670.49 |     $90.24      $0.00        $0.00    ██████████05G02968001
61312037   IN REPAYMENT   05/08/2009
```

****************************************************************************
*********************************************

SECTION 09:  PACKAGE/CORRESPONDENCE HISTORY

REQUEST DT   MAILED DT    PACKAGE TYPE NAME
04/05/2010   04/07/2010   LC COMBINED APP/P-NOTE PACKAGE
10/25/2013   10/27/2013   LC ADI PACKAGE
10/25/2013   10/27/2013   LC PERKINS HHS LOANS INCLUDED IN CONSOL.
10/29/2013   10/31/2013   LC VERIFICATION CERTIFICATE
11/21/2013   11/23/2013   LC CAP LOAN STATEMENT PACKAGE

****************************************************************************
*********************************************

SECTION 10:  COMMENT HISTORY

DATE            DESCRIPTION/COMMENTS

10/18/2013   PERSON
             10/18/2013 : Loan Consolidation - FAX - RECV FAXED AUTHORIZATION TO
RELEASE INFORMATION TO DMD
             FINANCIAL SERVICES, INC.


10/25/2013   SCHOOL BATCH DETAIL
             10/25/2013 : Loan Consol. Edit Errors - ████████


10/31/2013   PERSON
             10/31/2013 : Loan Consolidation - ██████████ONG,JASON - BRWR ADVISED
APP IN CERT CE

****************************************************************************
*********************************************

Page 4

IOCT 2 2 2013

WOSSC_APP_2014

# Direct Loans
William D. Ford Federal Direct Loan Program

## Federal Direct Consolidation Loan
## Application and Promissory Note

OMB No. 1845-0053
Form Approved
Exp. Date 02/28/2014

**WARNING:** Any person who knowingly makes a false statement or misrepresentation on this form or any accompanying documentation is subject to penalties that may include fines, imprisonment, or both, under the U.S. Criminal Code and 20 U.S.C. 1097.

**Before You Begin**
Read the instructions for completing this Federal Direct Consolidation Loan Application and Promissory Note. Print using blue or black ink or type. You must sign and date this form. If you cross out anything and write in new information, put your initials beside the change.

**NOTE: PAGES 1, 2, and 3 OF THIS NOTE MUST BE SUBMITTED FOR YOUR LOAN REQUEST TO BE PROCESSED.**

### Section A: Borrower Information

| 1. Last Name | First Name | Middle Initial | 2. Social Security Number |
|---|---|---|---|
| Long | Jason | | |

3. Permanent Address (if P.O. box or general delivery, see instructions)
629 Lamont Street NW  Apt. 2

| Washington | DC | 20010 |
|---|---|---|
| City | State | Zip Code |

4. Area Code/Telephone Number
( 202 ) 503 - 0052

5. E-Mail Address (Optional)

| 6. Former Name(s) | 7. Date of Birth (mm-dd-yyyy) | 8. Driver's License State and Number |
|---|---|---|
| | | State ___ - ___ Number ___   N/A |

9. Employer's Name   Unemployed

10. Employer's Address

| 11. Work Area Code/Telephone Number | City | State | Zip Code |
|---|---|---|---|
| ( ) | | | |

### Section B: Reference Information

12. References: List two persons with different U.S. addresses who do not live with you and who have known you for at least three years.

| | 1. | 2. |
|---|---|---|
| Name | Roosevelt Camara | Charles Montaini |
| Permanent Address | 1718 5th Street NW | 29 Rondon Circle SE Unit C |
| City, State, Zip Code | Washington, DC 20001 | Washington, DC 20019 |
| E-Mail Address (optional) | | |
| Area Code/Telephone Number | ( 202 ) 373 - 2853 | ( 202 ) 270 - 3543 |
| Relationship to Borrower | Friend | Friend |

### Section C: Consolidation Loan Indebtedness – Loans You Want to Consolidate (Continued on Page 2)

Read the instructions before completing this section. List each federal education loan that you want to consolidate, including any William D. Ford Federal Direct Loan (Direct Loan) Program loans that you want to include in your Direct Consolidation Loan. If you need more space to list additional loans, use the Additional Loan Listing Sheet included with this Note. List each loan separately. Please print. **IN THIS SECTION, LIST ONLY LOANS THAT YOU WANT TO CONSOLIDATE.**

We will send you a notice before we consolidate your loans. This notice will (1) provide you with information about the loans and payoff amounts that we have verified, and (2) tell you the deadline by which you must notify us if you want to cancel the Direct Consolidation Loan, or, if you do not want to consolidate one or more of the loans listed in the notice. This notice will include information about loans eligible for consolidation that you listed in this section. It will also include information about additional loans eligible for consolidation that you did not list in this section, if you have additional eligible loans with a holder of a loan that you listed in this section. See the instructions for more information about the notice we will send.

| 13. Loan Code (See Instructions) | 14. Loan Holder/Servicer Name, Address, and Area Code/Telephone Number (See Instructions) | 15. Loan Account Number | 16. Estimated Payoff Amount |
|---|---|---|---|
| F | Saint Augustine's University<br>P. O. Box 27481 Raleigh, NC 27611<br>919-516-4356 | | $ 10,271.63 |
| D | Direct Loans Servicing Center<br>P. O. Box 4609 Utica, NY 13504<br>800-848-0979 | | $ 30,000.00 |

Submit pages 1, 2, and 3.
Page 1 of 9

## Ombudsman Case 01661222 [ ref:_00Dt0Gyiq._500t0KNYUT:ref ]



**Federal Student Aid Ombudsman Group** <octsrply@ed.gov>
To: jclong2010@yahoo.com <jclong2010@yahoo.com>



Dear Jason Long:

Thank you for contacting the Federal Student Aid (FSA) Ombudsman Group. You raised concerns regarding the validity of your William D. Ford Direct (Direct) Consolidation. You assert that the signature on the Direct Consolidation Application and Promissory Note (PN) is not yours. Based on the information you provided, I was able to research your concerns. My summary follows.

**Role of the Ombudsman Group**

The Ombudsman Group is an independent office within the U. S. Department of Education (ED) and serves as an office of last resort to provide informal impartial assistance to borrowers to help resolve issues pertaining to their federal student loans. While our office does not have the authority to overturn a decision, we take into consideration the concerns, positions, and interests of all affected parties. We do not make binding decisions or testify at formal judicial or administrative hearings. We review the facts of the situation and explore possible resolutions that are in accordance with the federal statute governing FSA.

**Research Result**

I was unable to obtain documentation validating your assertion that you were the victim of identity theft.

**Research**

*Details Regarding the Documentation You Emailed to Our Office*

In the documentation you sent to our office on December 26, 2019, were copies of the first and the third pages of your existing Direct Consolidation Application and PN. This form is labeled "OMB No. 1845-0053 Exp. Date 02/28/2014". You can locate the page numbers at the bottom of each page. These pages are copies of the Consolidation Application and PN U.S. Department of Education (ED) Navient (ED-Navient) received on October 22, 2013, which were signed on October 8, 2013. Loan servicers are only required to keep a copy of the signature page of any borrower's PN; therefore, I have also attached a blank copy of the entire form for your records.

Also, included in the documentation you sent to our office are two separate Repayment Plan Selection forms, labeled "OMB No. 1845-0014 Exp. Date 11/30/2013". As titled, those forms are the forms borrowers may use to select a repayment plan for their Direct Loan Program loans. You may have completed more of these forms aside from the copies you emailed to our office, because any borrower can complete and submit these forms any time they request a change in repayment plans.

The first Repayment Plan Selection form you sent our office a copy of was dated October 8, 2013, which is the same date your Direct Consolidation Application and PN was signed. Based on the date stamp at the top of this Repayment Plan Selection form, ED-Navient received that form on October 22, 2013 - the same date they received your Direct Consolidation Application and PN. Borrowers applying to consolidate their federal student loans often submit Repayment Plan Selection forms along with their Consolidation Application and PNs if they wish to enter into any repayment plan other than the Standard Repayment Plan.

Subsequently, ED-Navient received another repayment plan selection form from you on November 7, 2013, which was dated October 31, 2013. The repayment plans you selected on the second form differ from the plan you selected on the form signed on October 8, 2013, which could be the reason that you submitted a secondary request so shortly after the initial request was submitted. I have attached a blank copy of all three pages of the form for your reference, as well.

Another document that you sent our office a copy of is the "Federal Direct Consolidation Loan Verification Certificates (LVCs)" ED-Navient received from Saint Augustine's University (SAU). As part of the application process for a Direct Consolidation, each loan holder (in this case for your Federal Perkins Loan from SAU, the school itself) listed on a borrower's application must complete a Loan Verification Certificate (LVC) and return it to ED for processing. The federal student loan borrower is not required to complete, sign, or authorize anything on an LVC. Hence, the reason that your signature is not on the LVCs you sent our office copies of. It is unclear as to why ED-Navient received two LVCs from SAU; however, it is likely because one copy is incomplete.

The other documentation you sent our office copies of is some of the pages from your Direct Consolidation Loan Origination History. This is a report that the loan servicer reports on when a consolidation originates. It details the borrower's demographic information, the terms of the new consolidation such as the interest rate of the loan and the original amount of the loan, and it also lists the underlying federal student loans that were included into the consolidation. This information is typically proprietary and confidential to the loan servicer; therefore, if you have any questions pertaining to this document, please address those concerns with ED-Navient directly, as our office does not create, manage, or interpret this data.

*Information I Obtained While Researching Your Concerns*

As stated in the "Results" section, I did not locate any information that would support your claim of identity theft. Attached is a copy of an agreement I obtained, in which it appears you entered into an agreement with the collection agency DMD Financial Services, Inc. (DMD) to assist you with your Direct Consolidation Application and PN. I confirmed that DMD Financial Services was the collection agency assigned to your defaulted Federal Perkins Loan at the time you applied for a Direct Consolidation in October 2013.

In addition, the mailing address on both your DMD Agreement and your Direct Consolidation Application and PN is the same mailing address that you provided our office when you initially contacted us for assistance on September 4, 2018. Since your initial request for assistance, you also confirmed your mailing address of 629 Lamont Street NW #2, Washington, DC 20010, on numerous occasions. This is also the mailing address that is on all of the documentation I reviewed while researching your concerns.

As detailed on the first page of your Direct Consolidation Application and PN in Section C1, it states (in part), "We will send you a notice before we consolidate your loans. This notice will (1) provide you with information about the loans and payoff amounts that we have verified, and (2) tell you the deadline by which you must notify us if you want to cancel the Direct Consolidation Loan, or if you do not want to consolidate one or more of the loans listed in the notice." ED-Navient would have mailed your Loan Disclosure Statement to the address on your Direct Consolidation Application and PN. That disclosure outlined the loans included in your consolidation, the interest rate of the consolidation, and the beginning principal balance of the consolidation. It also gave you the opportunity to cancel the consolidation within the time frame provided if you disagreed with the terms of the loan. ED-Navient did not receive contact from you within the allowable time frame; therefore, the origination process completed.

As mentioned in your November 22, 2019, Identity Theft Discharge Denial letter from FSA (attached), ED-Navient received an Unemployment Deferment Application from you after your Direct Consolidation originated. That application was signed in wet ink. The signature on that application is visibly similar to the wet signature on your Direct Consolidation Application and PN, on both Repayment Plan Selection forms, and the signature on the DMD Agreement I obtained while researching your concerns.

In your November 22, 2019, Identity Theft Discharge Denial letter from FSA, you were advised that if you disagree with the determination made, you may have your claim reconsidered by resubmitting your application to ED-Navient with new, compelling, evidence you would like considered. As we previously discussed, something that FSA would consider as new evidence is a determination from a Professional Handwriting Analyst that concludes the signature on the Direct Consolidation Application and PN is not yours. If you wish to pursue the Identity Theft Discharge, it may be beneficial to you to retain the services of a Handwriting Analyst that is certified to make a determination about the validity of the signature on your Direct Consolidation Application and PN.

If you are not currently repaying your Direct Consolidation, you may consider contacting ED-Navient to make arrangements for repayment, or postponement of payments, to avoid additional adverse credit reporting. Should your Direct Consolidation become 270 days or more delinquent, that shall constitute default on the loan, and if your consolidation defaults it will transfer to ED's loan servicer for defaulted federal student loans, the Default Resolution Group (DRG) for collection. If your Direct Consolidation defaults, you will become responsible for the collection costs DRG adds onto your outstanding principal and interest balance, per the terms and conditions of your PN.

**Next Steps**

If you have any additional concerns, you may contact ED-Navient's escalated department at (888) 545-4199 for additional assistance.

The research on your concern is complete and your case is closed with our office. If you have questions after speaking with ED-Navient, you may call me Monday-Thursday between 8:00 a.m. and 5:00 p.m. Eastern Time at our toll-free number, (877) 557-2575, and leave a message for me with a customer service representative.

Sincerely,


Jessica Hanson
Dispute Specialist

Attachments:    Blank Copy of OMB Form 1845-0053 Exp. Date 02/28/2014
                Blank Copy of OMB Form 1845-0014 Exp. Date 11/30/2013
                DMD Financial Services, Inc. Agreement
                November 22, 2019, Identity Theft Discharge Denial Letter from FSA


**\*If you would like to respond to this e-mail, please reply directly to the e-mail thread without modifying the Subject line. If the Subject line is modified, the Department may not receive your response or be able to connect your response to your case.\***



Federal **Student** Aid    | PROUD SPONSOR of
An OFFICE of the U.S. DEPARTMENT of EDUCATION    the AMERICAN MIND ®

ref:_00Dt0Gyiq._500t0KNYUT:ref

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

**1 File**    1MB

01661222 Long Closing Email Attachments.zip
1MB

DMD Financial Services                    3362824256            p.1

44909274 41806244

William D. Ford
Consolidation Department
P. O. Box 242800
Louisville, KY 40224-2800

I, Jason Long do give DMD Financial Services, Inc. permission to assist me with the status of my consolidation application with W. D. Ford.

Listed below is my current information:

SS# ████████████
Date of Birth 07/04/1989
Address 629 Eoremt Street NW Apt. 2
Washington, DC 20010
Phone# 202-503-0052

Sincerely,

Signature Jason G Long

Date 10/05/2013

**PERSONAL CONFIDENTIAL**

Insurance Permit# 100796

**aidVantage** | Official Servicer of
Federal Student Aid

P.O. Box 300001
Greenville, TX 75403-3001

(800) 722-1300

Jason Long
5112 Macarthur Blvd NW
Washington, DC 20016-3336

December 26, 2023

Account number: 9646961359

## Jason, here are the documents you recently requested.

**We're here to help**
If you have any questions about your account, visit us online at Aidvantage.com or give us a call at 800-722-1300 Monday 8 a.m. to 9 p.m., Tuesday – Wednesday 8 a.m. to 8 p.m., and Thursday – Friday 8 a.m. to 6 p.m., Eastern.

**Enclosure(s):**

Fraud information

**Important disclosure(s)**

*K031ED SLF*

*Your loan servicer*
Your loans are serviced by Maximus Education, LLC, (NMLS# 2241381)

**Promissory Note – continued from page 3**

### Governing Law

The terms of this Federal Direct Consolidation Loan Application and Promissory Note (Note) will be interpreted in accordance with the Higher Education Act of 1965, as amended (20 U.S.C. 1070 et seq.), the U.S. Department of Education's (ED's) regulations, as they may be amended in accordance with their effective date, and other applicable federal laws and regulations (collectively referred to as the "Act"). Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this Note.

### Disclosure of Loan Terms

This Note applies to a Federal Direct Consolidation Loan (Direct Consolidation Loan). Under this Note, the principal amount that I owe and am required to repay will be equal to all sums disbursed to pay off my prior loan obligations, plus any unpaid interest that is capitalized and added to the principal amount.

My Direct Consolidation Loan may have up to two separate loan identification numbers depending on the loans I choose to consolidate. These loan identification numbers will represent prior subsidized loans and prior unsubsidized loans. Each applicable loan identification number is represented by this Note.

When the loans that I am consolidating are paid off, a disclosure statement will be provided to me. The disclosure will identify the amount of my Direct Consolidation Loan, the associated loan identification number(s), and additional terms of the loan, such as the interest rate and repayment schedule. If I have questions about the information disclosed, I may contact my servicer. Important additional information is also contained in the Borrower's Rights and Responsibilities Statement. The Borrower's Rights and Responsibilities Statement and any disclosure I receive in connection with the loan made under this Note are hereby incorporated into this Note.

I understand that ED may use a servicer to handle billing and other communications related to my loan.

### Interest

Interest will be calculated using a formula provided for by the Act. Unless ED notifies me in writing of a lower rate, the interest rate on my Direct Consolidation Loan will be based on the weighted average of the interest rates on the loans being consolidated, rounded to the nearest higher one-eighth of one percent, but will not exceed 8.25%. This is a fixed interest rate, which means that the rate will remain the same throughout the life of the loan.

I agree to pay interest on the principal amount of my Direct Consolidation Loan from the date of disbursement until the loan is paid in full or discharged, except for interest ED does not charge me during a deferment period on the subsidized portion of my Direct Consolidation Loan. ED may add interest that accrues but is not paid when due to the unpaid principal balance of this loan, as provided under the Act. This is called capitalization.

### Late Charges and Collection Costs

ED may collect from me: (1) a late charge of not more than six cents for each dollar of each late payment if I fail to make any part of a required installment payment within 30 days after it becomes due, and (2) any other charges and fees that are permitted by the Act related to the collection of my Direct Consolidation Loan. If I default on my loan, I will pay reasonable collection costs, plus court costs and attorney fees.

### Repayment

I must repay the full amount of the Direct Consolidation Loan made under this Note, plus accrued interest. I will repay my loan in monthly installments during a repayment period that begins on the date of the first disbursement of the loan, unless it is in a deferment or forbearance period. Payments made by me or on my behalf will be applied first to late charges and collection costs that are due, then to interest that has not been paid, and finally to the principal amount of the loan, except during periods of repayment under the Income-Based Repayment (IBR) Plan. Under the IBR Plan, payments will be applied first to interest that is due, then to fees that are due, and then to the principal amount.

ED will provide me with a choice of repayment plans. Information on these plans is included in the Borrower's Rights and Responsibilities Statement. I must select

a repayment plan. If I do not select a repayment plan, ED will choose a plan for me in accordance with the Act.

ED will provide me with a repayment schedule that identifies my payment amounts and due dates. My first payment will be due within 60 days of the first disbursement of my Direct Consolidation Loan unless it is in a deferment or forbearance period. If I am unable to make my scheduled loan payments, ED may allow me to temporarily stop making payments, reduce my payment amount, or extend the time for making payments, as long as I intend to repay my loan. Allowing me to temporarily delay or reduce loan payments is called forbearance.

ED may adjust payment dates on my Direct Consolidation Loan or may grant me forbearance to eliminate a delinquency that remains even though I am making scheduled installment payments.

I may prepay any part of the unpaid balance on my loan at any time without penalty. After I have repaid my Direct Consolidation Loan in full, ED will send me a notice telling me that I have paid off my loan.

### Acceleration and Default

At ED's option, the entire unpaid balance of the Direct Consolidation Loan will become immediately due and payable (this is called "acceleration") if either of the following events occurs: (1) I make a false representation that results in my receiving a loan for which I am not eligible; or (2) I default on the loan.

The following events will constitute a default on my loan: (1) I fail to pay the entire unpaid balance of the loan after ED has exercised its option under the preceding paragraph; (2) I fail to make installment payments when due, provided my failure has persisted for at least 270 days; or (3) I fail to comply with other terms of the loan, and ED reasonably concludes that I no longer intend to honor my repayment obligation. If I default, ED may capitalize all outstanding interest. This will increase the principal balance, and the full amount of the loan, including the new principal balance and collection costs, will become immediately due and payable.

If I default, the default will be reported to national consumer reporting agencies and will significantly and adversely affect my credit rating. I understand that a default will have additional adverse consequences to me as disclosed in the Borrower's Rights and Responsibilities Statement. Following default, I may be required to repay the loan (including potential collection of amounts in excess of the principal and interest) under the Income Contingent Repayment (ICR) Plan or the IBR Plan in accordance with the Act.

### Legal Notices

Any notice required to be given to me will be effective if sent by first class mail to the most recent address that ED has for me, by electronic means to an address I have provided, or by any other method of notification permitted or required by applicable statute or regulation. I will immediately notify ED of a change of contact information or status, as specified in the Borrower's Rights and Responsibilities Statement.

If ED fails to enforce or insist on compliance with any term on this Note, this does not waive any right of ED. No provision of this Note may be modified or waived except in writing by ED. If any provision of this Note is determined to be unenforceable, the remaining provisions will remain in force.

Information about my loan will be submitted to the National Student Loan Data System (NSLDS). Information in NSLDS is accessible to schools, lenders, and guarantors for specific purposes as authorized by ED.

OCT 22 2013

Borrower's Name (please print) Jason Long Social Security Number [redacted]

22. I understand that:

A. [illegible]

B. [illegible]

C. [illegible]

D. [illegible]

E. [illegible]

F. [illegible]

G. [illegible]

H. [illegible]

I. [illegible]

J. [illegible]

K. [illegible]

23. Under penalty of perjury, I certify that:

A. [illegible]

B. [illegible]

C. [illegible]

D. [illegible]

E. [illegible]

F. [illegible]

24. I make the following authorizations:

A. [illegible]

B. [illegible]

C. [illegible]

D. [illegible]

E. [illegible]

F. [illegible]

25. Promise to Pay: [illegible]

[illegible]

[illegible]

[illegible]

I UNDERSTAND THAT THIS IS A LOAN THAT I MUST REPAY.

10/08/2013

26. Borrower's Signature Jason Long Today's Date (mm-dd-yyyy) 10/8/2013.

Submit pages 1, 2, and 3

**Borrower's Rights and Responsibilities Statement**

*Important Notice: This Borrower's Rights and Responsibilities Statement provides additional information about the terms and conditions of the loan you will receive under the accompanying Federal Direct Consolidation Loan (Direct Consolidation Loan) Application and Promissory Note (Note). Please keep a copy of this Note and this Borrower's Rights and Responsibilities Statement for your records.*

*In this document, the words "we," "us," and "our" refer to the U.S. Department of Education.*

**1. The William D. Ford Federal Direct Loan Program.** The William D. Ford Federal Direct Loan (Direct Loan) Program includes the following types of loans, known collectively as "Direct Loans":

- Federal Direct Stafford/Ford Loans (Direct Subsidized Loans)
- Federal Direct Unsubsidized Stafford/Ford Loans (Direct Unsubsidized Loans)
- Federal Direct PLUS Loans (Direct PLUS Loans)
- Federal Direct Consolidation Loans (Direct Consolidation Loans)

The Direct Loan Program is authorized by Title IV, Part D, of the Higher Education Act of 1965, as amended, 20 U.S.C. 1070 et seq. (HEA).

Direct Loans are made by the U.S. Department of Education. We contract with servicers to service, answer questions about, and process payments on Direct Loans. We will provide you with the address and telephone number of the servicer for your loan.

**2. Laws that apply to this Note.** The terms and conditions of loans made under this Note are determined by the HEA and other applicable federal laws and regulations. These laws and regulations are referred to as "the Act" throughout this Borrower's Rights and Responsibilities Statement. State law, unless it is preempted by federal law, may provide you with certain rights, remedies, and defenses in addition to those stated in the Note and this Borrower's Rights and Responsibilities Statement.

**NOTE:** Any change to the Act applies to loans in accordance with the effective date of the change.

**3. Direct Consolidation Loan identification numbers.** Depending on the type(s) of federal education loan(s) that you choose to consolidate, your Direct Consolidation Loan may have up to two individual loan identification numbers. However, you will have only one Direct Consolidation Loan and will receive only one bill.

**3a.** The subsidized portion of your Direct Consolidation Loan ("Direct Subsidized Consolidation Loan") will have one loan identification number representing the amount of the following types of loans that you consolidate:

- Subsidized Federal Stafford Loans
- Direct Subsidized Loans
- Subsidized Federal Consolidation Loans
- Direct Subsidized Consolidation Loans
- Federal Insured Student Loans (FISL)
- Guaranteed Student Loans (GSL)

**3b.** The unsubsidized portion of your Direct Consolidation Loan ("Direct Unsubsidized Consolidation Loan") will have one identification number representing the amount of the following types of loans that you consolidate:

- Unsubsidized and Nonsubsidized Federal Stafford Loans
- Direct Unsubsidized Loans
- Unsubsidized Federal Consolidation Loans
- Direct Unsubsidized Consolidation Loans
- Federal PLUS Loans (for parents or for graduate and professional students)
- Direct PLUS Loans (for parents or for graduate and professional students)
- Direct PLUS Consolidation Loans
- Federal Perkins Loans
- National Direct Student Loans (NDSL)
- National Defense Student Loans (NDSL)
- Federal Supplemental Loans for Students (SLS)
- Parent Loans for Undergraduate Students (PLUS)
- Auxiliary Loans to Assist Students (ALAS)
- Health Professions Student Loans (HPSL)
- Health Education Assistance Loans (HEAL)
- Nursing Student Loans (NSL)
- Loans for Disadvantaged Students (LDS)

**4. Adding eligible loans to your Direct Consolidation Loan.** You may add eligible loans to your Direct Consolidation Loan by submitting a request to us within 180 days of the date your Direct Consolidation Loan is made. (Your Direct Consolidation Loan is "made" on the date we pay off the first loan that you are consolidating.) After we pay off any loans that you add during the 180-day period, we will notify you of the new total amount of your Direct Consolidation Loan and of any adjustments that must be made to your monthly payment amount and/or interest rate.

If you want to consolidate any additional eligible loan(s) after the 180-day period, you must apply for a new Direct Consolidation Loan.

**5. Loans that may be consolidated.** *General.* Only the federal education loans listed in items 3a and 3b. of this Borrower's Rights and Responsibilities Statement may be consolidated into a Direct Consolidation Loan. You may only consolidate loans that are in a grace period or in repayment (including loans in deferment or forbearance). At least one of the loans that you consolidate must be a Direct Loan Program loan or a Federal Family Education Loan (FFEL) Program loan.

*Defaulted loans.* You may consolidate a loan that is in default if (a) you first make satisfactory repayment arrangements with the holder of the defaulted loan, or (b) you agree to repay your Direct Consolidation Loan under the Income Contingent Repayment (ICR) Plan or the Income-Based Repayment (IBR) Plan (see item 10).

*Existing consolidation loans.* Generally, you may consolidate an existing Direct Consolidation Loan or Federal Consolidation Loan into a new Direct Consolidation Loan only if you include at least one additional eligible loan in the consolidation. However, you may consolidate a Federal Consolidation Loan into a new Direct Consolidation Loan without including an additional loan if the Federal Consolidation Loan is delinquent and has been submitted by the lender to the guaranty agency for default aversion, or if the Federal Consolidation Loan is in default. In such cases, you must agree to repay the new Direct Consolidation Loan under the ICR Plan or the IBR Plan. You may also consolidate a single Federal Consolidation Loan into a new Direct Consolidation Loan to use the Public Service Loan Forgiveness program described in item 17 of this Borrower's Rights and Responsibilities Statement, or the no accrual of interest benefit for active duty service members described in item 8.

**6. Information you must report to us.** Until your loan is repaid, you must notify your servicer if you:

- Change your address or telephone number;
- Change your name (for example, maiden name to married name);
- Change your employer or your employer's address or telephone number changes; or
- Have any other change in status that would affect your loan (for example, if you receive a deferment while you are unemployed, but you find a job and therefore no longer meet the eligibility requirements for the deferment)

**7. Interest rate.** The interest rate on your Direct Consolidation Loan will be the lesser of the weighted average of the interest rates on the loans being consolidated, rounded to the nearest higher one-eighth of one percent, OR 8.25%. We will send you a notice that tells you the interest rate on your loan.

The interest rate on a Direct Consolidation Loan is a fixed rate. This means that the interest rate will remain the same throughout the life of your loan.

If you qualify under the Servicemembers Civil Relief Act, the interest rate on your loans obtained prior to military service may be limited to 6% during your military service. To receive this benefit, you must contact your servicer for information about the documentation you must provide to show that you qualify.

**8. Payment of interest.** Except as provided below for borrowers who serve in the military, interest accrues on a Direct Consolidation Loan from the date the loan is made until it is paid in full or discharged, including during periods of deferment or forbearance. You are responsible for paying all interest that accrues, except for interest that accrues on the subsidized portion of a Direct Consolidation Loan ("Direct Subsidized Consolidation Loan" – see item 3a.) during deferment periods.

If you do not pay the interest as it accrues during the periods described above, we will add the interest to the unpaid principal amount of your loan at the end of the deferment or forbearance period. This is called "capitalization." Capitalization increases the unpaid principal balance of your loan, and interest will then accrue on the increased principal amount.

```
                                                    FILED
                                                 CIVIL DIVISION

                                                  JUL 29 2025
 1
                                               Superior Court of the
 2                                             District of Columbia
        IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
 3
   Jason Christopher Long,              Case No.: 2025- CAB-4846
 4
              Plaintiff,
 5
                                        Judge: Tanya Jones Bosier
 6 vs.

 7 MAXIMUS, INC D/B/A AIDVANTAGE,
                                        Next Scheduled Remote Hearing:
 8          Defendant                   10/24/2025 9:30 AM

 9

10                                      PLAINTIFF'S MOTION FOR
                                        SANCTIONS, CORRECTION OF
11                                      RECORD, RE-FILING RIGHTS, AND
                                        MONETARY COMPENSATION DUE TO
12                                      CLERICAL MISHANDLING
13
```

### PLAINTIFF'S MOTION FOR SANCTIONS, CORRECTION OF RECORD, RE-FILING RIGHTS, AND MONETARY COMPENSATION DUE TO CLERICAL MISHANDLING

Plaintiff, Jason Christopher Long, specially appearing Pro Per, respectfully moves this Court for an Order finding the Civil Clerk's Office responsible for ministerial errors in handling, misfiling, and mutilating Plaintiff's documents, and awarding the following relief:

1. Recognition of the original filing date.

2. Correction and replacement of the faulty official record.

3. Leave to re-file original documents once received by mail.

4. Sanctions payable to Plaintiff and monetary compensation for damage and prejudice.

### FACTUAL BACKGROUND

On July 25, 2025, Plaintiff delivered a civil complaint and exhibits to the Clerk's Office in Room 5000 at the Moultrie Courthouse.

The clerk initially refused to file the documents, made undue comments on the substance, then processed the filing after delay.

PLAINTIFF'S MOTION FOR SANCTIONS, CORRECTION OF RECORD, RE-FILING RIGHTS, AND MONETARY COMPENSATION DUE TO CLERICAL MISHANDLING - 1

The official record reflects two missing pages, blurry, illegible material, and all attributable to the clerk's mishandling.

Plaintiff has not yet received the documents in the mail, delaying proper re-filing and causing prejudice, time loss, and inconvenience.

## LEGAL AUTHORITIES

A. D.C. Rule 45(c): Ministerial Duties Only

Superior Court Rule 45(c) requires clerks to accept, docket, and maintain custody of filings without evaluating their substance. Clerks have no legal discretion to reject, alter, or delay filings.

B. Filing Takes Effect Upon Submission — Not Docketing

In Courthouse News Serv. v. Yamasaki, the court ruled that access to the court attaches upon submission, not docketing, and clerks may not impede that access.

C. Relief Available for Clerk Error —In District of Columbia v. Watkins held that clerical omissions or errors that prejudice a party may justify equitable corrective measures, including retroactive recognition of filing date.

D. Monetary Sanctions & Compensation Under Court's Inherent Power

Under Chambers v. NASCO, courts possess inherent authority to sanction misconduct and compensate injured parties when court officers disrupt access to justice District of Columbia case law (e.g., Brooks v. United States) confirms factors courts should consider when assessing sanctions, including reasonableness, deterrence, and harm caused.

Rule 11 of the Superior Court (D.C. Civ. R. 11) authorizes sanctions payable directly to a party when conduct causes unnecessary delay or expense.

## ARGUMENT

1. The clerk acted ultra vires by refusing to file your documents and making legal comments, violating your right and D.C. Rule 45(c).

2. The resulting record is deficient—missing pages, duplicates, blurry—in prejudice to Plaintiff, and supports equitable relief under *Watkins.

3. The clerk's failure caused monetary harm: travel, time, delay, and emotional distress, for which compensation and sanctions are appropriate.

PLAINTIFF'S MOTION FOR SANCTIONS, CORRECTION OF RECORD, RE-FILING RIGHTS, AND MONETARY COMPENSATION DUE TO CLERICAL MISHANDLING - 2

4. Plaintiff has not yet received original documents in the mail, further delaying proper filing.

5. The Court's inherent authority supports ordering correction of the record, recognition of original filing date, leave to refile, sanctions, and compensation.

### PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court:

1. Recognize Plaintiff's original filing date (July 25, 2025) as the effective date of filing;

2. Order correction of the court record, including:

 inclusion of the two missing pages;

removal of blurry or duplicated pages;

insertion of a complete, clean replacement copies once provided;

3. Grant Plaintiff leave to re-file originally submitted documents once they arrive by mail without additional fees or procedural hurdles;

4. Award monetary compensation to Plaintiff for:

 travel expenses,
 time lost,
 any mailing costs,
 emotional or equitable damages caused by delay;

5. Impose sanctions payable to Plaintiff for clerk's misconduct and institutional delay;

6. Admonish Clerk's Office to adhere strictly to ministerial duties as defined by D.C. Rule 45;

7. Grant any additional relief deemed just.

Respectfully submitted,

Jason Christopher Long
Plaintiff, Pro Per
"Without Prejudice"
ALL RIGHTS ARE RESERVED.
July 29, 2025.

PLAINTIFF'S MOTION FOR SANCTIONS, CORRECTION OF RECORD, RE-FILING RIGHTS, AND
MONETARY COMPENSATION DUE TO CLERICAL MISHANDLING - 3

1

## PROPOSED ORDER

2

3    Upon review of Plaintiff's Motion for Sanctions and Compensation, it is hereby:

4    ORDERED that the Motion is GRANTED;

5
     ORDERED that Plaintiff's Complaint and supporting documents in this case shall be treated as
6    improperly filed on July 25, 2025;

7    ORDERED that the Clerk's Office shall promptly:

8    1. Substitute a clean and complete copy of Plaintiff's Complaint into the official record
9    (incorporating two missing pages and removing duplicates/blurry pages);

10   2. Docket the submission as of the original filing date;

11   3. Upon receipt of Plaintiff's original documents by mail, accept them for re-filing without
12   additional fees or objections;

13   ORDERED that Plaintiff is awarded monetary compensation for travel, time, mailing costs, and
14   prejudice sustained, the specific amount to be submitted via declaration within 14 days;

15   ORDERED that sanctions payable to Plaintiff are imposed against the Clerk's Office for
     improper and unauthorized handling of filing;
16
     ORDERED that the Clerk's Office shall comply strictly with the ministerial duties under D.C.
17   Super. Ct. Civ. R. 45(c) and refrain from evaluating or rejecting filings based on content.

18   SO, ORDERED.
19
     Dated: July 29, 2025.
20   Washington, D.C.

21
     _____
22   Judge Tanya Jones Bosier

23

24

25

26

27

28   PLAINTIFF'S MOTION FOR SANCTIONS, CORRECTION OF RECORD, RE-FILING RIGHTS, AND
     MONETARY COMPENSATION DUE TO CLERICAL MISHANDLING - 4

EX A. 2 Missing pages from Plaintiff's legal Documents that was filed on July 25, 2025.

NAVIENT Department of Education Loan Servicing

PO BOX 9635
WILKES-BARRE, PA 18773-9635

JASON LONG
629 LAMONT ST NW
APT 2
WASHINGTON DC 20010-2571

## JASON, we've enclosed a copy of the documents you recently requested.

**We're here to help**
We want to help you manage your account in a way that's convenient for you. If you have any questions about your account or your options, visit us online or give us a call.

Enclosure(s):

Promissory Note

**Account number**
9646961359 - 1

**Date**
01/16/19

**Manage your account online**
Navient.com

**Contact us**
800-722-1300

Monday – Thursday,
8 a.m. – 9 p.m.
Friday, 8 a.m. – 8 p.m. Eastern

Save money with Auto Pay: You may be able to earn an interest rate reduction by enrolling in Auto Pay. To enroll, log in to Navient.com and change your payment settings. Check your online account for benefit eligibility.

Para comunicarse en Español con 'Atención al Cliente', llame gratis al (800) 722-1300, y marque el numero correspondiente.

*9646961359105652099*

OCT 2 2 2013

Borrower's Name (please print) Jason Long Social Security Number [redacted]

22. I certify that:

A. [illegible]

B. [illegible]

C. [illegible]

D. [illegible]

E. [illegible]

F. [illegible]

G. [illegible]

H. [illegible]

I. [illegible]

J. [illegible]

K. [illegible]

23. Under penalty of perjury, I certify that:

A. [illegible]

B. [illegible]

C. [illegible]

D. [illegible]

E. [illegible]

F. [illegible]

24. I make the following authorizations:

A. [illegible]

B. [illegible]

C. [illegible]

D. [illegible]

E. [illegible]

F. [illegible]

[illegible]

[illegible]

[illegible]

[illegible]

[illegible]

25. Borrower's Signature: Jason Long Today's Date (mm-dd-yyyy) 10/08/2013 10/8/2013

Submit pages 1, 2, and 3



# Superior Court of the District of Columbia
## CIVIL DIVISION

**Check One:**

| | | |
|---|---|---|
| ☐ **Civil Actions Branch**<br>**500 Indiana Ave., N.W.**<br>**Room 5000**<br>**Washington, D.C. 20001**<br>**Telephone: (202) 879-1133** | ☐ **Landlord & Tenant Branch**<br>**510 4th Street, N.W.**<br>**Room 110**<br>**Washington, D.C. 20001**<br>**Telephone: (202) 879-4879** | ☐ **Small Claims & Conciliation Branch**<br>**510 4th Street, N.W.**<br>**Room 119**<br>**Washington, D.C. 20001**<br>**Telephone: (202) 879-1120** |

_____
                        Plaintiff

            **v.**                    CASE NUMBER: _____

_____
                        Defendant

## ANSWER OF DEFENDANT

The defendant answers the claim(s) of plaintiff(s) as follows:

_____

_____

_____

_____

_____

_____


## SIGNATURE AND ADDRESS OF PARTY/ATTORNEY

_____        _____
Signature                              Date

_____        _____
Printed Name and Bar Number (if applicable)   Street Address

_____        _____
Email Address and Phone Number          City, State, Zip

## CERTIFICATE OF SERVICE

I hereby certify that on _____ (date), that a copy of this Answer was sent in the manner indicated to the party/parties in this case or their attorney(s) as listed below:

☐ E-served on or ☐ Mailed to (check one)

_____        _____
Name                                   Name

_____        _____
Street Address                         Street Address

_____        _____
City, State, Zip                       City, State, Zip

_____        _____
Email Address and Phone Number         Email Address and Phone Number

Form CV(6)-451/Jan. 2020                    Super. Ct. Civ. R. 12; Super Ct. L&T R. 5 & Super. Ct. SC R. 5