**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JASON CHRISTOPHER LONG**<br>        **Plaintiff,**<br><br>    **v.**<br><br>**MAXIMUS EDUCATION, LLC d/b/a**<br>**AIDVANTAGE et al.,**<br><br>        **Defendants.** | **Case No.: 1:25-CV-3272 (RC)** |

<u>**DEFENDANTS' MOTION TO DISMISS**</u>

Maximus Education, LLC d/b/a/ Aidvantage ("Aidvantage"), Sam Tandy, and Dominic Martin (collectively, "Defendants"), through counsel, respectfully move the Court to dismiss Jason Christopher Long's ("Plaintiff") complaint ("Complaint") for lack of personal jurisdiction over Defendants Tandy and Martin ("Individual Employee Defendants") and for failure to state a claim upon which relief can be granted, with respect to all Defendants, pursuant to Rules 8(a), 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

## I.        INTRODUCTION

Plaintiff's claims arise from student loans he believes were forged in 2013 by entities not a party to this action.  Plaintiff has applied to have the United States Department of Education ("DOE") discharge these loans for fraud.  According to the Complaint, the DOE has until March 2026 to adjudicate Plaintiff's discharge.  As Plaintiff's loan servicer, Aidvantage (much less its individual employees) cannot discharge loans owned by the DOE.  Though the deadline for DOE to decide Plaintiff's discharge has not come to pass, Plaintiff seeks to hold Defendants liable for fraud that by all indications, long preceded Aidvantage's servicing of the loans.  The "fraud" Plaintiff attributes to Defendants is hardly specified or coherent and does not meet the heightened

1

pleading standard in Rule 9(b).  But even if Plaintiff had adequately pleaded his claims, he seeks

injunctive relief not available under the Higher Education Act, against Aidvantage and individual

Defendants over whom the Court has no personal jurisdiction. For all these reasons, the Complaint

should be dismissed in its entirety.

## II.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On July 25, 2025, Plaintiff filed a Complaint in the Superior Court of the District of

Columbia. Doc. 1-2, pp. 1-370.  Defendants removed the action to this Court on September 18,

2025.

Aidvantage services federal student loans owned by the DOE.[1]  Defendants Tandy and

Martin are individual employees in the Office of the Customer Advocate for Aidvantage. Doc. 1-

2, 27-31.  Plaintiff appears to allege he has loans serviced by Aidvantage (Doc. 1-2, p. 18, ¶¶ 16-

19), and his claims apparently stem from a Borrower Defense to Repayment ("BDR") application

Plaintiff submitted on March 6, 2023. Doc. 1-2, p. 17, ¶ 11.  Plaintiff pleads that the Department's

deadline to respond to his BDR application is not until March 2026. *Id*.  Even so, Plaintiff wants

this Court to adjudicate the discharge of his student loans before the Department's time to do so

has come to pass.  Plaintiff's BDR application seems to be based on fraud, though the details are

unclear.  Apparently, Plaintiff's claims a non-party, DMD Financial Services, Inc. "forged" loan

documents in 2013, eight years before Aidvantage even began servicing student loans. Doc. 1-2,

p. 17 ¶ 14.  While Plaintiff pleads that the Department has until 2026 to adjudicate his BDR

application, he also faults Aidvantage (a loan servicer with no ability to discharge a loan), with

---

[1] *See* "About Aidvantage," *available at, https://aidvantage.studentaid.gov/getting-started/about-aidvantage* (last visited September 30, 2025).  *See Sedaghatdoust v. Blinken*, 735 F. Supp. 3d 1, 5 (D.D.C. 2024) ("The Court may take judicial notice of the contents of a government website, and it may consider such contents at the motion-to-dismiss stage without converting the motion into one for summary judgment.").

"recklessly" denying his unspecified "claims" and "fail[ing] to correct the record." Doc. 1-2, p. 17 ¶ 15.

With respect to Aidvantage and the Individual Employee Defendants, Plaintiff claims without detail that all Defendants "recklessly" serviced his student loans and "failed to correct records" in response to documents Plaintiff provided. Doc. 1-2, p. 18, ¶ 16. Again without detail, Plaintiff contends Mr. Tandy "obstructed" Plaintiff's rights under the D.C. Consumer Protection Procedures Act (D.C. Code Ann. § 28-3901 *et seq.*) by alleging telling Plaintiff that documents he requested from Aidvantage did not exist. Doc. 1-2, p. 18, ¶ 17. Plaintiff does not specify what those "documents" are. Plaintiff contends Mr. Martin too engaged in "obstructive" conduct and failed to send Plaintiff a document that Plaintiff ultimately was able to retrieve independently. Doc. 1-2, p. 18, ¶ 18.[2] Plaintiff does not explain how either of the Individual Employee Defendants' alleged conduct relates to his claims or caused him damage.

For its part, Plaintiff accuses Aidvantage of fraud because it "altered documents by manipulating contrast on the Income-Driven Repayment (IDR) page, making terms unreadable, and inserted additional pages into the loan file not included in prior servicing packages from Navient as of January 19, 2019." Doc. 1-2, p. 18, ¶ 19. Aidvantage cannot discern from these allegations what "fraud" Plaintiff believes it engaged in, as his allegations about "manipulating contrast," and inserting unidentified "pages" are candidly, indecipherable. Plaintiff also believes a prior loan servicer, Navient, which is not a party to this case, provided an "authorization letter"

---

[2] *See Winebarger v. Pennsylvania Higher Educ. Assistance Agency*, 411 F. Supp. 3d 1070, 1089 (C.D. Cal. 2019) (dismissing negligence and other state law claims as preempted by the HEA, and finding that "each of Plaintiffs' state claims rests on an alleged misrepresentation – that [loan servicers] provided an inaccurate qualifying payment count for [public service loan forgiveness] eligibility – and, thus, the Court concludes that these claims are preempted because the failure to provide accurate information is, in essence, nothing more than a disclosure claim").

on an unspecified date that contained indicators of fraud, including "a handwritten 'i' with a circle above it." Doc. 1-2, p. 18, ¶ 20. Overall, Plaintiff's allegations against Defendants are conclusory, and do not plausibly support a claim, much less with the level of specificity required for fraud.

In the Complaint section outlining the causes of action, Plaintiff alleges that Defendants obstructed his ability to make informed repayment decisions, in violation of the D.C. Student Loan Borrower Bill of Rights Act (*see* D.C. Code Ann. § 31-106.02a).[3] Doc. 1-2, p. 18, ¶ 22. Plaintiff does not indicate how Defendants obstructed his ability to make informed repayment decisions. Plaintiff alleges that "Defendants used forged signatures and false documents to create and enforce a loan agreement to which Plaintiff never consented." Doc. 1-2, p. 19, ¶ 26. Plaintiff does not indicate how Defendants relied on these documents or who allegedly forged signatures. In fact, the Complaint suggests that other parties not part of this action were involved in the forgery (Doc. 1-2, p. 17, ¶ 13-14), and further, that the "forgery" predated Aidvantage's servicing of Plaintiff's loans by more than eight years. Doc. 1-2, p. 26. Without citing any applicable law, Plaintiff alleges that Defendants "owed Plaintiff a duty to act with due care in servicing the loan and handling the documents." Doc. 1-2, p. 19, ¶ 29. Plaintiff does not indicate how Defendants (or what conduct of Defendants) breached this duty or "depart[ted] from reasonable standards, causing Plaintiff harm." *Id.* at ¶ 30.

## III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) provides for the dismissal of a complaint with respect to any defendants over which the court lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2).

---

[3] The relevant provisions of the D.C. Student Loan Borrower Bill of Rights Act (D.C. Code Ann. § 31-106.02a) took effect on November 27, 2024, pursuant to D.C. Law 25-219, amending the Department of Insurance and Securities Regulation Establishment Act of 1996 (D.C. Code Ann. § 31-101 *et seq.*). The Act was not in effect when the conduct cited in Plaintiff's Complaint is alleged to have taken place.

"The plaintiff has the burden of establishing a factual basis for the exercise of personal jurisdiction over the defendant," *Hindu Am. Found. v. Viswanath*, 646 F. Supp. 3d 78, 89 (D.D.C. 2022) (quoting *Crane v. New York Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990)). Plaintiff is required to allege specific facts as the basis for personal jurisdiction, but the court is not required to treat all plaintiff's allegations as true in evaluating a question of personal jurisdiction. *Id.* Any factual discrepancies are to be resolved in favor of the plaintiff. *Id.*

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Determining whether a complaint is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* While a court will accept the factual allegations in a complaint as true on a motion to dismiss, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* Likewise, when a complaint does not satisfy Rules 8(a) and 9(b), it may be dismissed under Rule 12(b)(6). *See id.* at 677-78; *Cordoba Initiative Corp. v. Deak*, 900 F. Supp. 2d 42, 47-48 (D.D.C. 2012).

IV.    **ARGUMENT**

A.    **The Court lacks personal jurisdiction over the Individual Employee Defendants.**

1.    **The Court does not exercise general jurisdiction over the Individual Employee Defendants.**

For a court to exercise general jurisdiction over a defendant, the defendant's affiliations with the forum state must be "continuous and systematic" to such an extent that the defendant is "essentially at home in the forum state." *See Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014) and *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  Mr. Tandy lives and works in Pennsylvania. Defs.' Notice of Removal ¶ 7.  Mr. Martin resides and works in Indiana. Defs.' Notice of Removal ¶ 6.  The Individual Employee Defendants have no apparent affiliations with the District of Columbia other than the fact that they allegedly sent communications to Plaintiff, a resident of the District of Columbia, in the course of their employment with Aidvantage.  As explained below, merely sending communications into the District of Columbia does not confer even specific jurisdiction, much less general jurisdiction. Plaintiff has failed to establish general jurisdiction over the Individual Employee Defendants.

2.    **The Court cannot exercise specific jurisdiction over the Individual Employee Defendants.**

A court's exercise of specific jurisdiction over a defendant must meet the requirements of the jurisdiction's long-arm statue and the constitutional requirements of due process, neither of which are met with respect to the Individual Employee Defendants.  Employment with Aidvantage, a Delaware limited liability company and citizen of Virginia, does not subject the Individual Employee Defendants to the Court's exercise of personal jurisdiction, even if the Court may exercise personal jurisdiction over Aidvantage.  "Each defendant's contacts with the forum State must be assessed individually." *Duarte v. Nolan*, 190 F. Supp. 3d 8, 13 (D.D.C. 2016) (citing

*Calder v. Jones*, 465 U.S. 783, 790 (1984)). Plaintiff must demonstrate that the Individual Employee Defendants are subject to the Court's personal jurisdiction apart from jurisdiction that might arise over their employers. *See Nat'l Cmty. Reinvestment Coal. v. NovaStar Fin., Inc.*, 631 F. Supp. 2d 1, 5 (D.D.C. 2009) (citing *D'Onofrio v. SFX Sports Grp., Inc.*, 534 F. Supp. 2d 86, 90-91 (D.D.C. 2008)).

   **a. The District of Columbia's long-arm statute does not subject the Individual Employee Defendants to specific jurisdiction.**

  The District of Columbia's long-arm statute provides in relevant part that "[a] District of Columbia court may exercise personal jurisdiction over a person . . . as to a claim for relief arising from the person's [] transacting any business in the District . . . [or] causing tortious injury in the District." D.C. Code Ann. § 13-423(1) and (3).  With respect to transacting business in the District, the statute confers jurisdiction to the full extent allowed by the Due Process Clause. *See Urquhart-Bradley v. Mobley*, 964 F.3d 36, 44 (D.C. Cir. 2020) (citing *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013)).  Because of that interpretation, the two components of the specific jurisdiction analysis merge into a single inquiry into the constitutional requirements of due process, which will be addressed below. *Id.*

  With respect to causing tortious injury, Plaintiff's Complaint includes two conclusory allegations that the Individual Employee Defendants made unspecified false statements and intentionally withheld a document that should have been provided to Plaintiff. (Doc. 1-2, p. 18, ¶¶ 17-18).  These conclusory allegations are not adequately pleaded and cannot on their own form a basis for this Court's exercise of personal jurisdiction over the Individual Employee Defendants.

   **b. The constitutional requirements of due process protect the Individual Employee Defendants from the burden of defending suits across the United States that could result from basic and defining duties of their employment.**

It is not reasonable to require employees to be subject to personal jurisdiction in every state or district where any recipient of an email sent within their scope of employment resides. The Individual Employee Defendants serving in the Office of the Customer Advocate are the first level of contact for borrower inquiries directed to Aidvantage. *See* Doc. 1-2, pp. 27-31.  As a defining responsibility of their jobs, they communicate with borrowers residing across the United States, and outside of it.

As noted above, the Individual Employee Defendants have no apparent affiliations with the District of Columbia other than the fact that they sent communications to Plaintiff, a resident of the District of Columbia, in the course of their employment with Aidvantage.  Such contact is not enough to support the Court's exercise of personal jurisdiction.  "[An] [i]ndividual's contact with an out-of-state party cannot alone automatically establish sufficient minimum contacts in the other party's home forum to permit exercise of jurisdiction in that forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79 (1985).  This Court has held that "minimum contacts exist where a defendant takes intentional, and allegedly tortious, actions expressly aimed at a jurisdiction," in contrast to circumstances in which a defendant only happened to "cause effects in the District of Columbia because of some fortuitous or unilateral choice of the plaintiff's." *Urquhart-Bradley*, 964 F.3d at 48 (D.C. Cir. 2020) (citing *Calder*, 465 U.S. at 789 and *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (internal quotations omitted)).  At most, Plaintiff's claims against the Individual Employee Defendants can be distilled to that they, as employees of Plaintiff's loan servicer, Aidvantage, sporadically communicated with Plaintiff while he was in the District of Columbia.  Even if communicating with Plaintiff amounted to tortious conduct (and clearly it does not), sporadic communication is not enough to confer specific personal jurisdiction. *Walden*, 571 U.S. at 285 (internal citation omitted) ("[M]inimum contacts analysis looks to the defendant's contacts

with the forum State itself, not the defendant's contacts with persons who reside there."). Moreover, any "effect" from these communications in the District of Columbia resulted solely from Plaintiff's choice of residence. To subject the Individual Employee Defendants to personal jurisdiction on these facts would result in a significant burden on them, and on all similarly situated employees, to defend suits from potentially every District of Columbia borrower with whom they communicate, in addition to suits in jurisdictions across the United States wherever such borrowers reside. This would not comport with due process. *Id.* at 286 (citing *Burger King*, 471 U.S. at 475) ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."); *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (citing *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ("[C]ontacts with the forum State [must be such] that the maintenance of the suit is reasonable, in the context of our federal system of government, and does not offend traditional notions of fair play and substantial justice.") (internal quotation marks omitted).

### B. The Complaint should be dismissed as to all Defendants because it does not meet the pleading standards of Rules 8(a) and 9(b).

Setting aside the Court's lack of jurisdiction over the Individual Employee Defendants, the Complaint should be dismissed because it does not meet the Federal Rules' pleading standards. The sufficiency of pleadings is first governed by Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). While a *pro se* complaint "is entitled to liberal construction . . . [it] must comply with the basic requirements of Rule 8." *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009) (internal citation omitted). Here, the allegations

in Plaintiff's Complaint "do not give fair notice to defendants of the claim being asserted, sufficient to prepare a responsive answer [and] to prepare an adequate defense[.]" *Id.* As this Court has held, "[a] complaint must be dismissed under Rule 12(b)(6) if it consists only of threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Crowder v. Bierman, Geesing, & Ward LLC*, 713 F. Supp. 2d 6, 8 (D.D.C. 2010) (internal quotations and citations omitted).

The Complaint fails to state a cognizable claim against any of the Defendants. Plaintiff's allegation that Mr. Tandy "repeatedly denied Plaintiff's request for records" does not provide any basis for the claim that Mr. Tandy's communications with Plaintiff were false or incorrect. Doc. 1-2, p. 18, ¶ 17. Similarly, Plaintiff's allegation that Mr. Martin "failed to provide a document dated September 18, 2018," (before Aidvantage serviced his loan) in "October 2024" does not support that Mr. Martin's communications with respect to such a document were "false" or "obstructive." Doc. 1-2, p. 18, ¶ 18. The allegations against Aidvantage are also not cognizable. Plaintiff alleges that Aidvantage "recklessly denied the claims and failed to correct the record" following Plaintiff's submission of documents he claims demonstrate his student loans are fraudulent,[4] Doc. 1-2, pp. 17-18, ¶¶ 15-16, but the Complaint does not articulate how this relates to any of the causes of action pleaded. Overall, the Complaint does not provide fair notice of any claim and is insufficient to enable a responsive answer and adequate defense; therefore, these allegations do not satisfy Rule 8(a) or Rule 12(b)(6).

Because Plaintiff's Complaint alleges fraud, he must also meet the heightened pleading requirements of Rule 9(b). Fraud must be pleaded with specificity, which generally requires the plaintiff to allege the who, what, and where of his fraud claim. *Cordoba*, 900 F. Supp. 2d at 48

---

[4] As explained in Point C, the DOE ultimately grants or denies BDR applications. Aidvantage cannot unilaterally discharge a loan for fraud, assuming that is what Plaintiff wants here.

(D.D.C. 2012). Here, Plaintiff claims that Defendants engaged in "fraud" or made "false statements" (Doc. 1-2, ¶¶ 17, 20), and that entities not even party to this lawsuit "forged" documents. Doc. 1-2, ¶ 13. Plaintiff's claims fall far short of this pleading standard, and the Complaint should be dismissed for this reason too.

### C.    Plaintiff's claims should be dismissed with prejudice because there is no private right of action under the Higher Education Act.

To the extent Plaintiff seeks to discharge or reform his student loans, his claims are governed by the Higher Education Act ("HEA"), which does not provide a private right of action. *See Gavin v. Dept. of the Air Force, et al.,* 324 F. Supp. 3d 147, 151 (D.D.C. 2018) (recognizing that there is no "private right of action under the Higher Education Act of 1965, 20 U.S.C. § 1001 *et seq.,* which governs federal student loans") (citing *McCulloch v. PNC Bank, Inc.,* 298 F.3d 1217, 1221 (11th Cir. 2022) and *Johnson v. US. Dept. of Educ.,* 580 F.Supp.2d 154 (2008)); *McCulloch,* 298 F.3d at 1221 (holding that the HEA does not create a private right of action and collecting twenty-five years' worth of cases finding the same); *Kemper v. U.S. Dep't of Educ.*, 285 F. Supp. 3d 145, 149 (D.D.C. 2018) (holding that the HEA did not create a private claim). Rather, loan discharges "must be sought administratively from the Secretary of Education." *Id.* Plaintiff's efforts to discharge his loan through the courts is an improper workaround of the correct procedure—to seek relief from the Secretary of Education. And, as explained below, even if Plaintiff had a claim for discharge or reform of his loan, Aidvantage cannot grant that relief. *Id.* Consequently, Plaintiffs' demand to modify or discharge his student loans serviced by Aidvantage fails as a matter of law.

**D.    Even if the student loans could be reformed, Defendants do not have authority to grant the relief Plaintiff is requesting and are not proper parties.**

Defendants should also be dismissed because they are not proper parties to this action. Ultimately, Plaintiff seeks: (1) an order declaring his "student loan agreements forged, fraudulent, and unenforceable"; (2) compensatory damages; (3) "statutory penalties and restitution under D.C. Consumer Protection Procedures Act"; an injunction to prevent "Defendants from further collection, reporting, or servicing related to the fraudulent loan"; (4) an order requiring Defendants "to produce all original loan documents and communications" without specification as to which documents and communications have not already been provided to Plaintiff; (5) "a permanent injunction barring [Defendants] from servicing, collecting, or managing any student loans for residents of the District of Columbia"; an order "to revoke or suspend any licenses or registrations held by [] DMD Financial Services and any other involved entities for failure to comply with the Title IV requirements and the D.C. Student Loan Borrower Bill of Rights"; and "an independent audit overseen by the Court or the District of Columbia Attorney General to ensure full compliance with District laws and protect borrowers moving forward." Doc. 1-2, p. 20.

First, Plaintiff is seeking relief from non-parties to this action. Plaintiff specifically names "DMD Financial Services" and "Saint Augustine's University" as engaging in fraud and forging signatures on Plaintiff's student loan documents. Doc. 1-2, p. 17, ¶ 13-14. These allegations underly the claims in Plaintiff's Complaint and have no apparent connection to Defendants. Grouping Defendants together with non-parties and claiming they all engaged in the same misconduct cannot survive a motion to dismiss. *Arias v. Universal Music Grp.*, 640 F. Supp. 3d 84, 93 (D.D.C. 2022) ("Plaintiff cannot survive a motion to dismiss by lumping all the defendants together and providing no factual basis to distinguish their conduct.") (citing *Toumazou v. Turkish Republic of Northern Cyprus*, 71 F. Supp. 3d 7, 21 (D.D.C. 2014) (internal quotation marks

omitted); *Estate of Mickens v. U.S. Bank Nat'l Ass'n*, No. 18-cv-928 (KBJ), 2021 WL 3418955, at *4 (D.D.C. Aug. 5, 2021)).

Even if Plaintiff had stated a claim against Defendants, the DOE owns Plaintiff's loans and Aidvantage, much less individual employees within Aidvantage, have no authority to discharge a loan. *See, e.g., White v. Great Lakes Educ. Loan Servs., Inc.,* 659 F. Supp. 3d 809, 815 (E.D. Mich. 2023), *reconsideration denied,* No. 1:22-CV-11229, 2024 WL 641019 (E.D. Mich. Feb. 15, 2024) (dismissing claim for discharge of student loan debt against loan servicer because, "Great Lakes, as the loan servicer, has no authority to discharge student-loan debt"); *Gavin*, 324 F. Supp. 3d at 151 ("even if [plaintiff] did have a cause of action for discharge of her student loans, it does not appear that Nelnet would be a proper defendant"); *see also Johnson v. Duncan,* 746 F.Supp.2d 163, 168 n.4 (D.D.C. 2010) (holding that loan servicer had "no power or authority to discharge [plaintiffs] federally guaranteed student loans"). The same rationale applies here: Defendants have no authority to reform or discharge Plaintiff's student loans. Only the DOE can grant that relief.

Finally, the Complaint requests relief for which the DOE, and by extension, Aidvantage, is immune. Specifically, Plaintiff demands that the Court: (1) declare his loan agreements unenforceable; (2) order defendants to produce loan documents and communications; and (3) enjoin Aidvantage from servicing loans in the District of Columbia. Under the HEA however, Courts cannot enter injunctive relief that would jeopardize the DOE's interest in its property. 28 U.S.C. § 1082(a)(2) ("[N]o attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Secretary [of Education] or property under the Secretary's control."). While Plaintiff's demand here is against Aidvantage and its employees, if the Court were to declare Plaintiff's federal loans unenforceable or enjoin their collection, it would jeopardize the DOE's interest in its loans. *See Witz v. Great Lakes Educ. Loan Servs.*, 752 F. Supp.

3d 980, 989 (N.D. Ill. 2024) (finding student loan servicer was immune to claims for "injunctive relief that would: (1) require an adjustment of [plaintiff's] current outstanding loan balances; or (2) prohibit the federal government from collecting certain sums from him" and that court lacked power to grant that relief); *see also Kemper*, 285 F. Supp. 3d at 148-49 (dismissing injunctive relief claim against DOE. Plaintiff's demand for injunctive relief should be dismissed with prejudice, because it would prevent the DOE from collecting its own loans.

  **E. Plaintiff has failed to state any of his state law claims and his complaint should be dismissed.**

  Separate from each of the above grounds for dismissal, the Complaint should also be dismissed because Plaintiff does not state a claim for any of the causes of action asserted. Aidvantage has exhaustively searched for the cases Plaintiff cites in the Complaint to support his causes of action, and it appears only one (*Grayson v. AT&T*, 15 A.3d 219 (D.C. 2011) exists. Plaintiff also cites to an incorrect D.C. Code (D.C. Code § 31-1134.01 *et seq.*) in reference to the D.C. Student Loan Borrower Bill of Rights. The Complaint is devoid of any legal authority for Plaintiff's claims, and the state law claims should otherwise be dismissed.

  **1. Plaintiff has not stated a claim for violation of the D.C. Student Loan Borrower Bill of Rights or the Consumer Protection Act.**

  Plaintiff alleges Defendants violated the D.C. Student Loan Borrower Bill of Rights Act (D.C. Code Ann. § 31-106.02a), but the conduct that appears to support this claim predates the Act, and there is no indication it applies retroactively. The Act went into effect on November 27, 2024, pursuant to D.C. Law 25-219, amending the Department of Insurance and Securities Regulation Establishment Act of 1996 (D.C. Code Ann. § 31-101 *et seq.*). Plaintiff claims that Defendants failed to send him a document "in October 2024," and without any detail, claims they "obstructed" his ability to make informed payment decisions. However, the Act was not in effect

in October 2024, and Plaintiff's Complaint seems to arise from alleged fraud in 2013, and a BDR application he submitted in 2023. The Act also prohibits only certain enumerated categories of conduct, and Plaintiff has not plausibly identified any conduct that violates the Act. *See* D.C. Code Ann. § 31-106.02a(1)-(12).

Plaintiff has also failed to state a claim under the Consumer Protection Procedures Act (D.C. Code Ann. § 28-3901 *et seq.*). While Plaintiff does not identify the section on which his claim is based, affording his Complaint a liberal construction, it appears he refers to the Act's prohibitions against "misrepresent[ing] . . . a material fact which has a tendency to mislead;" "fail[ing] to state a material fact if such failure tends to mislead;" or "fail[ing] to supply to a consumer a copy of a sales or service contract, lease, promissory note, trust agreement, or other evidence of indebtedness which the consumer may execute[.]" D.C. Code Ann. § 28-3901(e), (f), and (q).  Plaintiff's Complaint does not identify "material facts" misrepresented or withheld by Defendants, nor specify what documents Defendants failed to supply.  Without more, these "threadbare recitals of the elements" do not provide fair notice to Defendants of the basis for Plaintiff's claims. *See Crowder*, 713 F. Supp. 2d at 8; *see also Earth Island Inst. v. Coca-Cola Co.*, 321 A.3d 654, 664 (D.C. 2024) (finding that a plaintiff must "plausibly allege that the merchant misrepresented or failed to state a material fact").  Plaintiff's allegations about lack of disclosure are also preempted by the HEA.  *Winebarger*, 411 F. Supp. 3d at 1089 (C.D. Cal. 2019) (finding that negligence and state law claims were preempted by the HEA, because Plaintiff's claim amounted to a failure to disclose information about loan terms).  Plaintiff's Consumer Protection Procedures Act claim is insufficiently pleaded and should be dismissed.

### 2.    Plaintiff's constructive fraud claim should be dismissed.

Plaintiff has not alleged any of the elements of a constructive fraud claim. To state a fraud claim, the plaintiff must allege "(1) the defendant made a false representation; (2) in reference to material fact; (3) with knowledge of its falsity; (4) with the intent to deceive the plaintiff; (5) the plaintiff acted in reasonable reliance on that representation; (6) which consequently resulted in provable damages." *Essroc Cement Corp. v. CTI/D.C., Inc.*, 740 F.Supp.2d 131, 145 (D.D.C.2010) (citing *C & E Servs., Inc. v. Ashland*, 498 F.Supp.2d 242, 255 (D.D.C.2007) (internal citation omitted)).  "Constructive fraud includes all the same elements as common law fraud except the intent to deceive, and, in place of requiring a showing of actual dishonesty, it requires a plaintiff to demonstrate the existence of a confidential relationship between the plaintiff and defendant by which the defendant was able to exercise extraordinary influence over plaintiff." *Doe v. Roman Cath. Diocese of Greensburg*, 581 F. Supp. 3d 176, 208–09 (D.D.C. 2022) (citing *Dentons US LLP v. Republic of Guinea*, 208 F. Supp. 3d 330, 341 (D.D.C. 2016).

As noted above, Plaintiff has not pleaded his fraud claim with the specificity Rule 9(b) requires, and his claim should be dismissed for this reason alone.  Even so, Plaintiff has failed to demonstrate that he was in a confidential relationship in which any of the Defendants were "able to exercise extraordinary influence" over him. *See Roman Cath. Diocese of Greensburg*, 581 F. Supp. 3d at 209.  As stated above, Aidvantage is the servicer for Plaintiff's federal student loans, but does not own or have the authority to discharge the loans.  Plaintiff's loans are in forbearance pending a response from another party (the DOE) to his BDR application.  With respect to the other elements of constructive fraud, Plaintiff's Complaint fails to allege false representation of any specific material fact, how Plaintiff relied on that fact, or what damages he suffered as a result. Plaintiff's fraud claim should be dismissed.

### 3.    Plaintiff's forgery claim should be dismissed.

As codified in the law of the District of Columbia, "[a] person commits the offense of forgery if that person makes, draws, or utters a forged written instrument with intent to defraud or injure another." D.C. Code Ann. § 22-3241(b).  Plaintiff's Complaint contains no facts alleging a claim of forgery against Defendants.  Rather, this claim appears to relate to conduct of non-parties DMD Financial Services, Inc. and St. Augustine's University.  Defendants were not involved with the loans in 2013 when Plaintiff claims the forgery was committed. (Doc. 1-2, p. 17 ¶ 13.)  Plaintiff has not stated a claim for forgery.

### 4.    Plaintiff's negligence and gross negligence claims should be dismissed.

Plaintiff has not alleged any of the elements of a negligence claim. "In order to maintain a legally sufficient negligence claim, a plaintiff must demonstrate: "(1) that the defendant owed a duty to the plaintiff, (2) breach of that duty, and (3) injury to the plaintiff that was proximately caused by the breach." *Hedgepeth v. Whitman Walker Clinic,* 22 A.3d 789, 793 (D.C.2011) (en banc) (citation omitted).  "The issue of whether a plaintiff can recover [a particular type of] damages . . . is a question of policy for the court, not one to be determined on a case-by-case determination of whether the injury was foreseeable." *District of Columbia v. Beretta, U.S.A., Corp.,* 872 A.2d 633, 645 n. 9 (D.C.2005) (citation omitted).  In other words, "whether the plaintiff's interests are entitled to legal protection against the defendant's conduct," *Hedgepeth*, 22 A.3d at 793 (citations omitted), is a question of law for us to decide."  *Aguilar v. RP MRP Washington Harbour, LLC*, 98 A.3d 979, 982 (D.C. 2014).

As a general rule, the District of Columbia does not recognize degrees of negligence, except when it is a specific element of a claim or defense. *Taylor v. United States*, No. CV 12–894 (AK), 2014 WL 2854496, at *2 (D.D.C. June 23, 2014) (citing *D.C. v. Walker*, 689 A.2d 40, 44-45 (D.C.

1997) and *Carleton v. Winter*, 901 A.2d 174, 181-82 (D.C.2006)).   Where a plaintiff alleges negligence and gross negligence, this Court has dismissed the claim for gross negligence as duplicative. *Taylor*, 2014 WL 2854496, at *2.

Plaintiff does not identify a cognizable duty Aidvantage owed to him as a loan servicer nor articulate a breach.   As far as damages, Plaintiff recites only that "he suffered harm."   Plaintiff's allegations are conclusory and do not state a claim.   Plaintiff's negligence claim is also barred by the economic loss doctrine, because, other than vague references to "emotional distress," his "harm" is economic in nature: he seeks to avoid paying a student loan. *See Aguilar*, 98 A.3d at 983 (D.C. 2014) (cleaned up) ("where pure economic loss is at issue, not connected with any injury to one's body or property . . . the reach of legal liability is quite limited").   Plaintiff's negligence claim should be dismissed.

### 5.    Plaintiff's claim for intentional infliction of emotional distress should be dismissed.

To state a claim for intentional infliction of emotional distress, the plaintiff must allege: "(1) extreme and outrageous conduct on the part of the defendants, which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *May v. River E. at Grandview*, 322 A.3d 557, 574 (D.C. 2024) (citing *Salem Media Grp., Inc. v. Awan*, 301 A.3d 633, 656 (D.C. 2023) (internal quotation marks omitted)). "The action must be so extreme and outrageous as to go beyond all possible bounds of decency." *Taylor*, 2014 WL 2854496 at *3 (citing *Darrow v. Dillingham & Murphy, LLP*, 902 A.2d 135, 139 (D.C.2006) and *Jackson v. District of Columbia*, 412 A.2d 948, 957 (D.C.1980)).

Plaintiff has not adequately pleaded a claim of intentional infliction of emotional distress. Defendants' conduct cannot be classified as "extreme and outrageous."   Plaintiff describes routine communications with Defendants by written correspondence or by phone, all related to the

servicing of Plaintiff's student loans and responding to requests from Plaintiff.  Doc. 1-2, p. 18 ¶ 16-19 (describing that Defendants denied claims, denied records requests, and altered documents by "manipulating contrast").  Plaintiff's Complaint attaches examples of correspondence from Defendants, which demonstrate the nature of their communications. (Doc. 1-2, pp. 27-31.)  The Complaint does not allege aggravating factors that could bring such routine business duties to the level of intentionally inflicting emotional distress.  Plaintiff's emotional distress claim should be dismissed.

> **6.     Plaintiff has not stated a claim for obstruction and tampering with records.**

Plaintiff fails to state a cognizable claim for "obstruction" or "tampering" with records.  District of Columbia law articulates the offenses of "obstruction of justice" and "tampering with physical evidence." D.C. Code Ann. §§ 22-722 and 22-723.  However, both offenses are specific to "official proceedings," which are defined as "any trial, hearing, investigation, or other proceeding in a court of the District of Columbia or conducted by the Council of the District of Columbia or an agency or department of the District of Columbia government, or a grand jury proceeding." D.C. Code Ann. §§ 22-721(4).  Because Plaintiff's Complaint does not relate to an official proceeding, these offenses are inapplicable, and therefore, should be dismissed.  To the extent Plaintiff is alleging a claim of fraud, the claim should be dismissed for the reasons already articulated above.

## V.     CONCLUSION

While district courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, leave to amend is not required where, as here, a plaintiff "is no stranger to the

courts" and leave to amend would be futile.[5] *See Brown v. Califano*, 75 F.R.D. 497, 499 (D.D.C. 1977). As demonstrated herein, the defects in Plaintiff's Complaint cannot be cured with an amendment. Accordingly, Defendants request that Plaintiff's claims be dismissed with prejudice.

WHEREFORE, Defendants respectfully request that this Court issue an order granting Defendants' Motion to Dismiss Plaintiff's Complaint.

DATED this 16th day of October 2025.

Respectfully submitted,

*/s/ Michael Klebanov*

Michael Klebanov                    Bar No.: 1048021
HUSCH BLACKWELL, LLP
1800 Pennsylvania Ave. NW, Suite 1000
Washington, DC 20006
Phone: 202.378.2300
Fax: 202.378.2319
Email: Michael.Klebanov@huschblackwell.com

*Attorney for Defendants Maximus Education, LLC d/b/a Aidvantage, Dominic Martin, and Sam Tandy*

---

[5] *See* Doc. 2 and Doc. 3, providing notice of designation of related civil cases filed by Plaintiff involving common issues of fact and growing out of the same event or transaction.

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2025, the foregoing was served upon plaintiff via email, and on October 17, 2025, by certified and regular mail to:

Jason Christopher Long
5112 MacArthur Blvd., N.W., Unit 4
Washington, DC 20016
Tel: 202.790.2276
Email: jclong2010@yahoo.com

*Plaintiff in Pro Per*


/s/ Michael Klebanov