**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| JASON CHRISTOPHER LONG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:25-cv-3272 (RC) |
| | ) | |
| MAXIMUS EDUCATION, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**<u>MEMORANDUM OPINION</u>**

This matter is before the Court on Defendants' Motion to Dismiss (ECF No. 19, "Defs.' Mot."), Plaintiff's Motion to Remove Communication Restriction Note from Servicer System (ECF No. 34), Plaintiff's Motion to Enforce Consideration of Unopposed Filings, Strike Misleading or Improper Documents, and Deny Defendants' Motion to Dismiss and Reply (ECF No. 36), Plaintiff's Motion to Strike Defendants' Motion to Dismiss and for Sanctions and for Other Relief (ECF No. 38), Plaintiff's Motion to Strike Defendants' Filings, Admit Confession, and Request for Default Judgment (ECF No. 39), Plaintiff's Motion for Entry of Order on Unopposed Filings (November 21, 2025 – April 16, 2026) (ECF No. 43), Plaintiff's Emergency Motion for Judicial Review of Certificate of Removal and Request for Immediate Remand (ECF No. 46, "Mot. to Remand"), Emergency Request for a Protective and Restraining Order Against Retaliatory Acts (ECF No. 47), and Plaintiff's Motion for Leave to File and Enter Unredacted Exhibits as Matter of Proof Under Seal in Opposition to Defendants' Motion to Dismiss (ECF No. 50).  The Court DENIES plaintiff's motion to remand, GRANTS defendants' motion to dismiss, and DENIES plaintiff's remaining motions.

1

## I. BACKGROUND

It appears that Maximus Education, LLC d/b/a Aidvantage ("Aidvantage" or "defendant") services, or previously serviced, plaintiff's student loan(s), and plaintiff "objects to any repayment agreements based on the forged, unauthorized, and misrepresented nature of the underlying loan documents, including a William D. Ford Direct Loan Application submitted without consent on October 3, 2013." Compl. ¶ 12.[1] According to plaintiff, "[t]he loan application contains five forged pages submitted by DMD Financial Services, Inc., including signatures not authored or approved by [him]." *Id*. ¶ 13.[2] Plaintiff alleges that the "forged documents were created while [he] was recovering from an arm injury sustained on July 29, 2011, precluding consent or authorization." *Id*. He claims to have "provided hospital medical records and a handwriting analysis," *id*. ¶ 15, in support. Nevertheless, plaintiff alleges, "Aidvantage and its agents recklessly denied the claims and failed to correct the record, in violation of the District's Consumer Protection Procedures Act." *Id*. ¶ 16.

Sam Tandy, an Aidvantage employee, allegedly "repeatedly denied [p]laintiff's requests for records from April through July 2025, falsely stating that no such records existed, obstructing [p]laintiff's rights under the D.C. Consumer Protection Procedures Act." *Id*. ¶ 17. Another Aidvantage employee, Dominic Martin, allegedly "failed to provide a document dated September 18, 2018 during October 2024," *id*. ¶ 18, and because

---

[1]    In this Memorandum Opinion, references to the complaint are references to the typewritten document (ECF No. 1-2 at 16-20) attached to a preprinted form (ECF No. 1-2 at 8-13).

[2]    Plaintiff's complaint does not identify the specific "five forged pages," and it is unclear whether the relevant pages are included in the complaint's exhibits.

plaintiff "independently retrieved this document," *id.*, plaintiff purportedly "exposed Mr. Martin's false statements and obstructive conduct," *id.*

According to plaintiff, the loan application is defective, too, because "[n]either DMD Financial nor Saint Augustine's University submitted the required Program Participation Agreement or Third-Party Servicer Data Form in 2013, violating Title IV loan origination protocols[.]" *Id.* ¶ 14.  He accuses Aidvantage of "alter[ing] documents . . . and insert[ing] additional pages into the loan file not included in prior servicing packages." *Id.* ¶ 19. Further, plaintiff alleges that another loan servicer, Navient, "failed to provide an authorization letter containing a forged date of birth [and] anonymous signature . . . indicating falsification by a third party," *id.* ¶ 20, conduct which "voids any consent or authorization allegedly granted," *id.*  And plaintiff claims to have "documentation . . . chronicling misconduct by Aidvantage, Navient, Nelnet, Federal Student Aid, and the Department of Education from 2021 through 2022." *Id.* ¶ 21.

Plaintiff submitted to the U.S. Department of Education "a Borrower's Defense to Repayment (BDR) application," *id.* ¶ 11, on March 7, 2023.  "The loan remains in forbearance pending" the Department's decision, which would have been due by March 6, 2026. *Id.*

Plaintiff brings claims under the D.C. Student Loan Borrower Bill of Rights Act (Count I) and the D.C. Consumer Protection Procedures Act (Count II).  *See generally* Compl. ¶¶ 22-25.  He also brings claims of constructive fraud and forgery (Count III), negligence and gross negligence (Count IV), intentional infliction of emotional distress (Count V), and obstruction and tampering with records (Count VI).  *See generally id.* ¶¶ 26-38.  Among other relief, plaintiff demands a declaration that "the loan agreements [are]

forged, fraudulent, and unenforceable," "compensatory damages exceeding []$50,000," and an injunction barring Aidvantage from "further collection, reporting or servicing related to the fraudulent loan" and "collection [of] any student loans for residents of the District of Columbia." *Id.* at 20 (page number designated by CM/ECF).

The case comes before the Court upon its removal from the Superior Court of the District of Columbia on September 18, 2025. *See generally* Notice of Removal (ECF No. 1); Errata Notice of Removal (ECF No. 5-1, "Removal Notice"). Plaintiff moves to remand the case to the Superior Court. *See generally* Mot. to Remand. Defendants Tandy and Martin move to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, and Aidvantage moves to dismiss under Rules 8 and 12(b)(6), arguing that the complaint fails to state claims upon which relief can be granted. *See generally* Defs.' Mot. at 6-19.

## II. LEGAL STANDARDS

### A. Subject Matter Jurisdiction, Removal, and Remand

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Because federal courts are "forbidden . . . from acting beyond [their] authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), judges have "an affirmative obligation 'to consider whether the constitutional and statutory authority exist for [the Court] to hear each dispute,'" *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 196 (D.C. Cir. 1992)).

Generally, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the

defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a); *see District of Columbia v. Exxon Mobil Corp.*, 89 F.4th 144, 148 (D.C. Cir. 2023) (quoting *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435 (2019)). For removal purposes, the Superior Court of the District of Columbia is a State court. *See* 28 U.S.C. § 1451(a). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

### B. Personal Jurisdiction and Rule 12(b)(2)

"[T]he plaintiff bears the 'burden of establishing a factual basis for the exercise of personal jurisdiction over [each] defendant.'" *Gold v. Global Aerospace Underwriting Managers, Ltd.*, No. 24-cv-3296 (RC), 2025 WL 1568222, at *2 (D.D.C. June 3, 2025) (quoting *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990) (additional citations omitted)); *see Hampton v. Comey*, No. 14-cv-1607, 2016 WL 471277, at *6 (D.D.C. Feb. 8, 2016), *aff'd*, No. 16-5058, 2016 WL 6238558 (D.C. Cir. Sept. 8, 2016). A plaintiff survives a Rule 12(b)(2) motion by "making a prima facie showing of specific and pertinent jurisdictional facts." *Myers v. Holiday Inns, Inc.*, 915 F. Supp. 2d 136, 139 (D.D.C. 2013) (citations omitted), meaning that plaintiff must allege "specific acts connecting the defendant with the forum," *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 121 (D.D.C. 2000) (citing *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C. Cir. 1983)). The Court may look beyond the allegations of the complaint. *See Martin v. United States*, No. 23-cv-2758 (TJK), 2025 WL 304797, at *3 (D.D.C. Jan. 27, 2025) (citing *Myers*, 915 F. Supp. 2d at 139). "[I]t may receive, consider, and weigh affidavits and other relevant materials outside of the pleadings to assist it in determining the pertinent jurisdictional facts." *Gligorov v. Nation of Brunei*, No.

21-cv-1773 (TSC), 2023 WL 1438326, at *2 (D.D.C. Jan. 31, 2023) (citation and subsequent history omitted).

### C. Sufficiency of the Complaint and Rules 8 and 12(b)(6)

A plaintiff need only provide a "short and plain statement of [his] claim showing that [he is] entitled to relief," Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). To withstand a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Wood v. Moss*, 572 U.S. 744, 757–58 (2014). A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556); *see Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) ("Plausibility requires more than a sheer possibility that a defendant has acted unlawfully[.]").

The Court must consider the entire complaint, with all factual allegations accepted as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555; *see Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1265 (D.C. Cir. 2019). The Court cannot, however, "assume the truth of legal conclusions, nor [does it] 'accept inferences that are unsupported by the facts set out in the complaint.'" *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (alteration in original) (internal citation omitted) (quoting *Islamic Am. Relief Agency v.*

6

*Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)); *see Iqbal*, 556 U.S. at 681 (stating that conclusory allegations are "not entitled to be assumed true").

"The *pro se* nature of a complaint places a further gloss on the standard of review." *Shanks v. Int'l Union of Bricklayers & Allied Craftworkers*, 134 F.4th 585, 591 (D.C. Cir. 2025). The Court must consider the complaint "in light of all filings, including filings responsive to a motion to dismiss." *Johnson v. District of Columbia*, 927 F.3d 539, 541 (D.C. Cir. 2019) (quoting *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (per curiam) (internal quotation marks omitted)). In addition, a *pro se* complaint must "'be liberally construed' and 'held to less stringent standards than formal pleadings drafted by lawyers.'" *Bowman v. Iddon*, 848 F.3d 1034, 1039 (D.C. Cir. 2017) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citation omitted)). Nonetheless, a *pro se* plaintiff is not excused from complying with applicable procedural rules and "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. 678); *see also Jones v. Horne*, 634 F.3d 588, 595 (D.C. Cir. 2011).

The Court has considered plaintiff's responses to defendants' motion to dismiss, *see* Pl.'s Opp'n to Defs.' Mot. to Dismiss (ECF No. 22) and Errata (ECF No. 23); Verified Pl.'s Surreply in Opp'n to Defs.' Mot. to Dismiss and Improper Procedural Conduct (ECF No. 25); Mem. of P. & A. in Support of Pl.'s Mot. to Strike New Arguments Raised in Defs.' Reply (ECF No. 26), and concludes that none presents meaningful or substantive responses to defendants' legal arguments.

7

## III. DISCUSSION

### A. Plaintiff's Motion to Remand

Defendants contend that this Court has original jurisdiction because the parties are citizens of different states and the amount in controversy exceeds $75,000.  Removal Notice ¶¶ 4-13; *see* 28 U.S.C. § 1332(a).  Plaintiff, who does not dispute that the parties are citizens of different states, challenges the amount in controversy.  *See* Mot. to Remand at 1-2. Where, as here, plaintiff is "seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."  *RWN Dev. Grp., LLC v. Travelers Indem. Co. of Conn.*, 540 F. Supp. 2d 83, 87 (D.D.C. 2008) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)).

When faced with a challenge to the amount in controversy for removal jurisdiction, the Court engages in a two-part inquiry.  First, "when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014).  Second, if the plaintiff contests the amount in controversy, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."  *Id.*; *see Gardner v. Erie Ins. Co.*, 639 F. Supp. 3d 135, 140 (D.D.C. 2022).

"[W]hen a removing defendant seeks to establish this Court's diversity jurisdiction under 28 U.S.C. § 1332(a), there is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court."  *Sloan v. Soul Circus, Inc.*, No. 15-cv-1389 (RC), 2015 WL 9272838, at *6 (D.D.C. Dec. 18, 2015).  "[T]he court must resolve any ambiguities concerning the propriety of removal in favor of remand."  *Zuckman*

*v. Monster Beverage Corp.*, 958 F. Supp. 2d 293, 297 (D.D.C. 2013) (quoting *Johnson–Brown v. 2200 M Street LLC*, 257 F. Supp. 2d 175, 177 (D.D.C. 2003)) (alteration in original) (internal quotation marks omitted).

Defendants calculate the amount in controversy based on the complaint's demands for relief and exhibits. *See* Removal Notice ¶¶ 10-13. First, defendants point to plaintiff's demand for "a permanent injunction barring [Aidvantage] . . . from servicing, collecting, or managing any student loans for residents of the District of Columbia." Compl. at 20 (page number designated by CM/ECF). Defendants construe the demand as one for "injunctive relief [in] the amount that [p]laintiff would not pay back on his student loans if . . . injunctive relief were granted." Removal Notice ¶ 10. They refer, *see id.*, to an exhibit attached to the complaint, *see* Compl., Ex. (ECF No. 1-2) at 22, indicating that plaintiff's outstanding loan balance as of November 8, 2021, was $82,744.46. In addition, defendants refer to "data provided to counsel by Plaintiff from the U.S. Department of Education, National Student Loan Data System, dated June 7, 2025, stat[ing] the Student Total All Loans Outstanding Principal [balance was] $80,376.09." Removal Notice ¶ 10; *see* Errata, Ex. 1 (ECF No. 7-1).

Second, defendants consider plaintiff's demand for "compensatory damages exceeding [] $50,000," Compl. at 20, for financial and emotional harms allegedly suffered, plus "statutory penalties and attorney's fees," Removal Notice ¶ 12. While plaintiff's dollar figure does not exceed the $75,000 threshold, defendants posit that the loan balances combined with "[p]laintiff's informal estimates of his damages demonstrate that [he] seeks a judgment in an amount greater than $75,000, satisfying the amount in controversy requirement." *Id.* ¶ 13.

Plaintiff argues that "the underlying loan at issue was only consolidated for the sum of $10,525.50," Mot. to Remand at 1, an amount "significantly short of the mandatory $75,000 federal threshold," *id*. at 2.  In support, he relies on a Federal Direct Loan Consolidation Verification Certificate ("LVC"), *see id*., Ex. A (ECF No. 46-1) at 2, claiming it "proves that the absolute maximum total authorized amount under dispute is exactly [$] 10,525.50."  Pl.'s Mem. in Opp'n to Defs.' Mem. and Emer. Request for a Protective and Restraining Order Against Retaliatory Acts (ECF No. 47, "Pl.'s Mem.") at 2.  In addition, plaintiff relies on the June 18, 2026, email from the Federal Student Aid Ombudsman which supposedly "contain[s] a fatal admission against interest."  *Id*.  According to plaintiff, the Ombudsman "explicitly admit[s] that there is absolutely no evidence on the record to justify or support the phantom balance of [$] 69,850.59."  *Id*.[3]  The email contains no such admission.

In response to plaintiff's "concern regarding the validity of [his] 2013 Direct Consolidation Loan," *id*., Ex. A (ECF No. 47) at 8, the Ombudsman stated in relevant part:

> *You currently have an outstanding 2013 Direct Consolidation Loan with an approximate outstanding principal balance of $80,376.09* and an approximate outstanding interest balance of $13,691.25.  This loan is currently in forbearance as you await a determination of your defense to repayment (BD) discharge application.
>
> Your federal student loan servicer, Aidvantage, previously provided a copy of the Master Promissory Note (MPN) for your 2013 Direct Consolidation Loan.  The MPN is a legally-binding contract in which the borrower agrees to repay the loan in accordance with the stipulations of the MPN and the federal laws and regulations governing federal student loans.
>
> I recognize that you dispute the validity of the MPN for your 2013 Direct Consolidation Loan.    You previously submitted discharge

---

[3]  $80,376.09 – $10,525.50 = $69,850.59.

applications based on the alleged fraudulent nature of the loan, and ED issued final denials of your claims in 2019, 2021, and 2025.

* * *

In your inquiry, you cite a Federal Direct Consolidation Loan Verification Certificate reflecting only $10,525.50 and that is signed by a representative of your university as an indication that you do not owe the full Direct Consolidation Loan balance. The loan verification certificate (LVC) only reflects one loan – your 2004 Federal Perkins Loan that was held and serviced by your school – and not the [11] other federal Direct Loans held and serviced by ED that were included in the 2013 Direct Consolidation Loan. Only one loan is included in this LVC because your school only held one loan for which the school could provide verification. As such, *this LVC does not provide any indication that the 2013 Direct Consolidation Loan balance is invalid*.

*Id.*, Ex. A at 8-9 (emphasis added). In essence, the Ombudsman confirms that the outstanding principal balance for the 2013 consolidated loans is $80,376.09, and the LVC plaintiff provided does not invalidate that balance.

A reasonable interpretation of the complaint is that plaintiff seeks relief from *all* student loan obligations, particularly those arising from the 2013 loan consolidation he disputes. *See, e.g.*, Compl. ¶ 12 ("object[ing] to any repayment agreements based on the forged, unauthorized, and misrepresented nature of the underlying loan documents"); Pl.'s Formal Objection to Defs.' Removal Conduct, Withholding of Service Documents, and Reliance Upon Unauthenticated Loan Documents (ECF No. 44) at 2 ("object[ing] to the use and continued reliance upon alleged Federal Direct Loan Consolidation and Promissory Note documents associated with a 2013 consolidation transaction"); *id.* at 3 (alleging that Aidvantage . . . produced inaccurate, incomplete, and unauthenticated copies of alleged consolidation records that were purportedly submitted by DMD Financial Services, Inc. on or about October 8, 2013 and allegedly approved by the Department of Education on December 6, 2013"); Pl.'s Mem. at 3 (alleging "no paper trail exists where Plaintiff signed[,]

11

acknowledged or agreed to the figures currently claimed under the 2013 Loan Consolidation Application and Promissory Note"); Pl.'s Reply Mem. in Support of Mot. to Remand to Superior Court of the District of Columbia (ECF No. 53) at 2 (denying having consolidated loans, having executed 2013 consolidation agreement, or having consented to the transaction).  Defendants need only establish the amount in controversy "by . . . a preponderance of the evidence, not to a legal certainty," *Sloan*, 2015 WL 9272838, at *5 (citation omitted), and defendants meet their burden.  The value of the object of this litigation – student loan debt relief – properly includes the outstanding balance of the 2013 consolidated loans, and the balance exceeds the $75,000 threshold.

The Court concludes that defendants establish diversity jurisdiction, and plaintiff's challenges to removal due to procedural defects, *see, e.g.*, Verified Pl.'s Surreply in Opp'n to Defs.' Mot. to Dismiss and Improper Procedural Conduct (ECF No. 25); Pl.'s Notice of Improper Supplementation of the Removal Record (Special Appearance – Jurisdiction Preserved) (ECF No. 28); Pl.'s Formal Objection to Defs.' Removal Conduct, Withholding of Service Documents, and Reliance Upon Unauthenticated Loan Documents (ECF No. 44); Pl.'s Mem. at 2, are untimely.  *See* 28 U.S.C. § 1447(c).  Plaintiff's motion to remand is denied.

### B. Personal Jurisdiction Over Defendants Tandy and Martin

Defendants Tandy and Martin, residents of Pennsylvania and Indiana, respectively, *see* Removal Notice ¶¶ 6-7, move to dismiss under Federal Rule of Civil Procedure 12(b)(2) on the ground that this Court lacks personal jurisdiction over them, *see* Defs.' Mot. at 6-9.

12

"There are two forms of personal jurisdiction: general or all-purpose jurisdiction, and specific or conduct-linked jurisdiction." *Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016, 1036 (D.C. Cir. 2020) (citation and internal quotation marks omitted). A court in the District of Columbia "may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief." D.C. Code § 13-422. For an individual defendant, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Urquhart-Bradley v. Mobley*, 964 F.3d 36, 43 (D.C. Cir. 2020) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). This Court may not exercise so-called general jurisdiction over Tandy and Martin, as there are no factual allegations showing that either is domiciled or maintains his principal place of business in the District of Columbia.

Alternatively, a court in the District of Columbia may exercise specific jurisdiction over a non-resident defendant if the Court determines "both that (i) jurisdiction is permissible under the [District of Columbia's] long-arm statute, and (ii) the exercise of personal jurisdiction comports with the Due Process Clause." *Urquhart-Bradley v. Mobley*, 964 F.3d 36, 44 (D.C. Cir. 2020) (citing *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013)). Due process concerns are addressed if a plaintiff shows "minimum contacts between the defendant and the forum establishing that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted).

In relevant part, the District's long-arm statute provides:

13

> A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's –
>> (1) transacting any business in the District of Columbia;
>> (2) contracting to supply services in the District of Columbia;
>> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; [or]
>> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia[.]

D.C. Code § 13-423(a). Tandy and Martin claim to "have no apparent affiliations with the District of Columbia other than the fact that they allegedly sent communications to Plaintiff, a resident of the District of Columbia, in the course of their employment with Aidvantage," Defs.' Mot. at 6, and plaintiff does not demonstrate otherwise. It cannot be said that such communication amounts to transacting business or causing tortious injury in the District of Columbia.

Plaintiff is no more successful in demonstrating that these defendants have the requisite "minimum contacts" with the District of Columbia. Minimum contacts must arise from "some act by which the defendant purposefully avails [himself] of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 109 (1988) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). In other words, a "defendant's conduct and connection with the forum State are such that [he] should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). It is not enough, as plaintiff asserts in wholly conclusory language, that defendant Tandy "obstruct[ed] Plaintiff's rights under the D.C.

14

Consumer Protection Procedures Act," Compl. ¶ 17, and that defendant Martin made

"false statements and [engaged in] obstructive conduct," *id*. ¶ 18.  While the Court "cannot

ignore contacts made by the individual just because they were made in his or her capacity

as an employee," *Urquhart-Bradley*, 964 F.3d at 46, the Court concurs with defendants'

assessment that "[i]t is not reasonable to require employees to be subject to personal

jurisdiction in every state or district where any recipient of an email sent within their scope

of employment resides," Defs.' Mot. at 8.

### C. The Complaint's Failure to State Claims Upon Which Relief Can Be Granted

Defendants move to dismiss under Rules 8 and 12(b)(6), arguing that the complaint

fails to state a claim against any defendant upon which relief can be granted.  *See* Defs.'

Mot. at 9-11.  They argue that, "[o]verall, the Complaint does not provide fair notice of any

claim and is insufficient to enable a responsive answer and adequate defense[.]"  *Id*. at 10.

The Court concurs.

### 1. Claims Against Non-Parties

For starters, the allegations of the complaint attribute wrongdoing to parties other

than the three named defendants.  For example, plaintiff alleges that his "loan application

contains five forged pages submitted by DMD Financial Services, Inc.," Compl. ¶ 12, faults

DMD Financial Service and Saint Augustine University for failing to submit proper loan

documents in 2013, *see id*. ¶ 14, and alleges "Navient failed to provide an authorization

letter," *id*. ¶ 20, yet such allegations "have no apparent connection to Defendants," Defs.'

Mot. at 12.  Even if the Court were to accept the complaint's allegations as true, the

complaint fails to state a plausible claim that any of the named defendants is responsible for

the non-parties' conduct.  *See Arias v. Universal Music Grp.*, 640 F. Supp. 3d 84, 93 (D.D.C.

15

2022) ("Plaintiff cannot survive a motion to dismiss by lumping all the defendants together and providing no factual basis to distinguish their conduct.") (quoting *Toumazou v. Turkish Republic of Northern Cyprus*, 71 F. Supp. 3d 7, 21 (D.D.C. 2014)) (internal quotation marks omitted); *cf. Tani v. St. Mary's Cnty., Md.*, No. 08-cv-1950, 2011 WL 3821058, at *3 (D. Md. Aug. 25, 2011) (finding that, "with the exception of the caption, the . . . Defendants appear virtually nowhere in [the] Complaint," such that "the allegations in [the] Complaint, even if accepted as true, do not begin to approach the 'sheer possibility,' much less the requisite 'plausibility,' that the . . . Defendants somehow acted unlawfully"), *recons. denied*, 2012 WL 2861000 (D. Md. July 10, 2012).

### 2. Higher Education Act

Defendants posit that, "[t]o the extent [p]laintiff seeks to discharge or reform his student loans, his claims are governed by the Higher Education Act ('HEA'), which does not provide a private right of action." Defs.' Mot. at 11.

"The HEA is a funding statute. Congress provided for enforcement *by* the national government, and in the HEA for enforcement *against* the Secretary of Education." *Blanchette v. Navient Corp.*, No. 18-cv-2288, 2019 WL 8229236, at *3 (C.D. Ill. Jan. 22, 2019) (citations omitted) (emphasis in original), *aff'd*, 772 F. App'x 343 (7th Cir. 2019). It neither "authorize[s] litigation by a private plaintiff against anyone other than the Secretary," *id.*, nor creates a private right of action, *see McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1224–25 (11th Cir. 2002) (dismissing appeal brought by parents of college-bound students under HEA because HEA "does not confer a private right of action in [their] favor"); *Gavin v. Dep't of the Air Force*, 324 F. Supp. 3d 147, 151 (D.D.C. 2018) ("But there is no private right of action under the Higher Education Act of 1965, 20 U.S.C. § 1001 *et seq.*, which governs

16

federal student loans."); *Ivey v. Duncan*, No. 13-cv-0576 (RWR-AK), 2014 WL 11256897, at *6 (D.D.C. Aug. 4, 2014) ("Plaintiff fails to state a claim under the [HEA] because the Act does not establish a private right of action, [and] courts have construed [its] provision permitting suit against the [S]ecretary [of Education] as a jurisdictional grant only and not as creating a separate cause of action."), *report and recommendation adopted*, No. 13-cv-0576 (APM), 2016 WL 1452326 (D.D.C. Apr. 13, 2016); *Slovinec v. DePaul Univ.*, 222 F. Supp. 2d 1058, 1060 (N.D. Ill. 2002) ("[B]ecause Congress did not intend to create a private right of action under HEA, and because Congress has given the Secretary of Education the express authority to enforce the provisions of the Act, the Court finds that HEA does not provide a private right of action to individual plaintiffs."), *aff'd*, 332 F.3d 1068 (7th Cir. 2003); *see also Alston v. Pennsylvania State Univ.*, No. 1:14-cv-2480, 2015 WL 9660019, at *4 (M.D. Pa. June 9, 2015) ("Although the HEA provides certain administrative remedies against the [Department of Education] in some limited circumstances, . . . it has long been recognized that individuals do not have a private right of action under the HEA against a university or the [Department]") (citations omitted), *report and recommendation adopted*, No. 14-cv-2480, 2016 WL 74795 (M.D. Pa. Jan. 7, 2016), *aff'd*, 685 F. App'x 158 (3d Cir. 2017).

To the extent plaintiff brings a claim under the HEA, it is dismissed.

### 3. D.C. Student Loan Borrower Bill of Rights (Count I)

Plaintiff alleges violations of the New Student Loan Borrower's Bill of Rights Amendment Act of 2024, D.C. Law 25-219 (eff. Nov. 27, 2024). *See* Compl. ¶¶ 22-23. The Act lists twelve types of prohibited conduct, *see* D.C. Code § 31-106.02a, yet, as defendants note, the complaint "has not plausibly identified any conduct that violates the Act," Defs.' Mot. at 15. Instead, the complaint in conclusory fashion alleges that defendants

17

"misrepresented loan terms, failed to provide required documents, and obstructed [p]laintiff's ability to make informed repayment decisions." Compl. ¶ 22. Absent are factual allegations describing the misrepresentation, or identifying the documents defendants did not produce, or stating the means by which defendants kept plaintiff from making informed decisions with respect to his student loans, or identifying the specific provision(s) defendants violated. Importantly, the Court notes that plaintiff's claims arise from the origination or consolidation of student loans in 2013, long before D.C. Law 25-219 became effective, and plaintiff does not demonstrate that the Act applies retroactively. Count I is dismissed.

### 4. D.C. Consumer Protection Procedures Act (Count II)

The complaint alleges defendants "engaged in unfair and deceptive trade practices," Compl. ¶ 24, without citing the particular provisions of the Consumer Protection Procedures Act on which plaintiff relies. Defendants surmise, *see* Defs.' Mot. at 14-15, that plaintiff's claim could be based on three prohibited practices.

It is unlawful to "misrepresent as to a material fact which has a tendency to mislead," D.C. Code § 28-3904(e), to "fail to state a material fact if such failure tends to mislead," *id*. § 28-3904(f), and to "fail to supply to a consumer a copy of a sales or service contract, lease, promissory note, trust agreement, or other evidence of indebtedness which the consumer may execute," *id*. § 25-3904(q). With respect to the misrepresentation claims, while a plaintiff need not allege a defendant acted knowingly or intentionally, he still must allege "that the [defendant] made a material misrepresentation under § 28-3904(e), or failed to make a material disclosure under § 28-3904(f)." *Frankeny v. Dist. Hosp. Partners, LP*, 225 A.3d 999, 1005 (D.C. 2020) (citing *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town*

18

*Corp.*, 944 A.2d 1055, 1073 (D.C. 2008)).  Plaintiff does not manage even that.  The complaint neither identifies the material fact at issue nor describes how defendants misrepresented it.  Similarly deficient is any claim which might arise under § 28-3904(q), as the complaint does not identify the document defendants failed to supply.  Consequently, plaintiff does not plausibly allege violations of the D.C. Consumer Protection Procedures Act, and Count II is dismissed.

### 5. Constructive Fraud and Forgery (Count III)

Defendants move to dismiss the constructive fraud and forgery claims because the complaint does not allege any of their elements.  *See* Defs.' Mot. at 16-17.  To state a fraud claim, a plaintiff must allege "(1) the defendant made a false representation; (2) in reference to material fact; (3) with knowledge of its falsity; (4) with the intent to deceive the plaintiff; (5) the plaintiff acted in reasonable reliance on that representation; (6) which consequently resulted in provable damages." *Essroc Cement Corp. v. CTI/D.C., Inc.*, 740 F. Supp. 2d 131, 145 (D.D.C. 2010) (citing *C & E Servs., Inc. v. Ashland*, 498 F. Supp. 2d 242, 255 (D.D.C. 2007)) (additional citation omitted).  "Constructive fraud includes all the same elements as actual fraud except the intent to deceive, and, in place of requiring a showing of actual dishonesty, it requires a plaintiff to demonstrate the existence of a confidential relationship between the plaintiff and defendant, by which the defendant was able to exercise extraordinary influence over plaintiff." *Dentons US LLP v. Republic of Guinea*, 208 F. Supp. 3d 330, 341 (D.D.C. 2016) (quoting *Cordoba Initiative Corp. v. Deak*, 900 F. Supp. 2d 42, 50 (D.D.C. 2012)) (additional citation, internal quotation marks, and brackets omitted).  "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), and a plaintiff must plead "matters such as the time, place and content

19

of the false [representations], the misrepresented fact and what the opponent retained or the claimant lost as a consequence of the alleged fraud," *Henok v. Chase Home Fin., LLC*, 922 F. Supp. 2d 110, 122 (D.D.C. 2013) (citation and internal quotation marks omitted).

The complaint's mere conclusory allegations, *see, e.g.*, Compl. ¶ 28 ("Constructive fraud and forgery void contracts under D.C. Law"); *id.* ¶ 19 ("tampering constitutes fraud"), call for dismissal of plaintiff's fraud and constructive fraud claims. Missing are any allegations describing the circumstances of the alleged fraud, or any other element of a fraud claim. Missing, too, are allegations demonstrating the existence of a confidential relationship between plaintiff and defendants enabling defendants to exercise extraordinary influence over plaintiff, without which the constructive fraud claim is doomed.

With respect to the forgery claim, there are no factual allegations demonstrating that any named defendant committed forgery. At most, defendants argue, "this claim appears to relate to conduct of non-parties DMD Financial Services, Inc. and St. Augustine's University." Defs.' Mem. at 17; *see* Compl. ¶¶ 12-14. At any rate, "[f]orgery is a criminal offense which may, in some instances, includes commission of other civil torts (e.g., conversion or fraud), but it is not in and of itself a civil cause of action." *Nwaoha v. Onyeoziri*, No. 04-cv-1799 (GK), 2006 WL 3361540, at *4 (D.D.C. Nov. 20, 2006); *see McCrea v. District of Columbia*, No. 16-cv-0808 (TSC), 2021 WL 1209219, at *14 (D.D.C. Mar. 31, 2021) (dismissing forgery claim with prejudice). Count III is dismissed.

### 6. Negligence and Gross Negligence (Count IV)

Defendants move to dismiss the negligence claims because the complaint fails to allege any of the claims' elements. *See* Defs.' Mem. at 17-18. "To state a claim of negligence, a plaintiff 'must show: (1) that the defendant owed a duty to the plaintiff, (2)

20

breach of that duty, and (3) injury to the plaintiff that was proximately caused by the breach.'" *Curne v. U.S. Small Business Admin.*, No. 23-cv-3789 (BAH), 2024 WL 5056355, at *11 (D.D.C. Dec. 10, 2024) (quoting *Poola v. Howard Univ.*, 147 A.3d 267, 289 (D.C. 2016)); *see Jia Di Feng v. See-Lee Lim*, 786 F. Supp. 2d 96, 106 (D.D.C. 2011) ("To state a claim for negligence under District of Columbia law, Plaintiff must allege facts sufficient to prove the existence of a duty, breach of that duty, causation, and damages."). As "[t]he existence of a legal duty being an essential element of a negligence claim under District of Columbia law, the plaintiff[] 'must specify a negligent act and characterize the duty whose breach might have resulted in negligence liability.'" *District of Columbia v. White*, 442 A.2d 159, 162 (D.C. 1982) (quoting *Kelton v. District of Columbia*, 413 A.2d 919, 922 n.5 (D.C. 1980)).

Plaintiff's negligence claim goes nowhere. While defendants may have owed plaintiff "a duty to act with due care in servicing the loan and handling documents," Compl. ¶ 29, the complaint fails to explain what "due care" means in the context of servicing a student loan. Without allegations describing how defendants were obliged to conduct themselves, the negligence claim fails. *See, e.g.*, *Petway v. Santander Consumer USA Inc.*, No. 22-cv-3100 (RBW), 2024 WL 3443765, at *7 (D.D.C. July 17, 2024) (dismissing negligence claim where "plaintiff has failed to establish the first element . . . because she has not demonstrated that the defendant owed her any legally recognized duty"). Even if defendants' conduct had represented "a gross departure from reasonable standards," Compl. ¶ 30, the complaint does not describe the standards and the conduct departing from such standards. Further, "[a]s a general rule . . . , '[t]he law of the District of Columbia does not recognize degrees of negligence.'" *Hernandez v. District of Columbia*, 845 F. Supp. 2d 112, 115 (D.D.C. 2012) (quoting *Warner v. Capital Transit Co.,* 162 F. Supp. 253, 256 (D.D.C. 1958))

(additional citation omitted).  Consequently, "courts have traditionally analyzed whether a defendant acted with gross negligence only in limited circumstances where gross negligence is a specific element of a claim or defense . . . or for equitable reasons," *id*. (citations omitted), and plaintiff does not allege that such circumstances exist.  Count IV is dismissed.

### 7. Intentional Infliction of Emotional Distress (Count V)

Because the complaint fails to allege the elements of an intentional infliction of emotional distress ("IIED") claim, defendants move to dismiss it.  *See* Defs.' Mot. at 18-19. "In order to establish a prima facie case of intentional infliction of emotional distress, a plaintiff must show (1) extreme and outrageous conduct on the part of the defendants, which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Williams v. District of Columbia*, 9 A.3d 484, 493–94 (D.C. 2010) (quoting *Futrell v. Dep't of Labor Fed. Credit Union*, 816 A.2d 793, 808 (D.C. 2003) (internal quotation marks omitted)). An IIED claim survives a motion to dismiss if a plaintiff alleges "conduct that was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id*. (quoting *Bernstein v. Fernandez*, 649 A.2d 1064, 1075 (D.C. 1991)); *Kerrigan v. Britches of Georgetowne*, 705 A.2d 624, 628 (D.C. 1997).  "Under District of Columbia law, '[t]he requirement of outrageousness is not an easy one to meet.'"  *Carty v. CVS Pharmacy, LLC*, 264 F. Supp. 3d 190, 196 (D.D.C. 2017) (quoting *Drejza v. Vaccaro*, 650 A.2d 1308, 1312 (D.C. 1994) (citing *Bown v. Hamilton*, 601 A.2d 1074, 1079 (D.C. 1992))).

To determine whether conduct is extreme or outrageous, the Court "must consider . . . the specific context in which the conduct took place, for in determining whether conduct is extreme or outrageous, it should not be considered in a sterile setting, detached from the

22

surroundings in which it occurred.'"  *King v. Kidd*, 640 A.2d 656, 668 (D.C. 1993) (citations, internal quotation marks and brackets omitted).  "The 'context' consists of the nature of the activity at issue, the relationship between the parties, and the particular environment in which the conduct took place."  *Id.*  "[T]he court . . . determine[s], in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery."  *Ross v. DynCorp*, 362 F. Supp. 2d 344, 358–59 (D.D.C. 2005) (citations and internal quotation marks omitted).

Here the complaint does not demonstrate that defendants' conduct in the context of servicing a student loan could be considered outrageous.  Rather, defendants' interaction with plaintiff appears to have been limited to written correspondence and telephone calls related to the loan and in response to plaintiff's requests, *see, e.g.*, Compl., Ex. 1 (ECF No. 1-2) at 27-31 (page numbers designated by CM/ECF), and the complaint "does not allege aggravating factors that could bring such routine business duties to the level of intentionally inflicting emotional distress," Defs.' Mot. at 19.  Count V is dismissed.

### 8. Obstruction and Tampering with Records (Count VI)

The Court presumes that the "tampering" of which plaintiff complains is the alleged alteration of documents by Aidvantage.  *See* Compl. ¶¶ 19, 36.  The complaint neither alleges facts supporting a claim that "tampering constitutes fraud," *id*. ¶ 19, nor linking this so-called tampering to obstruction of plaintiff's "rights and due process," *id*. ¶ 36.  Plaintiff neither identifies the "rights" allegedly violated nor indicates what process he is due.  Count VI is dismissed.

## IV. CONCLUSION

The Court concludes that defendants adequately show the amount in controversy for purposes of establishing diversity jurisdiction, that the Court lacks personal jurisdiction over Tandy and Martin, and that the complaint fails to state claims upon which relief may be granted.  Therefore, the Court DENIES plaintiff's motion to remand, GRANTS defendants' motion to dismiss, and DENIES plaintiff's remaining motions.  An Order is issued separately.

DATE: July 21, 2026                    /s/
                                       RUDOLPH CONTRERAS
                                       United States District Judge